ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

FORD MOTOR COMPANY, a Delaware
corporation, JAGUAR CARS, LTD , a United
Kingdom company, ASTON MARTIN
LAGONDA, LTD, a United Kingdom company,
VOLVO TRADEMARK HOLDING
AB, a corporation organized under the laws of
Sweden,

                Plaintiffs,

    vs

GREATDOMAINS COM, INC , a California
corporation, et al ,

                Defendants

_____/

Civil No  00-71544

Judge Gerald E  Rosen

FILED
2000 JUL -7  P 3 55
U.S. DIST COURT CLERK
EAST DIST MICH
DETROIT

## PLAINTIFFS' RESPONSE TO DEFENDANT
## GREATDOMAINS.COM, INC.'S MOTION TO DISMISS

Plaintiffs, Ford Motor Company, a Delaware Corporation, Jaguar Cars, Ltd , a United

Kingdom Company, Aston Martin Lagonda, Ltd, a United Kingdom Company, Volvo

Trademark Holding, AB, a corporation organized under the laws of Sweden, file this Response

to Defendant GreatDomains Com, Inc 's Motion to Dismiss requesting that the Court deny the

Motion   In support, Plaintiffs rely on the attached memorandum in support of Plaintiffs'

opposition to the motion to dismiss and the authority cited therein

DICKINSON WRIGHT PLLC

By: Kathleen Lang /w/consent joe

Kathleen A Lang (P34695)
Attorneys for Plaintiffs
500 Woodward Avenue, Suite 4000
Detroit, MI  48226
(313) 223-3500

Co-Counsel
Gregory D  Phillips
Thomas R  Lee, Of Counsel
HOWARD, PHILLIPS & ANDERSEN
560 E  200 South, Suite 230
Salt Lake City, Utah  84102
(801) 366-7471

DATED   July 7, 2000

FILED
2000 JUL -7 P 3: 55
U S DIST COURT CLERK
EAST DIST MICH
DETROIT

**PROOF OF SERVICE**

*The undersigned certifies that a copy of Plaintiff's Memorandum in Opposition
and Proof of Service was served upon the attorneys of record of all parties to
the above cause at their respective business addresses as disclosed by the
pleadings of record herein on July 7, 2000  I declare under penalty of perjury
that the statement above is true to the best of my information, knowledge and
belief*

BY
___ U S Mail               ___ FAX         ___ Other
✗ *Hand Delivered*     ___ *Federal Express*

*Ann Howington*
DETROIT 18260-1537 533120

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FORD MOTOR COMPANY, a Delaware
corporation, JAGUAR CARS, LTD , a United
Kingdom company, ASTON MARTIN
LAGONDA, LTD, a United Kingdom company,
VOLVO TRADEMARK HOLDING
AB, a corporation organized under the laws of
Sweden,

                    Plaintiffs,

    vs

GREATDOMAINS COM, INC., a California
corporation, et al ,

                    Defendants

Civil No  00-71544

Judge Gerald E  Rosen

                                     /

## PLAINTIFF'S MEMORANDUM IN OPPOSITION
## TO DEFENDANT GREAT DOMAINS.COM, INC.'S
## MOTION TO DISMISS

FILED

2000 JUL -7 P 3: 55

US DIST COURT CLERK
EST DIST MICH
DETROIT

## CONCISE STATEMENT OF ISSUE

Have Plaintiffs properly pled their causes of action pursuant to the Lanham Act, including

the recent amendment known as the Anticybersquatting Consumer Protection Act, 15 U S C

§ 1125(d)(1)(A), for misappropriation of their trademarks

## MOST CONTROLLING AUTHORITIES

**Cases**                                                                                                    **Page**

Avery Dennison Corp. v. Sumpton, 189 F 3d 868 (9th Cir 1999)                                                 7

Intermatic, Inc. v. Toeppen, 947 F Supp 1227 (N D Ill 1996)                                                    6

HQM, Ltd. v. Hatfield, 71 F Supp 2d 500 (D Md 1999)                                                            8

Kellogg Co. v. Exxon Corp., 209 F 3d 562 (6th Cir 2000)                                                      9

Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp
    949 (C D Cal 1997) aff'd 194 F 3d 980 (9th Cir 1999)                                 7

Marketing Displays, Inc. v. Traffix Devices, Inc., 200 F 3d 929 (6th Cir 1999)                               9

Minnesota Mining and Manufacturing Co. v. Taylor, 21 F Supp 2d 1003
    (D Minn 1998)                                                                           9

Panavision Intern, L P v. Toeppen, 141 F 3d 1316 (9th Cir 1998)                                              6

Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F 2d 1132 (9th Cir. 1986)                                       12

Princeton University Press v. Michigan Document Services, Inc., 99 F 3d 1381
    (6th Cir 1996)                                                                        14

Purco Fleet Services, Inc. v. Towers, 38 F Supp 2d 1320 (D Utah 1999)                                          6

Secretary of Labor v. Burger King Corp., 955 F.2d 681 (11th Cir 1992)                                        12

Shields v. Zaccarini, 89 F. Supp 2d 634 (E D Pa 2000)                                                          13

Sporty's Farm, L L C v. Sportsman's Market, Inc., 202 F 3d 489 (2d Cir 2000)                                   15

Sugar Busters LLC v. Brennan, 177 F 3d 258 (5th Cir 1999)..                                                  14

The New York State Society of Certified Public Accountants v. Eric Louis
    Assocs., Inc., 79 F Supp 2d 331 (S D N Y 1999)                                          6

Virtual Works, Inc. v. Network Solutions, Inc., 2000 U S. Dist LEXIS 2670
    (E D Va 2000)                                                                           9

Washington Speakers Bureau v. Leading Authorities, 33 F Supp 2d 488
    (E D Va 1999)                                                                           10

**Statutes**

15 U S C  § 1125(d)(1)(A), Anticybersquatting Consumer Protection Action ..          1
15 U S C  § 1127                                   .        ..      .      .          .       7

**Other**

*McCarthy on Trademarks and Unfair Competition*, § 24 97 2                       .        8

Plaintiffs Ford Motor Company ("Ford"), Jaguar Cars, Ltd ("Jaguar"), Aston Martin Lagonda, Ltd ("Aston Martin"), and Volvo Trademark Holding AB ("Volvo") (collectively "Plaintiffs"), respectfully submit this Memorandum in Opposition to the Motion to Dismiss filed by defendant GreatDomains com, Inc ("GreatDomains")

## BACKGROUND

Plaintiffs filed this action against GreatDomains and other defendants for cyberpiracy, trademark dilution, trademark infringement, and false designation of origin under the Lanham Act, including under the recent amendment known as the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U S C § 1125(d)(1)(A)   The allegations of Plaintiffs' Complaint (which must be accepted as true for purposes of this Motion to Dismiss), make expressly clear that GreatDomains participated with other defendants in a massive pattern of cyberpiracy in violation of the Lanham Act

First, the "Registrant Defendants" registered Internet domain names that incorporate Plaintiffs' Trademarks, which include some of the most famous trademarks in the world, such as Ford®, Lincoln®, Mercury®, Mustang®, Jaguar®, and Volvo® ("Trademarks")   Complaint ¶ 5   The Registrant Defendants are cyberpirates who register domain names of famous trademark holders in order to capitalize on, and profit from, the goodwill and reputation of such famous trademarks   Among others, the Registrant Defendants have registered the following domain names

JAGUARSALES COM, JAGUARSERVICING COM, JAGUAR-F1-RACING COM, JAGUARITEMS COM, VOLVOITEMS COM, FORDITEMS COM, JAGUARMOTORCOMPANY COM, JAGUARCENTER COM, JAGUARENTHUSIASTSCLUB COM, JAGUARBUYER COM, 1800JAG COM, FORDSUV COM, LINCOLNSUV.COM, 1800FORDTRUCK COM, 4AVOLVO COM, 4AJAGUAR COM, 4AJAG COM, JAGUARSHOWROOMS COM, FORDSHOW COM,

FORDSHOWROOMS COM, LINCOLNSHOWROOMS COM, VOLVOSHOWROOM COM, VOLVOSHOWROOMS COM, VOLVOSHOW COM, EJAGS COM, DRIVEVOLVOS COM, DRIVEFORDS COM, DRIVEJAGUAR COM, DRIVEJAGUARS COM, FORDREPAIRS COM, VOLVOREPAIRS COM, VOLVOCREDIT COM, FORDTODAY COM, VOLVOCENTER COM, VOLVO4U COM, VOLVOSFORSALE COM, VOLVOS4SALE COM, LINCOLNS4SALE COM, CLASSICVOLVO COM, VOLVOGUY COM, VINTAGEVOLVOS COM, VOLVOSAFETY COM, TEXANLINCOLNMERCURY COM, TEXANFORD COM, TEXANSFORD COM, TEXANFORD NET, TEXANFORD ORG, LINCOLNMERCURYREDCARPETLEASE COM, FACTORYFORDPARTS COM, TEXASFORDTRUCKS COM, VOLFORD COM, PREOWNEDMUSTANG COM, THE-FORD-MOTOR-COMPANY COM, FORDYOUNGDRIVERS COM, FORDYOUNGDRIVERS NET, FORDYOUNGDRIVERS ORG, FORDRENTING COM, FORDPICKUPSALES COM, FORDCHEVY COM, FORDCHEVYRACING COM, FORD-JAGUAR COM, FORDV8 COM, FORDCARE COM, FORDTELEMATICS COM, 4FORDPARTS COM, 4FORDTRUCKS COM, RUSTYWALLACEFORD COM, FORDBODYPARTS COM, FORDIY COM, FORDTRUCKNEWS COM, FORDSUCKS COM, FORDMOTOR NET, FORD-AUTOS COM, FORD-DEALER COM, FORDINDIA COM, FORDAUTOSALES COM, FORDMOTORCARS COM, FORDUS COM, JUSTFORDS COM, JUSTFORDS NET, 1STFORD COM, HAVEUDRIVENAFORDLATELY COM, FORDMUSTANG COM, FORDPROBE COM, FORDHEADQUARTERS COM, FORDDEALS COM, FORDCENTRAL COM, FORDVOLVO COM, FORDCENTER COM, FORDMOT COM, FORDING COM, FORDVISION COM, FORDAP COM, IFORDPARTS COM, IFORDS COM, SHOPNFORD COM, WIN-A-FORD COM, WIN-A-MUSTANG COM, GAYLORDFORD COM, OLDFORDS COM, FORDBRONCOS COM, FORD2001 NET, FORDHOLDINGS COM, FORDS CO UK, FORDS TO,

FORDBANK CO UK, FORDGARAGE COM, MRASTONMARTIN COM, and DB7ASTON-MARTIN COM (the "Pirated Domain Names")

Id ¶109

Plaintiffs have obtained United States Trademark Registrations for their Trademarks, and such registrations are valid, unrevoked, subsisting, and incontestable, and constitute prima facie evidence of Plaintiffs' exclusive ownership of such marks  Id  at ¶ 96   Neither Great Domains nor any of the Registrant Defendants have any intellectual property rights in any of the Plaintiffs' Trademarks  Id ¶ 110  Thus, the Pirated Domain Names' ability to direct Internet traffic derives entirely from the goodwill developed by Plaintiffs in their Trademarks   Id  ¶ 111   As GreatDomains explains in the "Valuation Model" that it makes available on its web site, "the value of a domain name is driven by its ability to deliver traffic and revenue to a business "  Id  ¶ 111

Second, after the Pirated Domain Names were registered, defendant GreatDomains agreed to participate with the Registrant Defendants in auctioning the Domain Names to the highest bidder through the GreatDomains com Internet website    Id  ¶  108    Indeed, GreatDomains is in the business of auctioning domain names for sale over the Internet   Id According to promotional materials posted at the GreatDomains com web site, GreatDomains collects a commission on the sale of domain names purchased through its web site in the amount of 10% of the sales price  Id    Thus, GreatDomains shares its customers' interest in capitalizing on the value and goodwill associated with the Plaintiffs' Trademarks by attempting to sell the Pirated Domain Names at the highest possible price. Id ¶ 112

Finally, contrary to the misleading statements made in support of GreatDomains' Motion to Dismiss, Plaintiffs have clearly and unmistakably alleged the elements of each of their claims arising out of GreatDomains' attempts to auction the Pirated Domain Names on its web site First, Plaintiffs have alleged that GreatDomains has engaged in "cyberpiracy" in violation of the ACPA by "trafficking" in the Pirated Domain Names with a "bad faith intent" to profit from the goodwill in the Plaintiffs' Trademarks   Id  ¶¶ 117-18   Second, Plaintiffs have alleged that

3

GreatDomains has diluted the Plaintiffs' Trademarks by using the world-famous Trademarks "in commerce" in its campaign of cyberpiracy. Id. ¶¶ 122-24. Finally, Plaintiffs have alleged that GreatDomains has infringed the Plaintiffs' Trademarks and used a "false designation of origin" that is "likely to cause confusion, mistake, or deception as to the connection of the Pirated Domain Names with Plaintiffs." Id. ¶¶ 127-32.

## ARGUMENT

GreatDomains' Motion is based on two species of arguments. First, GreatDomains repeatedly argues that Plaintiffs fail to allege certain elements of their claims, but such arguments are premised on a blatant mischaracterization of Plaintiffs' Complaint. In each instance, the element that GreatDomains contends is missing is in fact alleged clearly and unmistakably in the Complaint. Second, GreatDomains offers a series of legal arguments in an attempt to derail Plaintiffs' claims. Each of these arguments is specious and thoroughly contradicted by the now-settled case law condemning cyberpiracy under the ACPA and under the dilution, infringement, and false designation of origin provisions of the Lanham Act. The Court should repudiate GreatDomains' factual misrepresentations, reject its frivolous legal arguments, and deny the Motion to Dismiss.

I. **PLAINTIFFS HAVE STATED CLAIMS FOR INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN.**

A. **Plaintiffs Have Alleged The Essential Elements of These Claims.**

GreatDomains' first argument for dismissal of Plaintiffs' trademark infringement and false designation of origin claims is based on a blatant misrepresentation that "Plaintiffs do not–and cannot–allege that GreatDomains has used in commerce any of Plaintiffs' trademarks, as required by statute, and for the additional reason that Plaintiffs do not–and cannot–allege that GreatDomains has caused a likelihood of confusion among consumers in the marketplace."

4

GreatDomains' Brief at 1 - 2  Contrary to GreatDomains' argument, the Complaint expressly alleges both "use in commerce" and "likelihood of confusion "

The Complaint's extensive allegations of GreatDomains' "use" of Plaintiffs' Trademarks begin with the assertion that GreatDomains participated in "auctioning the domain names to the highest bidder through the GreatDomains com web site "  Complaint ¶ 5  Because GreatDomains "collects a commission on the sale of domain names purchased through its web site in the amount of 10% of the sales price," GreatDomains "shares its customers' interest in selling their domain names at the highest possible price "  Id ¶ 108  Moreover, since neither GreatDomains nor the Registrant Defendants have any intellectual property rights in the Plaintiffs' Trademarks, their attempts to auction the Pirated Domain Names constitute a "use" of the trademarks by "capitaliz[ing] on, and profit[ing] from, the goodwill and reputation of such famous trademarks "  Id ¶ 109

Based on these factual assertions, the Complaint expressly alleges in at least seven different paragraphs that GreatDomains has "used" the Plaintiffs' Trademarks in commerce Complaint ¶¶ 117, 118, 124, 127, 131-32  Paragraph 127, for example, alleges that.

> By Defendants' unauthorized registration, use, claim of ownership, and/or offers for sale of domain names that include the Plaintiffs' Trademarks, Defendants have, without Plaintiffs' consent, **used and/or are using in commerce a reproduction, counterfeit copy, or colorable imitation of Plaintiffs' Trademarks**

Id ¶ 127 (emphasis added)

Plaintiffs' allegations of a likelihood of consumer confusion are equally clear and explicit  Here, Plaintiffs' allegations begin with a description of the nature of cyberpiracy

> The public recognizes and often relies on the expectation that a company's corporate or product names can be found by incorporating such names into a company's domain names for web site addresses  Internet users typically type in the name of a company, the company's trademark, or the company's products to find information on that company  A domain name incorporating a famous trademark or a company's products is therefore a valuable asset that allows potential customers and other Internet users interested in a domain name owner to

5

> communicate with or learn more about that domain name owner.  On the other
> hand, **a domain name misappropriating the trademark of another entity
> creates the potential for substantial dilution, blurring, tarnishment, and
> consumer confusion**, because an Internet user reasonably may assume that the
> domain name is sponsored by, affiliated with, or somehow approved by the owner
> of the corporate name or trademark

Complaint ¶ 104 (emphasis added)  In light of the above, the Complaint goes on to allege
repeatedly that GreatDomains' participation in the scheme to auction the Pirated Domain Names
gives rise to a likelihood of confusion  Id  ¶¶ 118, 127, 132

In short, GreatDomains' representations regarding the contents of the Complaint are
simply fanciful  The Complaint repeatedly, expressly alleges that GreatDomains has used the
Plaintiffs' Trademarks by attempting to auction the Pirated Domain Names and that such use will
give rise to a likelihood of consumer confusion

## B.    A   Consistent   Line   of   Cases   Condemns
##       Cyberpiracy as Per Se Infringement.

GreatDomains' attempts to challenge the legal viability of Plaintiffs' claims for
infringement and false designation of origin are equally specious  GreatDomains first contends
that "use in commerce" can be established only if the Pirated Domain Names "are being used by
GreatDomains as trademarks to advertise and distinguish GreatDomains' auction services "
GreatDomains' Brief at 6  GreatDomains offers no support for this argument, and the case law
thoroughly rejects it

The courts consistently have found "commercial use" based on attempts to sell domain
names incorporating famous trademarks  See Panavision Intern, L P  v  Toeppen, 141 F 3d 1316,
1325 (9th Cir 1998), Intermatic, Inc  v  Toeppen, 947 F  Supp 1227, 1239 (N D  Ill 1996), The
New  York  State  Society  of  Certified  Public  Accountants  v  Eric  Louis  Assocs , Inc , 79
F  Supp 2d 331, 344 (S D  N Y. 1999), Purco Fleet Services, Inc  v  Towers, 38 F  Supp 2d 1320,
1325 (D  Utah 1999)  As the Ninth Circuit has explained, commercial use is established so long
as the defendant is "using the trademark as a trademark, capitalizing on its trademark status "

Avery Dennison Corp v Sumpton, 189 F 3d 868, 880 (9th Cir. 1999), see also 15 U S C § 1127 (defining "use in commerce" as any "bona fide use of a mark in the ordinary course of trade") Under this definition, commercial use is clearly established where a defendant seeks to capitalize on the goodwill associated with a famous trademark by "'preventing [plaintiffs] from doing business on the Internet under their trademarked names unless they pay his fee '" Panavision, 141 F 3d at 1325  Similarly, courts have held that "attempt[s] to sell," Eric Louis, 79 F Supp 2d at 344, to "arbitrage," Intermatic, 947 F Supp at 1239, or to "extort money," Purco, 38 F. Supp 2d at 1325, are classic commercial use of a trademark because the value of the domain name derives from the goodwill in the mark   "It does not matter that [defendant] did not attach the marks to a product " Panavision, 141 F 3d at 1325  Commercial use in this context is the "attempt to sell the trademarks themselves" by offering the domain names incorporating them Id  As noted in detail above, Plaintiffs have clearly alleged that GreatDomains has used the Plaintiffs' Trademarks "in commerce" in this manner

GreatDomains cannot avoid this result by its reliance on cases holding "that mere registration of a domain name is not 'use in commerce' within the meaning of the Lanham Act " GreatDomains' Brief at 7   None of the cases cited by GreatDomains involved cyberpiracy None of the defendants in those cases sought to misappropriate the goodwill in a trademark by auctioning or selling a domain name  Indeed, the cases cited by GreatDomains recognize this as a crucial distinction, they indicate that such activity goes beyond "mere registration" and does constitute "use in commerce "

Lockheed Martin Corp v Network Solutions, Inc, 985 F Supp 949 (C D Cal 1997), aff'd 194 F 3d 980 (9th Cir 1999), is illustrative   In that case, the court concluded that the registrar of domain names Network Solutions, Inc ("NSI") has not engaged in a "commercial use" of a trademark by merely performing the "machine-linking function" of allowing the registration of domain names under its first-come, first-served policy  985 F Supp at 957-58 In so holding, however, the Lockheed court recognized that domain names may perform "dual functions," and explained that a defendant who "promotes" a domain name in the cyberpiracy

7

context may have participated in a "commercial use" even if the "pure machine-linking-function" performed by NSI does not subject NSI to liability  985 F. Supp  at 958

HQM, Ltd  v  Hatfield, 71 F  Supp 2d 500 (D  Md  1999), recognized the same distinction   It held that "mere registration or activation of a domain name" is not commercial use, but expressly acknowledged that the opposite result would obtain where the defendant attempts to "hold hostage" the domain name in an effort "to sell or arbitrage" it  Id  at 507-08, see also McCarthy on Trademarks and Unfair Competition (hereinafter "McCarthy") § 24 97 2 (noting that although "[t]he mere reservation of someone else's trademark as a domain name is not, per se, a 'commercial' use," an attempt to "sell or ransom the domain name" is a "form of business enterprises which alone is sufficient to  meet the 'commercial use' requirement of the Act")

Finally, contrary to GreatDomains' argument, the courts have never required that the domain names being offered for sale be "owned by" or "registered by" the defendant GreatDomains' Brief at 7   Neither the logic nor the analysis of the above-cited cases suggests that a defendant should be able to avoid liability for classic cyberpiracy by stopping short of formal ownership or registration   GreatDomains exhibits both the actions and intent of a cyberpirate   There is nothing in logic or the law to support the notion that it may immunize itself from liability by avoiding formal ownership

C.   **Plaintiffs' Allegations Establish a Strong Likelihood of Confusion**

GreatDomains also errs in its argument that "Plaintiffs have clearly failed to plead factual allegations to indicate that GreatDomains has done anything that would cause a likelihood of confusion " GreatDomains' Brief at 8   As described in detail above, the Complaint expressly and repeatedly alleges that GreatDomains' attempts to auction the Pirated Domain Names--domain names that encompass some of the most famous trademarks in the world--gave rise to a likelihood of confusion, and thus this argument must be rejected as a mischaracterization of the Complaint

Moreover, GreatDomains' argument is also based on a mischaracterization of trademark law. The fact that "GreatDomains and the Plaintiffs operate in vastly different markets and offer vastly different products and services," GreatDomains' Brief at 8, cannot support the dismissal of the Complaint "[M]odern decisions have adopted the rule that competition is not necessary between the parties for there to be a likelihood of confusion." McCarthy § 24·13 The Sixth Circuit has held that none of the "factors" that guide the court's analysis of a "likelihood of confusion" is a "sine qua non" of liability. Marketing Displays, Inc v Traffix Devices, Inc, 200 F.3d 929, 933 (6th Cir 1999) Indeed, the Sixth Circuit recently clarified that competition between the parties is not "dispositive" of trademark infringement "the touchstone of liability for trademark infringement is the likelihood of confusion, not direct competition of identical products." Kellogg Co v Exxon Corp, 209 F 3d 562, 573 (6th Cir 2000)

At a minimum, Plaintiffs are entitled to move forward with their claims to establish a likelihood of confusion on the merits Indeed, such a showing is inevitably dictated by the case law Courts consistently have found a likelihood of confusion where the plaintiff's trademark is incorporated in a domain name that is auctioned for sale, particularly where (as here) the trademark is of world renown and the registrant has never used the mark in its business See e g, Minnesota Mining and Manufacturing Co v Taylor, 21 F Supp 2d 1003 (D Minn 1998) (attempt to extort money for POST-IT.COM constitutes trademark dilution and infringement), Washington Speakers Bureau v Leading Authorities, 33 F Supp 2d 488, 499 (E D Va 1999) (misappropriation of the domain names "washingtonspeakers com" and "washingtonspeakers net" infringed plaintiff's trademarks), Virtual Works, Inc v Network Solutions, Inc, 2000 U S Dist LEXIS 2670 (E D Va 2000) (attempt to extort money from Volkswagen for VW NET constitutes per se trademark dilution and infringement) As the court explained in the Washington Speakers case

> [A] company that owns an **intuitive domain name** owns a potentially valuable asset, as ownership of such a name makes it more likely that users will surmise its website address and visit its corporate website rather than the website of

9

competitor The value of this **intuitive name** is magnified by the fact that there is no exhaustive, central listing of Internet domain names equivalent to a phone book

33 F Supp 2d at 499 (emphasis added) Under the circumstances, the likelihood of confusion is more than conceivable, it is virtually inevitable

## II.   PLAINTIFFS HAVE STATED A CLAIM FOR DILUTION

GreatDomains' argument for dismissal of Plaintiffs' dilution claim is merely a reiteration of the misrepresentation discredited above that Plaintiffs somehow have failed to "allege that GreatDomains has used any of the domain names at issue in commerce as trademarks for the goods or services offered by GreatDomains " GreatDomains' Brief at 9   Apparently, GreatDomains believes that by repetition, this falsehood will become a truth [1](emphasis added)

The court should not be deceived by GreatDomains' argument   As described in detail above, Plaintiffs have alleged that GreatDomains used the Plaintiffs' Trademarks in commerce by auctioning the Pirated Domain Names   This allegation is clearly sufficient to sustain a claim for trademark dilution   Indeed, just as the courts have recognized a theory of per se infringement in cases of cyberpiracy, they also consistently have recognized a rule of per se dilution where a "defendant registered domain-name combinations using famous trademarks and sought to sell the registrations " Avery Dennison Corp v Sumpton, 189 F 3d 868, 874 (9th Cir 1999) (citing

---

[1]GreatDomains' approach is reminiscent of the Bellman's commentary in Lewis Carroll's The Hunting of the Snark

"Just the place for a Snark!" the Bellman cried,
As he landed his crew with care,
Supporting each man on the top of the tide
By a finger entwined in his hair

"Just the place for a Snark! I have said it twice
That alone should encourage the crew
Just the place for a Snark! I have said it thrice
**What I tell you three times is true "**

cases), see also <u>Virtual Works, Inc v Network Solutions, Inc</u>, 2000 U S Dist LEXIS 2670 (E D Va 2000) (attempt to extort money from Volkswagen for VW NET constitutes per se trademark dilution and infringement), <u>Panavision Int'l, L P v Toeppen</u>, 141 F 3d 1316, 1327 (9th Cir 1998) (same)

Again, GreatDomains' Motion to Dismiss is frivolous under this case law. Plaintiffs have gone far beyond stating a claim for which relief **can** be granted Their success on this claim is virtually assured The only conceivable distinction between this case and the per se dilution cases is the fact that GreatDomains is not the record owner of the Pirated Domain Names But again, this formality cannot immunize GreatDomains from liability GreatDomains has a clear commercial interest in the Pirated Domain Names that translates into an effective ten-percent ownership interest Accordingly, GreatDomains is effectively a ten- percent stakeholder in the massive campaign of cyberpiracy that is the subject of this lawsuit GreatDomains must be subject to the same liability that courts uniformly have imposed on other cyberpirates, lest the laws against this shameful practice be circumvented by a registrant's assignment of the bounty from its extortion

### III. PLAINTIFFS HAVE STATED A CLASSIC CLAIM FOR CYBERPIRACY.

GreatDomains' argument for dismissal of Plaintiffs' ACPA claim is again based on shameless misrepresentations of the allegations of the Complaint First, GreatDomains suggests that the Complaint fails to "sufficiently allege that GreatDomains had a bad faith intent to profit from the Plaintiffs' trademarks" GreatDomains' Brief at 11 Second, GreatDomains asserts that the Complaint fails to "allege[] that GreatDomains actually registered, trafficked in or used the subject domain names" Id at 14 Neither of these representations is true Plaintiffs have

alleged a classic case of cyberpiracy under the ACPA.[2]        GreatDomains also cannot avoid the

injunctive relief requested by Plaintiffs by its self-serving insistence that an injunction "would

have no real effect on GreatDomains." GreatDomains' Brief at 10, n 6  The assertion that

GreatDomains placed the Pirated Domain Names "on its 'banned' list," id at 3, n 2, is not only

improper on this Motion as going beyond the terms of the Complaint, it also flies in the face of

the longstanding "rule that 'voluntary cessation of allegedly illegal conduct does not deprive the

tribunal of power to hear and determine the case, i e , does not make the case moot '" Secretary

of Labor v  Burger King Corp , 955 F 2d 681, 684 (11th Cir 1992) (quoting United States v  W T

Grant Co , 345 U S  629, 632 (1953))   Where "[t]he defendants refuse[] to stop violating

[plaintiff's] rights until [plaintiff] brought suit in federal district court," the courts have explained

that injunctive relief is proper despite defendants' "cessation of the unlawful conduct" in

question  Id ; 5 McCarthy § 30 11 (noting that "voluntary cessation of activity is not a ground

for denial of a preliminary injunction")   The response to GreatDomains' argument is not

dismissal, but entry of the injunction   "If the defendants sincerely intend not to infringe, the

injunction harms them little, if they do, it gives [plaintiff] substantial protection of its

trademark " Polo Fashions, Inc  v  Dick Bruhn, Inc , 793 F 2d 1132, 1135-36 (9th Cir 1986)

---

[2]GreatDomains also complains that Plaintiffs have not alleged "that the registration, trafficking
and/or use of the domain names at issue occurred after November 29, 1999, the date of the
enactment of the ACPA " GreatDomains' Brief at 10, n  6   Contrary to GreatDomains'
argument, no such allegation is required by the statute, and the absence of such an allegation
cannot possibly require dismissal   By its express terms, the ACPA is retroactive, the only
exception to retroactivity is the provision on statutory damages, which applies only to domain
names registered after the date of enactment  15 U S C  § 3010  In light of this provision,
Plaintiffs may possibly be precluded from recovery of statutory damages only for domain names
registered prior to November 29, 1999, but this limitation cannot support GreatDomains' request
for denial of all damages for all of the Pirated Domain Names, much less for a broad dismissal of
the Complaint  Plaintiffs have asserted claims for compensatory damages, punitive damages,
injunctive relief, and other remedies  There is no question that such remedies are available for all
of the Pirated Domain Names, even those registered prior to the date of the statute

### A.    Plaintiffs Have Alleged and Can Easily Establish GreatDomains' Bad Faith.

Plaintiffs' allegations of GreatDomains' bad faith are straightforward and explicit   The Complaint asserts that GreatDomains "collects a commission on the sale of domain names purchased through its web site in the amount of 10% of the sales price "  Complaint ¶ 108   In light of this financial arrangement, Plaintiffs allege that GreatDomains "shares its customers' interest in selling their domain names at the highest possible price "  Id   Moreover, since neither GreatDomains nor the Registrant Defendants have any intellectual property rights in the Plaintiffs' Trademarks, the Complaint asserts that GreatDomains' attempt to auction the Pirated Domain Names is an attempt to "capitalize on, and profit from, the goodwill and reputation of such famous trademarks "  Id  ¶ 109   Finally, on the basis of all of the foregoing, the Complaint explicitly alleges that "Defendants' actions evidence a **bad faith intent** to profit from the registration, trafficking, and/or use of the Plaintiffs' Trademarks in Internet domain names "  Id ¶ 117 (emphasis added)

GreatDomains misconstrues the statute in objecting to Plaintiffs' failure to allege that GreatDomains does not qualify under the ACPA's "safe harbor "  GreatDomains' Brief at 11   As the "safe harbor" formulation suggests, this provision is clearly conceived as an affirmative defense, not as an element of the Plaintiffs' claim   It simply provides that bad faith intent "shall **not be found** in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful "  15 U S C  § 1125(d)(1)(B)(ii) (emphasis added)

Thus, the "safe harbor" sets forth special circumstances that may defeat a finding of bad faith   Plaintiffs are not required to anticipate the absence of such special mitigating circumstances as an element of their claim, the safe harbor is an affirmative defense on which defendants bear the burden of pleading  Fed R Civ P. 8(c), Shields v  Zuccarini, 89 F Supp 2d 634, 639 (E D  Pa  2000) (explaining that section (d)(1)(B)(ii) "provides a safe harbor for [a defendant] if **he can show** that he reasonably believed that his use of the domain names was fair

13

and lawful") (emphasis added)   Indeed, the safe harbor incorporates the concept of "fair use," which has long been understood as an affirmative defense that defendants must plead and prove See Princeton University Press v Michigan Document Services, Inc, 99 F 3d 1381, 1390, n 5 (6th Cir 1996) ("Fair use serves as an affirmative defense      and thus the party claiming [it] .   . carries the burden of proof as to all issues in the dispute "), Sugar Busters LLC v Brennan, 177 F 3d 258, 271 (5th Cir 1999) ("Fair use is an affirmative defense that is usually waived if not affirmatively pled under Federal Rule of Civil Procedure 8(c) ") Accordingly, Plaintiffs have no obligation to plead the absence of this defense [3]

GreatDomains' argument that none of the statutory "'bad faith' indicators apply to GreatDomains' alleged conduct," GreatDomains' Brief at 12, is equally specious   The first four factors point toward bad faith, since (1) GreatDomains has no "trademark or other intellectual property rights" in the Plaintiffs' trademarks, 15 U S C  § 1125(d)(1)(B)(i)(I), (2) GreatDomains has never used the marks as its "legal name" or otherwise to "identify" itself, id  § 1125(d)(1)(B)(i)(II), (3) GreatDomains has never used the Plaintiffs' marks "in connection with the bona fide offering of any goods or services," id  § 1125(d)(1)(B)(i)(III), and (4) GreatDomains has never made any "noncommercial or fair use" of any of the marks, id  § 1125(d)(1)(B)(i)(IV)   Similarly, the sixth and ninth factors indicate bad faith, since the Complaint alleges that GreatDomains has "offer[ed] to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used  . . the domain name in the bona fide offering of any goods or services," id  § 1125(d)(1)(B)(i)(VI), see Complaint ¶ 118, and that the trademarks incorporated in the Pirated Domain Names are "distinctive and famous," id  § 1125(d)(1)(B)(i)(IX), see Complaint ¶¶ 118, 122   Indeed, the

---

[3] In any event, GreatDomains' "fair use" defense is destined for failure as a matter of law. As the ACPA's legislative history makes clear, the statute is intended to "balance the interests of trademark owners with the interests of those who would make lawful noncommercial or fair uses of others' marks online," such as in "comparative advertising," "parody," "news reporting," etc H R Rep No 106-464 (1999)  GreatDomains cannot establish that it ever used the Plaintiffs' Trademarks for any such "noncommercial or fair use"  Its unmistakable purpose was to capitalize on the goodwill and commercial value of the Plaintiffs' Trademarks

Complaint alleges that GreatDomains has participated in a "pattern" of cyberpiracy involving "multiple domain names" incorporating the Plaintiffs' trademarks, and such a pattern is a strong indication of bad faith under the sixth and eighth factors   Id § 1125(d)(1)(B)(i)(VI)&(VIII), see Complaint ¶ 109 (listing the numerous Pirated Domain Names)   Thus, contrary to GreatDomains' argument, the factors identified under the ACPA point unmistakably toward bad faith

In any event, GreatDomains misconstrues the nature of the statutory factors   The nine factors under the ACPA are simply general categories of considerations that may be relevant to "whether a person has a bad faith intent"   15 U S C § 1125(d)(1)(B)(i)   The factors themselves have no independent, talismanic significance, and the court's inquiry is "not limited to" the general inquiries exemplified in the statute   Id , see also Sporty's Farm, L L C  v  Sportsman's Market, Inc , 202 F 3d 489, 499 (2d Cir  2000)   Plaintiffs' allegations that GreatDomains was a key participant in the massive campaign of cyberpiracy and extortion, that GreatDomains stood to profit from the goodwill in the Plaintiffs' Trademarks, and that GreatDomains has no intellectual property rights in those marks are surely enough to survive a Motion to Dismiss and to entitle Plaintiffs to proceed with their claims on the merits   See Sporty's Farm, 202 F 3d at 498 (noting that "[t]he most important grounds" for a court's finding of bad faith may be "the unique circumstances of th[e] case" rather than the "specific factors enumerated by Congress")

Indeed, Plaintiffs submit that the allegations of the Complaint tell a story of quintessential cyberpiracy under the ACPA   Again, the only distinction between this case and typical cases of cyberpiracy is that GreatDomains is not itself the registrant of the domain names, but as explained above this is a distinction without a difference

## B.      Plaintiffs Have Alleged that GreatDomains Trafficked in the Pirated Domain Names.

GreatDomains' insistence that Plaintiffs have not alleged that "GreatDomains actually registered, trafficked in or used the subject domain names," GreatDomains' Brief at 14, is simply

15

the last in a long line of misrepresentations  The Complaint expressly asserts that GreatDomains "trafficked in  .  trademarks that were famous at the time of registration of the Pirated Domain Names" in its extensive, material participation in the attempt to auction the Pirated Domain Names  Complaint ¶ 118  These allegations are easily sufficient to sustain a claim for cyberpiracy under the ACPA and to require denial of the Motion to Dismiss

GreatDomains argues that the ACPA "was not intended to subject companies such as GreatDomains to liability simply because those companies may have intended to make a profit from the buying and selling of domain names, which are owned and registered by others," GreatDomains' Brief at 12, and that the statute requires "some type of transfer of the domain name by the particular defendant," id at 14  These bald assertions are offered without any supporting authority, however, and in fact they are thoroughly contradicted by the plain language of the statute  Nothing in the statute limits liability for bad faith "trafficking" to registrants  To the contrary, the statute defines trafficking broadly to encompass the bad faith participation by any "person" in "sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration "  15 U S C  § 1125(d)(1)(E)  The Complaint clearly alleges that GreatDomains was involved in such trafficking, and there is no basis in logic or the law to artificially limit liability for such conduct to those who are the formal "registrants" of the domain names at issue

Indeed, the ACPA does impose a similar limitation in a different context  It provides that "[a] person shall be liable for using a domain name .  only if that person is the domain name registrant or that registrant's authorized licensee "  Id  § 1125(d)(1)(D) (emphasis added)  This limitation is significant  It demonstrates that Congress understood how to restrict the breadth of "persons" liable for cyberpiracy when it wanted to  Cyberpiracy by "use" extends only to registrants or their licensees  The negative implication is also significant  Because the statute does not limit the breadth of "persons" liable for cyberpiracy by "trafficking," the category of liable persons must be understood to extend beyond registrants and to include any

16

"person" who participates in "trafficking" GreatDomains' argument simply cannot be reconciled with the plain language of the statute

Moreover, the artificial limitations proposed by GreatDomains would eviscerate the statute and invite its easy circumvention If the court were to hold that only registrants could be liable for bad faith trafficking, the cybersquatting industry would quickly adjust by taking GreatDomains' approach one step further Registrants would simply assign their rights to extort payments from trademark holders to third parties Although such third parties would be violating both the letter and spirit of the statute when they followed through on the scheme, they would be immune from liability under the ACPA because they are not registrants The ACPA sensibly precludes such circumvention by extending liability for "trafficking" to any "person" who participates in such bad faith conduct The immunity proposed by GreatDomains is inconsistent with the statute and with common sense and must be rejected

### CONCLUSION

For the foregoing reasons, GreatDomains' Motion to Dismiss should be denied

DICKINSON WRIGHT PLLC

By ___Kathleen A Long___ _____
    Kathleen A Lang (P34695)
Attorneys for Plaintiffs
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500

Co-Counsel
Gregory D Phillips
Thomas R Lee, Of Counsel
HOWARD, PHILLIPS & ANDERSEN
560 E 200 South, Suite 230
Salt Lake City, Utah 84102
(801) 366-7471

DATED   July 7, 2000
DETROIT 18260 1537 532995

17