IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

FORD MOTOR COMPANY, a Delaware corporation, JAGUAR CARS, LTD., a United Kingdom Company, ASTON MARTIN LAGONDA, LTD.,a United Kingdom Company, VOLVO HOLDING AB, a corporation organized under the laws of Sweden,

Plaintiffs,

vs.

GREATDOMAINS.COM, INC. et.al.

Defendants.

Civil No. 00-71544

DIAMOND STAR MARKETING, INC.'S RULE 12(b) MOTION TO DISMISS; and REQUEST FOR ATTORNEY'S FEES

(Assigned to the Honorable Gerald Rosen)

Defendant, Diamond Star Marketing, Inc. ("DSM"), through counsel undersigned, hereby moves this Court for dismissal of the above action pursuant to Federal Rules of Civil Procedure, Rule 12(b)(2), on the grounds that this Court lacks personal jurisdiction over DSM. This Motion is supported by the pleadings on file and the attached Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this 14th day of July, 2000.

ROBERT R. YODER, P.C.

By: ______________________

Robert R. Yoder
5080 North 40th Street, # 335
Phoenix, Arizona 85018
Attorney for Defendants

FILED
2000 JUL 17 P 12: 38
U.S. DIST. COURT CLERK
EAST. DIST. MICH.
DETROIT



20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On March 29, 2000, Plaintiffs, Ford Motor Company, Jaguar Cars, Ltd., Aston Martin Lagonda, and Volvo Holding AB (collectively referred to as "Ford") filed an action against 86 separate Defendants, alleging violations under the new federal "anti-cybersquatting" legislation, Pub. L. No. 106-113, with regard to over 120 different registered domain names. In fact, almost all of the domain names in question expressly incorporate verbatim various trademarks registered by Ford. Unlike virtually all of the other Defendants to this action, however, DSM did not register a domain name incorporating a Ford mark. Nor did DSM ever attempt to sell its registration to Ford in Michigan or in any other State. Instead, DSM registered the name "stangstuff.com", and has been named in this lawsuit merely because the term "stang" is allegedly a "slang term" which classic car enthusiasts use to refer to classic Mustang automobiles.

Before DSM registered "stangstuff.com", it researched the name to make sure that no one had trademark rights to the name. DSM registered its name in good faith, and has never intended to infringe on Ford's trademark rights. In fact, when Ford raised potential trademark concerns by the filing of this action (without any pre-litigation contact whatsoever), DSM immediately offered to cancel its registration if Ford could simply confirm that it had registered or used the name "stang" in marketing its products. Unfortunately, Ford refused to respond to any such attempts to avoid potential trademark infringements and/or costly litigation, and instead insisted upon the payment of monetary "damages" in addition to canceling the registration. By banking on the fact that small defendants scattered throughout the country cannot possibly afford to defend even an unfounded litigation claim asserted by Ford in its home state, it is Ford who is now using domain name registrations to wrongfully extort money from others.

DSM, an Arizona corporation, has never conducted any business whatsoever in the state of Michigan, and DSM certainly has never intended to avail itself of business opportunities or litigation in this foreign state. Under these circumstances, personal jurisdiction is improper under Michigan's long-arm statute and under the Due Process Clause of the United States Constitution. For the reasons set forth herein, DSM now seeks dismissal of this action for lack of personal jurisdiction, and prays that this Court will not condone Ford's attempt to extort settlement moneys from defendants by forcing them to incur the cost of defending unfounded claims in a foreign jurisdiction.

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER DSM UNDER MICHIGAN'S LONG-ARM STATUTE AND THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION.

A Federal District Court sitting in Michigan has long-arm jurisdiction only by virtue of Michigan's long-arm statute. Federal Rules of Civil Procedure, Rule 4(e); Serras v. First Tennessee Bank Nat'l Assn., 875 F.2d 1212, 1216 (Sixth Cir. 1989). The reach of personal jurisdiction is also limited, however, by the due process clause of the United States Constitution. Id. (Citing World-Wide Volkswagen Corp. V. Woodson, 444 U.S. 286 (1980) and International Shoe v. Washington, 326 U.S. 310 (1945)). In determining whether this Court has personal jurisdiction over DSM in this matter, therefore, "[t]he duty of the court is to assure itself that the requirements of both authorities - the long-arm statute and due process clause - are met before it can assert its jurisdiction over the person of the defendant." Id.

### (a) DSM has engaged in no activities which would invoke personal jurisdiction under Michigan's long-arm statute.

Michigan's long-arm statue for personal jurisdiction provides in relevant part as follows:

> Sec. 715. The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record in this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgements against such corporation arising out of an act or acts which create any of the following relationships:

> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use or possession of any real or tangible personal property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed, or for materials to be furnished in the state by the defendant.

Michigan Compiled Laws (M.C.L.) §600.715. In viewing this jurisdictional grant, DSM notes that it has never transacted any business within the state of Michigan. DSM owns no real or tangible personal property situated within the state of Michigan. It has never contracted to insure risks within the state of Michigan, and it has entered into no contract to render services or supply materials within the state of Michigan.

The only conceivable basis for Ford to assert jurisdiction, therefore, is to argue (per Section(2)) that DSM somehow did or caused acts to be done, or consequences to occur, in the state resulting in an action for tort. In this regard, however, Ford's allegations miss the mark. Ford's Complaint fails to site to a single act by DSM in the state of Michigan - - - tortious or otherwise. Nor have Plaintiffs alleged a single act by DSM or any factual basis to support "consequences" within the state of Michigan giving rise to an action against DSM in tort. The only thing DSM is alleged to have done is the posting of the name "stangstuff.com" through in advertisement on the World Wide Web. That posting was not directed in any way at the State of Michigan. Moreover, the name, which does not incorporate any registered mark of Ford, does not give rise to <u>any</u> damages in this state - - - tortious or otherwise.

While there are certainly cases which support jurisdiction in a foreign state against a "cybersquatter" who attempts to extort a trade mark holder, even that authority expressly recognizes that "simply registering someone else's trademark as a domain name and posting a

website on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another." See Panavision v. Toeppen, 141 F.3d 116 (9th Cir. 1998) (emphasis added).[1]

Moreover, unlike the defendant in Panavision, who availed himself of jurisdiction in a foreign court by tortious activity directed to the foreign state, including an express attempt to extort money from the trademark holder in that state, DSM's registration does not incorporate any of the trademark registrations identified in Ford's Complaint. Nor does Ford even attempt to allege any facts demonstrating that DSM ever contacted Ford or attempted in any way to market its domain registration to Ford or any other Michigan entity. Absent from Plaintiffs' Complaint, in fact, is any factual allegation identifying conduct specific to DSM with regard to tortious activity directed against Ford or anyone, for that matter, in the State of Michigan. The

---

[1] One of the leading cases on the issue of personal jurisdiction over claims of "cybersquatting", is the Ninth Circuit decision of Panavision Int'l, L.P. v. Toeppen, 141 F. 3d 116 (Ninth Cir. 1998). In that case, the Plaintiff, Panavision, had its principle place of business in California, where it brought an action against an Illinois resident who was accused of engaging in a scheme to obtain money from Panavision in exchange for releasing domain names which the Defendant had registered using trade marks owned by Panavision. Critical to the Ninth Circuit decision's holding for personal jurisdiction, however, was the fact that:

> jurisdiction over Toeppen in California satisfied the requirements of due process because his acts were aimed at Panavision in California and caused the company to suffer injury there.

Id., 1318. As noted by the Ninth Circuit, Toeppen purposefully registered Panavision's trademarks as his domain names on the Internet to force Panavision to pay him money . . ." Id., 1321-22. In so holding, however, the Ninth Circuit specifically held that

> we agree that simply registering someone else's trademark as a domain name and posting a website on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. As we said in Cybersell, there must be 'something more' to demonstrate that the Defendant directed his activity toward the forum state. Here, that has been shown. Toeppen engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision. His conduct, as he knew it likely would, had the affect of injuring Panavision in California where Panavision had its principle place of business and where the movie and television industry is centered. (Citations omitted)

Id. 1321-22.

intentional, purposeful, and blatantly tortious conduct alleged in Panavision is simply absent with regard to the claims against DSM.

Certainly, Ford should be required to at least allege facts specific to DSM in order to present a prima facie showing of tortious conduct or damages in or directed at Michigan before invoking personal jurisdiction under Michigan's long-arm statute.[2] Ford has not, and can not, do so. Accordingly, the claims against DSM should be dismissed for failure to comply with Michigan's long-arm statute.

**(b) This Court lacks personal jurisdiction over DSM as a matter of Constitutional due process.**

Even if Ford could assert a right of jurisdiction under Michigan's long-arm statute, however, the assertion of personal jurisdiction over DSM must still satisfy due process. As stated in International Shoe, in order to subject a defendant to a judgement in a foreign state, he must have certain "minimum contacts" with the foreign state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. at 316. In order to exercise personal jurisdiction over a non-resident in a manner consistent with International Shoe, therefore, the Sixth Circuit has identified the following three criteria:

> (1) The defendant must **purposely avail** himself of the privilege of acting in the forum state or causing a consequence in the forum state.
>
> (2) The cause of action **must arise from the defendant's activities** there; and
>
> (3) The acts of the defendant or consequences caused by the defendant must have a **substantial** enough **connection** with the forum state to make the exercise of jurisdiction over the defendant **reasonable**.

American Greetings Corp. v. Cohn, 839 F.2d, 1164, 1166 (6th Cir. 1988); Southern Machine Co., Inc. v. Mohasco Indus., Inc., 401 F.2d, 374, 381 (6th Cir. 1968).

---

[2] See, First Chicago Int'l v. United Exchange Co., 836 F.2d 1375, 1378-79 (D.C. Cir. 1988) ("conclusory statements . . . [do] not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction . . .. [T]he 'bear allegatio' of conspiracy or agency is insufficient to establish personal jurisdiction.")

In the case at bar, none (let alone all three) of the foregoing criteria are met.

**(1) DSM has not Purposefully availed itself to jurisdiction in Michigan.**

As the Supreme Court stated in Burger King v. Rudzewicz, 471 U.S. 462 (1985), "the Constitutional touch stone [for determining personal jurisdiction] remains whether the defendant purposefully established minimum contacts in the forum state." 471 U.S. at 474 (emphasis added). The two related functions of the minimum contacts requirement are that it protects a defendant from the burden of litigating in an inconvenient forum, and it prevents the states from reaching out through their courts, "beyond the limits imposed on them by their status as co-equal sovereigns in a Federal system". World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). Thus, a Plaintiff cannot satisfy the minimum contacts requirement by its unilateral activity aimed at a non-resident defendant. It is the defendant who must purposefully avail himself of the privilege of conducting activities within the forum state. Hanson v. Denckla, 357 U.S. 235, 253. Satisfaction of the "purposeful availment" requirement ensures that a defendant will not be "haled" into a jurisdiction "with which he has no substantial connection or where his activities would not lead one reasonably to believe that he was subjecting himself to the processes of the jurisdiction." Burger King, 471 U.S. at 475.

With this legal background in mind, what then is DSM alleged to have done in order to purposefully avail itself of this Court's jurisdiction? Even assuming Ford's allegations as true, all DSM did was register a domain name (which incorporated no registered trademarks) and listed it for sale on an Internet website. None of DSM's activities involved a physical presence in Michigan, contracts in Michigan, phone calls in Michigan, correspondence in Michigan, or any other "contacts" with the state of Michigan. Nor were there any attempts to negotiate with Ford over the sale of said domain name, and nor were there any residents of Michigan who even expressed an interest in the name. The very first contact DSM received from anyone over the listing was Ford's filing of this legal action. Placing an advertisement on the World Wide Web, however, is certainly not sufficient in and of itself to create personal

jurisdiction wherever someone, throughout the world, may have access to a computer terminal or a phone line.

Recent decisions within this Circuit, in fact, confirm that a higher level of activity in or directed at the foreign state is needed to satisfy the purposeful availment prong of the due process test in connection with Internet-based claims.

In the first case, CompuServe v. Patterson, 89 F.3d 1257 (6th Cir.1996), the Sixth Circuit held that an Ohio court had personal jurisdiction over a Texas defendant in a trademark dispute between his company and CompuServe. In holding for personal jurisdiction, however, the Court noted several "additional factors" which are required to establish jurisdiction and which go well beyond posting an advertisement or even selling products over the Internet. Specifically, the Sixth Circuit noted that the defendant in the CompuServe case (1) affirmatively subscribed to sell his Internet software through the Ohio-based CompuServe company, (2) the defendant entered into a registration agreement with the Ohio-based CompuServe company, (3) the defendant entered into contracts which expressly provided that they were to be governed by Ohio law, and (4) the defendant in fact sold his software to customers in Ohio. Particularly instructive is the following passage from the Sixth Circuit's decision:

> Admittedly, merely entering into a contract with CompuServe would not, without more, establish that Patterson had minimum contact with Ohio. By the same token, Patterson's injection of his software product into the stream of commerce, without more, would be at best a dubious ground for jurisdiction. Because Patterson deliberately did both of these things, however, and because of the other factors that we discuss herein, we believe that ample context exists to support the exertion of jurisdiction in this case . . . (Citation omitted) CompuServe, 89 F.3d 1257.

Another case which addressed this issue just a few months ago was decided in the United States District for the Western District of Michigan, Southern Division, on January 13, 2000. In Quixtar Investments, Inc. v. Seifert, 2000 U.S. Dist. LEXIS 379 (W. D. Mich. 2000), the Michigan District Court looked to the guidance of Panavision and CompuServe in construing the "purposeful availment" requirements in determining personal jurisdiction in Internet claims.

Specifically, in Quickstar, the Court found personal jurisdiction because (1) the Defendant was specifically alleged to have engaged in an intentional fraudulent scheme directed against a Michigan-based company, (2) he registered a mark identical to that which was held by the Michigan company, and (3) the defendant expressly attempted to extract millions of dollars from the rightful owner of that mark in Michigan. Such allegations of intentional and willful conduct directed specifically at a Michigan company are clearly distinguishable from any possible conduct which Ford has alleged against DSM - - - the owner of a domain registration which does not incorporate any trade mark of Ford, and who has never attempted to extract any money whatsoever from Ford. Therefore, DSM has not purposefully availed himself to this Courts jurisdiction and this action must be dismissed.

**(2) DSM has no activities in Michigan.**

This cause of action arises from DSM's posting of "stangstuff.com" on the World Wide Web, which can be accessed in any locality in the world that has access to a computer terminal or a phone jack. The fact is that no one in the state of Michigan ever contacted DSM as a result of the posting, other than the filing of this action. Under the circumstances, one can hardly argue that the posting so impacted the state of Michigan as to equate to action or activities in that state. In the recent case of GTE New Media Serv. v. BellSouth Corp., 199 F.3d 1343 (D.C.Cir. 2000), in fact, the Circuit Court for the District of Columbia dismissed an action upon a Rule 12(b) motion for lack of personal jurisdiction, where the defendants' sole contact with the forum state was the operation of Internet websites which are accessible to persons in the District. Simply put, mere accessibility to an Internet site is not enough of a foundation upon which to base personal jurisdiction, or to constitute sufficient "activities" within the state. Interestingly, the GTE case looked to the Sixth Circuit decision of CompuServ, Inc. v. Patterson, 89 F.3d 1257 (Sixth Cir. 1996) for guidance. In commenting on the CompuServ case, the GTE court noted as follows:

> the Sixth Circuit found personal jurisdiction over a Defendant in Ohio because the Defendant had entered into a contract which

> allowed him to market his software in other states with Ohio-based CompuServ acting as his distributor. The Court concluded that it is reasonable to subject the Defendant in suit in Ohio, because it was home to the computer network service that he himself had chosen to employee. The Court also determined that the Defendant was on notice that he had created a connection with Ohio, because (1) he had entered into contracts that would be governed by Ohio law with an Ohio-based company; and (2) he sent his software, via electronic links, to Ohio and advertised his products on CompuServ. The Court highlighted that "it is Patterson's relationship with CompuServ as a software provider and marketer that is crucial to this case.

The GTE case also confirmed that the key to personal jurisdiction in Panavision was defendant's conduct which was specifically aimed at the forum state, noting that:

> personal jurisdiction surely can not be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District. Access to a website reflects nothing more than a telephone call by a District resident to the defendants' computer servers . . .
>
> . . .
>
> under this view, personal jurisdiction in Internet-related cases would almost always be found in any form in the country. We can not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held inviolate principles of Federal court jurisdiction. The Due Process Clause exists, in part, to give a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. (Quoting from World-Wide Volkswagen Corp., 444 U.S. at 297).

Accordingly, Ford cannot satisfy this second requirement of personal jurisdiction and this action must be dismissed.

**(3) Jurisdiction over DSM offends traditional notions of fair play and substantial justice.**

Finally, even if the long-arm statue and the two prior constitutional tests were met, the Court must determine whether exercising personal jurisdiction over DSM, a small Arizona Company, comports with traditional notions of "fair play and substantial justice". Unlike the Defendant in Quickstar, DSM not only did not engage in "wrongdoing intentionally

directed at a Michigan resident", DSM specifically registered its domain name on a good faith basis after specifically confirming that it did not incorporate anyone's registered mark.

Instead, Ford's sole basis for liability against DSM appears to be based on the allegation that "stang" is a slang term developed by car enthusiasts to refer to classic Mustangs. (See Complaint, p. 21, fn 1). The same can be said of dozens of slang terms developed by car enthusiasts over the past century, however, the use of which should not reasonably subject residents and car enthusiasts around the world to suit in the state of Michigan. For example, common notions of fair play and justice would certainly not permit a farmer in Iowa to be haled into Court in Germany to defend an action by Volkswagen simply by using the word "bug", even though many people in fact refer to the Volkswagen "Beetle" as a "bug". So too, should someone in a remote village in Alaska be free to use the word "goat", without fear of being forced to defend an action across the country or across the world merely because Pontiac's classic "GTO" made in the 1960's is commonly referred to by car enthusiasts as a "goat".

The sad reality is that Ford is well aware that individual Defendants cannot afford to travel across country to defend against unfounded domain name registration claims which even Ford has valued for settlement purposes at $3,000.00 or less. The fact that Ford would not even allow DSM or other defendants to this action to voluntarily transfer the domain names to avoid litigation - - - without the payment of $3,000.00 from each defendant - - - clearly demonstrates the awesome power that a financial mega corporation like Ford can extract upon small defendants with small individual claims disbursed throughout the country. While Ford is clearly located in every small city throughout the country (and most throughout the world), DSM and the other small defendants to this action are clearly not. Allowing an international mega corporation to extort unfair settlements based solely on the fact that jurisdiction in Ford's forum state makes defense of small claims untenable and unpractical, demonstrates without doubt that this Court's exercise of personal jurisdiction over DSM would strike against any possible notion of fair play or substantial justice.

## III. CONCLUSION; REQUEST FOR FEES

For the foregoing reasons, we respectfully request that the claims as against DSM be dismissed for lack of personal jurisdiction, and that DSM be awarded its reasonable fees and costs in defending this matter. It is Ford that has refused to end this litigation, even after DSM volunteered to cancel its registration; thus, it is Ford that should be bear the cost of paying for this litigation. If not, large corporations will have a complete "license" to take whatever domain name they want, merely by filing litigation, in a foreign jurisdiction, that legitimate name holders simply cannot afford to defend.

ORIGINAL of the foregoing sent via
Express Mail to:

Clerk of the Court
United States District Court
Eastern District of Michigan
231 W. Lafayette Blvd.
Detroit, MI 48226

COPY of the foregoing sent via
U.S. Mail to:

Gregory D. Phillips, Esq.
HOWARD, PHILLIPS & ANDERSEN
560 E. 200 South, Suite 230
Salt Lake City, Utah 84102

Kathleen A. Lang, Esq.
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226

Susan N. McFee, Esq.
FORD GLOBAL TECHNOLOGIES, INC.
Suite 600
Parklane Towers East
One Parklane Blvd.
Dearborn, Michigan 48126-2490

By: [signature]

40581008.WPD