ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, a Delaware
corporation, JAGUAR CARS LIMITED, a
United Kingdom company, ASTON
MARTIN LAGONDA LIMITED, a United
Kingdom company, and VOLVO
TRADEMARK HOLDING, a corporation
organized under the laws of Sweden,

    Plaintiffs,

v.

GREATDOMAINS.COM, INC., a California
corporation, et al,

    Defendants.

_____/

Civil No. 00-71544

Judge Gerald E. Rosen

## PLAINTIFFS' RESPONSE AND BRIEF IN SUPPORT TO DEFENDANT SPENCER ASSOCIATES' MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) AND (3)

Plaintiffs, by their attorneys, Dickinson Wright PLLC, hereby oppose the Motion to Dismiss filed by Defendant Spencer Associates. In support of their opposition, Plaintiffs rely on the authority and argument contained in the attached brief.

## CONCISE STATEMENT OF ISSUES PRESENTED

Does this Court have personal jurisdiction over Defendant Spencer Associates?

## INDEX OF CONTROLLING AUTHORITIES

### Cases

American Greetings Corp. v. Cohn, 839 F.2d 1164, 1170 (6th Cir. 1988).................. 11

Brink v. Ecologic Inc., 987 F. Supp. 958, 961 (E.D. Mich. 1997) ............................. 5

Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482 (1984)............................................... 7

Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996)........................... 5

Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997).................................. 8

Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club,
34 F.3d 410 (7th Cir. 1994).......................................................................... 7

Inset Systems, Inc. v. Instruction Set, Inc., 937 F. Supp. 161, 163-64
(D. Conn. 1996) ........................................................................................... 4

International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct.
154, 90 L.Ed. 95 (1945).............................................................................. 5

Panavision Intern. L.P. v. Toeppen, 141 F3d 1316 (9th Cir. 1998)............................ 7

Park Inns Intern., Inc. v. Pacific Plaza Hotels, Inc., 5 F. Supp. 2d
762, 764 (D. Ariz. 1998).............................................................................. 4

Porsche Cars North America, Inc. v. Spencer, 55 U.S.P.Q.2d 1026, 2000 WL
641209, 2000 US Dist. Lexis 7060 (EDCa. 2000) ...................................... 1

Reynolds v. International Amateur Athletic Federation, 23 F.3d 1110, 1117
(6th Cir. 1994)............................................................................................. 13

Southern Machine Co. v. Mohasco Indus., 401 F.2d 374, 380 (6th Cir. 1968).......... 5

TELCO Communications v. An Apple A Day, 977 F. Supp. 404, 406
(E.D. Va. 1998)............................................................................................. 4

Theunissen v. Matthews, 935 F.2d 1454 (6th Cir. 1991)............................................. 2

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) .................. 7

Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1122
(W.D. Pa. 1997) ........................................................................................... 4

**Other:**

E.D. Mich. LR 7.1(c)(1)(A) .......................................................................................... 12

## BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT SPENCER ASSOCIATES' MOTION TO DISMISS

Plaintiffs Ford Motor Company ("Ford"), Jaguar Cars Limited ("Jaguar"), Aston Martin Lagonda Limited ("Aston Martin"), and Volvo Trademark Holding AB ("Volvo") (collectively "Ford"), respectfully submit this memorandum in opposition to Defendant Spencer Associates' ("Spencer") "Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(2) And (3)" dated July 17, 2000.

### INTRODUCTION

Defendant Spencer is a classic cyberpirate and trademark infringer. See Porsche Cars North America, Inc. v. Spencer, 55 U.S.P.Q.2d 1026, 2000 WL 641209, 2000 US Dist. Lexis 7060 (EDCa. 2000) (preliminarily enjoining Spencer's attempt to auction off the Internet domain name Porschesource.com). Ford's claims in this lawsuit arise out of Spencer's registration of the domain name "Mercurysource.com." This alone was an intentional and obvious violation of Ford's famous and valuable Mercury® trademark. But Spencer's plan went beyond merely registering the domain name. Spencer attempted to sell the domain name Mercurysource.com, presumably to someone that would find the domain name to be highly valuable–mainly due to its ability to attract business from Ford customers and car enthusiasts. Accordingly, Spencer listed the domain name for sale on defendant Greatdomains.com's web site, hoping to gain a windfall by misappropriating Ford's famous trademark.

From its inception, Spencer's plan to register and sell the domain name Mercurysource.com was directed at a single victim – Ford – which Spencer knew to be located in Michigan. Spencer knew the trademark Mercury® was owned and registered by Ford and chose the domain name Mecurysource.com *precisely because* of Ford's substantial investment in that name. Indeed, Spencer listed the Mercurysource.com domain name for auction using an

1

apparent description that keys off the word "Ford." Moreover, by using an interactive website, Spencer knowingly and intentionally targeted potential purchasers in the State of Michigan.

Despite the fact that Spencer consciously directed its tortious misappropriation at Ford in this district, Spencer now argues that it cannot be subject to jurisdiction in Michigan because it has no significant physical presence here. As discussed below, however, Spencer's actions clearly created an intended tortious consequence and targeted prospective purchasers in the State of Michigan. For this intentional act, Spencer must reasonably anticipate being haled into court in Michigan. As one court has already held, Spencer's attempt to characterize himself as an innocent registrant of a domain name that just happened to coincide with a world-famous trademark is simply dishonest. See Porsche Cars North America, Inc. v. Spencer, 55 U.S.P.Q.2d 1026, 2000 WL 641209, 2000 US Dist. Lexis 7060 (E.D. Cal. 2000) (holding that Spencer had engaged in cyberpiracy by attempting to auction off numerous automotive domain names including Mercurysource.com and Porschesource.com). In any event, the procedural posture of this motion is such that Spencer's denials cannot save it from defending this action in the state where Spencer targeted its victim.

## ARGUMENT

### I. FORD HAS MADE THE REQUIRED *PRIMA FACIE* SHOWING OF PERSONAL JURISDICTION AND IS ENTITLED TO ALL INFERENCES IN ITS FAVOR

A plaintiff's burden on a 12(b)(2) motion varies depending on the procedure employed in determining jurisdiction. As the Sixth Circuit stated in Theunissen v. Matthews, 935 F.2d 1454 (6th Cir. 1991), when "[p]resented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." Id. at 1458. "However, the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal," and "where the court relies solely

2

on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." Id.

Thus, "in sharp contrast to summary judgment procedure, . . . the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." Id. at 1459. Instead, the court must accept as true the allegations and materials submitted in support of jurisdiction, and must not credit the contrary allegations made by a defendant to defeat jurisdiction. Id. Only when the plaintiff's alleged facts in total are insufficient to support a finding of personal jurisdiction may the court dismiss a defendant under 12(b)(2). Id.

It is early in this lawsuit and Ford has had no opportunity to conduct discovery. Ford has alleged and produced more than enough facts to meet the slight burden required to make a *prima facie* showing of personal jurisdiction over Spencer.

Ford's *prima facie* showing with respect to jurisdiction over Spencer is based on the following facts. Spencer admits that it registered the domain name Mercurysource.com. [Memorandum In Support Of Defendant Spencer's Motion To Dismiss, at 1 (hereafter "Spencer Mem")]. Spencer chose the name Mercury® for a clear purpose. Mercury® is a well-developed and extremely valuable trademark of Ford. As Spencer's own actions show, Spencer quite obviously knew of the fame and value of the Mercury® trademark at the time it chose Mercurysource.com to register and resell. Indeed, Spencer chose Mercurysource.com with the specific intent of creating a domain name that would attract business, thereby making it a valuable domain name in the eyes of potential domain name purchasers. Spencer intended that, in the end, a purchaser of the domain name Mercurysource.com would have the capability of attracting business from Ford customers with the use of Ford's famous Mercury® trademark. Indeed, Spencer listed the Mercurysource.com domain name for sale for $5,000 before any bidding even started. [Declaration of Celenda M. Wagenknecht ¶ 8, at 3, and Exhibit "A" thereto (showing listing price of Mercurysource.com on Greatdomains.com web site at $5,000)]. A search for domain names for sale on co-defendant Greatdomains.com's web site shows that when Spencer listed Mercurysource.com for sale, Spencer provided descriptive information to

3

Greatdomains.com such that the key word "Ford" would bring up Mercurysource.com as a Ford-related domain name offered for sale. [Declaration of Celenda M. Wagenknecht ¶ 6, at 2; and Exhibit "A" thereto].

Moreover, Spencer chose to list its Mercurysource.com domain name for sale on defendant Greatdomains.com, which is an *interactive* web site. As stated in the Declaration of Ms. Wagenknecht, Greatdomains.com's web site allows both sellers and buyers of domain names to conduct transactions through the Greatdomains.com web site. [Wagenknecht Decl. ¶ 4, at 2, and Exhibit "A" thereto]. Indeed, Greatdomains.com describes its web site as an essentially full-service broker and escrow agent through which domain names are marketed, bid for, sold, and closed, with funds changing hands through the web site itself. [Id., and Exhibit "A" thereto]. By listing the name Mercurysource.com for sale on such an interactive web site as Greatdomains.com, Spencer targeted and invited potential buyers, in Michigan and elsewhere, to exchange information, to bid for the purchase of Mercurysource.com, and to close the sale if one occurred.

The law is well settled that the use of an interactive website (i.e., a website that is not passive, but allows users to engage in transactions over the Internet) subjects one to jurisdiction in all states where the website can be accessed. See, e.g., Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1122 (W.D. Pa. 1997) (solicitation of business over web site accessible by Pennsylvania residents constitutes "transaction of business" under Pennsylvania long-arm statute and subjects defendant to personal jurisdiction); TELCO Communications v. An Apple A Day, 977 F. Supp. 404, 406 (E.D. Va. 1997) (soliciting investment banking business over web site accessible to residents of Virginia meets long-arm definition of doing business and due process); Inset Systems, Inc. v. Instruction Set, Inc., 937 F. Supp. 161, 163-64 (D. Conn. 1996) (advertising continuously on web site accessible in Connecticut satisfies Connecticut long-arm definition of doing business and due process); Park Inns Intern., Inc. v. Pacific Plaza Hotels, Inc., 5 F.Supp.2d 762, 764 (D. Ariz. 1998) (use of "interactive" web site accessible to Arizona

4

residents and allowing hotel reservations to be made constitutes business activity sufficient to satisfy long-arm statute and due process).

Moreover, Ford, which has its headquarters and principal domicile in Michigan, suffered damage to its trademark rights and goodwill as a result of Spencer's piracy. The injury felt in Michigan was not only foreseeable from Spencer's perspective, but was so certain to result that it can only described as intentionally inflicted by Spencer.

The facts set forth above easily make a *prima facie* showing that jurisdiction over Spencer is proper, both under Michigan's long-arm statute, and under federal due process.

## II. SPENCER'S ACTIVITIES FALL WITHIN MICHIGAN'S LONG-ARM STATUTE

Defendant Spencer does not argue that his activities would not subject him to jurisdiction under Michigan's long-arm statute. Indeed, Spencer acknowledges that Michigan's long-arm statute has been interpreted to reach as far as the due process clause of the Fourteenth Amendment. [Spencer Mem. at 3 (citing Brink v. Ecologic, Inc., 987 F. Supp. 958, 961 (E.D. Mich. 1997))]. Thus, Spencer concedes that jurisdiction exists in this Court, so long as the requirements of federal due process are satisfied. [Spencer Mem. at 3].

## III. JURISDICTION OVER SPENCER IS PROPER UNDER DUE PROCESS

### A. The Due Process Standard.

The federal constitutional requirement for jurisdiction over Spencer is well-established. As the Sixth Circuit stated in Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996), the relevant question is "whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Compuserve, Inc. v. Patterson, 89 F.3d at 1263 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); see also Southern Machine Co. v. Mohasco Indus., 401 F.2d

5

374, 380 (6th Cir.1968). Three criteria must be satisfied to sustain jurisdiction over Spencer in this case. Ford needs only to make a *prima facie* showing as to each:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

Compuserve, 89 F.3d at 1263. As between the three, the requirement of purposeful availment "is the sine qua non of in personam jurisdiction." Compuserve, 89 F.3d at 1263 (quoting Mohasco Indus., 401 F.2d at 381-82). These three requirements are easily met by the facts alleged in Ford's Complaint and the submissions included with this Opposition.

### B. Spencer Purposefully Directed An Injury To Ford In Michigan And Targeted Michigan Residents

#### 1. Spencer's Lack of Physical Presence Generally is Irrelevant.

In its Memorandum, Spencer claims that it "does not maintain an office, own property, or employ any agent or other person in Michigan." [Spencer Mem. at 2]. Spencer also states that it "has never maintained a telephone listing or bank account in Michigan." [Id.] Thus, Spencer makes the standard assertions designed to distance itself from the State of Michigan, showing essentially that it is not subject to "general jurisdiction" in the State of Michigan. However, Ford has never claimed, and does not claim now, that Spencer is subject to the general jurisdiction of Michigan's courts. Rather, Ford's claim against Spencer, and the jurisdiction of the this Court, is predicated on the concept of specific jurisdiction.

#### 2. Specific Jurisdiction Applies Under the "Effects" Test

This Court's personal jurisdiction over Spencer is based on the doctrine that a defendant that causes injury to a defendant in another state or targets residents of a forum state must

reasonably anticipate being held to answer in that state for the injury caused. As the facts and circumstantial evidence amply show, Spencer knew that Ford created and owned the trademark Mercury® when it chose and registered the domain name Mecurysource.com. Spencer also must have known that Ford was located in Michigan and that the economic injury caused by Spencer's piracy would be felt by Ford at its principal domicile in Michigan. Spencer also knew that the interactive website at Greatdomains.com targeted residents of the State of Michigan.

This case is similar to other domain name and trademark cases in which courts have found that defendants purposefully availed themselves of the forum by infringing trademarks, even though the infringers had no physical presence in the forum states. See, e.g., Panavision Intern. L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998) (concluding that infringement case "is akin to a tort case"); Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club, 34 F.3d 410, 411 (7th Cir. 1994) (observing that injury from infringement of trademark outside Indiana "will be felt mainly in Indiana"). In both cases, the courts relied on the "effects" doctrine employed by the Supreme Court in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984).

In Calder, a defamation case filed in California by a California resident against Florida defendants, the Supreme Court held that the defendants' alleged tortious defamation of the plaintiff would be felt in California and that the defendants' publication of statements about the California plaintiff showed a purposeful direction of activity toward the California forum. See Calder, 104 S.Ct. at 1487-88. The Court held that purposeful availment for due process analysis is satisfied by intentional actions, aimed at the forum state or a person there, which causes harm, the brunt of which the defendant knows is likely to be suffered in the forum state. See id., 104 S.Ct. at 1487. "Under the circumstances, petitioners must 'reasonably anticipate being haled into court there.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

7

### a. Spencer's analogy to *Cybersell* is misplaced

Spencer argues that it cannot be subject to jurisdiction in a state merely for registering a domain name and listing it for sale on the Greatdomains.com web site. [Spencer Mem. at 6]. In so doing, Spencer attempts to analogize his activities to those involved in Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997). [Spencer Mem. at 7]. Spencer's analogy is misplaced.

In Cybersell, the plaintiff, and Arizona company, established a business using the name "Cybersell" and applied for registration of a service mark in that name in August of 1994. See Cybersell, 130 F.3d at 415. The Arizona plaintiff then posted a web site using the "Cybersell" name from August 1994 through February 1995, but then took the web site down for reconstruction. Id. at 415. In the summer of 1995, while the Arizona plaintiff's web site was not in operation and before the Arizona plaintiff's service mark registration was approved, the Florida defendant established a business of its own using the name "Cybersell." Id. The Florida defendant created a web site using the name "Cybersell." Id. Later, on October 30, 1995, the Arizona plaintiff's service mark registration of "Cybersell" was approved. Id. In November 1995, the Arizona plaintiff discovered the defendant's web site and demanded that the defendant cease its use of the name "Cybersell." Id. at 416. Consequently, the defendant changed its business name to "WebHorizons," but continued to use the phrase "welcome to Cybersell" on its web page. Id.

Analyzing the Florida defendant's activities and contacts in the state of Arizona, the Ninth Circuit noted that the defendant's use of its web site and the name "Cybersell" were clearly not directed toward doing business in the State of Arizona. See Cybersell, 130 F.3d at 419-20. The Ninth Circuit also considered the Arizona plaintiff's argument that the Florida defendant had subjected itself to jurisdiction under the "effects" analysis of Calder. The Ninth Circuit held that the "effects" concept of Calder did not apply in Cybersell. The court noted that in Calder, the defendants' activities were directed at a victim in the forum state of California with expected

8

injurious consequences there. See id. at 420. In Cybersell, the Ninth Circuit saw none of the critical circumstances of Calder present in the actions of the Florida Defendant. The court noted that because the Florida defendant did not know of the Arizona plaintiff at the time it began using the name, "Cybersell FL's web page simply was not aimed intentionally at Arizona knowing that harm was likely to be caused there to Cybersell AZ." Id.

In this case, Spencer's actions are distinguishable from Cybersell in every important respect. Unlike the defendant in Cybersell, Spencer knew of the Ford trademark Mercury® prior to its selection and registration of Mercurysource.com. Spencer knew Ford was the owner of Mercury® and that Ford was located in Michigan. Knowing these facts, Spencer registered the domain name Mercurysource.com *not* with the intent of conducting its own legitimate business, unlike the small business owner in Cybersell. Instead, Spencer intended to sell the Mercurysource.com domain name, which it believed to be valuable due to its apparent ability to attract Ford customers. Thus, unlike the innocent defendant in Cybersell, Spencer clearly knew his registration and attempted sale of Mercurysource.com infringed Ford's mark and constituted cybertheft. Finally, unlike the defendant in Cybersell, Spencer knew his victim would feel the brunt of the injury at its domicile in the forum state. In short, Spencer's activities in this case fall squarely within the "effects" category of "purposeful availment" employed by the Supreme Court in Calder.

### b. Spencer's cyberpiracy is analogous to the *Panavision* case.

Spencer's activities in this case are identical in all relevant respects to the activities involved in Panavision International v. Toeppen, 141 F.3d 1316 (9th Cir. 1998). In that case, the defendant registered the domain name "Panavision.com," which infringed the registered trademark of the plaintiff. See Panavision, 141 F.3d at 1319. The defendant claimed it did not direct his activity at the forum state, California, because it merely registered a domain name and posted a web site under the domain name. Id. at 1322. The Ninth Circuit rejected the defendant's

argument, however, noting that the record showed the defendant clearly directed injurious and infringing effects at a California victim:

> We agree that simply registering someone else's trademark as a domain name and posting web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. Cybersell, 130 F.3d at 418. As we said in Cybersell, there must be "something more" to demonstrate that the defendant directed his activity toward the forum state. Id. Here, that has been shown. Toeppen engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision. *His conduct, as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business and where the movie and television industry is centered.* Under the "effects test," the purposeful availment requirement necessary for specific, personal jurisdiction is satisfied.

Id. (emphasis added).

In this case, Spencer's activities were no less directed at Ford in Michigan than the Panavision defendant's actions were directed at California. Spencer knew that its registration of Mercurysource.com would cause injury to Ford and that the injury would be most felt in Michigan, where Ford had its principal place of business and where the American automotive industry is centered. In Panavision, it was the defendant's *purpose and plan in registering the domain name* that weighed so heavily in the Ninth Circuit's conclusion that due process was satisfied. In this case, there can be no doubt as to what Spencer's purpose and plan were. Spencer clearly planned to misappropriate and resell a piece of Ford's goodwill. Given that state of mind, Spencer directed an injury toward a victim in Michigan and, therefore, purposefully directed its activities at Michigan.

### C. Ford's Cause Of Action Arises From Spencer's Actions Toward Michigan.

Ford's claims clearly arise out of Spencer's actions causing injury in Michigan. Ford's Complaint is for trademark infringement, dilution, and cyberpiracy, all of which are centered around Spencer's and the other defendants' schemes to register and sell Ford's valuable trademarks.

Spencer argues that because "there has been no activity within the State of Michigan," the second requirement for due process cannot be satisfied. [Spencer Mem. at 9]. This argument merely avoids the real issue by claiming there are no Michigan activities on which Ford bases its claims. This merely repeats Spencer's claims with respect to the first due process requirement–that there are no activities directed at Michigan. The "arising out of" requirement for due process exists independently from the purposeful availment requirement, and no logical argument can be made that the second "arising out of" requirement is not satisfied here. This case arises out of Spencer's registration and attempted resale of the Ford trademark Mercury®, causing Ford injury in Michigan and targeting residents in the State of Michigan. And Ford's causes of action for trademark infringement, dilution, and cyberpiracy arise directly from those actions. Thus, the second part of the due process requirement is clearly met.

### D. This Court's Exercise Of Jurisdiction Over Spencer Is Reasonable

Spencer states in its Memorandum that "there is little need to discuss this third criterion" for satisfying due process. [Spencer Mem. at 9]. Ford agrees. The last due process requirement is the "reasonableness" requirement, or, as the Sixth Circuit has stated, whether the exercise of jurisdiction would "comport with 'traditional notions of fair play and substantial justice.'" Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1267-68 (6th Cir. 1996) (quoting Reynolds v. International Amateur Athletic Federation, 23 F.3d 1110, 1117 (6th Cir. 1994). Where the court finds "the first two elements of a prima facie case – purposeful availment and a cause of action arising from the defendant's contacts with the forum state–then an inference arises that this third factor is also present." Id. at 1268 (quoting American Greetings Corp. v. Cohn, 839 F.2d 1164, 1170 (6th Cir. 1988)). In this case, Ford has easily made the required *prima facie* showing as to the first two elements of due process. Thus, Ford is entitled to an inference that the exercise of jurisdiction is reasonable, satisfying the third due process criterion.

## IV. SPENCER'S RULE 12(b)(3) MOTION IS UNSUPPORTED AND MUST BE DENIED

Spencer has described its Motion as being brought under both Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(3), for improper venue. However, Spencer has submitted no argument and no legal or factual support for its Motion under Rule 12(b)(3). Accordingly, Spencer's Motion for dismissal or transfer based on improper venue must be denied. See E.D. Mich. LR 7.1(c)(1)(A).

## CONCLUSION

Ford has easily made the required *prima facie* showing that personal jurisdiction over defendant Spencer Associates is proper. Accordingly, Spencer's Motion must be denied. In any event, even if the Court is in doubt as to whether jurisdiction is proper, Ford must be allowed an opportunity to conduct discovery and to present additional evidence showing that Spencer is subject to personal jurisdiction.

DICKINSON WRIGHT PLLC

By: /s/ Kathleen A. Lang
Kathleen A. Lang (P34695)
Attorneys for Plaintiff Ford Motor Company
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500

Gregory D. Phillips
Thomas R. Lee, Of Counsel
Scott R. Ryther
HOWARD, PHILLIPS & ANDERSEN
560 E. 200 South, Suite 230
Salt Lake City, Utah 84102
(801) 366-7471

DATED: August 10, 2000

**PROOF OF SERVICE:**

*The undersigned certifies that a copy of Response and Brief and Proof of Service was served upon the attorneys of record of all parties to the above cause at their respective business addresses as disclosed by the pleadings of record herein on August 10, 2000. I declare under penalty of perjury that the statement above is true to the best of my information, knowledge and belief.*

*BY:*
✓ *U.S. Mail*            ___ *FAX*     ___ *Other*
___ *Hand Delivered*    ___ *Federal Express*

*Ann Howington*

**DETROIT 18260-1537 541175**

13