

ORIGINAL COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, a Delaware
corporation, JAGUAR CARS LIMITED, a
United Kingdom company, ASTON
MARTIN LAGONDA LIMITED, a United
Kingdom company, and VOLVO
TRADEMARK HOLDING, a corporation
organized under the laws of Sweden,

        Plaintiffs,

v.

GREATDOMAINS.COM, INC., a California
corporation, et al,

        Defendants.

_____/

Civil No. 00-71544

Judge Gerald E. Rosen

## PLAINTIFFS' RESPONSE AND BRIEF IN SUPPORT TO DEFENDANT DIAMOND STAR MARKETING, INC.'S RULE 12(b) MOTION TO DISMISS

Plaintiffs, by their attorneys, Dickinson Wright PLLC, hereby oppose the Motion to Dismiss filed by Defendant Diamond Star Marketing, Inc. In support of their opposition, Plaintiffs rely on the authority and argument contained in the attached brief.

29

## CONCISE STATEMENT OF ISSUES PRESENTED

Does this Court have personal jurisdiction over Defendant Diamond Star Marketing, Inc.?

## INDEX OF CONTROLLING AUTHORITI

### Cases

American Greetings Corp. v. Cohn, 839 F.2d 1164, 1170 (6th Cir. 1988).................. 13

Brabeau v. SMB Corp., 789 F. Supp. 873 (E.D. Mich. 1992)..................................... 7

Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482 (1984) ............................................. 10

Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996)........................... 7

GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 200) ...... 12

Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club, 34 F.3d 410
    (7th Cir. 1994)...................................................................................................... 10

Inset Systems, Inc. v. Instruction Set, Inc., 937 F. Supp. 161, 163-64
    (D. Conn. 1996) .................................................................................................. 6

International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct.
    154, 90 L. Ed. 95 (1945)..................................................................................... 8

Lanier v. American Board of Endodontics, 843 F.2d 901, 905-06
    (6th Cir. 1988)..................................................................................................... 6

Panavision Intern.L.P. v. Toeppen, 141 F.3d 1315 (9th Cir. 1998)............................ 9

Park Inns Intern., Inc. v. Pacific Plaza Hotels, Inc., 5 F. Supp. 2d 726,
    764 (D. Ariz. 1998)............................................................................................. 6

Reynolds v. International Amateur Athletic Federation, 23 F.3d 1110, 1117
    (6th Cir. 1994)..................................................................................................... 13

Sifers v. Horen, 386 Mich. 195, 199 n.2, 188 N.W.2d 623 (1971)............................. 6

Southern Machine Co. v. Mohasco Indus., 401 F.2d 374, 380 (6th Cir. 1968) .......... 8

TELCO Communications v. An Apple A Day, 977 F. Supp. 404, 406
    (E.D. Va. 1997)................................................................................................... 6

Theunissen v. Matthews, 935 F.2d 1454 (6th Cir. 1991)............................................ 2

Weinstein v. Norman M. Morris Corp., 432 F. Supp. 337 (E.D. Mich. 1977).......... 7

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ................ 10

Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1122
    (W.D. Pa. 1997) .................................................................................................   6

## Other

1 J. McCarthy, McCarthy on Trademarks and Unfair Competition, § 7.18
    (4th Ed. 2000).................................................................................................   4

## BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT
## DIAMOND STAR MARKETING, INC.'S MOTION TO DISMISS

Plaintiffs Ford Motor Company ("Ford"), Jaguar Cars Limited ("Jaguar"), Aston Martin Lagonda Limited ("Aston Martin"), and Volvo Trademark Holding AB ("Volvo") (collectively "Ford" or "Plaintiffs"), respectfully submit this Memorandum in Opposition to Defendant Diamond Star Marketing, Inc.'s "Rule 12(b) Motion To Dismiss; and Request for Attorney's Fees" dated July 14, 2000.

### INTRODUCTION

Knowing the inherent value of Ford's classic trademark Mustang®, Defendant Diamond Star Marketing, Inc. ("Diamond Star") devised a plan to misappropriate a piece of the Mustang® cachet. Diamond Star registered and attempted to sell for more than $600,000.00 the Internet domain name "stangstuff.com," a domain name incorporating a well-recognized nickname for the trademark to Mustang®. Diamond Star's actions are a computer-age version of an old business tort -- trademark and identity theft.

From the earliest planning and design stages, Diamond Star's registration and marketing of "stangstuff.com" was directed squarely at one victim–Ford, the creator and owner of the Mustang® mark. Despite all its contrary assertions, Diamond Star knows that the term "stang" is a well-known and frequently used short version of the Mustang® trademark, referring to Ford's classic line of cars. In fact, Diamond Star listed the domain name "stangstuff.com" under the key word "FORD" on the interactive website Greatdomains.com where Diamond Star was attempting to auction off the domain name for in excess of $600,000.00. To be sure, Diamond Star would not have chosen the name "stangstuff" were it not for the enormous business-attracting potential of Ford's famous trademark. It is equally certain that Diamond Star knew where the owner of the mark was domiciled and where the brunt of the economic theft would be most directly felt -- the State of Michigan. Given these facts, there is no plausible conclusion

other than that Diamond Star intentionally directed an act of cybertheft at Ford, which Diamond Star knew to be located in Michigan. Moreover, by attempting to auction off the domain name on the interactive website at Greatdomains.com, Diamond Star also targeted consumers residing in Michigan.

Now that Ford seeks redress for Diamond Star's wrongs in Michigan, Diamond Star pretends that its cybertheft cannot subject it to jurisdiction in Michigan because Diamond Star has no physical presence in Michigan. The law has been settled for many years, however, that causing tortious consequences to occur in another state subjects the tortfeasor to jurisdiction in that other state, even when the perpetrator has no other significant physical presence there.

As discussed below, Diamond Star's attempt to compare itself to an innocent registrant of a domain name that fortuitously infringes on an already owned mark is simply not credible. Diamond Star's denials regarding its contacts with Michigan cannot save it from defending this action in the state where its intended victim resides.

## ARGUMENT

I. **FORD HAS MADE THE REQUISITE PRIMA FACIE SHOWING OF JURISDICTION AND IS ENTITLED TO ALL INFERENCES IN ITS FAVOR.**

A plaintiff's burden on a 12(b)(2) motion varies depending on the procedure employed in determining jurisdiction. As the Sixth Circuit stated in Theunissen v. Matthews, 935 F.2d 1454 (6th Cir. 1991), when "[p]resented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." Id. at 1458. "However, the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal," and "where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." Id.

2

Thus, "in sharp contrast to summary judgment procedure, . . . the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." Id. at 1459. Instead, the court must accept as true the allegations and materials submitted in support of jurisdiction, and must not credit the contrary allegations made by a defendant to defeat jurisdiction. Id. Only when the plaintiff's alleged facts in total are insufficient to support a finding of personal jurisdiction may the court dismiss a defendant under 12(b)(2). Id.

It is early in this lawsuit and Ford has had no opportunity to conduct discovery. Ford has alleged and can produce more than enough facts to meet the slight burden required to make a prima facie showing of personal jurisdiction over Diamond Star.

Ford's prima facie showing is based on the following facts. Diamond Star, by its own admission, chose to register the domain name "stangstuff.com." [Diamond Star's Motion To Dismiss at 2 (hereafter "Motion"]. Diamond Star did not choose the name stangstuff.com simply at random. The term "stang" is used by car enthusiasts and by Ford itself as a shortened version of the Mustang® name. [Declaration of Nancy Oatley ¶¶ 3-4, at 1-2, and Exhibit "A" thereto (showing example of Ford's use of "stang" on a logo hat advertised in a Ford merchandise catalogue)]. Indeed, Diamond Star obviously understood the trademark significance of the name "stang" and intended to profit from the goodwill in the mark. These conclusions are evident in the undisputed facts that (a) when Diamond Star listed stangstuff.com for sale, Diamond Star provided descriptive information such that the key word "Ford" would bring up stangstuff.com as a Ford-related domain name offered for sale [Declaration of Celenda M. Wagenknecht ¶¶ 5-6, at 2, and Exhibit "A" thereto]; and (b) Diamond Star offered the stangstuff.com domain name at a listing price of $656,667 [Declaration of Celenda M. Wagenknecht, Exhibit "A"].

These facts point unmistakably toward Diamond Star's knowledge of the trademark value of the word "stang" and of Diamond Star's intent to profit from the goodwill in that mark. A domain name offered at such an exorbitant listing price obviously suggests that Diamond Star knew of its trademark value.

3

Finally, Diamond Star chose to list its stangstuff.com domain name for sale on defendant Greatdomains.com's *interactive* web site. [Wagenknecht Decl. ¶ 4, at 2]. By listing the name for sale on an interactive web site, Diamond Star targeted and invited potential buyers, in Michigan and elsewhere, to exchange information, to bid for the purchase of stangstuff.com, and even to close sales with respect to the domain name if necessary. [Id.]

Ford, which has its headquarters and principal domicile in Michigan, suffered damage to its trademark rights and goodwill as a result of Diamond Star's piracy. The injury felt in Michigan was more than foreseeable from Diamond Star's perspective; it was so certain to result that the injury must have been intended by Diamond Star to occur in Michigan.

Finally, Diamond Star's repeated assertion that the name "stangstuff.com" does not infringe on any trademark owned by Ford must be rejected. [See Motion at 4 (stangstuff.com "does not incorporate any registered mark of Ford," and "does not give rise to any damages in [Michigan] – tortious or otherwise"]. By making that assertion, Diamond Star misstates the law of trademarks and, more importantly at this stage, improperly attempts to try the merits of Ford's claims – raising a legal issue relating to trademark protection – in the context of a jurisdictional motion. Contrary to Diamond Star's argument, the shortened term "stang" derived from the full mark Mustang®, is just as entitled to protection as the full name. See 1 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 7.18 (4th ed. 2000) ("If the public has come to shorten a trademark into a nickname, then the nickname is entitled to independent legal protection as a mark."). More argument on this point is unnecessary at this stage of the case. Ford's prima facie allegations are to be taken as correct insofar as this Court's personal jurisdiction over Diamond Star is concerned. If Diamond Star wishes to press this issue further at this stage, it may move under Rule 12(b)(6).

4

## II. DIAMOND STAR'S ACTIVITIES FALL WITHIN MICHIGAN'S LONG-ARM STATUTE

### A. Michigan's Long-Arm Statute Encompasses The Transaction of "Any" Business And The Causing of "Consequences To Occur" in Michigan.

Michigan purports to exercise personal jurisdiction, through its long-arm statute, for several enumerated types of actions. Those actions include both "the transacting of *any business within the state*" and "the doing or causing an act to be done, or *consequences to occur*, in the state." Mich. Comp. Laws Ann. § 600.715 (emphasis added). Ford has made out a prima facie case showing that both of these categories apply.

### 1. Diamond Star Transacted Business In Michigan By Offering A Domain Name For Sale On An Interactive Web Site To Residents In Michigan.

Diamond Star urges this Court to look simplistically at its lack of physical business ties to Michigan and conclude that Diamond Star has not transacted any business in Michigan. However, the same could be said of any state if Diamond Star's arguments are taken to their logical end. Diamond Star characterizes its actions in the negative: "it has never contracted to insure risks within the state of Michigan, and it has entered into no contract to render services or supply materials within the state of Michigan." [Motion at 4]. Diamond Star avoids the real issue, namely, what actions *did* it engage in and in what way might they constitute the transaction of business under Michigan's statute.

Ford has demonstrated at this early stage that Diamond Star listed the domain name stangstuff.com on the Greatdomains.com web site – an interactive web site that offers buyers and sellers of domain names in Michigan and elsewhere a full spectrum of services to be performed on the web site itself, including escrow services. [Wagenknecht Decl. ¶ 4, at 2]. This activity alone satisfies the "transacting business" category of Michigan's long-arm statute because Diamond Star has, in effect, solicited bids from Michigan residents for the purchase of an

infringing domain name. Even if no contract or sale with a Michigan resident came to fruition, the long-arm statute is satisfied by any solicitation or activity aimed at entering a business transaction. As the Michigan Supreme Court has stated with respect to Michigan's long-arm section applying to the transaction of business, "[t]he word 'any' means just what it says. It includes 'each' and 'every' . . . . It comprehends the 'slightest.'" Theunissen v. Matthews, 935 F.2d 1454, 1463-64 (6th Cir. 1991) (quoting Lanier v. American Board of Endodontics, 843 F.2d 901, 905-06 (6th Cir. 1988)); see also Sifers v. Horen, 385 Mich. 195, 199 n.2, 188 N.W.2d 623 (1971).

In Lanier, cited above, the Sixth Circuit interpreted the "transaction of business" language of Michigan's long-arm statute to cover correspondence and the sending of an application (at the plaintiff's request) by a defendant organization in located in Illinois to the plaintiff in Michigan, even though the two parties did not complete any business transaction or enter into any contract. See Lanier, 843 F.2d at 905-06.

It is clear even at this stage that Diamond Star offered to sell the stangstuff.com domain name to Michigan residents and did so for the purpose of profiting from the sale. Indeed, this theory of transacting business has been expressly adopted in Internet domain name cases where a defendant uses an interactive website (i.e., a website that is not passive, but where residents of Michigan can engage in transactions on the website). See, e.g., Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1122 (W.D. Pa. 1997) (solicitation of business over web site accessible by Pennsylvania residents constitutes "transaction of business" under Pennsylvania long-arm statute); TELCO Communications v. An Apple A Day, 977 F. Supp. 404, 406 (E.D. Va. 1997) (soliciting investment banking business over web site accessible to residents of Virginia meets long-arm definition of doing business); Inset Systems, Inc. v. Instruction Set, Inc., 937 F. Supp. 161, 163-64 (D. Conn. 1996) (advertising continuously on web site accessible in Connecticut satisfies Connecticut long-arm definition of doing business); Park Inns Intern., Inc. v. Pacific Plaza Hotels, Inc., 5 F.Supp.2d 762, 764 (D. Ariz. 1998) (use of "interactive" web site

accessible to Arizona residents and allowing hotel reservations to be made constitutes business activity sufficient to satisfy long-arm statute and due process).

Accordingly, given the very "slightest" amount of business activity required to satisfy Michigan's long-arm statute, Diamond Star's solicitation of bids on the Greatdomains.com web site from Michigan residents, among others, satisfies the requirements of the Michigan statute.

### 2. Diamond Star Caused "Consequences" In Michigan Injuring Ford.

As discussed in the sections below regarding federal due process, Ford's action against Diamond Star and the other defendants is based on theories akin to business torts, namely trademark infringement, dilution, and cyberpiracy. These types of injuries fall within the coverage of Michigan's long-arm statute as it relates to tort claims. See, e.g., Weinstein v. Norman M. Morris Corp., 432 F. Supp. 337 (E.D. Mich. 1977) (antitrust and unfair competition claims constitute form of tort under Michigan long-arm statute). Ford has sufficiently alleged in its Complaint and in the submissions with this Opposition that Diamond Star's registration and attempted sale of Ford's valuable trademark has injured Ford and that the injury is felt in Michigan more than any other place. The plain language of the Michigan long-arm statute is designed to bring within the jurisdiction of the Michigan courts any defendant that, through acts taken outside the State of Michigan, nevertheless causes consequences within the state. See Brabeau v. SMB Corp., 789 F.Supp. 873 (E.D. Mich. 1992) (Michigan long-arm statute grants limited jurisdiction over German press manufacturer not doing business in state where Michigan worker suffered injury in Michigan while operating defective press manufactured by defendant outside Michigan sold to plaintiff's employer in out-of-state transaction). Based on that plain language, it is clear that Michigan's statute covers actions by defendants such as those committed by Diamond Star, so long as federal due process considerations are satisfied. As discussed below, Ford has shown that Diamond Star purposefully directed an injury on a Michigan domiciliary, Ford, and jurisdiction satisfies due process.

7

### III.    PERSONAL JURISDICTION OVER DIAMOND STAR

#### A.    The Due Process Standard.

The federal constitutional requirement for jurisdiction over Diamond Star is well-established. As the Sixth Circuit stated in Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996), the relevant question is "whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Compuserve, Inc. v. Patterson, 89 F.3d at 1263 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). See also Southern Machine Co. v. Mohasco Indus., 401 F.2d 374, 380 (6th Cir.1968). There are three criteria to be satisfied for exercising jurisdiction over Diamond Star in this case. Ford needs only to make a prima facie showing as to each:

> First, the defendant must purposefully avail himself of the privilege of acting in
> the forum state or causing a consequence in the forum state. Second, the cause of
> action must arise from the defendant's activities there. Finally, the acts of the
> defendant or consequences caused by the defendant must have a substantial
> enough connection with the forum to make the exercise of jurisdiction over the
> defendant reasonable.

Compuserve, 89 F.3d at 1263. As between the three, the requirement of purposeful availment "is the sine qua non of in personam jurisdiction." Compuserve, 89 F.3d at 1263 (quoting Mohasco Indus., 401 F.2d at 381-82). The three requirements are easily met by the facts alleged in Ford's Complaint and the submissions included with this Opposition.

#### B.    Diamond Star Purposefully Directed A "Consequence"
####        In Michigan

In its motion, Diamond Star makes the standard assertions designed to distance itself from the State of Michigan, stating that it does not do business in Michigan, does not send correspondence there, and does not maintain any physical presence there. [Motion at 7]. It is not helpful, however, to point out that Diamond Star does not have a regular, continuous physical or

8

business presence in Michigan. Jurisdiction over Diamond Star was never predicated on any notion of "general jurisdiction." Rather, Ford has joined Diamond Star in this action based on the concept of specific jurisdiction. Diamond Star's argument that it does not have regular or significant physical contacts with the State of Michigan is a smoke screen.

This Court's personal jurisdiction over Diamond Star is based on the principle that a defendant that causes injury to a defendant in another state can reasonably be held to answer in that state for the injury caused in the state. Diamond Star knows it intentionally and systematically caused injury to Ford in Michigan. Not surprisingly, Diamond Star attempts to downplay the nature of its trademark and domain name piracy. It makes the incredible assertion that "even assuming Ford's allegations are true, all [Diamond Star] did was register a domain name (which incorporated no registered trademarks) and listed it for sale on an Internet website." [Motion at 7]. This description of the overt *actions* taken by Diamond Star conveniently leaves out the circumstances that really matter for jurisdiction analysis–the purpose for the actions were taken, to whom and where they were directed, and the consequences flowing from the actions. As discussed above, Diamond Star did much more than simply register an innocent Internet domain name.

In any event, the question of purposeful availment is not addressed head on by discussing what Diamond Star *does not do* in Michigan. Rather, the question is: What can Ford demonstrate that Diamond Star *did* in Michigan *or toward* some person there with the *expectation or intent to cause some consequence* there? Once the issue is properly framed, the answer is quite obvious. Diamond Star acted in a way intended to cause an economic injury to Ford in Michigan.

> **1.     Diamond Star's actions subject it to "effects" jurisdiction.**

As Ford's prima facie showing demonstrates, Diamond Star knew that Ford created and owned the trademark Mustang® and the often used short version "stang," when it chose and

9

registered its domain name stangstuff.com.  Diamond Star also <u>knew</u> that Ford was located in Michigan and that the economic injury caused by Diamond Star's piracy would be felt by Ford at its principal domicile in Michigan.

This case is similar to other domain name and trademark cases in which courts have found that defendants purposefully availed themselves of the forum by infringing trademarks, even though the infringers had no physical presence in the forum states.  <u>See, e.g.,</u> <u>Panavision Intern. L.P. v. Toeppen</u>, 141 F.3d 1321 (9th Cir. 1998) (concluding that infringement case "is akin to a tort case");  <u>Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club</u>, 34 F.3d 411 (7th Cir. 1994) (observing that injury from infringement of trademark outside Indiana "will be felt mainly in Indiana").  In both cases, the courts relied on the "effects" doctrine employed by the Supreme Court in <u>Calder v. Jones</u>, 465 U.S. 783, 104 S.Ct. 1482 (1984).

In <u>Calder</u>, a defamation case filed in California by a California resident against Florida defendants, the Supreme Court held that the defendants' alleged tortious defamation of the plaintiff would be felt in California and that the defendants' publication of statements about the California plaintiff showed a purposeful direction of activity toward the California forum.  <u>See</u> <u>Calder</u>, 104 S.Ct. at 1487-88.  The Court held that purposeful availment for due process analysis is satisfied by intentional actions, aimed at the forum state or a person there, which cause harm, the brunt of which the defendant knows is likely to be suffered in the forum state.  <u>See</u> <u>id.</u>, 104 S.Ct. at 1487.  "Under the circumstances, petitioners must 'reasonably anticipate being haled into court there.'"  <u>Id.</u> (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).

### a.    Diamond Star's actions are analogous to the *Panavision* defendant.

Diamond Star argues that it cannot be subjected to jurisdiction in a state merely for registering a domain name and listing it for sale on the Greatdomains.com web site. [Motion at 7].  In so doing, Diamond Star attempts to distinguish its activities from those of the defendants

10

in other Internet domain name cases where the defendants' actions were held to constitute purposeful availment.

Diamond Star points to the Ninth Circuit's analysis in Panavision Intern. L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998) and argues that Diamond Star's activities in this case lack the element of "something more" to show the kind of purposeful direction of activities toward the forum state that present in Panavision. In that case, the defendant registered the domain name "Panavision.com," which infringed the registered trademark of the plaintiff. See Panavision, 141 F.3d at 1319. The defendant claimed he did not direct his activity at the forum state, California, because he merely registered a domain name and posted a web site under the domain name. Id. at 1322. The Ninth Circuit rejected the defendant's argument, however, noting that the record showed the defendant clearly directed injurious and infringing effects at a California victim:

> We agree that simply registering someone else's trademark as a domain name and posting web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. Cybersell, 130 F.3d at 418. As we said in Cybersell, there must be "something more" to demonstrate that the defendant directed his activity toward the forum state. Id. Here, that has been shown. Toeppen engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision. *His conduct, as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business and where the movie and television industry is centered.* [FN3]. Under the "effects test," the purposeful availment requirement necessary for specific, personal jurisdiction is satisfied.

Panavision, 141 F.3d at 1322 (emphasis added).

Diamond Star's activities in this case are identical to the defendant's conduct in Panavision for all relevant purposes. Diamond Star knew that its registration of stangstuff.com would cause injury to Ford and that the injury would be most felt in Michigan, where Ford had its principal place of business and where the American automotive industry is centered.

Diamond Star argues that this case is distinguishable from Panavision because, according to Diamond Star, Ford does not "even attempt to allege any facts demonstrating that [Diamond Star] ever contacted Ford or attempted in any way to market its domain registration to Ford or

11

any other Michigan entity." [Motion at 5]. Thus, Diamond Star claims that this case lacks the "something more" beyond mere registration of a domain name that constituted purposeful availment in Panavision.

Diamond Star misses the import of the Ninth Circuit's decision in Panavision. In that case, it was not the act of marketing the domain name to the trademark owner that demonstrated the purposeful availment requirement. Rather, it was the defendant's *purpose and plan in registering the domain name*, wholly apart from the question of to whom it was offered for sale, that convinced the Ninth Circuit that purposeful availment was present. The language quoted above from the Ninth Circuit's opinion clearly expresses this. Properly read, the Ninth Circuit's decision suggests that it is not the *particular activity* in which the defendant engages that matters. What does matter is (1) the purpose, and (2) the effect of the activity. In Panavision, the Court concluded that while the activity of registering a domain name and posting a web site might not be purposefully directed at a plaintiff's forum in one case, e.g., Cybersell, precisely the same activities may constitute purposeful availment in another case, e.g., Panavision. Absent from the language quoted above is any reliance by the Ninth Circuit on the fact that the defendant actually marketed the domain name to the plaintiff. In short, it was the defendant's *state of mind* that figured most prominently in the Ninth Circuit's decision, coupled with an *injurious effect* in the forum. It was the existence of a scheme aimed at the forum state. The same is true of every other important case in which the "effects" doctrine is used. This is the import of the term "purposeful" as it is used throughout the case law on personal jurisdiction and due process.

In this case, the facts that must be taken as true indicate that Diamond Star had the requisite state of mind when it hatched its plan to pirate Ford's Mustang® trademark. Diamond Star's intent is evident from the undisputed facts (a) that Diamond Star offered stangstuff.com at a listing price of over $600,000; and (b) that Diamond Star listed the domain name under the key word "Ford." Diamond Star formulated a scheme to register and sell a piece of Ford's trademark goodwill in the form of stangstuff.com. These actions caused an intended injury to an intended victim in a known location – Michigan. Under this set of facts, there is more than a prima facie

12

showing of purposeful availment. There is everything needed to find that Diamond Star must reasonably anticipate being haled into court in the District of Michigan.

Diamond Star's reliance on GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000) is wholly misplaced, and Diamond Star misrepresents the D.C. Circuit's order in that case. Contrary to Diamond Star's statement, the D.C. Circuit did not dismiss the action for lack of personal jurisdiction. [Motion at 9]. Rather, that court merely remanded for further discovery and a possible evidentiary hearing the issue of personal jurisdiction. See GTE, 199 F.3d at 1345-46. The D.C. Circuit made no holding at all regarding jurisdiction, but simply stated its disagreement with the plaintiff's argument that personal jurisdiction may be premised solely on a defendant's operation of a web site that is accessible to persons in the forum state. See id. at 1346. Of course, in this case Ford does not premise its jurisdictional argument on the mere accessibility of a web site in Michigan. As stated at length above, it is premised on the intentional theft of goodwill from Ford, a Michigan based company, by Diamond Star.

### C.     Ford's Cause Of Action Arises From Diamond Star's Actions Toward Michigan

The actions that Diamond Star aimed at the forum of Michigan are at the center of Ford's claims. Ford's Complaint is for trademark infringement, dilution, and cyberpiracy, all of which are centered around Diamond Star's scheme to register and sell one of Ford's valuable trademarks. Any argument that Ford's causes of action are not related to the activities alleged to have been directed at Michigan would be a stretch at best.

### D.     This Court's Exercise Of Jurisdiction Over Diamond Star Is Reasonable.

The last requirement for jurisdiction that satisfies due process is the "reasonableness" requirement, or, as the Sixth Circuit has stated, whether the exercise of jurisdiction would "comport with 'traditional notions of fair play and substantial justice.'" Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1267-68 (6th Cir. 1996) (quoting Reynolds v. International Amataeur

13

Athletic Federation, 23 F.3d 1110, 1117 (6th Cir. 1994). Where the court finds "the first two elements of a prima facie case–purposeful availment and a cause of action arising from the defendant's contacts with the forum state–then an inference of arises that this third factor is also present." Id. at 1268 (quoting American Greetings Corp. v. Cohn, 839 F.2d 1164, 1170 (6th Cir. 1988)). "[A]n inference of reasonableness arises where the first two criteria are met and . . . 'only the unusual case will not meet this third criterion.'" Theunissen, 935 F.2d at 1461 (quoting American Greetings, 839 F.2d at 1170). In this case, Ford has easily made out a prima facie case showing the first two elements are satisfied. Thus, Ford is entitled to an inference that the exercise of jurisdiction is reasonable for purposes of due process.

Aside from the inference mentioned above, however, courts may consider several factors in determining reasonableness, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." Compuserve, 89 F.3d at 1268 (quoting American Greetings, 839 F.2d at 1169-70.

Although Diamond Star claims that this litigation is unduly burdensome for it, Diamond Star specifically sought to derive profit (listed at over $656,000) from a domain name at the expense of Ford, a Michigan resident. In just such an entrepreneurial context, the Sixth Circuit has rejected the argument that litigation in a plaintiff's forum state is unreasonably burdensome for the defendant. See Compuserve, 89 F.3d at 1268 (jurisdiction reasonable despite defendant's claim of burden where defendant is entrepreneur seeking to benefit from activities directed at forum state).

Moreover, Ford has a strong interest in gaining redress for the wrongs committed against Ford by not only Diamond Star, but the other defendants in this action that have engaged in substantially the same piracy as Diamond Star. Indeed, there are numerous registrant defendants in this matter. Ford intends to demonstrate that each defendant pirated Ford's trademarks through the registration and attempted auction of infringing domain names. This is not a trivial interest of Ford, and Ford should not be denied the opportunity to seek redress for these wrongs

14

in the same action and in the same forum in which the auctioneer, defendant Greatdomains.com, will be required to answer.

In addition, the State of Michigan has an interest in resolving this dispute, because it involves a Michigan company. Finally, the interests of the various states in securing the most efficient resolution of controversies will be served by exercising jurisdiction over Diamond Star and the other defendants. Conversely, if Ford were required to chase every defendant to its own home state in order to seek redress for each separate instance of infringement and domain name piracy, there would be significant efficiency lost in the resolution of these claims.

## IV.    DIAMOND STAR'S REQUEST FOR ATTORNEY'S FEES IS FRIVOLOUS

Diamond Star requests an award of attorney's fees, apparently reasoning that Ford is obligated to settle this claim without compensation for its damages because Ford is a "large corporation." [Motion at 12]. It is axiomatic that "large corporations" should not be denied access to *full* redress for harms caused simply by virtue of their size. Diamond Star's request is frivolous and should be denied.

## CONCLUSION

Ford has made more than a prima facie showing that personal jurisdiction over Diamond Star is proper. Consequently, Diamond Star's motion must be denied. Moreover, even if the Court is in doubt as to whether jurisdiction is proper, Ford must be allowed an opportunity to

conduct discovery and to present additional evidence showing that Diamond Star is subject to personal jurisdiction.

DICKINSON WRIGHT PLLC

By: _____
Kathleen A. Lang (P34695)
Attorneys for Plaintiff Ford Motor Company
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500

Gregory D. Phillips
Thomas R. Lee, Of Counsel
Scott R. Ryther
HOWARD, PHILLIPS & ANDERSEN
560 E. 200 South, Suite 230
Salt Lake City, Utah 84102
(801) 366-7471

DATED: August 10, 2000

**_PROOF OF SERVICE:_**

*The undersigned certifies that a copy of Response and Brief and Proof of Service was served upon the attorneys of record of all parties to the above cause at their respective business addresses as disclosed by the pleadings of record herein on August 10, 2000. I declare under penalty of perjury that the statement above is true to the best of my information, knowledge and belief.*

BY:

___ *U.S. Mail*          ___ *FAX*          ___ *Other*
___ *Hand Delivered*     ___ *Federal Express*

_____
*Ann Howington*

DETROIT 18260-1537 541135

16