UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FORD MOTOR COMPANY,** *et al.,*

      **Plaintiffs**

      v.

**GREAT DOMAINS.COM, INC.,** *et al.,*

      **Defendants**

                              /

Case No. 00-71544
Judge Gerald E. Rosen

---

### DEFENDANT ROBERT EMMERT'S MOTION TO DISMISS

Defendant Robert Emmert ("Defendant") respectfully moves for dismissal from this Action pursuant to FED R. CIV. P. 12(b)(2) and 12(b)(6) because personal jurisdiction is lacking and the Complaint fails to state any claim against Defendant upon which relief can be granted.

In accordance with Local Rule 7.1(a), counsel for the Defendant conferred with counsel for Plaintiffs. Plaintiffs declined to assent to the specific relief requested in this Motion.

This Motion is accompanied by a supporting brief.

68

Wherefore, Defendant Robert Emmert respectfully prays that all claims against him by Plaintiffs be dismissed WITH PREJUDICE.

ROBERT EMMERT,

By counsel,

Dated: November 1, 2000

Eric C. Grimm (P58990)
CYBERBRIEF, PLC
320 South Main Street
Ann Arbor, MI 48107-7341
734-332-4900
fax 734-332-4901

David H. Lowenschuss (P53767)
David H. Lowenschuss P.L.C.
2020 Shadford Road
Ann Arbor, MI 48104
734-623-9877

Cindy Cohn
Legal Director
ELECTRONIC FRONTIER FOUNDATION
1550 Bryant Street, Suite 725
San Francisco, CA 94103
415-436-9333

COUNSEL FOR ELECTRONIC
FRONTIER FOUNDATION AND
DEFENDANTS ROBERT EMMERT,
PAUL BROWN, ALFONSO FIERO,
JOHN HALL, WALLACE RAWSON,
RAD*TECH, and TOM COOPER.

CERTIFICATE OF SERVICE

I certify that I served (1) the foregoing Motion of Robert Emmert to Dismiss, (2) Defendant's Brief in Support of Robert Emmert's Motion to Dismiss, and (3) the Declaration of Robert Emmert In Support of Defendant's Motion to Dismiss, on the following counsel of record, by first class, mail, postage prepaid, by depositing these papers with the United States Postal Service on or before Thursday, November 2, 2000:

William A Sankbeil, Esq.
Kerr, Russell, & Weber, PLC
500 Woodward Ave., Suite 2500
Detroit, MI  48226

Robert R. Yoder, Esq.
5080 North 40th Street
Suite 335
Phoenix, AZ  85018

Richard Phillips, Esq.
Mikkelborg, Broz, Wells & Fryer
Suite 3600
1001 Fourth Avenue
Seattle, WA  98154

Shelly M. Liberto, Esq.
3 Hutton Centre Drive
Suite 900
Santa Ana, CA  92707

Kathleen A. Lang, Esq.
Dickinson Wright, PLLC
500 Woodward Ave.
Suite 4000
Detroit, MI  48226

David H. Lowenschuss, Esq.
David H. Lowenschuss, P.L.C.
2020 Shadford Road
Ann Arbor, MI  48104

Thomas Pezzetti, Jr., Esq.
Smith & Johnson
Six Hundred Three Bay Street
P.O. Box 705
Traverse City, MI  49685-0705

Lisa S. Gallerano, Esq.
Akin, Gump, Strauss, Hauer & Feld
1700 Pacific Avenue
Suite 4100
Dallas, TX  75201

Ronald Reagan, Esq.
140 Court Avenue
Sevierville, TN  37862

Luis Miguel Acosta, Esq.
Plunkett & Cooney
505 North Woodward Ave.
Suite 3000
Bloomfield Hills, MI  48304

Gregory D. Phillips, Esq.
Howard, Phillips & Anderson
560 East 200 South, Suite 230
Salt Lake City, UT  84102

Cindy Cohn, Esq.
Electronic Frontier Foundation
1550 Bryant Street, Suite 725
San Francisco, CA  94103

3

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

U.S. DISTRICT COURT
ANN ARBOR

Nov 2  11 00 AM '00

FILED

**FORD MOTOR COMPANY**, *et al.*,

    **Plaintiffs**

    v.

**GREAT DOMAINS.COM, INC.,** *et al.*,

    **Defendants**

/

Case No. 00-71544
Judge Gerald E. Rosen

**BRIEF IN SUPPORT OF**
**DEFENDANT ROBERT EMMERT'S MOTION TO DISMISS**

Eric C. Grimm (P58990)
CYBERBRIEF, PLC
320 South Main Street
Ann Arbor, MI 48107-7341
734-332-4900

David H. Lowenschuss (P53767)
David H. Lowenschuss P.L.C.
2020 Shadford Road
Ann Arbor, MI 48104
734-623-9877

Cindy Cohn
Legal Director
ELECTRONIC FRONTIER FOUNDATION
1550 Bryant Street, Suite 725
San Francisco, CA 94103
415-436-9333

COUNSEL FOR ELECTRONIC
FRONTIER FOUNDATION AND
DEFENDANTS ROBERT EMMERT,
PAUL BROWN, ALFONSO FIERO,
JOHN HALL, WALLACE RAWSON,
RAD*TECH, and TOM COOPER.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION............................................................................................1

STATEMENT OF THE ISSUES PRESENTED ..............................................3

STATEMENT OF FACTS ...............................................................................3

    **Background – The Internet and the Domain Name System** ..................3

    **Facts Specific to Defendant Robert Emmert** ...................................7

ARGUMENT AND AUTHORITIES ...............................................................8

    I.    Defendant Robert Emmert Must be Dismissed from this Litigation Because Mr. Emmert Is Not Subject to Personal Jurisdiction In Michigan...............................8

        A.    The Michigan Long-Arm Statute Is Not Satisfied. .....................................9

        B.    The Exercise of Personal Jurisdiction over Defendant Robert Emmert Would Also Violate Due Process. ...................................12

    II.    All Claims Against Defendant Robert Emmert Must Also Be Dismissed Because Plaintiff Has Not Set Forth Sufficient Defendant-Specific Allegations To Provide Notice What Is Alleged Or To State Any Claim Upon Which Relief May Be Granted. ..................................................14

CONCLUSION ...............................................................................................18

## TABLE OF AUTHORITIES

CASES

Albright v. Oliver,
    510 U.S. 266, 114 S. Ct. 807 (1994) ................................................................15

America Online, Inc. v. Huang,
    106 F.Supp.2d 848 (E.D. Va. 2000) ..............................................................11

Asahi Metal Indus. Co. v. Superior Ct. of Cal.,
    480 U.S. 102 (1987)........................................................................................12

Begala v. PNC Bank, Ohio, N.A.,
    214 F.3d 776 (6th Cir. 2000)..........................................................................15

Bensusan Restaurant Corp. v. King,
    126 F.3d 25 (2nd Cir. 1998) .....................................................................10, 12

Blackburn v. Fisk University,
    443 F.2d 121 (6th Cir. 1971).........................................................................16

Brookfield Comm'n, Inc. v. West Coast Entertainment,
    174 F.3d 1036 (9th Cir. 1999)..........................................................................4

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)........................................................................................12

Calphalon Corp. v. Rowlette,
    ___ F. 3d ___, 2000 WL 126381 (6th Cir. Sept. 8, 2000) ..................................13

Claybrook v. Birchwell,
    199 F.3d 350 (6th Cir. 2000)..........................................................................15

Compuserve, Inc. v. Patterson,
    89 F.3d 1257 (6th Cir. 1996).......................................................................8, 13

Cooperman v. Individual, Inc.,
    171 F.3d 43 (1st Cir. 1999) ...........................................................................15

Cybersell, Inc. v. Cybersell, Inc.,
    130 F.3d 414 (9th Cir. 1997)..............................................................10, 11, 12

CASES (cont'd)

Green v. Wilson,
    455 Mich. 342, 565 N.W.2d 813 (1997)...................................................8

Gregory v. Shelby County, Tenn.,
    220 F.3d 433 (6th Cir. 2000)..........................................................15

Gross v. Summa Four, Inc.,
    93 F.3d 987 (1st Cir. 1996)...........................................................15

GTE New Media Servs. v. Bellsouth Corp.,
    199 F.3d 1343 (D.C. Cir. 2000)..........................................1, 10, 11, 12

Hanson v. Denckla,
    357 U.S. 235 (1958)................................................................ 8-9, 12

Hasbro v. Clue Computing,
    994 F. Supp. 34 (D. Mass. 1997)......................................................10

Hasbro v. Clue Computing,
    66 F. Supp. 2d 117 (D. Mass. 1999)..................................................4, 6

Heathmount A.E. Corp v. Technodome.Com,
    106 F.Supp.2d 860 (E.D. Va. 2000) ...................................................11

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408 (1984)...................................................................8

Hi-Tex, Inc. v. TSG, Inc.,
    87 F. Supp. 2d 738 (E.D. Mi. 2000) .............................................9, 11, 12

International Shoe Co v. Washington,
    326 U.S. 310 (1945)..................................................................8-9

Juno Online Servs., L.P. v. Juno Lighting Inc.,
    979 F. Supp. 684, 691 (N.D. Ill. 1997) ...............................................6

Kerry Steel, Inc. v. Paragon Indus.,
    106 F.3d 147 (6th Cir. 1997)..........................................................9

Lockheed Martin Corp. v. Network Solutions, Inc.,
    985 F. Supp. 949, 956-57 (C.D. Cal. 1997),
    aff'd, 194 F.3d 980 (9th Cir. 1999)..................................................6

CASES (cont'd)

Mink v. AAAA Development, LLC,
190 F.3d 333 (5th Cir. 1999)........................................................................10, 11

Mixon v. State of Ohio,
193 F.3d 389 (6th Cir. 1999)................................................................................15

Morgan v. Church's Fried Chicken,
829 F.2d 10 (6th Cir.1987)...................................................................................15

Name.Space, Inc. v. Network Solutions, Inc.,
202 F.3d 573 (2d Cir. 2000)...................................................................................4

Neogen Corp. v. Neo Gen Screening, Inc.,
109 F. Supp. 2d 724 (W.D. Mi. 2000) .....................................................................8

Neighbors v. Penske Leasing, Inc.,
45 F. Supp. 2d 593 (E.D. Mi. 1999) ....................................................................8-9

Panavision Int'l, L.P. v. Toeppen,
141 F.3d 1316 (9th Cir. 1998)...........................................................................5, 14

Playboy Enters., Inc. v. Netscape Comm'n Corp.,
55 F. Supp. 2d 1070 (C.D. Cal. 1999),
aff'd, 202 F.3d 278 (9th Cir. 1999) (table) .............................................................6

Reno v. ACLU,
521 U.S. 844 (1997)...............................................................................................3

Scheid v. Fannie Farmer Candy Shops,
859 F.2d 434 (6th Cir. 1988)...............................................................................15

Shaffer v. Heitner,
433 U.S. 866 (1977)..............................................................................................12

Soma Medical Intern. v. Standard Chtd. Bank,
196 F.3d 1292 (10th Cir. 1999)......................................................................10, 11

CASES (cont'd)

Sporty's Farm, LLC v. Sportsman's Market,
    202 F.3d 489 (2d Cir. 2000)..................................................................6, 14

Theunissen v. Matthews,
    935 F.2d 1454 (6th Cir.1991)..................................................................9

Washington Speaker's Bureau v. Leading Auth.,
    33 F. Supp. 2d 488 (E.D. Va. 1999) ...........................................................6, 14

Winfield Collection, Ltd. v. McCauley,
    105 F. Supp. 2d 746 (E.D. Mi. 2000) ..................................................8-9, 13-14

World Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980)..................................................................12


FEDERAL RULES OF CIVIL PROCEDURE

FED. R. CIV. P. 12(b)(2) ..................................................................8

FED. R. CIV. P. 12(b)(6) ..................................................................3, 7, 14, 18


STATUTES

MICH. COMP. L. ANN. § 600.705 ..................................................................8

MICH. COMP. L. ANN. § 600.715 ..................................................................8

15 U.S.C. § 1114(1) ..................................................................14

15 U.S.C. § 1125(a) ..................................................................14

15 U.S.C. § 1125(c) ..................................................................14

15 U.S.C. § 1125(d) ..................................................................14

## **INTRODUCTION**

Although this Action involves a relatively novel context – namely, the use of Domain Names as Internet addresses  – the core question presented by this Motion is quite old, remarkably straightforward, and controlled by a well-established body of law:[1]  Under what circumstances may a plaintiff hale non-resident defendants from faraway jurisdictions into its home jurisdiction?  Or, to paraphrase the basic civil procedure question: Can Ford sue the world from Detroit?

Here, Plaintiff, a multinational corporation, attempts to require approximately 72 Defendants domiciled in jurisdictions throughout the world to appear and defend themselves in Detroit on the basis of remarkably insubstantial alleged "jurisdictional contacts."   The alleged "contacts" consist of nothing more than (1) the registration of a Domain Name by each Defendant, using registration services that are uniformly located outside the State of Michigan, (2) the alleged visibility of a Website called Great Domains (published outside Michigan by one Defendant only – namely, Great Domains), and (3) in some (but not all) cases, the establishment of passive, non-interactive web sites by one or more Defendants other than Great Domains, employing the Domain Names in question as addresses in ways that could not possibly cause "confusion" (as that term of art is used in the Lanham Trademark Act) on the part of Website visitors.  The overwhelming weight of authority counsels that personal jurisdiction cannot be asserted in Michigan over any non-resident Defendant under the circumstances alleged by Plaintiffs.

This Motion also presents the question whether the bare allegation that a Domain

---

[1] See GTE New Media Servs. v. Bellsouth Corp., 199 F.3d 1343, 1349-50 (D.C. Cir. 2000).

1

Name appears in a listing on a Website such as Great Domains, standing alone, is sufficient to state a *per se* claim for trademark infringement, trademark dilution, or "cybersquating." We argue, based again on long-standing and uncontroversial precedent in this Circuit, that such an allegation, standing alone, is always insufficient as a matter of law to state a claim upon which relief can be granted. In short, a more substantial factual basis supporting Plaintiff's prayer for transfer or cancellation of such a Domain Name is always required in order to survive a Rule 12(b)(6) dismissal motion.

       This motion is brought on behalf of Defendant Robert Emmert, along with several motions on behalf of several similarly-situated Defendants (the "EFF Defendants"). All of the EFF Defendants are either: (1) fans of Plaintiffs' cars; (2) automotive repair and parts shops that specialize in fixing Plaintiffs' automobiles or helping people to locate used automobiles; or (3) persons such as the two "jaguar" site publishers who are engaged in speech that has nothing whatsoever to do with Plaintiffs and instead relates to the threatened species whose name Plaintiffs have appropriated. The larger question presented by this action, should it go forward, is whether the multitude of different speakers and constituencies who populate the Internet will stand on an equal footing, with fair and equal opportunities to reach their intended audiences, or whether the trademark constituency (relative latecomers to the Internet) – comprised of companies like Ford -- will so come to dominate the Domain Name System that the Internet may evolve in the direction of George Orwell's *Animal Farm*, in which the injunction "all animals are created equal," was amended with the proviso, "but *some* animals are *more* equal than others." Traditionally, trademark law does not permit companies like Ford to control the use of the words that make up its tradenames when those words are used in situations that involve no substantial

danger of confusing the public, are not competitive with Ford and/or are traditionally allowed under the doctrines of fair use and non-trademark use.  No rational basis exists for changing these traditional principles simply because this case is an "Internet case."  Therefore, Ford's attempt to use the novel context of the Internet to seek an exception from traditional and controlling principles of fair use should be rejected.

## STATEMENT OF THE ISSUES PRESENTED

I.   Whether a trademark owner is entitled to force a non-resident Defendant to defend against litigation in the owner's home jurisdiction when the sole alleged evidence of "purposeful availment" is mere <u>visibility</u> of one or more Websites – published elsewhere – <u>from</u> the forum state?

II.  Whether the factual allegations in Plaintiff's Complaint involving <u>this particular Defendant</u>, and Plaintiff's core theory of liability, are legally sufficient to survive dismissal under Fed. R. Civ. P. 12(b)(6), or whether Plaintiff's theory of the case is fundamentally defective as a matter of law?

## STATEMENT OF FACTS

**Background -- The Internet and the Domain Name System:** The Internet is a global meta-network of computer networks, <u>Reno v. ACLU</u>, 521 U.S. 844, 849-53 (1997), defined by the "Internet Protocol" that enables networked computers to exchange information.  No two computers are permitted to have the same "IP address" simultaneously.  Every IP address is a 32-bit number, such as $CF290FCE_{16}$ in Base-16 notation, often expressed as four Base-10 numbers between $0_{10}$ and $256_{10}$, separated by "dots," hence 207.41.15.206 (the IP address for the Eastern District of Michigan Website "server" computer).

Because IP addresses are difficult to remember, long ago, when the National Science Foundation prohibited Internet advertising, network engineers devised the "Domain

Name System" ("DNS").  Id.; see also Name.Space Inc. v. Network Solutions, Inc., 202 F.3d

573, 576-79 (2d Cir. 2000); Management of Internet Names and Addresses, 63 Fed. Reg. 31,741,

31,741-51 (1998).

        Since its inception, the DNS has operated on a first-come, first-served basis.  The

first person to stake a claim to the Domain Name "clue.com" (the registrant -- not Hasbro, which

owns CLUE®) has exclusive right to send and receive [myname]@clue.com electronic mail, and

to publish a Website at www.clue.com.[2]  See Hasbro v. Clue Computing, 66 F. Supp. 2d 117,

132-37 (D. Mass. 1999).  Moreover, at least since Network Solutions, Inc. ("NSI") assumed

management of the central Registry, the DNS also explicitly operates on an all-you-can-eat basis.

NSI even has a volume discount program.  See

http://www.networksolutions.com/catalog/volumediscount/.

        Each Domain Name is unique.  In the ".com" namespace all the good names are

already taken.  However, the designers of the DNS were engineers whose computer commands

and filenames were sensitive even to one-character differences in spelling or syntax.  Likewise,

the DNS also is sensitive even to one-character differences.  See, e.g., Brookfield Comm'n Inc. v.

West Coast Entertainment, 174 F.3d 1036, 1055 n.18, 1066 (9th Cir. 1999) ("Even though

["MovieBuff"] differs from 'Movie Buff' by only a single space, that difference is pivotal"

because "[t]he term 'Movie Buff' is a descriptive term, which is routinely used in the English

language.").

---

[2] Ford's counsel apparently misunderstand the difference between the Web and the Internet – which emphatically are not the same thing.  The Domain Name System predates the invention of the World Wide Web (which was invented by Tim Berners-Lee, at the European Particle Physics Laboratory CERN, in 1991 – and which patentable technology Berners-Lee and CERN bestowed on the world completely free of charge and without any licensing obligations) by over a decade.  Domain Names are, and have for some time, been used for many other functions than World Wide Web sites.

4

As the Internet opened to commerce, differences of opinion developed -- between commercial newcomers and many other established Internet constituencies -- concerning the interplay between trademarks and the Domain Name System.  Additionally, in a few instances that were publicized with much fanfare, individuals such as Dennis Toeppen registered domain names identical to famous trademarks and then approached the trademark owners to ask for thousands of dollars in exchange for the transfer of these Domain Names.  The actions of Dennis Toeppen and others who attempted to profit from the sale of trademark-identical domain names to the owners of the marks, came to be known as "cybersquatting."  Lawsuits triggered by "cybersquatting" -- such as Panavison v. Toeppen -- were quickly and effectively resolved in favor of the trademark owners.   Subsequently, however, Congress also passed the "Cybersquatting Act" used by Plaintiffs in this lawsuit.  The "Cybersquatting Act" generated some degree of controversy, and was opposed by some who shared the view that it was vague, unnecessary and duplicative of existing law.  Nevertheless, the Cybersquatting Act was passed as part of the 1999 Omnibus Appropriations Act, and was signed into law by the President along with the rest of the Federal Budget for FY2000.

The historically-recognized line where mere lawful registration of a Domain Name becomes so-called "cybersquatting" is when (1) a trademark-identical Domain Name is registered (2) for no other purpose than (3) to be offered for sale (4) to the owner of a corresponding trademark (5) for a significant premium – as in Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998).  In other cases, Lanham Act violations have been found in cases where (1) a direct competitor, (2) registers a Domain Name identical to the trade-name of a competitor, and either (3)(a) deliberately withholds the trademark-identical Domain Name to

5

prevent the direct competitor from establishing as effective an online presence, see Sporty's Farm, LLC v. Sportsman's Market, 202 F.3d 489 (2nd Cir. 2000), or alternatively, (3)(b) re-points the trademark-identical domain name to the registrant's own competing website.  Washington Speaker's Bureau v. Leading Authorities, 33 F. Supp. 2d 488 (E.D. Va. 1999).

The present litigation involves no allegations whatsoever of any comparable so-called "bad faith" conduct by any Defendant, let alone any allegations specifically addressing the unique situation of the particular Defendant who seeks dismissal in this motion.  In fact, Ford has completely failed here to distinguish among the unique circumstances of any of the Defendants named in the Complaint.  Most importantly, Ford already owns the Domain Names for its tradenames:  < Ford.com >, < Volvo.com >, < Jaguar.com > and < Astonmartin.com >.  Ford's claims are based entirely on the use of Plaintiffs' tradenames within *other* domains by persons who are not their competitors and who are not engaged in selling cars.

In applying both the Lanham Act and the new ACPA, courts have repeatedly recognized that registration alone of an Internet Domain Name (even a trademark-identical name) does not (especially given the ubiquity of trademarks that seek to appropriate common words out of the language)[3] automatically infringe any right of a trademark owner.  Juno Online Servs., L.P. v. Juno Lighting, Inc., 979 F. Supp. 684, 691 (N.D. Ill. 1997) ("bare registration" of Domain Name non-infringing); Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp. 949, 956-57 (C.D. Cal. 1997) (same), aff'd, 194 F.3d 980 (9th Cir. 1999).  Nor

---

[3] Playboy Enters., Inc. v. Netscape Comm'n Corp., 55 F. Supp. 2d 1070, 1074 (C.D. Cal. 1999) ("[T]he holder . . . may not remove a word from the English language merely by acquiring trademark rights in it."), aff'd, 202 F.3d 278 (9th Cir. 1999) (table); see also Hasbro v. Clue Computing, 66 F. Supp. 2d 117, 133 (D. Mass. 1999) ("Holders of a famous mark are not automatically entitled to use that mark as their domain name; trademark law does not support such a monopoly.  If another Internet user has an innocent and legitimate reason for using the famous mark as a domain name and is the first to register it, that user should be able to use the domain name.").

does the use of a Domain Name identical even to a "famous" trademark to publish a Website necessarily trigger any Lanham Act remedy. <u>Hasbro</u>, 66 F. Supp. 2d at 133.

**Facts Specific to Defendant Robert Emmert.** Defendant Robert Emmert, owner of the Domain Name < volvoguy.com >, has published a Website using that address since 1998.[4] Decl. of Robert Emmert ¶ 3 (Oct. 31, 2000) ("Emmert Decl."). Mr. Emmert, a professional mechanic by trade and a specialist in servicing Volvo automobiles, has been commonly known for many years within his community of Santa Cruz, California, as "the Volvoguy," and some customers have taken to referring to him by that name. Emmert Decl. ¶ 4. The Volvoguy Website does not enable visitors to buy or sell any goods or services. <u>Id</u>. ¶ 3. The Website only contains general information about Defendant's business, an automotive repair shop. <u>Id</u>. The Website is published exclusively on a "server" computer physically located in the State of California. <u>Id</u>. ¶ 15. Additionally, Mr. Emmert is a resident of the State of California, has never visited or lived in the State of Michigan, has never transacted any business in the State of Michigan, and has never had any other contact with the State of Michigan. <u>Id</u>. ¶¶ 6 – 15, 17, 18.

Clearly, the Plaintiffs did not properly investigate the facts involving Defendant Robert Emmert, or attempt to determine whether any legitimate basis existed to name <u>this</u> Defendant as a Defendant. Even the most cursory investigation of the facts would have revealed that there is no good-faith factual or legal basis for Plaintiffs to have named Mr. Emmert in this

---

[4] Truthful advertisement by an independent mechanic that the mechanic is qualified to repair "Volvo" automobiles is a non-trademark or "nominative" use of the brand name, which has long been regonized as perfectly legitimate and non-confusing. <u>Volkswagenwerk A.G. v. Church</u>, 411 F.2d 350, 352 (9th Cir. 1969) (repair services); <u>Patmont Motor Werks, Inc. v. Gateway Marine, Inc.</u>, No. 96-2703, 1997 WL 811770, at *3-*4 & n. 5 (N.D. Cal. Dec.18, 1997) (used vehicle sales); <u>Hypertherm, Inc. v. Precision Prods., Inc.</u>, 832 F.2d 697, 700-01 (1st Cir. 1987) (compatible non-patented replacement parts or accessories); <u>New Kids on the Block v. News Am. Publ'g</u>, 971 F.2d 302, 306 (9th Cir. 1992) (leading decision on "nominative fair use"); <u>Ford Motor Co. v. Lane</u>, 67 F. Supp. 2d 745, 751-54 (E.D. Mi. 1999) (news reporting and commentary).

action.

Plaintiff's claims against Defendant Robert Emmert are subject to dismissal for two reasons: (1) Defendant is not subject to personal jurisdiction in Michigan, and (2) Plaintiff's substantive allegations in the Complaint concerning this particular Defendant are deficient as a matter of law to state a claim upon which relief can be granted and are subject to dismissal under FED. R. CIV. P. 12(b)(6).

## ARGUMENT AND AUTHORITIES

I.  **Defendant Robert Emmert Must be Dismissed from this Litigation Because Mr. Emmert Is Not Subject to Personal Jurisdiction In Michigan.**

Plaintiffs bear the sole burden of establishing the factual foundation for personal jurisdiction over any of the Defendants. Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). With respect to Defendant Robert Emmert, Plaintiffs cannot possibly satisfy that burden and all claims against Mr. Emmert filed in Michigan therefore must be dismissed.

In order to establish personal jurisdiction, Plaintiffs must satisfy two separate and distinct requirements. Green v. Wilson, 455 Mich. 342, 348-51 & nn.4-6, 565 N.W.2d 813, 815-17 & nn.4-6 (1997) (holding Michigan "Long-Arm Statute" and Federal Due Process analyses cannot be collapsed into a single inquiry); Neogen Corp. v. Neo Gen Screening, Inc., 109 F. Supp. 2d 724, 727 (W.D. Mi. 2000); Neighbors v. Penske Leasing, Inc., 45 F. Supp. 2d 593, 597 (E.D. Mi. 1999). Plaintiffs have the burden of establishing both (1) that one or more of the factual predicates necessary to trigger the Michigan Long-Arm statute[5] have been satisfied with

---

[5] MICH. COMP. L. ANN. § 600.705 (specific personal jurisdiction over individuals); MICH. COMP. L. ANN. § 600.715 (corporations). The issue of "general jurisdiction," as opposed to "specific jurisdiction," need not be addressed because Defendant Robert Emmert obviously cannot have sufficient jurisdictional contacts with Michigan to satisfy the Due Process requirements for general personal jurisdiction and Plaintiffs do not attempt to assert any general

sufficient admissible evidence, and (2) that the exercise of personal jurisdiction by a Michigan court over <u>this Defendant</u> must be consistent with the dual Due Process requirements of "purposeful availment," and "fair play and substantial justice." <u>Id.</u>; <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958); <u>International Shoe Co v. Washington</u>, 326 U.S. 310, 316 (1945); <u>Winfield Collection, Ltd. v. McCauley</u>, 105 F. Supp. 2d 746, 748-49 (E.D. Mi. 2000). If either Due Process or the Long-Arm Statute is not satisfied, dismissal is mandatory. <u>Id.</u>

When faced with a properly supported Rule 12(b)(2) motion, the Plaintiffs must set forth sufficient facts establishing personal jurisdiction. <u>Neighbors</u>, at 595; <u>see also</u> <u>Kerry Steel, Inc. v. Paragon Indus.</u>, 106 F.3d 147, 152-53 (6th Cir. 1997). Plaintiffs are not permitted to rest on pleadings alone, but must come forward with specific evidence in admissible form that, if believed, would be sufficient to support the exercise of personal jurisdiction.[6] <u>Theunissen v. Matthews</u>, 935 F.2d 1454, 1458 (6th Cir. 1991); <u>Hi-Tex, Inc. v. TSG, Inc.</u>, 87 F. Supp. 2d 738, 741-42 (E.D. Mi. 2000). If the respective affidavits of the parties directly controvert one another, the Court may abuse its discretion by attempting to resolve jurisdiction on the affidavits alone, as opposed to holding an evidentiary hearing to resolve material factual disputes by a preponderance of the evidence. <u>Theunissen</u>, at 1465.

**A.**    **The Michigan Long-Arm Statute Is Not Satisfied.**

None of the factual predicates required by the Michigan Long-Arm Statute are

---

jurisdiction theory. <u>See</u> <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 & nn. 8-9 (1984) (discussing standards for specific and general jurisdiction, respectively).

[6] Alternatively, if the Court elects to hold an evidentiary hearing, as permitted in Rule 12(d), Plaintiff not only must meet this burden, but must also carry a burden of persuasion that the predicate facts supporting personal jurisdiction must be established by a preponderance of the evidence. <u>Neighbors</u>, at 595 n.2; <u>Theunissen</u>, 935 F.2d at 1465. Consistent with Rule 12(d), all of the Defendants represented by EFF respectfully pray for a pretrial hearing and determination of all issues in this Motion to Dismiss.

satisfied.  As indicated previously, Mr. Emmert is a resident of the State of California, has never

visited or lived in the State of Michigan, has never transacted any business in the State of

Michigan, and has never had any other contact with State of Michigan.  Emmert Decl. ¶¶ 6 – 15,

17, 18.  Accordingly, dismissal based on the complete absence of factors identified in the Long-

Arm Statute has been properly supported by first-hand and admissible evidence.  Thus, the

burden is on Plaintiffs to respond with <u>Defendant-specific</u> and admissible evidence.  In the

absence of a proper and sufficient evidentiary showing, all claims against Mr. Emmert must be

dismissed because the long-arm statute is not satisfied.

  Plaintiff's Complaint improperly attempts to circumvent the requirements of the

Long-Arm Statute by seeking to conflate two completely different things: (a) the <u>mere visibility</u>

of a Website <u>from</u> Michigan, when the server computer is (as Plaintiffs must concede) located

elsewhere,[7] with (b) the <u>act of publication</u> of the Website on a server computer physically located

in Michigan.  All five Courts of Appeal examining the issue of "jurisdiction-by-Website" have

squarely rejected Plaintiff's approach.  <u>GTE New Media Servs. v. Bellsouth Corp.</u>, 199 F.3d

1343, 1349 (D.C. Cir. 2000)[8] (Edwards, C.J., Randolph, and Sentelle, JJ.) ("personal jurisdiction

surely cannot be based solely on the [mere] ability of [Michigan] residents to access the

defendants' Websites,[9] for this does not by itself show any persistent course of conduct by the

---

[7] As mentioned previously, Mr. Emmert's Website is and always has been published and maintained on a server
computer in California, never in Michigan.  <u>Emmert Decl.</u> ¶ 16.

[8] Examined from <u>viewers</u>' perspective, the "Yellow Pages" Website in <u>GTE New Media</u> was found to be "'highly
interactive' . . . and significantly commercial in both quality and nature."  <u>GTE</u>, 199 F.3d at 1349.  But mere
"accessibility" should never be sufficient to confer personal jurisdiction – even for a "highly interactive,"
"commercial" Website like the Website in <u>GTE</u>.  <u>GTE</u>, at 1349-50.

[9] Unlike telephone numbers, the IP addresses of visitors accessing Websites have no geographic "area codes,"
making it impracticable to block access geographically.  <u>Hasbro v. Clue Computing</u>, 994 F. Supp. 34, 42 (D. Mass.

defendants in [Michigan]"); Soma Medical Intern. v. Standard Chtd. Bank, 196 F.3d 1292, 1297-99 (10th Cir. 1999); Mink v. AAAA Development, LLC, 190 F.3d 333 (5th Cir. 1999); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997); Bensusan Restaurant Corp. v. King, 126 F.3d 25, 28-29 (2nd Cir. 1998). "Access to a Website reflects nothing more than a[n] [unsolicited] telephone call by a [Michigan] resident to the Defendants computer servers, all of which apparently are operated outside [Michigan]." GTE, 199 F.3d at 1349-50.

Not only have all the Websites at issue – specifically including the Great Domains Website and any Website published by Mr. Emmert -- all been published out-of-state, but it is also undisputed that no part of the Domain Name registration itself ever took place in Michigan, since the Registrar also is located out-of-state. See America Online, Inc. v. Huang, 106 F.Supp.2d 848, 857-59 (E.D. Va. 2000); Heathmount A.E. Corp v. Technodome.Com, 106 F.Supp.2d 860, 865-66 (E.D. Va. 2000) (Network Solutions is located in Herndon Virginia, and the mere registration of a domain name through NSI does not supply "minimum contacts" in Virginia in any event).

Likewise, this Court, too, in Hi-Tex, Inc. v. TSG, Inc., 87 F. Supp. 2d 738, 743 (E.D. Mi. 2000), has adopted persuasive reasoning that is fully consistent with GTE, Soma, Mink, Cybersell, and Bensusan that "participation" in a Website visible from Michigan does not support Michigan personal jurisdiction:

> Furthermore, even assuming that defendant authorized the aforementioned Internet site, [FN5] participation in a website, without more, is an insufficient basis for exercising personal jurisdiction. See, e.g., Mink v. AAAA Dev., LLC, 190 F.3d 333 (5th Cir.1999).
>
> FN5. Defendant contends that it has never authorized any entity to

---

1997) (recognizing that "this option of bypassing particular regions is not . . . available for Web site providers.").

11

post information regarding it or its subdivisions on any website. . . .

Hi-Tex, 87 F. Supp. 2d at 743. Accordingly, whether Plaintiff's jurisdiction theory depends on (1) alleged publication of a passive Website by Defendant Robert Emmert on an out-of-state server computer, or (2) alleged "participation" in the Great Domains Website – which everyone agrees is published exclusively out-of-state and not in Michigan – either way, such attenuated so-called "contacts" are insufficient as a matter of law to establish personal jurisdiction in Michigan. Id.; GTE, 199 F.3d at 1349-50; Cybersell, Inc., 130 F.3d at 419-20; Bensusan, 126 F.3d 28-29.

In short, Plaintiff is on the wrong side of the "jurisdiction-by-Website" issue and Plaintiff has no factual basis whatsoever to claim that Defendant Robert Emmert is subject to Long-Arm jurisdiction in Michigan.[10]

**B.     The Exercise of Personal Jurisdiction over Defendant Robert Emmert Would Also Violate Due Process.**

"[T]he constitutional touchstone" of due process "remains whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985), which requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 475. This test requires purposeful action

---

[10] Moreover, since the test of "minimum contacts" is the same whether Plaintiff seeks to proceed *in personam* or *in rem*, see Shaffer v. Heitner, 433 U.S. 866 (1977), Plaintiff also may not proceed against the Defendant's Domain Name on an *in rem* theory in Michigan. Such a theory is foreclosed by statute in any event. An *"in rem* civil action" under section 1125(d)(2) may only be filed "in the judicial district in which the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located," 15 U.S.C. § 1125(d)(2)(A), which necessarily means the Eastern District of Virginia, not the Eastern District of Michigan. Since no Domain Name Registrar is located in Michigan, and the ACPA makes such presence a necessary prerequisite for subject-matter jurisdiction under the *in rem* section, the Eastern District of Michigan necessarily lacks subject-matter jurisdiction to entertain any *in rem* claim under the ACPA.

by the defendant himself.  Asahi Metal Indus. Co. v. Superior Ct. of Cal., 480 U.S. 102, 109

(1987) (citing Burger King, at 476).

Most importantly, "mere 'unilateral activity'" of forum-state residents "'cannot

satisfy the requirement of contact with the forum state.'" World Wide Volkswagen Corp. v.

Woodson, 444 U.S. 286, 298 (1980) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Rather, the Sixth Circuit has articulated a three-part test for whether specific *in personam*

jurisdiction meets the strictures of Due Process:

   (1)   **Purposeful availment** -- "the defendant must purposely avail himself of the
         privilege of acting in the forum state;"

   (2)   **Relatedness** – "the cause of action must arise from the defendant's [forum-state]
         activities;"

   (3)   **Reasonableness** (also called "fair play and substantial justice") – "the defendant .
         . . must have a substantial enough connection with the forum to make the exercise
         of the jurisdiction over the defendant reasonable."

Calphalon Corp. v. Rowlette, ___ F. 3d ___, 2000 WL 126381, at *2 - *3 (6th Cir. Sept. 8, 2000);

Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996); Winfield Collection, Ltd. v.

McCauley, 105 F. Supp. 2d 746, 748-49 (E.D. Mi. 2000).

The Plaintiffs' factual allegations presented in their pleadings do not provide the

predicate necessary to establish that Defendant Robert Emmert has sufficient jurisdictional

contacts with Michigan to meet the purposeful availment requirement.  Additionally, Mr.

Emmert has introduced specific factual information that demonstrates the purposeful availment

requirement is not satisfied.

Next, the Plaintiffs must establish that the causes of action they allege arose from

13

Mr. Emmert's activities within the State of Michigan. Since the record is devoid of any evidence of any forum-specific activity whatsoever by this Defendant, this prong of the three-part test cannot possibly be satisfied.

Finally, it is not necessary to reach the reasonableness prong because the first two prongs are not satisfied. But even if reasonableness must be addressed, forcing Mr. Emmert to defend himself against litigation in Michigan – especially when Plaintiffs are perfectly capable of appearing and presenting their claims in the Northern District of California – clearly involves an unreasonable and disproportionate burden, that is not justified by any necessities in this case.

II.    **All Claims Against Defendant Robert Emmert Must Also Be Dismissed Because Plaintiff Has Not Set Forth Sufficient Defendant-Specific Allegations To Provide <u>Notice What Is Alleged Or To State Any Claim Upon Which Relief May Be Granted.</u>**

At the outset, it is important to keep the relevant terminology straight – there is a critical difference between "Cybersquatting" (for example, the improper conduct involving trademark-identical Domain Names addressed in the <u>Toeppen</u>, <u>Sporty's Farm</u>, and <u>Washington Speakers</u> cases, and also the subject of the "Anticybersquatting" amendments added to the Lanham Act in 1999), and "Trademark Cyberpiracy" – a term that should properly be used to refer to the improper and parasitic practice of the owners of registered or unregistered trademarks filing pretextual lawsuits in an unlawful effort to extort the transfer of Internet addressing rights previously and legitimately registered and/or used by others.

At least with respect to <u>this particular Defendant</u>, only the latter (abuse of the legal system by Ford) and not the former is any matter of concern. In fact, from the face of the Complaint, it is simply impossible to determine what – specifically – Plaintiffs allege that

Plaintiffs believe <u>this particular Defendant</u> did wrong.  Instead, the Complaint is devoid of Defendant-specific factual detail, depending instead on conclusory allegations that all "Defendants" -- collectively -- are (in Plaintiffs' minds) guilty of "cybersquatting" (Count I), "Dilution" (Count II), and "Trademark Infringement" and "False Designation of Origin" (Counts III and IV).

It is black-letter law that a Complaint consisting of bare conclusions[11] cannot survive dismissal under Rule 12(b)(6).  The Sixth Circuit has repeated again and again the stricture that pleadings consisting of bare legal conclusions uniformly fail to state a claim upon which relief can be granted and are therefore subject to dismissal.  <u>Gregory v. Shelby County, Tenn.</u>, 220 F.3d 433, 446 (6th Cir. 2000) ("We need not accept as true legal conclusions or unwarranted factual inferences.") (citing <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987)); <u>Mixon v. State of Ohio</u>, 193 F.3d 389, 400 (6th Cir. 1999) (same); <u>Begala v. PNC Bank, Ohio, N.A.</u>, 214 F.3d 776, 779 (6th Cir. 2000) ("more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements") (citing <u>Scheid v. Fannie Farmer Candy Shops</u>, 859 F.2d 434, 436 (6th Cir. 1988), and 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357, at 596 (1969)); <u>Claybrook v. Birchwell</u>, 199 F.3d 350, 353 n.1 (6th Cir. 2000) ("A court is not bound to accept alleged legal conclusions or unwarranted factual inferences.") (citing <u>Morgan</u>, 829 F.2d at 12).

In short, although a court ruling on a 12(b)(6) motion "must accept all **well-**

---

[11] <u>E.g.</u> "Defendants' actions evidence a bad faith intent to profit from the registration, trafficking, and/or use of the Plaintiffs' Trademarks in Internet Domain Names," ¶ 117, "Defendants unauthorized registration . . . dilute[s] the distinctive quality of and tarnish[es] the famous Plaintiffs' trademarks," ¶ 124, "intentionally, knowingly, and willfully infringed Plaintiffs' Trademarks," ¶ 128, "have used a false designation of origin that is likely to cause mistake . . .," ¶ 131, which paragraphs do little more than regurgitate statutory language without any <u>Defendant-specific</u> allegations (anywhere in the Complaint) of any facts whatsoever to support such legal conclusions or to

**pleaded** allegations as true," Albright v. Oliver, 510 U.S. 266, 114 S. Ct. 807, 810 (1994)

(emphasis added), and view them favorably to the Plaintiff, e.g., Cooperman v. Individual, Inc.,

171 F.3d 43, 47 (1st Cir. 1999) (citing Gross v. Summa Four, Inc., 93 F.3d 987, 991 (1st Cir.

1996)) nevertheless, a court is " . . . required to accept only well-pleaded facts as true, not the

legal conclusions that may be alleged or that may be drawn from the pleaded facts." Blackburn

v. Fisk University, 443 F.2d 121, 124 (6th Cir. 1971) (emphasis added).

At best, all that can be determined is that Plaintiffs allege that (1) Defendant

Robert Emmert is the registrant for the Domain Name < volvoguy.com > (which obviously is

capable of numerous possible lawful and/or "fair uses," – including Mr. Emmert's actual

nominative fair use of telling customers truthfully that he is a skillful and independent specialist

who repairs Volvo automobiles) and that Plaintiffs also allege that (2) the Domain Name

somehow came to be listed on the Great Domains website.  Most notably, Plaintiffs do not even

allege that it was Mr. Emmert (and not some other person or entity – such as a prior registrant)

who was personally responsible for the Great Domains listing.  Nor do Plaintiffs provide any

other information in their pleadings about how (if at all) this particular Defendant used the

domain name, or any other facts and circumstances surrounding the registration (other than the

bare allegation of a listing on Great Domains) that Plaintiffs contend constitute evidence of "bad

faith" "dilution" or "infringement."

In short, Plaintiffs ask this Court to adopt what would be tantamount to a *per-se*

rule of law that any listing of any Domain Name on a marketplace Website like Great Domains

(whether or not the current registrant of the Domain Name, and not a prior registrant, a stranger,

---

provide any notice whatsoever to this Defendant about what, specifically, Defendant is alleged to have done wrong.

or somebody else entirely actually posted the listing) – if objected to after-the-fact by any trademark owner -- should automatically be treated as "bad faith" on the part of the registrant and should automatically trigger not only the transfer of the Domain Name in question, but also punitive damages in an amount as great as $100,000.

Plaintiff's position is not legally required by any aspect of the Lanham Act – including the recent amendments in 1999 – and is contrary to law, fairness, and common sense. Moreover, since the applicable law certainly does not support any *per-se* rule that the bare allegation of a listing on Great Domains automatically constitutes "bad faith," trademark infringement, or dilution, a Complaint consisting of this bare factual allegation and nothing more (or at least nothing more that is even remotely specific to Mr. Emmert), is necessarily insufficient to state a claim upon which relief can be granted.

Thus, even assuming the truth (as this Court must) of the allegation that this particular listing was visible at one time or another on Great Domains, a Great Domains listing alone (in the absence of any other defendant-specific circumstances) is necessarily insufficient to trigger any Lanham Act remedy.

Because Plaintiff fails to allege sufficient facts against this Defendant to support any legal remedy, all claims against this Defendant must be dismissed.

## CONCLUSION

For the reasons set forth above, all counts asserted against Defendant Robert

Emmert should be dismissed either under Rule 12(b)(2) of the Federal Rules of Civil Procedure,

for lack of personal jurisdiction, and under Rule 12(b)(6) for failure to state any claim upon

which relief can be granted.

ROBERT EMMERT,

By counsel,

Dated: November 1, 2000

Eric C. Grimm (P58990)
CYBERBRIEF, PLC
320 South Main Street
Ann Arbor, MI 48107-7341
734-332-4900
fax 734-332-4901

David H. Lowenschuss (P53767)
David H. Lowenschuss P.L.C.
2020 Shadford Road
Ann Arbor, MI 48104
734-623-9877

Cindy Cohn
Legal Director
ELECTRONIC FRONTIER FOUNDATION
1550 Bryant Street, Suite 725
San Francisco, CA 94103
415-436-9333

COUNSEL FOR ELECTRONIC
FRONTIER FOUNDATION AND
DEFENDANTS ROBERT EMMERT,
PAUL BROWN, ALFONSO FIERO,
JOHN HALL, WALLACE RAWSON,
RAD*TECH, and TOM COOPER.

18

## CERTIFICATE OF SERVICE

I certify that I served (1) the Motion of Robert Emmert to Dismiss, (2) the foregoing Defendant's Brief in Support of Robert Emmert's Motion to Dismiss, and (3) the Declaration of Robert Emmert In Support of Defendant's Motion to Dismiss, on the following counsel of record, by first class, mail, postage prepaid, by depositing these papers with the United States Postal Service on or before Thursday, November 2, 2000:

William A Sankbeil, Esq.
Kerr, Russell, & Weber, PLC
500 Woodward Ave., Suite 2500
Detroit, MI 48226

Robert R. Yoder, Esq.
5080 North 40th Street
Suite 335
Phoenix, AZ 85018

Richard Phillips, Esq.
Mikkelborg, Broz, Wells & Fryer
Suite 3600
1001 Fourth Avenue
Seattle, WA 98154

Shelly M. Liberto, Esq.
3 Hutton Centre Drive
Suite 900
Santa Ana, CA 92707

Kathleen A. Lang, Esq.
Dickinson Wright, PLLC
500 Woodward Ave.
Suite 4000
Detroit, MI 48226

David H. Lowenschuss, Esq.
David H. Lowenschuss, P.L.C.
2020 Shadford Road
Ann Arbor, MI 48104

Thomas Pezzetti, Jr., Esq.
Smith & Johnson
Six Hundred Three Bay Street
P.O. Box 705
Traverse City, MI 49685-0705

Lisa S. Gallerano, Esq.
Akin, Gump, Strauss, Hauer & Feld
1700 Pacific Avenue
Suite 4100
Dallas, TX 75201

Ronald Reagan, Esq.
140 Court Avenue
Sevierville, TN 37862

Luis Miguel Acosta, Esq.
Plunkett & Cooney
505 North Woodward Ave.
Suite 3000
Bloomfield Hills, MI 48304

Gregory D. Phillips, Esq.
Howard, Phillips & Anderson
560 East 200 South, Suite 230
Salt Lake City, UT 84102

Cindy Cohn, Esq.
Electronic Frontier Foundation
1550 Bryant Street, Suite 725
San Francisco, CA 94103

19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED