IN THE UNITED STATES DISTRICT COURT **ORIGINAL**
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, a Delaware
corporation, JAGUAR CARS LIMITED, a
United Kingdom company, ASTON
MARTIN LAGONDA LIMITED, a United
Kingdom company, and VOLVO
TRADEMARK HOLDING, a corporation
organized under the laws of Sweden,

              Plaintiffs,

v.

GREATDOMAINS.COM, INC., a California
corporation, et al,

              Defendants.

_____/

Civil No. 00-71544

Judge Gerald E. Rosen

U.S. DIST. COURT CLERK
EASTERN DIST. MICHIGAN
DETROIT

2000 DEC -7 P 4:31

**FILED**

**PLAINTIFFS' OPPOSITION TO RULE 12(b) MOTIONS TO DISMISS FILED BY
DEFENDANTS JOHN D. HALL, ALFONSO FIERO, ROBERT EMMERT, PAUL A.
BROWN, THOMAS COOPER, AND WALLACE RAWSON/RAD\*TECH**

78

## STATEMENT OF ISSUES PRESENTED

1.    Does this Court have personal jurisdiction over the moving Defendants?

2.    Does the Complaint state a valid cause of action against these Defendants?

i

## INDEX OF AUTHORITIES

**Cases:**

American Greetings Corp. v. Cohn, 839 F.2d 1164, 1170 (6th Cir. 1988)................. 15

Brabeau v. SMB Corp., 789 F.Supp. 873 (E.D. Mich. 1992)..................................... 8

Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984) .............................................. 12

Cello Holdings L.L.C. v. Cello Music & Film Systems, Inc.
   89 F. Supp.2d 464, 470 (S.D. N.Y. 2000)................................................................ 13

Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996)........................... 10, 15, 16

Conley v. Gibson, 355 U.S. 41, 47 (1957).................................................................. 17

Cooper v. Parrish, 203 F.3d 937, 944 (6th Cir. 2000)................................................ 19

Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club,
   34 F.3d 410 (7th Cir. 1994)..................................................................................... 12

Inset Systems, Inc. v. Instruction Set, Inc., 937 F. Supp.
   161, 163-64 (D. Conn. 1996) ................................................................................... 9

International Shoe Co. v. State of Washington, 326 U.S. 310, 316,
   66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)..................................................................... 10

Lanier v. American Board of Endodontics, 843 F.2d 901, 905-06 (6th Cir. 1988) .... 9

Panavision International v. Toeppen, 141 F.3d 1316 (9th Cir. 1998)........................... 12, 13

Park Inns International, Inc. v. Pacific Plaza Hotels, Inc.,
   5 F.Supp.2d 762, 764 (D. Ariz. 1998) ..................................................................... 9

Sifers v. Horen, 385 Mich. 195, 199 n.2, 188 N.W.2d 623 (1971)............................. 9

Southern Machine Co. v. Mohasco Indus., 401 F.2d 374, 380 (6th Cir.1968).......... 10

Telco Communications v. An Apple A Day, 977 F. Supp. 404, 406 (E.D. Va. 1997) 9

Theunissen v. Matthews, 935 F.2d 1454 (6th Cir. 1991)............................................ 5, 9, 15, 16

ii

Weinstein v. Norman M. Morris Corp., 432 F. Supp. 337 (E.D. Mich. 1977)..........   7

Westlake v. Lucas, 537 F.2d 857 (6th Cir. 1976). ......................................................   17

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ................   13

Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119,
    1122 (W.D. Pa. 1997) .........................................................................................   9

**Statues:**

15 U.S.C. § 1125(d)(1)(A)....................................................................................   4
Fed.R.Civ.P. 8(a) .................................................................................................   17
Fed.R.Civ.P. 12(b)(6)...........................................................................................   17

Plaintiffs Ford Motor Company ("Ford"), Jaguar Cars Limited ("Jaguar"), Aston Martin Lagonda Limited ("Aston Martin"), and Volvo Trademark Holding AB ("Volvo") (collectively "Ford" or "Plaintiffs"), respectfully submit this Memorandum in Opposition to the Rule 12(b) Motions To Dismiss filed herein by Defendants John D. Hall, Alfonso Fiero, Robert Emmert, Paul A. Brown, Thomas Cooper, and Wallace Rawson/RAD*TECH (collectively the "Moving Defendants").

## INTRODUCTION

This is an action arising out of an extensive scheme of cyberpiracy aimed at Ford and its world-famous trademarks. The Moving Defendants, and other defendants named in Ford's Complaint, have unlawfully attempted to misappropriate the goodwill that Ford has developed in their trademarks by (a) registering Internet domain names misappropriating Ford's trademarks; and (b) attempting to auction the domain names to the highest bidder through an interactive website available to consumers in Michigan and throughout the world. Such conduct was directed at Ford, whose principal place of business is in this district. Moreover, Ford's injury suffered within this district gives rise to Ford's claims for cyberpiracy under the Anticybersquatting Consumer Protection Act ("ACPA") and for trademark dilution and infringement under the Lanham Act.

Despite Ford's express and clear allegations of their injuries and claims for cyberpiracy, dilution, and infringement, the Moving Defendants contend that the Complaint should be dismissed for lack of personal jurisdiction and for failure to state a claim. Because the Moving Defendants' arguments are all identical, Ford responds to them jointly in this Memorandum.

In support of their personal jurisdiction motion, the Moving Defendants rely primarily on the proposition that the mere use of a domain name for a passive website accessible to Michigan

residents is insufficient to satisfy Due Process. This argument, however, is a straw man. This Court's personal jurisdiction over the Moving Defendants is based not on their "mere use" of passive websites accessible to Michigan residents, but on their active, bad faith attempt to misappropriate the goodwill that Ford has developed in its trademarks by trafficking in domain names that utilize Ford's world-famous trademarks. Such conduct is a blatant violation of the ACPA and of the Lanham Act and clearly supports jurisdiction over the Moving Defendants under case law specifically addressing this issue.

In support of their motions to dismiss for failure to state a claim, the Moving Defendants again misstate the law. Instead of establishing (as they must) that Ford cannot prove any facts that would state a claim under the governing law, the Moving Defendants instead attempt to argue the merits of the case and to inject their own unsupported view of the facts relevant to the merits. This is obviously insufficient on a 12(b)(6) motion. Ford is entitled to all inferences in its favor and the Complaint must be permitted to move forward despite the Moving Defendants' arguments on the merits.

## FACTUAL BACKGROUND

Plaintiffs are the owners of valid and incontestable trademark registrations in the world-famous marks Ford®, Lincoln®, Volvo®, and Jaguar®. McFee Decl. ¶ 5. Plaintiffs have continuously used these trademarks in connection with the promotion, advertising, and sale of automobiles and other products and services since well before the Moving Defendants' registration of their domain names. Id. As a result of Plaintiffs' expenditure of billions of dollars in advertising and promotion, Plaintiffs have established considerable goodwill in their trademarks, and such trademarks have become world famous and distinctive, and have become associated by the consuming public exclusively with Plaintiffs. Id.

2

Despite Plaintiffs' undisputed rights in their world-famous trademarks, the Moving Defendants have attempted to misappropriate the goodwill that Plaintiffs have developed in their marks by registering Internet domain names misappropriating the Plaintiffs' trademarks and trafficking in the domain names with a bad faith intent to profit from Plaintiffs' goodwill. Each of the Moving Defendants attempted to auction off on the Internet website at GREATDOMAINS.COM certain domain names misappropriating Ford's world famous trademarks. Specifically, defendant Robert Emmert registered and has attempted to traffic in the domain name VOLVOGUY.COM, Wagenknecht Decl. ¶ 6; Emmert Decl. ¶ 5; defendant Alfonso Fiero registered and has attempted to traffic in the domain name LINCOLNTRUCKS.COM, id.; Fiero Decl. ¶ 3; defendant Paul A. Brown registered and has attempted to traffic in the domain name JAGUARENTHUSIASTSCLUB.COM, id.; Brown Decl. ¶ 3; defendant John Hall registered and has attempted to traffic in the domain name JAGUARCENTER.COM, id.; Hall Decl. ¶ 3; defendant Wallace Rawson/RAD*TECH registered and has attempted to traffic in the domain names 4FORDPARTS.COM and 4FORDTRUCKS.COM, id.; Rawson Decl. ¶ 3; and defendant Thomas Cooper registered and has attempted to traffic in the domain name VINTAGEVOLVOS.COM, id.; Cooper Decl. ¶ 3.

None of the Moving Defendants has any trademark or other intellectual property rights in any of the trademarks incorporated in the above-noted domain names. McFee Declaration ¶ 7. Similarly, none of the Moving Defendants has ever used any of the trademarks misappropriated in the above-noted domain names as their surname or nickname, and none of the Moving Defendants has ever offered any goods or services under the Plaintiffs' trademarks. Id.

Thus, the Moving Defendants have no good faith interest in registering domain names misappropriating the Plaintiffs' trademarks. Instead, their registration of the domain names at issue

3

was merely the first step in a bad faith scheme to capitalize on and profit from the goodwill developed by Plaintiffs by auctioning the domain names to the highest bidder. The second step was to place the domain names for sale under an interactive auction on the Internet. Each of the Moving Defendants offered their above-mentioned domain names for sale to the highest bidder through the website at GREATDOMAINS.COM. Wagenknecht Decl. ¶ 6.

In so doing, the Moving Defendants engaged in an act of cyberpiracy in violation of the ACPA and of the dilution and infringement provisions of the Lanham Act. Specifically, the Moving Defendants violated Plaintiffs' rights under the ACPA and under the Lanham Act in "trafficking" in domain names incorporating Plaintiffs' world-famous trademarks with a "bad faith intent to profit from" such marks. 15 U.S.C. § 1125(d)(1)(A). The Moving Defendants' conduct had the predictable effect of causing irreparable harm to Ford at its principal place of business in Michigan. As a result of the Moving Defendants' acts of cyberpiracy, Ford's world-famous trademarks have been diluted and infringed, and Ford has been harmed in its own ability to use the Internet to advance its own business purposes. McFee Decl. ¶ 8. Specifically, Internet traffic intended for Ford's official websites is likely to be diverted to websites misappropriating its famous trademarks. Id. In addition, Ford has been prevented from using the domain names registered by the Moving Defendants as links to its own official websites or otherwise. Id.

The Moving Defendants must have reasonably understood that their acts of cyberpiracy would result in an injury felt most directly within the State of Michigan, where Ford maintains its principal place of business. McFee Declaration ¶ 9. After all, the Ford trademarks at issue are some of the most famous trademarks throughout the world, and any value in the domain names registered by the Moving Defendants obviously stems from the goodwill developed by Ford by its investments in its trademarks. Id. at ¶ 9. Accordingly, the Moving Defendants' attempts to traffic in the above-

4

noted domain names are nothing more than a computer-age version of an old business tort trademark and identity theft.

The Moving Defendants surely would not have chosen the domain names at issue were it not for the enormous business-attracting potential of Ford's famous trademarks.  Given these facts, there is no plausible conclusion other than that the Moving Defendants' intentionally directed an act of cybertheft at Ford, which the Moving Defendants knew to be located in Michigan.  Moreover, by attempting to auction off the domain name on the interactive website, GREATDOMAINS.COM, the Moving Defendants also targeted consumers residing in Michigan.

## ARGUMENT

### I.   PERSONAL JURISDICTION IS PROPER

A plaintiff's burden on a 12(b)(2) motion varies depending on the procedure employed in determining jurisdiction.  As the Sixth Circuit stated in Theunissen v. Matthews, 935 F.2d 1454 (6th Cir. 1991), when [p]resented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives:  it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions  Theunissen, 935 F.2d at 1458. However, the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal, and where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal.  Id.

Thus, in sharp contrast to summary judgment procedure, . . . the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal.  Id. at 1459. Instead, the court must accept as true the allegations and materials submitted in support of jurisdiction, and must not credit the contrary allegations made by a defendant to defeat jurisdiction.

5

Id. Only when the plaintiff's alleged facts in total are insufficient to support a finding of personal jurisdiction may the court dismiss a defendant under 12(b)(2).  Id.

The current motions before the Court are presented on the basis of the parties' affidavits. Accordingly, the motions must be denied so long as Ford's factual showing establishes a prima facie basis for personal jurisdiction over the Moving Defendants.1 Ford has easily met this prima facie standard for the reasons set forth below.  Jurisdiction is proper both under Michigan's long-arm statute and under the Due Process Clause.

### A. The Michigan Long-Arm Statute is Satisfied.

The Michigan long-arm statute authorizes jurisdiction over actions arising out of the doing or causing an act to be done, or *consequences to occur*, in the state," or out of the transacting of *any business* within the state.  Mich. Comp. Laws Ann.  600.715 (emphasis added).  Ford has made out a prima facie case showing that jurisdiction is proper under both of these prongs.

#### 1. The Moving Defendants have caused "consequences" in Michigan.

The Moving Defendants make no effort at any substantive discussion of the language of the Michigan long-arm statute.  Rather than discussing the Michigan law, the Moving Defendants rely

---

1       It is early in this lawsuit and Ford has had no opportunity to conduct discovery.  In fact, defendant GreatDomains.com, Inc. ("GreatDomains") has refused Ford's attempts to initiate discovery, insisting that it will not participate in discovery until after defendants' motions to dismiss are resolved.  As a result, Ford's ability to develop a complete record of the basis for personal jurisdiction has been severely impaired; GreatDomains is the entity operating the web site that served as the auctioneer for the domain names in question, and as such it holds crucial information relevant to this matter.  Thus, if there were any question about the propriety of jurisdiction over the Moving Defendants, the proper result would be to order discovery, not to dismiss the action as the Moving Defendants request.

generally on the proposition that courts in other jurisdictions have held that mere access to a "passive Website" is insufficient to establish personal jurisdiction.

This argument is fundamentally flawed in its essential premise. As Ford's affidavits make clear, the Moving Defendants have done much more than operate a "passive Website" that just happens to be visible to Michigan residents. Indeed, the Moving Defendants have actively participated in an active website operated by GreatDomains, which actively offers to sell the domain names at issue to consumers in Michigan and elsewhere through a comprehensive online service. [Wagenknecht Decl. ¶¶ 3-6]  Moreover, in offering the domain names at issue, the Moving Defendants consciously caused "consequences" to Ford in Michigan by misappropriating the goodwill that Ford has developed in its trademarks and by preventing Ford from using the domain names at issue in its own business on the Internet. [McFee Decl. ¶ 8]

These harms to Ford are easily sufficient to establish jurisdiction under the "consequences" prong of the Michigan statute. As discussed in further detail below in the section regarding federal due process, Ford's action against the Moving Defendants is based on theories akin to business torts, namely trademark infringement, dilution, and cyberpiracy.  These types of injuries fall within the coverage of Michigan's long-arm statute as it relates to tort claims. See, e.g., Weinstein v. Norman M. Morris Corp., 432 F. Supp. 337 (E.D. Mich. 1977) (antitrust and unfair competition claims constitute a form of tort under Michigan long-arm statute).  Ford has sufficiently alleged in its Complaint and in the submissions with this Opposition that the Moving Defendants' registration and attempted sale of domain names misappropriating Ford's valuable trademarks has injured Ford and that the injury is felt in Michigan more than any other place. The plain language of the Michigan long-arm statute is designed to bring within the jurisdiction of the Michigan courts any defendant that, through acts taken outside the State of Michigan, nevertheless causes consequences within the

7

state. See Brabeau v. SMB Corp., 789 F.Supp. 873 (E.D. Mich. 1992) (Michigan long-arm statute grants limited jurisdiction over German press manufacturer not doing business in state where Michigan worker suffered injury in Michigan while operating defective press manufactured by defendant outside Michigan and sold to plaintiff's employer in out-of-state transaction). Based on that plain language, it is clear that Michigan's statute covers actions by defendants such as those committed by the Moving Defendants.

### 2.  The Moving Defendants have transacted business in Michigan.

The Moving Defendants also fail to offer any meaningful discussion on the "transacting business" prong of the Michigan statute.  Instead of discussing any cases addressing this prong, the Moving Defendants again fall back on their straw man argument:  that the mere visibility of a website from Michigan is an insufficient basis for establishing jurisdiction.  This argument fails for the reasons noted above.

If the Moving Defendants had bothered to look at the case law interpreting the Michigan statute, they would have found that Ford's theory of personal jurisdiction fits naturally within the broad interpretation that the courts have given to the "transacting business" prong.  Ford has demonstrated at this early stage that the Moving Defendants listed the domain names at issue on the GREATDOMAINS.COM web site an interactive web site that offers buyers and sellers of domain names in Michigan and elsewhere a full spectrum of services to be performed on the web site itself, including escrow services. [Wagenknecht Decl. ¶ 4]  This activity alone satisfies the transacting business prong of Michigan's long-arm statute because the Moving Defendants have, in effect, solicited bids from Michigan residents for the purchase of infringing domain names.

8

Even if no contract or sale with a Michigan resident came to fruition, the long-arm statute is satisfied by any solicitation or activity aimed at entering a business transaction. As the Michigan Supreme Court has stated with respect to the transacting business prong, "[t]he word 'any' means just what it says. It includes 'each' and 'every'. . . . It comprehends the slightest." Theunissen v. Matthews, 935 F.2d 1454, 1464 (6th Cir. 1991) (quoting Lanier v. American Board of Endodontics, 843 F.2d 901, 905-06 (6th Cir. 1988)); see also Sifers v. Horen, 385 Mich. 195, 199 n.2, 188 N.W.2d 623 (1971). Moreover, in Lanier, the Sixth Circuit interpreted the transacting business prong to cover correspondence and the sending of an application (at the plaintiff's request) by a defendant organization located in Illinois to the plaintiff in Michigan, even though the two parties did not complete any business transaction or enter into any contract. See Lanier, 843 F.2d at 905-06.

Under this standard, it is clear even at this stage that the Moving Defendants transacted business in offering to sell the domain names at issue to Michigan residents and did so for the purpose of profiting from the sale. Indeed, this theory of transacting business has been expressly adopted in Internet domain name cases where a defendant uses an interactive website (i.e., a website that is not passive, but where residents of Michigan can engage in transactions on the website). See, e.g., Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1122 (W.D. Pa. 1997) (solicitation of business over web site accessible by Pennsylvania residents constitutes "transaction of business" under Pennsylvania long-arm statute); Telco Communications v. An Apple A Day, 977 F. Supp. 404, 406 (E.D. Va. 1997) (soliciting investment banking business over web site accessible to residents of Virginia meets long-arm definition of doing business); Inset Systems, Inc. v. Instruction Set, Inc., 937 F. Supp. 161, 163-64 (D. Conn. 1996) (advertising continuously on web site accessible in Connecticut satisfies Connecticut long-arm definition of doing business); Park Inns International, Inc. v. Pacific Plaza Hotels, Inc., 5 F.Supp.2d 762, 764 (D. Ariz. 1998) (use of "interactive" web site

9

accessible to Arizona residents and allowing hotel reservations to be made constitutes business activity sufficient to satisfy long-arm statute and due process).  Accordingly, given the very slightest amount of business activity required to satisfy Michigan's long-arm statute, the Moving Defendants' solicitation of bids on the GREATDOMAINS.COM web site from Michigan residents satisfies the requirements of the Michigan statute.2

### B.    Due Process is Satisfied.

Jurisdiction over the Moving Defendants also satisfies Due Process.   The federal constitutional requirement for jurisdiction over the Moving Defendants is well-established.  As the Sixth Circuit stated in Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996), the relevant question is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." Compuserve, Inc. v. Patterson, 89 F.3d at 1263 (quoting International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).  See also Southern Machine Co. v. Mohasco Indus., 401 F.2d 374, 380 (6th Cir.1968). There are three criteria to be satisfied for exercising jurisdiction over the Moving Defendants in this case. Ford needs only to make a prima facie showing as to each:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.   Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

---

2        Moreover, for the reasons noted above, Ford is entitled at a minimum to proceed with discovery on any relevant factual issues relevant to personal jurisdiction.  Thus, if the Court is left with any doubt about whether Ford's affidavits adequately establish that the Moving Defendants caused "consequences" within Michigan, or transacted business within Michigan, such doubts must be resolved not by granting the Moving Defendants' Motion, but by ordering defendants to participate in discovery.

Compuserve, 89 F.3d at 1263. Among the three, the requirement of purposeful availment is "the sine qua non of in personam jurisdiction." Compuserve, 89 F.3d at 1263 (quoting Southern Machine Co., 401 F.2d at 381-82). The three requirements are easily met by the facts alleged in Ford's Complaint and the affidavits submitted with this Opposition.

### 1. The Moving Defendants purposefully directed their activity at Ford in Michigan.

The Moving Defendants again offer no meaningful analysis under the constitutional standard. Instead of addressing the case law under the above standards, the Moving Defendants simply offer their own conclusory assertions that their own affidavits demonstrate the purposeful availment requirement is not satisfied, and that their purportedly limited contacts with Michigan are unrelated to the present litigation. [Memorandum at 14] Defendant Rawson, for example, attests that he has only "sporadically supplied goods and services . . . to fill orders placed by Michigan residents," but that he has no "domicile in the State of Michigan" or any "offices, real estate, bank accounts, or personal property in the State of Michigan." [Rawson Decl. ¶¶ 7, 14, 15] The other Moving Defendants make similar assertions to the effect that they have not retained a domicile or an office in Michigan. [See Emmert Decl. ¶¶ 14, 17-18; Brown Decl. ¶¶ 13, 17-18; Cooper Decl. ¶¶ 14, 16-18; Hall Decl. ¶¶ 9, 19-21; Fiero Decl. ¶¶ 11, 13-14]

Again, however, these assertions simply miss the point of Ford's theory of jurisdiction. The fact that the Moving Defendants may not have a domicile, an office, or some other "continuous and systematic" presence in Michigan simply suggests that the Court may lack "general jurisdiction" over the Moving Defendants. But Ford's theory of jurisdiction is based on the concept of specific jurisdiction, not general jurisdiction. Again, the Moving Defendants' argument is simply a smoke screen.

11

Under the specific jurisdiction framework, the question of purposeful availment is not addressed directly by discussing what the Moving Defendants *do not do* in Michigan. Rather, the question is: What can Ford demonstrate that the Moving Defendants *did* in Michigan *or toward* some person there with the *expectation or intent to cause some consequence* there? Once the issue is properly framed, the answer is quite obvious. The Moving Defendants acted in a way intended to cause an economic injury to Ford in Michigan.

As Ford's prima facie showing demonstrates, the Moving Defendants knew that Ford created and owned the trademarks at issue when they chose and registered the domain names in question. [McFee Decl. ¶ 6] The Moving Defendants also knew that Ford was located in Michigan and that the economic injury caused by their cyberpiracy would be felt by Ford at its principal domicile in Michigan. Id. at ¶ 9.

Contrary to the Moving Defendants' argument, courts have found that defendants have met the purposeful availment requirement by infringing trademarks owned by plaintiffs in the forum state, even though the infringers had no physical presence in the forum states. See, e.g., Panavision International v. Toeppen, 141 F.3d 1316 (9th Cir. 1998) (concluding that infringement case is akin to a tort case); Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club, 34 F.3d 410 (7th Cir. 1994) (observing that injury from infringement of trademark outside Indiana will be felt mainly in Indiana). In both cases, the courts relied on the effects doctrine employed by the Supreme Court in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984).

In Calder, a defamation case filed in California by a California resident against Florida defendants, the Supreme Court held that the defendants' alleged tortious defamation of the plaintiff would be felt in California and that the defendants' publication of statements about the California plaintiff showed a purposeful direction of activity toward the California forum. See Calder, 104

S.Ct. at 1487-88. The Court held that purposeful availment for due process analysis is satisfied by intentional actions, aimed at the forum state or a person there, which cause harm, the brunt of which the defendant knows is likely to be suffered in the forum state. See id., 104 S.Ct. at 1487. "Under the circumstances, petitioners must reasonably anticipate being hauled into court there". Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Under this "effects" theory, courts have held that cyberpiracy of a trademark held by a plaintiff domiciled in a forum state supports personal jurisdiction in that forum. In Panavision, for example, the defendant registered the domain name "Panavision.com," which infringed the registered trademark of the plaintiff. The defendant claimed he did not direct his activity at the forum state, California, because he merely registered a domain name and posted a web site under the domain name. 141 F.3d at 1322. The Ninth Circuit rejected the defendant's argument, however, noting that the record showed the defendant clearly directed injurious and infringing effects at a California victim:

> We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. Cybersell, 130 F.3d at 418. As we said in Cybersell, there must be something more to demonstrate that the defendant directed his activity toward the forum state. Id. Here, that has been shown. Toeppen engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision. *His conduct, as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business and where the movie and television industry is centered.* Under the **"effects test,"** the purposeful availment requirement necessary for specific, personal jurisdiction is satisfied.

Panavision, 141 F.3d at 1322 (emphasis added); see also Cello Holdings L.L.C. v. Cello Music & Film Systems, Inc., 89 F. Supp.2d 464, 470 (S.D. N.Y. 2000) (adopting Panavision's approach to deny defendant's motion to dismiss for lack of personal jurisdiction where plaintiff alleged that defendant engaged in a scheme of "cybersquatting" on the domain name CELLO.COM, explaining

13

that defendant was aware that plaintiff was the registrant of the "Cello" trademark, that plaintiff resided in New York, and thus, that defendant expected, or reasonably should have expected, his actions to have consequence in New York).

The Moving Defendants' activities in this case are identical to the defendants' conduct in the above-cited cases for all relevant purposes. The Moving Defendants knew that their registration of the domain names at issue would cause injury to Ford and that the injury would be most felt in Michigan, where Ford had its principal place of business and where the American automotive industry is centered. The Moving Defendants' intent is evident from the undisputed facts (a) that they attempted to auction the domain names in question to the highest bidder through the GREATDOMAINS.COM interactive website; and (b) that the value of the domain names is due entirely to the goodwill developed by Ford in its trademarks. The Moving Defendants formulated a scheme to register and sell a piece of Ford's trademark goodwill in the form of the domain names at issue. These actions caused an intended injury to an intended victim in a known location Michigan.

Under this set of facts, there is more than a prima facie showing of purposeful availment. There is everything needed to find that the Moving Defendants must reasonably anticipate being haled into court in Michigan.

### 2. Ford's claims arise from the Moving Defendants' actions toward Michigan.

The actions that the Moving Defendants aimed at the forum of Michigan are at the center of Ford's claims. Ford's Complaint is for trademark infringement, dilution, and cyberpiracy, all of which are centered around the Moving Defendants' scheme to register and sell one of Ford's valuable trademarks. [See Complaint ¶¶ 116-32]

14

### 3. This Court's exercise of jurisdiction is reasonable.

The last requirement for jurisdiction that satisfies due process is the reasonableness requirement, or, as the Sixth Circuit has stated, whether the exercise of jurisdiction would "comport with traditional notions of fair play and substantial justice." Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1267-68 (6th Cir. 1996). Where the court finds the first two elements of a prima facie case purposeful availment and a cause of action arising from the defendant's contacts with the forum state then an inference of arises that this third factor is also present. Id. at 1268 (quoting American Greetings Corp. v. Cohn, 839 F.2d 1164, 1170 (6th Cir. 1988)). "[A]n inference of reasonableness arises where the first two criteria are met and . . . only the unusual case will not meet this third criterion." Theunissen v. Matthews, 935 F.2d 1454, 1461 (6th Cir. 1991) (quoting American Greetings, 839 F.2d at 1170).

In this case, Ford has easily made out a prima facie case showing the first two elements are satisfied. Thus, Ford is entitled to an inference that the exercise of jurisdiction is reasonable for purposes of due process.

The Moving Defendants make no effort to rebut this inference of reasonableness; they merely offer the unexplained, naked assertion that requiring them to appear here would "involve an unreasonable and disproportionate burden, that is not justified by the necessities in this case." [Memorandum at 14]  This argument cannot be accepted under the circumstances. Courts have considered several factors in determining reasonableness, including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies. Compuserve, 89 F.3d at 1268. The Moving Defendants' assertion that this litigation is unduly burdensome is belied by the fact that they specifically sought to derive profit from a domain name at the expense of Ford, a Michigan resident.

15

In just such an entrepreneurial context, the Sixth Circuit has rejected the argument that litigation in a plaintiff's forum state is unreasonably burdensome for the defendant. See Compuserve, 89 F.3d at 1268 (jurisdiction is reasonable despite defendant's claim of burden where defendant is entrepreneur seeking to benefit from activities directed at forum state).

Moreover, Ford has a strong interest in gaining redress for the wrongs committed against Ford by all of the defendants in this action that have engaged in substantially the same piracy as the Moving Defendants. Ford intends to demonstrate that each defendant pirated Ford's trademarks through the registration and attempted auction of infringing domain names. This is not a trivial interest of Ford, and Ford should not be denied the opportunity to seek redress for these wrongs in the same action and in the same forum in which the auctioneer, defendant GreatDomains will be required to answer.

In addition, the State of Michigan has an interest in resolving this dispute because it involves a Michigan company's injuries at the hands of defendants who have directed their tortious activity at this forum. See Theunissen, 935 F.2d at 1462 (holding that Michigan has interests in providing a forum for [its residents] to resolve [their] dispute[s] as well as in regulating the conduct of foreign businesses trading in Michigan). Finally, the interests of the various states in securing the most efficient resolution of controversies will be served by exercising jurisdiction over the Moving Defendants and the other defendants. Conversely, if Ford were required to chase every defendant to its own home state in order to seek redress for each separate instance of infringement and domain name piracy, there would be significant efficiency lost in the resolution of these claims.

16

## II. FORD'S COMPLAINT EASILY SATISFIES THE LENIENT PLEADING STANDARDS UNDER RULE 8(a).

The Moving Defendants also move to dismiss under Fed.R.Civ.P. 12(b)(6). Here, their argument is twofold: (a) that Ford's 32-page Complaint consists of "bare legal conclusions" that do not satisfy the pleading requirement of Rule 8(a) [Memorandum at 15]; and (b) that Ford's claims will fail on the merits [id. at 16-17]. Both arguments fail.

### A. The Complaint Alleges Sufficient Detail Under Rule 8(a).

The argument concerning the factual sufficiency of the Complaint is based on a misunderstanding of Rule 8(a). The Moving Defendants are not entitled, as they seem to suggest, to a detailed recitation of all of the facts supporting Ford's claim. At most, Ford is required to assert a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). As the Sixth Circuit has explained, this standard does not require that a Complaint include any extensive factual detail. Westlake v. Lucas, 537 F.2d 857 (6th Cir. 1976). Discovery mechanisms (not pleadings) are the devices that the federal rules contemplate for gathering such detail. Thus, under Sixth Circuit case law, a Complaint alleges adequate facts when it "afford[s] the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Id. at 858 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

There can be no serious question that Ford's Complaint meets this standard. Contrary to the Moving Defendants' bald assertions, the Complaint expressly asserts facts specific to each defendant in sufficient detail to afford each defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Specifically, the Complaint alleges (a) that Ford is the registrant of the world-famous trademarks in question, Complaint ¶¶ 96-99; (b) that Gapmount Limited (apparently a d/b/a of John Hall) registered the domain name JAGUARCENTER.COM, id. ¶ 16; that

17

defendant Paul A. Brown registered the domain name JAGUARENTHUSIASTSCLUB.COM, id. ¶ 17; that defendant Specialized Auto (apparently a d/b/a of Robert Emmert) registered the domain name VOLVOGUY.COM, id. ¶ 30; that defendant Thomas Cooper registered the domain name VINTAGEVOLVOS.COM, id. ¶ 31; that defendant RAD*TECH (apparently a d/b/a of Wallace Rawson) registered the domain names 4FORDPARTS.COM and 4FORDTRUCKS.COM, id. ¶ 48; and that defendant Alfonso Fiero registered the domain name LINCOLNTRUCKS.COM, id. ¶ 94; (c) that each of the above-specified registrants engaged in an act of cyberpiracy in a bad faith attempt to misappropriate the goodwill developed by Ford in its trademarks by attempting to auction the specified domain names to the highest bidder through the interactive website of defendant GreatDomains, id. 114; (d) that such conduct has harmed Ford by, among other things, preventing Ford from using the domain names in question as a link to Ford's websites or otherwise, id. ¶ 115; (e) that defendants' "actions evidence a bad faith intent to profit from" Ford's trademarks in registering and/or trafficking in the domain names in question, in violation of the ACPA, id. ¶ 117-120; and (f) that defendants' actions have diluted and infringed Ford's trademarks in violation of the Lanham Act, id. ¶¶ 121-32.

These allegations (which are merely summarized above and are spelled out in greater detail in the 32-page Complaint) are certainly sufficient to satisfy Rule 8(a). Each of the Moving Defendants has fair notice of what Ford's claims are and the grounds upon which they rest. That is all that Rule 8(a) requires. As the Moving Defendants note, the Sixth Circuit has explained that pleadings must go beyond the mere statement of "bare legal conclusions" [Memorandum at 15], but Ford's Complaint goes well beyond the statement of conclusions. It identifies in sufficient detail what each defendant did to register the specific domain names in question and to participate in the bad faith scheme to profit from Ford's goodwill in its trademarks.

18

Not surprisingly, the Moving Defendants disagree with some of Ford's allegations regarding their bad faith intent. But such a disagreement does not establish a basis for a 12(b)(6) dismissal. At this stage, Ford is entitled to all inferences in its favor and the Court must accept its allegations as true. Because Ford's allegations are more than enough to give the Moving Defendants notice of the nature of Ford's claims, the 12(b)(6) motion must be denied.

### B.    The Complaint Is Legally Sufficient.

The Moving Defendants' challenge to the Complaint's legal sufficiency fails on similar grounds. This argument is a transparent attempt to inject the Moving Defendants' views on the facts at the 12(b)(6) phase. The Moving Defendants argue, for example, that the domain names at issue are "capable of numerous possible lawful and/or 'fair uses,' many of which presumably have nothing whatsoever to do with Ford or any other Plaintiff." [Memorandum at 16.]

This argument turns the 12(b)(6) standard on its head. A party moving for a 12(b)(6) dismissal must go well beyond the mere identification of a possible affirmative defense. The Complaint must be construed "in the light most favorable to the plaintiffs" and all "well-pleaded factual allegations" must be accepted as true. Cooper v. Parrish, 203 F.3d 937, 944 (6th Cir. 2000). Thus, "[d]ismissal is not appropriate unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims that entitle them to relief." Id.

Ford's Complaint clearly survives under this standard. Ford has alleged that the Moving Defendants have participated in a bad faith scheme of cybersquatting, infringement, and dilution. If these allegations are taken as true (as they must), Ford has clearly stated a claim.

### CONCLUSION

Ford has made more than a prima facie showing that personal jurisdiction over the Moving Defendants is proper. Consequently, the Moving Defendants' motions must be denied. Moreover,

19

even if the Court is in doubt as to whether jurisdiction is proper, Ford must be allowed an

opportunity to conduct discovery and to present additional evidence showing that the Moving

Defendants are subject to personal jurisdiction.  Finally, Ford has easily stated cognizable claims that

entitle Ford to relief.

DICKINSON WRIGHT PLLC

By: _____

Kathleen A. Lang (P34695)
Attorneys for Plaintiff
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226
(313) 223-3500

Gregory D. Phillips
Thomas R. Lee, Of Counsel
Scott R. Ryther
HOWARD, PHILLIPS & ANDERSEN
560 E. 200 South, Suite 230
Salt Lake City, Utah  84102
(801) 366-7471

Dated:  December 7, 2000

**PROOF OF SERVICE:**

*The undersigned certifies that a copy of Plaintiffs' Opposition to Rule 12(b)
Motions to Dismiss and Proof of Service was served upon the attorneys of
record of all parties to the above cause at their respective business addresses
as disclosed by the pleadings of record herein on December 7, 2000.  I
declare under penalty of perjury that the statement above is true to the best of
my information, knowledge and belief.*

*BY:*
__✓__ *U.S. Mail*              ___ *FAX*        ___ *Other*
___ *Hand Delivered*        ___ *Federal Express*

_____
*Ann Howington*

DETROIT 18260-1537 565622

20