IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
MICHIGAN SOUTHERN DIVISION

| | | |
|---|---|---|
| FORD MOTOR COMPANY, et al., | : | |
| Plaintiffs, | : | Case No. 00-71544 |
| v. | : | Judge Gerald E. Rosen |
| GREATDOMAINS.COM, INC., et al., | : | |
| Defendants. | : | |

## SUPPLEMENTAL MOTION TO DISMISS OF DEFENDANT GREATDOMAINS.COM, INC.

Defendant GreatDomains.com, Inc. ("GreatDomains") hereby moves this Court for an Order granting Defendant's Supplemental Motion to Dismiss for the following reason:

47 U.S.C. § 230 provides immunity to GreatDomains for the actions set forth in the Complaint.

GreatDomains incorporates herein by reference its attached Brief in Support of Defendant GreatDomains.com, Inc.'s Supplemental Motion to Dismiss.



1

In accordance with Local Rule 7.1(a), counsel for GreatDomains sought concurrence with Gregory Phillips, counsel for Plaintiffs, on or about December 11, 2000. Concurrence in the relief sought was denied, but Mr. Phillips neither concurs in, nor specifically opposes, GreatDomains' filing of this Supplemental Motion to Dismiss.

                                                               Respectfully submitted,

/s/ William A. Sankbeil
William A. Sankbeil (P19882)
Fred K. Herrmann (P49519)
KERR, RUSSELL AND WEBER, PLC
Detroit Center
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226-3406
Tel: (313) 961-0200

**OF COUNSEL:**

Edward F. Mannino
Roberta Jacobs-Meadway
David L. Comerford
AKIN, GUMP, STRAUSS, HAUER
   & FELD, L.L.P.
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Tel: (215) 965-1340

Philip Sbarbaro
Chief Litigation Counsel
VeriSign, Inc.
505 Huntmar Park Drive
Herndon, VA 22070
Tel: (703) 742-4818

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
MICHIGAN SOUTHERN DIVISION

| | |
|---|---|
| FORD MOTOR COMPANY, et al., | |
| Plaintiffs, | Case No. 00-71544 |
| v. | Judge Gerald E. Rosen |
| GREATDOMAINS.COM, INC., et al., | |
| Defendants. | |

**BRIEF IN SUPPORT OF
DEFENDANT GREATDOMAINS.COM, INC.'S
<u>SUPPLEMENTAL MOTION TO DISMISS</u>**

William A. Sankbeil (P19882)
Fred K. Herrmann (P49519)
KERR, RUSSELL AND WEBER, PLC
Detroit Center
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226-3406
Tel: (313) 961-0200

<u>OF COUNSEL</u>:

Edward F. Mannino
Roberta Jacobs-Meadway
David L. Comerford
AKIN, GUMP, STRAUSS, HAUER
  & FELD, L.L.P.
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA 19103
Tel: (215) 965-1340

Philip Sbarbaro
Chief Litigation Counsel
VeriSign Inc.
505 Huntmar Park Drive
Herndon, VA 22070
Tel: (703) 742-4818

## INTRODUCTION

GreatDomains.com, Inc. ("GreatDomains") was acquired by VeriSign Inc. ("VeriSign") on October 23, 2000. GreatDomains is now a wholly-owned subsidiary of VeriSign. VeriSign, thus, inherited this suit in its acquisition of GreatDomains.

GreatDomains' original Motion to Dismiss was filed on June 15, 2000. In that Motion, GreatDomains argued that Plaintiffs' Complaint failed to state any claim for relief under any theory. First, no claim for cyberpiracy was stated under the Anticybersquatting Consumer Protection Act because of Plaintiffs' failure to allege that GreatDomains acted with a bad faith intent to profit from the Plaintiffs' trademarks or that GreatDomains registered, trafficked in, or used the domain names at issue. Second, the Complaint failed to state any claim for trademark dilution under Section 43(c) of the Lanham Act because it did not allege that GreatDomains made commercial use of Plaintiffs' trademarks in commerce. Third, the Complaint failed to state any claim for trademark infringement under Section 32 of the Lanham Act because it did not allege that GreatDomains used any of Plaintiffs' trademarks in commerce or that GreatDomains had caused any likelihood of confusion among consumers in the marketplace. Fourth, the Complaint failed to state any claim for false designation of origin under Section 43(a) of the Lanham Act because it did not allege that GreatDomains used any of Plaintiffs' trademarks in commerce or that GreatDomains caused any likelihood of confusion among consumers in the marketplace.

GreatDomains did not raise in its original motion to dismiss an additional substantive ground upon which a Rule 12(b)(6) motion for failure to state a claim is appropriate. As demonstrated below, 47 U.S.C. § 230 provides complete immunity to GreatDomains from liability for the conduct alleged in the Complaint against it.

1

Under such circumstances, the filing of a second motion to dismiss raising additional defenses under Federal Rules of Civil Procedure 12(b) is appropriate, so long as the additional defense is not interposed for purposes of delay. See, e.g., Coleman v. PBGC, 196 F. R. D. 193, 196-197 (D.D.C. 2000); Vega v. State University of New York Board of Trustees, 2000 WL 381430, at *2 (S.D.N.Y. Apr. 13, 2000); Federal Express Corp. v. United States Postal Services, 40 F. Supp. 2d 943, 948-49 (W.D. Tenn. 1999); In re Westinghouse Securities Litigation, 1998 WL 119554, at *6 (W.D. Pa. Mar. 12 1998); Sharma v. Skaarup Ship Management Corp., 699 F. Supp. 440, 444 (S.D. N.Y. 1988), aff'd, 916 F.2d 820 (2d Cir. 1990); Thorn v. New York City Dep't of Social Servs., 523 F. Supp. 1193, 1196 n. 1 (S.D.N.Y. 1981). Here, there is no intent to delay these proceedings. Indeed, the original motion to dismiss has not yet been scheduled for argument, and none of the parties to this litigation are prejudiced by presenting this Court with an additional, dispositive reason to dismiss this case on the merits. Instead, the motion provides for "the just, speedy, and inexpensive determination of [this] action." F.R. Civ. P. 1.

## ARGUMENT AND AUTHORITIES

**I. GREATDOMAINS' MOTION TO DISMISS SHOULD BE GRANTED FOR THE ADDITIONAL REASON THAT 47 U.S.C. § 230 PROVIDES IMMUNITY TO GREATDOMAINS FOR ANY ALLEGED VIOLATIONS OF THE INTELLECTUAL PROPERTY RIGHTS OF PLAINTIFFS ARISING FROM THE LISTING FOR SALE OF DOMAIN NAMES**

47 U.S.C. §230 creates a federal immunity to any cause of action that would make service providers such as GreatDomains liable for posting of information originating with a third party user of the service.

The provision first sets forth the bases for the policy, articulating five congressional findings regarding the importance of the Internet. Thus, 47 U.S.C. §230(a) provides:

> The Congress finds the following:

2

> (1) The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and information resources to our citizens.
>
> (2) These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.
>
> (3) The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.
>
> (4) The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation.
>
> (5) Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

Based on these findings, the statute sets forth in unambiguous terms at 47 U.S.C. §230(b) the "Policy of the United States":

> (1) to promote the continued development of the Internet and other interactive computer services and other interactive media;
>
> (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;
>
> (3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;
>
> (4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and

3

> (5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

47 U.S.C. §230(c)(1) then mandates that:

> <u>No provider or user of interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.</u>

<u>Id</u>. (emphasis added).

GreatDomains is an interactive computer service, which is defined to mean "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ." 47 U.S.C. § 230(f)(2). Listing services such as GreatDomains and eBay fall within this definition. <u>See</u> <u>Stoner v. eBay, Inc.</u>, No. 30566 (Cal. Super. Ct. Nov. 17, 2000) (attached as Exhibit "A"), discussed <u>infra</u> at 5-7.

While the initial focus of the provision was to encourage the development and use of blocking and filtering technologies to restrict access to objectionable and inappropriate on-line material by children, the language of section 230 is not so limited, and courts interpreting this provision have not limited it. <u>See, e.g.</u>, <u>Stoner v. eBay, Inc.</u>, <u>supra</u>, (§ 230 applies to eBay listings of sound recordings which allegedly infringed plaintiff's rights); <u>Ben Ezra, Weinstein, and Company, Inc. v. America Online Inc.</u>, 206 F.3d 980 (10th Cir. 2000) (§ 230 applies to AOL publication of erroneous stock information); <u>Zeran v. America Online, Inc.</u>, 129 F.3d 327 (4th Cir. 1997) (§ 230 applies to AOL posting of defamatory message from third parties); <u>John Does 1 through 30 v. Franco Publications</u>, 2000 U.S. Dist. LEXIS 8645 (N.D. Ill. June 21, 2000) (§ 230 applies to Internet service providers' web hosting of sites which offered for sale video tapes of college athletes in various states of undress); <u>Blumenthal v. Drudge</u>, 992 F. Supp. 44 (D.D.C.

4

1998) (§ 230 applies to AOL provision of allegedly defamatory material prepared by author under contract with AOL).

Plaintiffs seek to compel GreatDomains to do precisely what 47 U.S.C. §230 provides it need not do – that is, to make rapid determinations without full information as to whether or not particular content is or is not material which others may lawfully disseminate. GreatDomains' position is like that of other auction sites, including eBay, Inc. A recent and well reasoned decision from the California Superior Court in Stoner v. eBay, Inc., supra, granting eBay's motion for summary judgment on the basis of 47 U.S.C. §230, is supportive of GreatDomains' arguments herein.

Randall Stoner claimed that eBay knowingly reaped profits from the sale of bootleg and other infringing sound recordings; that eBay advertised and offered for sale, and caused the sale of, various bootleg and other infringing sound recordings, thereby engaging in unfair business practices; and that eBay knew that infringing sound records were being sold at the site, enabled those auction sales, and took a commission on each sale.

The court noted that the descriptions of the goods and services auctioned over the eBay service are created entirely by the sellers and, as in the instant case, eBay was not responsible for the creation or the development of information relating to the products for which it provided auction services.

In rejecting plaintiff's attempt to characterize eBay as an active participant in the sale of products auctioned over its service, the Court held that eBay could not be found responsible for informing prospective purchasers that recordings, including illegal recordings, were available for purchase.

5

The court found that the immunity that eBay was entitled to under 47 U.S.C. §230 was not abrogated by virtue of the facts that eBay: provides interactive computer services for which it charges a fee; advertises and promotes the auction service; provides insurance for items auctioned over the service; and provides escrow and payment services. The Court found that neither aggressive advertising nor the imposition of a fee, including a fee based in part on the price for which an item is sold, nor any of the other services transforms an interactive service provider into a seller responsible for items sold.

The Court concluded:

> While the majority of cases addressing CDA immunity may fit the bulletin board description, nothing in those cases or in the statutory language so limits the CDA's application. A principal objective of the provision is to encourage commerce over the Internet by insuring that interactive computer service providers are not held responsible for how third parties use their services.... *Plaintiff's attempt to impose responsibility on e-Bay as the seller of items auctioned over its service is no different from the unsuccessful attempts that have been made to hold computer service providers liable as distributors rather than as publishers of defamatory or pornographic materials.* [Citations omitted.]
>
> At bottom, plaintiff's contention is that eBay should be held responsible for failing to monitor the products auctioned over its service.... However, cases decided under the CDA uniformly have held that notice of postings which indicate illegality does not defeat immunity. [Citations omitted.] The courts have recognized that imposing liability based on notice of content in the interactive computer service context would create an incentive for providers to restrict speech and abstain from self-regulation, thereby defeating the purposes of §230.... [Citations omitted.]
>
> [I]f liability were imposed for the sale of unauthorized recordings.... there is no reason why liability would not extend to the auction of any other form of contraband, or of goods or services that violated some other legal duty that eBay was bound to know or that was brought to its attention. The burden that such an obligation would place on a service such as eBay would likely force it to cease, or at least significantly restrict, its operations. If

6

>such an obligation is to be imposed, it is Congress that must be asked to re-evaluate the immunity conferred by section 230.

Id. at 5-9 (emphasis added).

The reasoning of Judge Pollak in the Stoner case, predicated as it is on the statute and its underlying policy, represents the only appropriate view of 47 U.S.C. §230, and its applicability to the conduct of GreatDomains at issue in this proceeding.

The eBay result is fully supported by all the other caselaw decided under Section 230. For example, in John Does 1-30 inclusive v. Franco Productions et al., supra, the court granted the motion of Defendants GTE and PSINet to dismiss an action for intrusion into plaintiffs' seclusion. Videotapes of plaintiffs taken without their consent had been sold by various means, including on web sites hosted by the Internet service provider defendants. Plaintiffs sought to hold GTE and PSINet liable for knowingly failing to restrict content. The Court held that lawsuits seeking to hold these service providers liable for the exercise of the publisher's traditional editorial functions (deciding whether to publish, withdraw, postpone, or alter content) were barred by the statute. Further, the Court found that the immunity was not vitiated simply because the service providers played an active or even aggressive role in making available content prepared by others. In language particularly applicable to this case, the court rejected plaintiffs' contention that the culpable conduct of GTE and PSINet was disseminating the videos on the Internet:

>This makes no clearer plaintiffs' theory that GTE and PSINet were somehow content providers. Plaintiffs do not allege that GTE or PSINet themselves sold or offered for sale the videotapes at issue. Plaintiffs simply allege that GTE and PSINet, as web hosts, provided a medium through which others could sell or offer for sale the videotapes at issue. However, by offering web hosting services which enables someone to create a web page, GTE and PSINet are not magically rendered the creators of those web pages.

7

See also Blumenthal v. Drudge, supra, 992 F. Supp. at 49-53 (AOL not liable for defamatory material authored by Matt Drudge which was carried on AOL, even though AOL's contract with Drudge permitted it "to require reasonable changes to . . . content."); Ben Ezra, Weinstein and Company, Inc. v. America Online Inc., supra (AOL not liable for erroneous stock information authored by third party).

The gravamen of the complaint against GreatDomains is that GreatDomains provides an auction site where third parties may offer for sale, and third parties may bid on and purchase, domain name registrations[1] which Plaintiffs allege violate their intellectual property rights. But, eBay, protected by Section 230, does precisely the same thing. eBay, like GreatDomains, lists domain name registrations for sale to the highest bidder on its web site. Indeed, a check of eBay on December 4, 2000 indicated that there were over 1,650 listings for domain name registrations posted on its web site on that day. These included such names as fordcredit.cc, Classichondas.com, CamelCigarrette.com, OffMax.com, Nike.Biz.com, and Titleistgolf.com.[2]

Moreover, there is not, and could not be, any allegation that GreatDomains has registered the domain names at issue or that it has used them in the manner of a trademark, or to identify a site, or that GreatDomains itself has offered for sale or sold the domain name registrations.

---

[1] A domain name is actually not what is being "sold". A domain name is not property and has never been held to be property. See Dorer, et al. v. Arel, 60 F. Supp.2d 558 (E.D. Va. 1999); Lockheed Corp. v. Network Solutions, Inc., 194 F.3d 980 (9th Cir. 1999); Network Solutions, Inc. v. Umbro International, Inc., et al, 259 Va. 759, 529 S.E. 2d 80 (Sup. Ct. Vir. 2000), Kremen, et al. v. Cohen, et al., 99 F. Supp.2d 1168 (N.D. Cal. 2000.) What is actually being transferred are the contractual rights between a registrar and a registrant of a domain name. Those contractual rights are for the services provided by the registrar. The colloquial expression of selling a domain name is just that – a non-legal expression for the transfer of contractual rights to services. GreatDomains, of course, is neither a registrar of domain name registrations nor a registrant.

[2] Attached hereto as Exhibit B are the eBay listings for those domain name registrations.

8

Indeed, the Complaint focuses generally upon the <u>registrants</u> of the domain names, which is understandable, since the Anticybersquatting Consumer Protection Act holds liable <u>only</u> "that person [who] is the domain name registrant or that registrant's authorized licensee," 15 U.S.C. § 1125(d)(1)(D). The Complaint does not allege that GreatDomains is either, nor could it do so. Instead, it contains only three isolated references to GreatDomains in paragraphs 10 (identifying it as a defendant), 108 (alleging that GreatDomains "is in the business of auctioning domain names for sale over the Internet" and collects a commission on the sale of domain names), and 112 (alleging that GreatDomains "shares the same intent to profit from the goodwill and reputation of the Plaintiffs' Trademarks.") Given the insufficiency of these allegations, and given the clear language and policy of 47 U.S.C. §230, GreatDomains' motion to dismiss must be granted.[3]

## II. CONSIDERATION OF THE DOMAIN NAMES WHICH ARE THE SUBJECT OF PLAINTIFFS' COMPLAINT DEMONSTRATES THE SOUNDNESS OF THE POLICY RECOGNIZED BY THE STATUTE IMMUNIZING INTERACTIVE COMPUTER SERVICE PROVIDERS SUCH AS GREATDOMAINS AND E-BAY FROM LIABILITY FOR PROVIDING AN AUCTION SITE

Plaintiffs' position would impose on GreatDomains and others similarly situated, such as eBay, strict liability for conduct of third parties which ultimately may be found to be illegal. There is, however, no basis in law or policy for imposition of such a standard.

Consideration of some of the specific domain name registrations at issue in this proceeding demonstrates the soundness of the policy immunizing interactive computer services such as GreatDomains and eBay. The domain name registrations include: "Fordsucks.com,"

---

[3] GreatDomains does not challenge the right of Plaintiffs to take appropriate action against those who may be demonstrated to have engaged in any such activities in violation of the intellectual property rights of the Plaintiffs. Indeed, of course, GreatDomains immediately deletes any domain name registration listed on its web site when it receives official written notice from a trademark owner or its counsel complaining of a listing.

9

and "volvosafety.com," domain names which raise First Amendment issues; "volvosforsale.com," "Jaguarenthusiastsclub.com," "fordyoungdrivers.com," and "forddeals.com," which raise fair use issues; and various "STANG" domain names. Even assuming that GreatDomains could recognize such words as "STANG" as trademarks of one of the Plaintiffs, there is no basis and no requirement for GreatDomains to determine whether any particular domain name offered for sale by a third party or purchased by another third party through its site comprises infringing matter or is otherwise violating any rights of Plaintiffs. Does "JAGUAR" refer to the car or to the animal? Does "LINCOLN" refer to the car or to the president? And what is indicated by a slogan as unimaginative and ordinary as "PREMIER AUTOMOTIVE GROUP"? To the extent that these or any of the other domain name registrations may infringe some right of Plaintiffs, it is they – not GreatDomains – who must police their own rights. See Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp. 949, 966 (C.D. Cal. 1997), aff'd, 194 F.3d 980 (9th Cir. 1999). Section 230 prohibits Plaintiffs from foisting off their duty in this regard on GreatDomains. Indeed, GreatDomains itself has no expertise to determine whether any right of Plaintiffs is being infringed. It does not, for example, have any knowledge regarding what intellectual property rights any registrant of a domain name might have, nor does it know whether entities such as the Plaintiffs have licensed any of the registrant defendants to utilize any of their intellectual property. Indeed, Plaintiffs themselves are listed as the registrants of the domain names for ten of the domain names this Complaint attacks.[4] Finally, GreatDomains has no expertise regarding foreign registrations of domain names, of which there are several attacked in this Complaint.

---

[4] These include Texasfordtrucks.com, Factoryfordparts.com, Volvosafcty.com, Fordtoday.com, Fordvolvo.com, Ford-Dealer.com, Ford-Autos.com, Fordsucks.com, Volvocenter.com, and Volvo4u.com. Copies of the registrations for these domain names are attached as Exhibit C.

10

Plaintiffs' Complaint also lacks any allegations regarding the use or nonuse in commerce of the challenged domain name registrations by any of the registrants; whether any of the domain names are used in connection with a web site; or whether there is any use of e-mail by any of the registrant defendants in connection with the challenged domain name registrations. See Lockheed Martin Corp. v. Network Solutions, Inc., supra, 985 F. Supp. at 965-96.

Finally, notwithstanding the wishes of Plaintiffs, not every use of one of their trademarks by a third party constitutes infringement or demonstrates bad faith. See, e.g., Playboy Ent., Inc. v. NetscapeComm'n Corp., 55 F. Supp. 2d 1070, 1074 (C.D. Cal. 1999), aff'd, 202 F.3d 278 (9th Cir. 1999). See, also, Hasbro v. Clue Computing, 66 F. Supp. 2d 117, 133 (D. Mass. 1999), aff'd, 2000 U.S. App. LEXIS 27856 (1st Cir. Nov. 7, 2000).

Despite all of these issues, Plaintiffs would have GreatDomains, at risk of strict liability, serve as policemen, judge and jury to adjudicate each of them. The "obvious chilling effect," see Zeran v. America Online, Inc., 129 F.3d 327, 331 (4th Cir. 1997), upon interactive computer services which would result would cripple the Internet and turn such services into involuntary police forces impressed to protect the rights of major corporations who can and should enforce whatever rights they may possess in their intellectual property. Section 230 prohibits such involuntary servitude.

Based on 47 U.S.C. §230 and the policy set forth therein, as recognized by the unanimous caselaw decided thereunder, as well as the matters previously set forth in GreatDomains' initial motion to dismiss, the complaint as against GreatDomains should now be dismissed with prejudice.

## CONCLUSION

For each of the reasons set forth above and in the original Motion to Dismiss, the original

11

Motion to Dismiss and the Supplemental Motion to Dismiss should be granted, and the Complaint should be dismissed with prejudice, with judgment entered in favor of Defendant GreatDomains.com, Inc.

/s/ FK Herrmann

William A. Sankbeil (P19882)
Fred K. Herrmann (P49519)
KERR, RUSSELL AND WEBER, PLC
Detroit Center
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226-3406
Tel: (313) 961-0200

**OF COUNSEL:**

Edward F. Mannino
Roberta Jacobs-Meadway
David L. Comerford
AKIN, GUMP, STRAUSS, HAUER
  & FELD, L.L.P.
One Commerce Square, Suite 2200
2005 Market Street
Philadelphia, PA  19103
Tel:  (215) 965-1340


Philip Sbarbaro
Chief Litigation Counsel
VeriSign Inc.
505 Huntmar Park Drive
Herndon, VA 22070
Tel:  (703) 742-4818

**CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing "SUPPLEMENTAL MOTION TO DISMISS AND BRIEF IN SUPPORT OF DEFENDANT GREATDOMAINS.COM, INC.'S SUPPLEMENTAL MOTION TO DISMISS" was delivered December 14, 2000 via U.S. Mail, postage prepaid.

>John E. S. Scott
>Kathleen A. Lang
>Dickinson Wright PLLC
>500 Woodward Avenue, Suite 4000
>Detroit, Michigan 48226
>
>Gregory D. Phillips
>Thomas R. Lee
>Howard, Phillips & Anderson
>560 E. 200 South, Suite 230
>Salt Lake City, Utah 84102
>
>Susan N. McFee
>Ford Global Technologies, Inc.
>Suite 600
>Parklane Towers East
>One Parklane Boulevard
>Dearborn, Michigan 48126-2490
>
>Edward F. Mannino
>Roberta Jacobs-Meadway
>David L. Comerford
>AKIN, GUMP, STRAUSS, HAUER
>  & FELD, L.L.P.
>One Commerce Square, Suite 2200
>2005 Market Street
>Philadelphia, PA 19103

>*/s/ Fred K. Herrmann*
>William A. Sankbeil, Esquire
>Fred K. Herrmann, Esquire

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED