# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**FORD MOTOR COMPANY, *et al.*,**

      **Plaintiffs**

      v.

**GREAT DOMAINS.COM, INC., *et al.*,**

      **Defendants**

                              /

Case No. 00-71544
Hon. Gerald E. Rosen
United States District Judge

*(FILED stamp: Dec 26 5 16 PH '00, U.S. DIST. COURT, EAST. DIST. MICH.)*

---

## MEMORANDUM OF JOHN HALL, GAPMOUNT, LTD., AND OTHER EFF DEFENDANTS IN SUPPORT OF EFF DEFENDANTS' Fed. R. Civ. P. 12(b)(1) MOTION TO DISMISS ALL *IN REM* CLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION AND EFF DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT

Eric C. Grimm (P58990)
**CyberBrief, PLC**
320 South Main Street
P.O. Box 7341
Ann Arbor, MI 48107-7341
734.332.4900

David H. Lowenschuss (P53767)
**David H. Lowenschuss, PLC**
2020 Shadford Road
Ann Arbor, MI 48104
734.623.9877

Cindy Cohn, Legal Director
(admission application pending)
**Electronic Frontier Foundation**
454 Shotwell Street
San Francisco, CA 94110
415.505.7621

COUNSEL FOR ELECTRONIC
FRONTIER FOUNDATION AND
DEFENDANTS ROBERT EMMERT,
PAUL BROWN, ALFONSO FIERO,
JOHN HALL, GAPMOUNT, LTD.,
WALLACE RAWSON, RAD*TECH,
AND TOM COOPER.



## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iii-

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

     **The Statute In Question:** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

     **Facts of the Case in General:** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

     **Procedural Basis for This Motion:** . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

I.    A More Definite Statement is Required Because Plaintiffs Failed to Plead Any
     Claim Based Upon 15 U.S.C. 1125(d)(2) – the *In Rem* Subsection of the ACPA. . . . . -16-

II.   This Court Lacks Subject-Matter Jurisdiction to Entertain an *In Rem* ACPA
     Action Because the Registrar Is Not Located In This Judicial District. . . . . . . . . . . . . -17-

     A.    Plaintiffs' Anticipated Reliance on Subparagraph
          1125(d)(2)(C)(ii) Is Misplaced. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

     B.    Network Solutions' Own Judicial Admissions Confirm The Limited
          Jurisdictional Effect of So-Called Domain Name Declarations. . . . . . . . . . . . -23-

III.  The *In Rem* Provision of the Cybersquatting Act Is Unconstitutional Under
     *Shaffer v. Heitner* and Other Precedents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-

IV..  Domain Names are Not Subject to *In Rem* Jurisdiction Because
     Domain Names Are Not Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-

# TABLE OF AUTHORITIES

## CASES

Academy of Motion Picture Arts & Sciences v. Network Solutions, Inc.,
  989 F. Supp. 1276 (C.D. Ca. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-

America Online, Inc. v. Huang,
  106 F. Supp. 2d 848 (E.D. Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-, -25-, -33-

Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,
  605 F.2d 648 (2nd Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

Amstar Corp. v. M/V Alexandros T.,
  431 F. Supp. 328 (D. Md. 1977),
  aff'd, 664 F.2d 904 (4th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

Banco Inverlat, S.A. v. Inverlat.com,
  112 F. Supp. 2d 521 (E.D. Va. 2000). . . . . . . . . . . . . . . . . . . . . . -9-, -10-, -19-, -25-

Bihari v. Gross,119 F. Supp. 2d 309 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . -14-

Bishop v. Wood,
  426 U.S. 341 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -33-, -35-

B.M.W. of N. Am. v. Gore,
  517 U.S. 559 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

Board of Regents v. Roth,
  408 U.S. 564 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -33-, -35-

BroadBridge Media, LLC v. HyperCD.com,
  106 F. Supp. 2d 505 (S.D.N.Y. 2000). . . . . . . . . . . . . . . . . . . . . . . . -7-, -19-, -31-

Caesars World, Inc. v. Caesars-Palace.com,
  112 F. Supp. 2d 502 (E.D. Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . -27-, -34-

Caesars World, Inc. v. Caesars-Palace.com,
  112 F. Supp. 2d 505 (E.D. Va. 2000) . . . . . . . . . . . . . . . . . . -1-, -10-, -11-, -12-, -28-

## CASES

Cleveland v. United States,
    ___ U.S. ___, 121 S. Ct. 365 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

Cleveland Bd. of Ed. v. Loudermill,
    470 U.S. 532 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-31-

College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,
    527 U.S. 666 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

CPC Int'l, Inc. v. Skippy, Inc.,
    214 F.3d 456 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Dorer v. Arel, 60 F. Supp. 2d 558 (E.D. Va. 1999) . . . . . . . . . . . . . . . . . . . . . -33-, -34-, -35-

Erie R.R. v. Tompkins, 304 U.S. 64 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

Ford Motor Co. v. Lane,
    67 F. Supp. 2d 745, (E.D. Mi. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Goss v. Lopez, 419 U.S. 565 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -33-, -35-

Grapette Co. v. Grapette Bottling Co.,
    102 F. Supp. 517 (D. P.R. 1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-

Greenpoint Financial Corp. v. Sperry & Hutchinson Co., Inc.,
    ___ F. Supp. 2d ___,
    2000 WL 1370835 (S.D.N.Y. Sept. 19, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-

Hansberry v. Lee,
    311 U.S. 32 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

Hanson v. Denckla,
    357 U.S. 235 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

## CASES

Harrods, Ltd. v. Sixty Internet Domain Names,
    110 F. Supp. 2d 420 (E.D. Va. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-, -3-, -7-, -31-

Hasbro v. Clue Computing,
    66 F. Supp. 2d 117 (D. Mass. 1999), *aff'd*, ___ F.3d ___,
    2000 WL 1644507 (1st Cir. Nov 7, 2000) (No. 00-1297) . . . . . . . . . . . . . . . . . . -14-, -15-

Heathmount A.E. Corp. v. Technodome.com,
    106 F. Supp. 2d 860 (E.D. Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-, -25-

Hegarty v. Luff, 169 F. Supp. 873 (D.D.C. 1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

Holiday Inns, Inc. v. 800 Reservation, Inc.,
    86 F.3d 619 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Hypertherm, Inc. v. Precision Prods., Inc.,
    832 F.2d 697 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

International Shoe Co. v. Washington,
    326 U.S. 310 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-, -29-

International Star Registry of Illinois v. Bowman-Haight Ventures, Inc.,
    1999 WL 300285 (N.D. Ill. May 6, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-

Jones v. United States,
    529 U.S. 848, 120 S. Ct. 1904 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

Kremen v. Cohen,
    99 F. Supp. 2d 1168 (N.D. Cal. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -33-

Lindsey v. Greene,
    649 F.2d 425 (6th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

## CASES

Lockheed Martin Corp. v. Network Solutions, Inc.,
      985 F. Supp. 949 (C.D. Ca. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-

Logan v. Zimmerman Brush Co.,
      455 U.S. 422 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-31-

Lucent Tech., Inc. v. Lucentsucks.com,
      95 F. Supp. 2d 528 (E.D. Va. 2000). . . . . . . . . . . . . . . . . . . . . . . . -8-, -9-, -11-, -15-

Michael H. v. Gerald D.,
      491 U.S. 110 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

Mid-Allegheny Corp v. Pittsburgh Terminal Corp.,
      831 F.2d 522 (4th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

Moore v. East Cleveland,
      431 U.S. 494, 502 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-31-

Mullane v. Central Hanover Trust Co.,
      339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-, -33-, -35-

Network Solutions, Inc. v. Umbro, Int'l, Inc.,
      529 S.E.2d 80 (Va. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -33-, -34-, -35-

New Kids on the Block v. News Am. Publ'g,
      971 F.2d 302 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Ortiz v. Fiberboard Corp.,
      527 U.S. 815 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-31-

Panavision Int'l v. Toeppen,
      141 F.3d 1316 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

Patmont Motor Werks, Inc. v. Gateway Marine, Inc.,
      No. 96-2703, 1997 WL 811770 (N.D. Cal. Dec. 18, 1997) . . . . . . . . . . . . . . . . . . . . . . -14-

## CASES

Pennoyer v. Neff, 95 U.S. 714 (1878). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -33-

Phillips Petroleum Co. v. Shutts,
     472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

Pizani v. M/V Cotton Blossom,
     669 F.2d 1084 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

Playboy Enters., Inc. v. Netscape Comm'n Corp.,
     55 F. Supp. 2d 1070 (C.D. Cal. 1999), *aff'd*,
     202 F.3d 278 (9th Cir. 1999) (table) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

Porsche Cars N. Am. v. Porsch.com,
     51 F. Supp. 2d 707 (E.D. Va. 1999), *vacated and remanded*
     *sub nom.* Porsche Cars N. Am v. AllPorsche.com,
     215 F.3d 1320 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . -3-, -4-, -8-, -19-, -28-, -34-

Schroeder v. City of New York,
     371 U.S. 208 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

Shaffer v. Heitner,
     433 U.S. 186 (1977). . . . . . . . . . . . . . . . -8-, -19-, -26-, -27-, -28-, -29-, -33-, -35-

Sterling Consulting Corp. v. The Indian Motorcycle Trademark,
     1997 WL 827450 (D. Colo. Sept. 5, 1997) . . . . . . . . . . . . . . . . . . . . . . . . -3-, -19-

Troxel v. Granville,
     __ U.S. ___, 120 S. Ct. 2054 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-31-

United States v. $84,740.00 in U.S. Currency,
     900 F.2d 1402 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

United States v. Banco Cafatero Int'l,
     608 F. Supp. 1394 (S.D.N.Y. 1985),
     *aff'd*, 797 F.2d 1154 (2nd Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

## CASES

United States v. Lopez,
   514 U.S. 549 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

United States v. Morrison,
   529 U.S. 598, 120 S. Ct. 1740 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

United States v. Winstar Corp.,
   518 U.S. 839 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

Volkswagenwerk A.G. v. Church,
   411 F.2d 350 (9th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Walker v. City of Hutchinson,
   352 U.S. 112 (1956). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

World Wide Volkswagen Corp. v. Woodson,
   444 U.S. 286 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

## TREATIES, STATUTES, RULES and U.S. CONSTITUTION

U.S. CONST. Art. I, §§ 5, 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

U.S. CONST. Amend X. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

U.S. CONST. Art. III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

Hague Convention on Service Abroad of Judicial and Extrajudicial Documents
In Civil or Commercial Matters, 20 U.S.C. 361, 658 U.N.T.S. 163 (1965) . . . . . . . . . . . . -1-, -15-

15 U.S.C. § 1125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-, -3-, -6-

15 U.S.C. § 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

15 U.S.C. § 1125(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-, -4-

## TREATIES, STATUTES, RULES and U.S. CONSTITUTION

15 U.S.C. § 1125(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

15 U.S.C. § 1125(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-, -7-

15 U.S.C. § 1125(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-, -3-, -6-, -9-, -16-, -17-

15 U.S.C. § 1125(d)(2)(A) . . . . . . . . . . -6-, -7-, -8-, -9-, -10-, -11-, -12-, -13-, -17-, -19-20-, -21-

15 U.S.C. § 1125 (d)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

15 U.S.C. § 1125(d)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . -20-, -21-, -22-, -23-, -26-

15 U.S.C. § 1125 (d)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

28 U.S.C. § 1652 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -32-

28 U.S.C. § 2072(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

FED. R. CIV. P. 4(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-, -15-

FED. R. CIV. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-, -3-, -8-

FED. R. CIV. P. 19(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -31-

FED. R. CIV. P. 69(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -33-

Supplemental Rules for Admiralty and Maritime Claims, Rule B(1) . . . . . . . . . . . . . . . . . . . . -3-

Supplemental Rules for Admiralty and Maritime Claims, Rule C(2) . . . . . . . . . . . . -3-, -12- -17-

## OTHER AUTHORITIES

Cong. Rec. H10826 (Oct. 26, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

Mark A. Lemley, *The Lanham Act and the Death of Common Sense*,
      108 YALE L.J. 1687 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, *et al.*,

      **Plaintiffs**

      v.

GREAT DOMAINS.COM, INC., *et al.*,

      **Defendants**

                          /

Case No. 00-71544
Hon. Gerald E. Rosen
United States District Judge

## MEMORANDUM OF JOHN HALL, GAPMOUNT, LTD., AND OTHER EFF DEFENDANTS IN SUPPORT OF EFF DEFENDANTS' FED. R. CIV. P. 12(b)(1) MOTION TO DISMISS ALL *IN REM* CLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION AND EFF DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT

Defendants John Hall and Gapmount, Ltd.,[1] along with other Defendants

_____

[1] Gapmount, Ltd., has never been served in accordance with the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents In Civil or Commercial Matters, 20 U.S.T. 361, 658 U.N.T.S. 163 (1965), as FED. R. CIV. P. 4(f)(1) requires. Treaty obligations of the United States government require that all subjects of the United Kingdom are entitled to insist upon strict compliance with the Hague Convention. Accordingly, Gapmount is not subject to any jurisdiction of this Court, whether that jurisdiction is labeled *in rem* or *in personam*. John Hall has previously moved to dismiss under Rules 12(b)(2) and 12(b)(6) of the Federal Rules. The filing of dismissal papers with this Court by Hall and/or by Gapmount does not subject them to any jurisdiction of this Court. Harrods Limited v. Sixty Internet Domain Names, 110 F. Supp. 2d 420, 422-23 (E.D. Va. 2000) (*in rem* action is brought against hypothetical *res*, not its owner, and no personal jurisdiction over the owner of the *res* is acquired by bringing such an action or by owner's filing dismissal papers). Moreover, Defendants' filing of sworn testimony in support of their dismissal papers does not subject them to jurisdiction. Caesars World, Inc. v. Caesars-Palace.Com, 112 F. Supp. 2d 505, 509 (E.D. Va. Aug. 25, 2000). Hall, Gapmount, and the other EFF Defendants all expressly rely on this precedent, both as a limitation on the Court's jurisdiction, and in support of their procedural right to seek dismissal of the improper claims lodged against them by Plaintiffs.

represented by the Electronic Frontier Foundation – Robert Emmert, Paul Brown, Wallace Rawson, RAD*TECH, and Tom Cooper (collectively "EFF Defendants") – respectfully move, under FED. R. CIV. P. 12(b)(1), for dismissal of any claims by each and all of the Plaintiffs based upon any theory of *in rem* jurisdiction, because this Court lacks subject-matter jurisdiction (under section 1125(d)(2) of the Lanham Trademark Act as amended, 15 U.S.C. § 1125(d)(2), or otherwise) to entertain any such *in rem* claims.

Because lack of subject-matter jurisdiction cannot be waived and must be raised by any federal court on its own initiative, it is necessary and proper for this Court to dismiss, for lack of subject-matter jurisdiction, any and all claims by each and every Plaintiff involving any theory of *in rem* jurisdiction – including, without limitation, all *in rem* claims against any of the Domain Names belonging to any of the EFF Defendants or any of the 47 Defendants listed in the Plaintiffs' proposed Order to Publish Notice of Action attached as Exhibit A to Plaintiff's October 23, 2000 Motion to Publish Notice of Action. Gapmount, Ltd., a British Limited Liability Company owned by EFF Defendant John Hall,[2] is one of the Defendants listed in the Plaintiffs' Oct. 23 Proposed Order, but the scope of dismissal of any *in rem* claims should not be limited merely to Domain Names owned by Hall, Gapmount, and the other EFF Defendants. To the contrary, because

---

[2]Hall's previous Motion to Dismiss, dated November 2, 2000, was, is, and will remain on Hall's own behalf, as well as (to the extent necessary) on behalf of Gapmount, Ltd. To the extent Gapmount, Ltd., is alleged by any Plaintiff to have been served already, then the prior motion of John Hall should be considered to be incorporated herein by reference and to apply equally to Gapmount. Otherwise, Gapmount shall file the appropriate dismissal papers after Gapmount has been served in accordance with the Hague Convention. See note 1, *supra*. EFF Defendants therefore respectfully renew John Hall's previous Motion To Dismiss, both as a Motion by Hall individually, and (to the extent necessary) as a Motion by Gapmount, Ltd., to dismiss under Rules 12(b) (1), (2), (3), (4), (5), and (6) of the Federal Rules of Civil Procedure. Under no circumstances whatsoever does Gapmount purport, by way of this Motion or otherwise, to waive any defenses available to it under Rules 12(b)(1), (2), (3), (4), (5) or (6) of the Federal Rules that may be available to Gapmount, and all such defenses are hereby specifically asserted.

-2-

subject-matter jurisdiction is lacking, Plaintiffs cannot maintain any *in rem* claims whatsoever in the Eastern District of Michigan.

EFF Defendants also respectfully move under Rule 12(e) for a more definite statement because the Complaint completely fails to mention or reference *in rem* jurisdiction or 15 U.S.C. § 1125(d)(2) in any manner whatsoever. The Complaint on its face purports to proceed exclusively *in personam*. Accordingly, Plaintiffs' filings dated October 23, 2000, involved extreme and inexcusable unfair surprise to all Defendants – including Defendants who have not appeared, but who were made the subject of Plaintiff's *ex parte* Motion of October 23, 2000.

Finally, the Plaintiffs' Complaint is not verified in accordance with Rules C(2) and/or B(1) of the Supplemental Rules for Admiralty and Maritime Claims. Such verification is required for any *in rem* ACPA claim filed in federal court, and lack of verification is fatal to subject-matter jurisdiction. See note 12, *infra*. The lack of proper verification requires dismissal of any *in rem* claim that Plaintiffs may retroactively purport to have smuggled into the Complaint.

## INTRODUCTION

**The Statute In Question:** The issue of subject-matter jurisdiction in this case revolves around a November, 1999, amendment to § 1125 of the Lanham Trademark Act. This amendment, which added § 1125(d), was called the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"). Prior to the 1999 amendment, 15 U.S.C. § 1125 authorized two separate *in personam*[3] private causes of action: false designation of origin under 1125(a) or dilution under

---

[3]See Porsche Cars N. Am. v. Porsch.com, 51 F. Supp. 2d 707, 712 (E.D. Va. 1999) (dilution claims must be litigated *in personam*), *vacated and remanded sub nom.* Porsche Cars N. Am. v. AllPorsche.com, 215 F.3d 1320 (4th Cir. 2000) (table) (remand pending in E.D. Va.); Sterling Consulting Corp. v. The Indian Motorcycle Trademark, 1997 WL 827450, at *1 (D. Colo. Sept.5, 1997) (trademark claims); Harrods, 110 F. Supp. 2d at 422-23.

1125(c).  In January, 1999, the Eastern District of Virginia (the Judicial District where Network

Solutions, Inc. ("NSI"), the then-exclusive Registrar of ".com" ".net" and ".org" Internet Domain

Names is headquartered) was presented with a novel lawsuit in which an automobile manufacturer

attempted to litigate dilution claims against a vast number of Internet Domain Names (but not the

owners or "Registrants" of the Domain Names) on an *in rem* theory.  In June, 1999, Judge

Cacheris squarely rejected this *in rem* theory.  Porsche Cars N. Am. v. Porsch.com, 51 F. Supp. 2d

707 (E.D. Va. 1999).

       Following the loss in Porsche, trademark lobbyists contacted Congress, seeking to

change the law.[4]  Perhaps not coincidentally, the original Congressional and Senate sponsors of the

ACPA were both anticipating difficult and extraordinarily expensive re-election campaigns in 2000

(they were both ultimately unsuccessful).   Two of the Senate co-sponsors of the ACPA were also,

interestingly enough, raising money for Presidential primary bids in 2000.  Because of significant

public policy problems with the ACPA Bill, the legislation generated significant controversy while

it was pending in Congress, especially after it reached the House of Representatives,[5] and was

----

     [4]We provide this legislative history not for the purpose of arguing for dismissal on the basis of irregularities in the process leading to passage of the ACPA.  Rather, it is provided only for the purpose of explaining the context of the process that led to its passage.  Even assuming that if, instead of breathtaking irregularities, the textbook "how a bill becomes a law" process had been followed, the key point remains that Plaintiffs have failed to comply with the letter of the statutory requirements and dismissal is mandatory because subject-matter jurisdiction is lacking.

     [5]During the two short weeks the ACPA was before the House of Representatives, the House completely failed to conduct any hearings, despite the urging of leading legal scholars to hold hearings and fix the defects in the bill.   See Letter to Speaker J. Dennis Hastert (Oct. 15, 1999) (signed by professors Lawrence Lessig (Harvard Law School), Jonathan Zittrain (Harvard), Michael Froomkin (University of Miami Law School), Julie Cohen (Georgetown University), Jessica Litman (Wayne State University), Diane Cabell (Harvard), Ethan Katsch (University of Massachusetts), Jane Radin (Stanford), and Pamela Samuelson (Boalt Hall, UC Berkeley), among others), http://www.acm.org/usacm/trademark.html.  Exh.2.  The Congressional leadership and the sponsors of the ACPA (Sen. Spencer Abraham and Congressman James Rogan) completely

opposed by the Clinton administration.[6]

Perhaps on account of the controversy, the ACPA bill took a curious and circuitous route to passage. The way the ACPA became law is hardly a textbook example of "how a bill becomes a law" as traditionally contemplated in U.S. Const. Art. I, §§ 5, 7, and taught in Civics classes in the public schools. In early November, 1999, in a House-Senate conference conducted away from the floor of either Chamber of Congress, the ACPA Bill was inserted into the enormously popular Satellite Television Bill, in the hope that it would ride the Satellite Bill's coattails to passage. However, a "hold" was placed on the Satellite Bill in the Senate, removing all likelihood that the Satellite Bill would be approved prior to the end of the 1999 session of Congress. Therefore, on November 17, 1999, the loaded-up Satellite Bill was re-introduced, as S. 1948, for early action in the 2000 session of Congress.

However, it soon became apparent that the Omnibus Appropriations Act of 1999 would have to survive cloture in the Senate prior to passage and those pushing for the accelerated passage of the ACPA swiftly capitalized on a perceived opportunity to make sure the ACPA bill

---

ignored this entreaty.

[6]The Clinton Administration was on record opposing the so-called "Cybersquatting" legislation. See http://www.whitehouse.gov/OMB/legislative/sap/ 106-1/S1255-s.html, Exh. 3. The New York Times has reported that White House spokesperson Joe Lockhart expressed the President's opposition to the bill in a press conference on October 27, 1999. See Jeri Clausing, *Government Has More Questions for Internet Board*, N.Y. TIMES CYBERTIMES (Nov. 2, 1999), http://www.nytimes.com/library/tech/99/11/cyber/capital/ 02capital.html, Exh. 4; see also Letter to Hon. Patrick J. Leahy, Committee on the Judiciary, United States Senate, from William M. Daley, Secretary of Commerce (July 28, 1999) (declining to support S 1255), Exh. 5. No wonder the legislation was surreptitiously slipped into the Omnibus Appropriations Act a 3:06 in the morning the day the entire government budget was up for a vote in the House.

never received the scrutiny[7] it required.  Thus, at 3:06 in the morning on November 18, 2000, the Satellite Television Bill (into which the ACPA had already been inserted – like a nested Russian doll) was resurrected and tacked onto the Omnibus Appropriations Bill, on the day the appropriations measure (H.R. 3194) was up for a final vote in the House.  The Omnibus Appropriations Act of 1999 was signed into law (the only alternative to signing it was shutting down the government after Congress already had adjourned) by the President on Nov. 27, 1999.

Substantively, after passage, the ACPA introduced two different separate and distinct theories of action into § 1125 of the Lanham Act, each summarized in the following table:

| | 1125(d)**(1)** | 1125(d)**(2)** |
|---|---|---|
| Theory of Jurisdiction? | *In personam.* | *In rem.*<br><br>(continued . . .) |
| Judicial Districts With Potential Subject-Matter Jurisdiction? | ***Many.*** Any Judicial District in the United States.<br><br>However, *personal* jurisdiction over the Defendant is required. | ***Few or None.*** Only the specific Judicial District in which the **Registrar** is located – *not* the Eastern District of Michigan – has subject-matter jurisdiction.  In fact, no Registrars are known or believed to exist in the Eastern District of Michigan.<br><br>Plaintiff "may file an *in rem* civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if [other conditions are satisfied]." 15 U.S.C. § 1125(d)(2)(A) (emphasis added).  Some registrars are located outside the United States and therefore Domain Names registered with them cannot trigger *in rem* jurisdiction. |

---

[7] See note 5, *supra* (advocating further review and amendment to correct glaring defects in the legislation.

| | 1125(d)(1) | 1125(d)(2) |
|---|---|---|
| Personal Jurisdiction? | *Required.* | *Forbidden.*  Complete absence of personal jurisdiction is required as a statutory prerequisite for *in rem* litigation <u>unless</u> the physical location of the Domain Name Registrant cannot through "due diligence" be determined.<br><br>Section 1125(D)(2)(A)(ii) conditions any *in rem* action on court finding that "the owner (I) is not able to obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under paragraph [1125(d)](1); or (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph [1125(d)](1)." |
| Remedies? | Damages and injunctive relief. | "The remedies in an *in rem* action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(2)(D)(i). |
| *Mens Rea?* | Requires proof of "bad faith intent:"<br><br>"A person shall be liable in a civil action by the owner of a mark [if] . . . that person has a bad faith intent to profit from that mark. . . . and registers, traffics in, or uses a domain name [subject to other statutory criteria]." 15 U.S.C. § 1125(d)(1)(A). | *In rem* action is conditioned upon court finding that "the *domain name* violates any right of the owner of a mark registered in the . . . Trademark Office, or protected under subsection (a) or (c) of this section [1125]." 15 U.S.C. § 1125 (d)(2)(A)(i).  This has subsequently been held to incorporate by reference the requirement of proof of "bad faith intent." <u>Harrods, Ltd. v. Sixty Internet Domain Names</u>, 110 F. Supp. 2d 420, 425-26 (E.D. Va. 2000); <u>BroadBridge Media, LLC v. HyperCD.com</u>, 106 F. Supp. 2d 505, 511 (S.D.N.Y. 2000).  Whether this judicial interpretation has any support in the statutory language (which – constitutional or not – clearly differentiates between a "person" and a "domain name") is unclear. |

-7-

| | 1125(d)(1) | 1125(d)(2) |
|---|---|---|
| Constitutional Problems? | **Many.** Severe vagueness and fair notice problem. Arbitrary punitive damages provision also violates <u>B.M.W. of N. Am. v. Gore</u>, 517 U.S. 559 (1996). "Bait-and-switch" retroactive change in contractual obligations of government-granted monopolist violates <u>United States v. Winstar Corp.</u>, 518 U.S. 839 (1996), and other cases. Other severe constitutional problems. | **Serious.** *In rem* theory squarely violates <u>Shaffer v. Heitner</u>, 433 U.S. 186, 212-17 (1977) and Due Process Clauses of U.S. Constitution, both facially (see 15 U.S.C. § 1125(d)(2)(A)(ii)(I) ("the owner . . . is not able to obtain *in personam* jurisdiction over a person who would have been a defendant"), and as applied. |
| Relied upon in Plaintiffs' Complaint in Case No. 00-71544? | **Yes.** But subject to dismissal under Rule 12(b)(6) because the Defendant-specific allegations (or lack thereof) on the face of the Complaint remain insufficient to state a claim upon which relief can be granted. | *No.* |

The *in rem* provision of the ACPA was analyzed at length by Judge Brinkema of the Eastern

District of Virginia, in <u>Lucent Technology v. Lucentsucks.com</u>:[8]

> The legislative history clearly shows that Congress enacted the [*in rem*] provision to provide a last resort where *in personam* jurisdiction is

---

> [8]Judge Brinkema also explained in the <u>Lucentsucks</u> decision that:
>
> > At least in part, Congressional concern for the Due Process rights of domain name registrants was inspired by this court's [EDVA's] decision in <u>Porsche Cars North America, Inc. v. Porsh.Com</u>, 51 F. Supp. 2d 707 (E.D.Va.1999).

<u>Lucent Tech., Inc. v. Lucentsucks.com</u>, 95 F. Supp. 2d 528, 531 (E.D. Va. May 3, 2000).

-8-

impossible,[9] because the domain name registrant is foreign or anonymous. Congress did not intend to provide an easy way for trademark owners to proceed *in rem* after jumping through a few *pro forma* hoops.

Lucent Tech., Inc. v. Lucentsucks.com, 95 F. Supp. 2d 528, 531 (E.D. Va. May 3, 2000).

Moreover, in those rare instances in which the *in rem* provision[10] potentially applies, it specifically

---

[9]In this regard, it is established that the mere act of registering a disputed domain name with NSI in Virginia (or with Register.com in New York) is insufficient to subject a defendant to personal jurisdiction where the Registrar is located. See, e.g., America Online, Inc. v. Huang, 106 F. Supp. 2d 848 (E.D. Va. 2000); Heathmount A.E. Corp. v. Technodome.Com., 106 F. Supp. 2d 860, 867 (E.D. Va. 2000); Banko Inverlat, S.A. v. Inverlat.com, 112 F. Supp. 2d 521, 522 (E.D. Va. 2000).

[10]The statute specifically states:

(2)(A) The owner of a mark may file an in rem civil action against a domain name in the **judicial district in which the domain name registrar**, domain name **registry, or other domain name authority** that registered or assigned the domain name **is located** if

    (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and

    (ii) the court finds that the owner–

        (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

        (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by–

            (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

            (bb) publishing notice of the action as the court may direct promptly after filing the action.

    (B)    The actions under subparagraph (A)(ii) shall constitute service of process.

15 U.S.C. § 1125 (d)(2)(A)-(B) (emphasis added).

contemplates a "notice procedure," which must be strictly followed. 15 U.S.C. §

1125(d)(2)(A)(ii). The ACPA requires notice to the Registrant – either through publication in a

place the Registrant is likely to receive the notice, or through alternate receipt-confirmed means

sufficient to place the Registrant personally on notice. Banco Inverlat, S.A. v. Inverlat.com, 112

F. Supp. 521, 522-24 (E.D. Va. Sept. 8, 2000).

Under the operative provision of the statute, as a condition precedent to any *in rem*

action, the burden must be on the Plaintiff to lay a factual predicate sufficient to support each and

all of the following ten findings:

1. The trademark "owner" has sent notice of the alleged violation to the domain name registrant at the postal address provided by the registrant to the registrar;

2. The trademark "owner" has sent notice of the owner's "intent to proceed under this paragraph" (i.e., file an ACPA *in rem* civil action) to the domain name registrant at the postal address provided by the registrant to the registrar;

3. The trademark "owner" has sent notice of the alleged violation to the domain name registrant at the e-mail address provided by the registrant to the registrar;

4. The trademark "owner" has sent notice of the owner's "intent to proceed under this paragraph" (i.e., file an ACPA *in rem* civil action) to the domain name registrant at the e-mail address provided by the registrant to the registrar;

5. The court has previously directed the "owner" on an approved manner of publishing notice of the "Cybersquatting Act" *in rem* action;[11]

---

[11]Plaintiffs rely on three Orders by the Eastern District of Virginia: (1) Order to Publish Notice (Feb. 9, 2000), in Caesars World, Inc. v. Caesars-Palace.com, C.A. No. 99-550-A (E.D. Va. *filed* Apr. 20, 1999); (2) Order to Publish Notice (Sept. 15, 2000), *in* Verisign, Inc. v. Venesign.com, C.A. No. 00-1507-A (E.D. Va.), and (3) Order to Publish Notice (Mar. 3, 2000), *in* Pear Networks, Inc. v. Pear.net, C.A. No. 00-0301-A (E.D. Va.), as proffered support for the notion that "Orders issued in recent cases brought under the [ACPA] demonstrate that publishing once in a well-known daily publication, such as *The Washington Post*, is appropriate." Br. at 4. Plaintiff conspicuously fails to mention that each of the three Orders relied upon was issued by the Eastern District of Virginia, the Judicial District where Network Solutions is headquartered. Instead, Plaintiffs attempt to disregard the significance of the Eastern District of Virginia. That judicial district, unlike the Eastern District of Michigan, had statutory subject-matter jurisdiction

6.    That the "owner" has in fact published such notice as the court directed;

7.    That the timing of the publication was accomplished "promptly" after the *in rem* count was filed;

8.    That some "person" would have "been a defendant in a[n] [*in personam*] civil action under paragraph (1);"

9.    That the trademark "owner" was "not able to find" such a "person who would have been a defendant," despite findings 1 - 8; and

10.   That the trademark owner affirmatively exercised "due diligence" in attempting to "find" such "person."

15 U.S.C. § 1125(d)(2)(A).  Moreover, as explained in Lucent, 95 F. Supp. 2d at 531-33:

> By the express terms of Section 1125(d)(2)(A)(ii) of the ACPA, a plaintiff may proceed with an *in rem* action against a domain name **if and only if** the Court finds either that the plaintiff is unable to obtain *in personam* jurisdiction over the domain name registrant, or that the plaintiff is unable to find the domain name registrant. . . . .

Lucent Tech., Inc. v. Lucentsucks.com, 95 F. Supp. 2d at 531-33 (emphasis added).

---

to entertain *in rem* litigation.  Plaintiffs also misinform the Court about the procedural posture of the Caesars World case.  See Exhs (several pleadings, Orders, and other documents from the Caesars World litigation).  The Caesars World case involved publication **twice** in the Washington Post.  Such parochial double-publication in a limited-circulation U.S. newspaper still remains insufficient to provide constitutionally-sufficient notice to foreign Registrants, as would be necessary to satisfy Due Process.  EFF Defendants' counsel Eric C. Grimm pointed out the problem of limited circulation to Judge Bryan of the Eastern District of Virginia in the Caesars World case (Mr. Grimm's client in that case is believed to be the only Registrant that kept its three Domain Names), but nevertheless Plaintiff is dead wrong to suggest that Caesar's World stands for the notion that "single publication" is procedurally sufficient.  Quite the contrary, if anything, the Caesar's World order cited by Plaintiff stands for the idea that once *in rem* allegations are interjected into a lawsuit, then all of the Plaintiff's prior efforts to serve notice by mail and/or E-mail evaporate, and Plaintiff must start again from the beginning, and strictly satisfy the statutory requirement that all of the notices (newspaper, email and postal) must inform each Domain Name Registrant of Plaintiff's intent "to proceed under this paragraph."  In other words, even if the notice procedure were procedurally sufficient to satisfy Due Process (it is not), Plaintiff has not complied with the statutory notice procedure because Plaintiff has deliberately hidden from all Registrants any notice of Plaintiff's intention to proceed *in rem*.  Plaintiff's *ex parte* Motion to Publish was therefore both premature and clearly improper.

-11-

Finally, and most importantly, it is not possible for any court even to reach any of these prerequisite issues for the filing of an *in rem* civil action <u>unless</u> the action is initiated within a Judicial District that is authorized to exercise statutory subject-matter jurisdiction. That subject-matter jurisdiction can only exist in "the judicial district in which the <u>domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located</u> if [other conditions are satisfied ]." 15 U.S.C. § 1125(d)(2)(A) (emphasis added).

Plaintiff has the burden of establishing that the Eastern District of Michigan is a Judicial District with potential subject-matter jurisdiction.[12]  Plaintiff has failed to do so.

**Facts of the Case in General:**  Plaintiffs, a major multinational automobile manufacturer and its subsidiaries, seek to hale over 60 individuals residing around the world into Michigan to litigate a trademark dispute. Plaintiffs already own the Domain Names < Volvo.com >, < Jaguar.com >, and < Ford.com >.  Here, they seek to seize other Domain Names, which belong to

---

[12]Plaintiff has failed to introduce any evidence whatsoever about the physical location of NAMESDIRECT.COM or REGISTRARS.COM, or any other Domain Name Registrar. There is no evidence to suggest the Eastern District of Michigan could possibly serve as a proper district with subject-matter jurisdiction. Moreover, Plaintiff's *in rem* claims are procedurally deficient because Plaintiff has failed to make the necessary <u>verification</u> under Rule C(2) of the Supplemental Rules of Admiralty and Maritime Cases. These Supplemental Rules have specifically been held to apply in *in rem* cases filed under the ACPA. <u>Caesar's World, Inc. v. Caesars-Palace.com</u>, 112 F. Supp. 2d 505, 508 (E.D. Va. 2000) (Applying "established *in rem* concepts and procedures to the instant [ACPA] case:" "Although the ACPA has no explicit analogous provisions, we find that the general procedures for *in rem* actions [set forth in the Supplemental Admiralty Rules] should apply."). Failure to provide the proper verification (including sworn verification that the Registrar is located in the Judicial District) is fatal to Plaintiff's claims and deprives the Court of subject-matter jurisdiction to entertain an *in rem* claim. <u>United States v. $84,740.00 in U.S. Currency</u>, 900 F.2d 1402, 1405-06 (9th Cir. 1990); <u>Pizani v. M/V Cotton Blossom</u>, 669 F.2d 1084, 1090 (5th Cir.1982) ("Supplemental Rule C(2) of the Federal Rules of Civil Procedure ... requires the filing of a verified complaint as a prerequisite to obtaining *in rem* jurisdiction."); <u>Amstar Corp. v. M/V Alexandros T.</u>, 431 F. Supp. 328, 334 (D. Md.1977), *aff'd*, 664 F.2d 904 (4th Cir.1981); see also <u>United States v. Banco Cafetero Int'l</u>, 608 F. Supp. 1394, 1400 n.3 (S.D.N.Y. 1985), *aff'd*, 797 F.2d 1154 (2d Cir.1986).

-12-

different Registrants, simply because these other Domain Names happen to contain these words, without regard for the particular uses to which the specific Domain Names have been put.

Many of the individuals Plaintiffs seek to sue reside outside the United States and do not have minimum contacts sufficient to subject them to personal jurisdiction in Detroit. Some of them also have registered Internet Domain Names through Registrars located in other countries, and therefore their Domain Names are not subject to *in rem* jurisdiction in <u>any</u> Judicial District in the United States. 15 U.S.C. § 1125(d)(2)(A). Many other domain names have been registered through Network Solutions, in Herndon, Virginia, or Register.com, in New York. These Registrars are not located in the Eastern District of Michigan and therefore this Court cannot possibly have subject-matter jurisdiction to entertain any corresponding *in rem* claims.

Plaintiff's substantive claims involve the defective notion that Plaintiff alone "owns" certain words and can unilaterally prohibit (or charge licensing fees for) others' use of the words Ford, Jaguar and Volvo – even when these third-party uses are in contexts that have traditionally been recognized as legitimate "fair uses," "non-commercial" uses, or non-trademark uses.[13]  A trademark owner "may not remove a word from the English language merely by acquiring trademark rights in it." <u>Playboy Enters., Inc. v. Netscape Comm'n Corp.</u>, 55 F. Supp. 2d 1070, 1074 (C.D. Cal. 1999), *aff'd*, 202 F.3d 278 (9th Cir. 1999) (table). For example, truthful advertisement by an independent automobile mechanic that the mechanic is qualified to repair "Volvo" automobiles, or that she specializes in the repair of such automobiles, is a non-trademark

---

[13]These contexts include Domain Names that reference completely different things, such as < Jaguarcenter.com >, which points to a Website that is devoted to preservation of jaguar cats, a threatened species. The Jaguarcenter Website has *never even mentioned* automobiles. Several of these Domain Names were registered for fan sites such as < volvoenthusiast.com > or for sites devoted to the sale or repair of automobiles manufactured by Plaintiffs, such as < volvoguy.com > and < 4fordparts.com >, among others.

or "nominative" use of the brand name, which has long been recognized as perfectly legitimate and non-confusing – even if trademark owners would prefer to charge money for the privilege. Volkswagenwerk A.G. v. Church, 411 F.2d 350, 352 (9th Cir. 1969) (repair services). Likewise, secondary-market vendors truthfully selling used products, or selling compatible non-patented replacement parts, are not required to pay trademark royalties or to ask permission of Plaintiffs in order to advertise that they sell used Fords or Volvos, or that parts they sell are compatible with these automobile brands. Patmont Motor Werks, Inc. v. Gateway Marine, Inc., No. 96-2703, 1997 WL 811770, at *3-*4 & n.5 (N.D. Cal. Dec. 18, 1997) (used vehicle sales); Hypertherm, Inc. v. Precision Prods., Inc., 832 F.2d 697, 700-01 (1st Cir. 1987) (compatible non-patented replacement parts and accessories). Numerous third-party uses of brand names, even when done for a profit, are nevertheless permissible. New Kids on the Block v. News Am. Publ'g, 971 F.2d 302, 306 (9th Cir. 1992) (leading decision on "nominative fair use" doctrine); see also Ford Motor Co. v. Lane, 67 F. Supp. 2d 745, 751-54 (E.D. Mi. 1999) (thwarting attempted prior restraint of news reporting and commentary); Holiday Inns, Inc. v. 800 Reservation, Inc., 86 F.3d 619, 623-26 (6th Cir. 1996); Bihari v. Gross,119 F. Supp. 2d 309 (S.D.N.Y. 2000) (use of Website for criticism).

"It is important that trademarks not be 'transformed from rights against unfair competition to rights to control speech.'" CPC Int'l, Inc. v. Skippy, Inc., 214 F.3d 456, 462 (4th Cir. 2000) (quoting Mark A. Lemley, *The Lanham Act and the Death of Common Sense*, 108 YALE L.J. 1687, 1710-11 (1999)). Especially when – as is the case with respect to John Hall's Domain Name < Jaguarcenter.com > – the Domain Name points to a political advocacy website about species preservation, the Plaintiffs clearly do not have any right whatsoever to use trademarks to suppress the speech of others. See Hasbro v. Clue Computing, 66 F. Supp. 2d 117,

-14-

133 (D. Mass. 1999) ("Holders of a famous mark are not automatically entitled to use that mark as their domain name; trademark law does not support such a monopoly.  If another Internet user has an innocent and legitimate reason for using the famous mark as a [D]omain [N]ame [or in a Domain Name] and is the first to register [the Domain Name], that user should be able to use the [D]omain [N]ame."), *affd*, ___ F.3d ___, 2000 WL 1644507, at *2 (1st Cir. Nov 7, 2000) (No. 00-1297) ("Although Hasbro has written an able brief, nothing in the discussion persuades us that the district court used incorrect legal standards, erred in determining that there were no material issues requiring trial on the infringement claim, or made clearly erroneous findings of fact on the dilution claim.  Accordingly, we generally adopt the district court's analysis without needlessly repeating it.").

**Procedural Basis for this Motion:**  Plaintiffs erroneously assert that they have "attempted service" on all of the Defendants herein.  A close reading of their October 23 Motion reveals that they have not.  The Declaration of Jodi Munn Schebel states that "those Defendants who did not return waivers of service . . .were served with process via The Legal Concierge."  Schebel Decl. at ¶ 4.  However, especially with respect to foreign Defendants such as John Hall, Schebel's Affidavit does not contain any testimony that would possibly suggest that Plaintiff has attempted in any way to invoke the applicable procedures under FED. R. CIV. P. 4(f) and the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents In Civil or Commercial Matters, 20 U.S.T. 361, 658 U.N.T.S. 163 (1965), as the Federal Rules expressly require.

Quite the contrary, Plaintiff is attempting to use the ACPA as an end-run around the treaty obligations of the United States under the Hague Convention.  Plaintiff is not at liberty to disregard the mandatory treaty obligations of the United States.  Again, as Judge Brinkema recently observed, "Congress did not intend to provide an easy way for trademark owners to

-15-

proceed *in rem* after jumping through a few *pro forma* hoops." Lucent Tech., Inc. v.

Lucentsucks.com, 95 F. Supp. 2d 528, 531 (E.D. Va. May 3, 2000).  As a multinational

corporation with offices and subsidiary companies located in most of the countries at issue here,

certainly those of the U.K., where Defendant John Hall resides, Ford certainly has the wherewithal

to seek international service of process against Hall and other Defendants, or, more appropriately,

to resolve any dispute Plaintiffs may have in a forum in the United Kingdom that can properly

exercise personal jurisdiction over Mr. Hall.

      Instead of using these normal, established processes, however, on October 23,

2000, Plaintiffs asked the Court to allow them to publish notice of this action based upon a new

and previously undisclosed *in rem* theory, about which the Complaint is conspicuously silent.

Plaintiffs' Motion was granted by this Court on October 25, 2000 (the Motion evidently was

granted before counsel for any Defendant even received it by mail, let alone had any opportunity to

raise any objection).  Subsequently, EFF Defendants arranged with the Plaintiff (and secured the

Court's assent) to establish a schedule for the filing of the instant Motion.  EFF Defendants have

also filed a contemporaneous motion to stay the court's *ex parte* Publication Order.

## ARGUMENT

### I.    A More Definite Statement is Required Because Plaintiffs Failed to Plead Any Claim Based Upon 15 U.S.C. 1125(d)(2) – the *In Rem* Subsection of the ACPA.

      The Complaint makes no mention whatsoever of seeking *in rem* jurisdiction over

any of the Domain Names at issue in this litigation.  Instead, the Jurisdictional paragraph of the

Compliant sets forth the following allegations:

> 8.     This action arises out of wrongful acts committed by the Defendants in this
> judicial district that subject them to personal jurisdiction here.  For example
> Defendants operate and/or auction the domain names that are the subject of
> this lawsuit on an interactive website that is both targeted to and accessible

-16-

> in the State of Michigan and in this judicial district. Defendants otherwise
> conduct business in the State of Michigan and in this judicial district."

Compl., ¶ 8. Accordingly, the Complaint (and, likewise, Plaintiffs' out-of-the-blue October 23

"Motion for an Order to Publish Notice of Action") is so vague and ambiguous that no Defendant

can reasonably be required to anticipate the *in rem* issue that Plaintiffs never previously raised.

Nor can any Defendant reasonably be expected to frame a responsive pleading to the *ex parte* last-

minute ambush interjection of an *in rem* theory into this case. Therefore, Plaintiffs should be

required to set forth (and support) a more definite statement of the basis upon which Plaintiffs are

seeking to secure *in rem* jurisdiction over the Domain Names in question, or to invoke and rely

upon the *in rem* notice procedure set forth in 15 U.S.C. § 1125(d)(2).

Most importantly, Plaintiffs should be required to explain[14] (in the unlikely event

Plaintiffs ever could do so) how it is that Plaintiffs intend to satisfy the requirement that an

1125(d)(2) claim is only possible if filed in "the judicial district in which the <u>domain name registrar,

domain name registry, or other domain name authority that registered or assigned the domain name

is located</u>." 15 U.S.C. § 1125(d)(2)(A) (emphasis added); <u>see also</u> <

http://www.icann.org/registrars/accreditation-qualified-list.html > (no qualified Registrars appear

to be located in Michigan). Plaintiffs have the burden of establishing that the Eastern District of

Michigan is a Judicial District with potential subject-matter jurisdiction. Plaintiffs have not carried

this burden.

**II.     This Court Lacks Subject-Matter Jurisdiction to Entertain an *In Rem* ACPA
         <u>Action Because the Registrar Is Not Located In This Judicial District.</u>**

When John Hall registered the Internet Domain Name < Jaguarcenter.com >, Mr.

---

[14]Moreover, the Plaintiffs must <u>verify</u> these allegations in accordance with Rule C(2) of the
Admiralty Rules. <u>See</u> note 12, *supra*.

Hall (and Gapmount, Ltd.) used the services of YourNameFree.com, which is sponsored by a company called NAMESDIRECT.COM LTD. NamesDirect is headquartered at Suite 588, 12 Church Street, Hamilton, Bermuda, although it also believed to operate offices in Toronto, Canada. However, the "Whois" listing for < Jaguarcenter.com > is maintained by Internet Domain Registrars d/b/a REGISTRARS.COM, which is located in Vancouver, Canada, but which also has a mailing address at 475 Sansome Street # 570, San Francisco, CA, USA 94111.

Presumably the Registrar who "registered or assigned the Domain Name" is Bermuda-based NAMESDIRECT.COM, LTD. However, even assuming for the sake of argument that Registrars.com is the Registrar for < Jaguarcenter.com >, clearly Registrars.com is not located in the Eastern District of Michigan. Nor was any "Registry" or any "other domain name authority that registered or assigned the Domain Name" located in Michigan. The Domain Name registration of < Jaguarcenter.com > had no nexus with Michigan in any way whatsoever. In all likelihood, since the Registrar is in Bermuda, there does not exist any Judicial District anyplace within the United States with subject-matter jurisdiction to exercise *in rem* jurisdiction over the Domain Name < Jaguarcenter.com >.

Similarly, Plaintiffs have not shown where, precisely, the Registrars for *any* of the 47 Domain Names over which Plaintiffs seek to assert *in rem* jurisdiction, might be located. Certainly, Plaintiffs have presented no evidence that any Registrars might be located within the Eastern District of Michigan. Plaintiffs therefore have no legitimate basis for seeking to use paper "registration certificates" as surrogates for Domain Name Registrants who are not personally before this Court – and who, in all likelihood, cannot be subject to this Court's personal jurisdiction.

In fact, by every indication and to the best of the EFF Defendants' knowledge, none

-18-

of the Domain Name Registrars are or have at any time been located within the Eastern District of Michigan or the State of Michigan. See <

http://www.icann.org/registrars/accreditation-qualified-list.html >. Therefore, according to the plain language of the *in rem* section of the ACPA, 15 U.S.C. § 1125(d)(2)(A), the Eastern District of Michigan lacks subject-matter jurisdiction to entertain any *in rem* action against Domain Names that were not registered in this jurisdiction. Any *in rem* lawsuits **must** be filed, if at all, in the Judicial Districts (such as EDVA for NSI-registered Domain Names or SDNY for Register.com-registered Domain Names) where the respective Registrars are headquartered.[15] See, e.g, BroadBridge Media, LLC v. HyperCD.com, 106 F. Supp. 2d 505, 507 (S.D.N.Y. 2000) (Register.com is located in New York, which is where *in rem* actions involving Register.com Domain Names should be filed); Banco Inverlat, S.A. v. Inverlat.com, 112 F. Supp. 2d 521, 522 n.1 (E.D. Va. 2000) ("Pursuant to the ACPA, 15 U.S.C. § 1125(d)(2)(A), the owner of a trademark may file an *in rem* civil action against any infringing domain name 'in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located,'" so long as other conditions imposed by statute are satisfied.).

---

[15]Of course, even in New York or Alexandria, the ACPA *in rem* jurisdiction theory presents a serious Due Process problem. Shaffer, 433 U.S. at 212-17; see also Porsche Cars N. Am. v. Porsch.com, 51 F. Supp. 2d 707, 712 (E.D. Va. 1999) ("In any event, to . . . permit *in rem* actions against allegedly diluting marks would needlessly call the constitutionality of the statute into doubt. Although *in rem* proceedings purport to affect nothing more than the disposition of property, they necessarily affect the interests of persons as well."), *vacated and remanded*, 215 F.3d 1320 (4th Cir. 2000) (remand pending in E.D. Va.); Sterling Consulting Corp. v. The Indian Motorcycle Trademark, 1997 WL 827450, at *1 (D. Colo. Sept.5, 1997). However, the Southern District of New York or the Eastern District of Virginia should be fully capable of addressing these issues within the context of an ACPA *in rem* claim under 15 U.S.C. § 1125(d)(2), filed "in the judicial district in which the domain name registrar . . . is located," as the statute expressly requires.

-19-

Therefore, according to the plain language of the *in rem* section of the ACPA, 15 U.S.C. § 1125(d)(2)(A), the Eastern District of Michigan completely lacks subject-matter jurisdiction to entertain an *in rem* action against the Domain Names at issue here. An *in rem* lawsuit against < Jaguacenter.com > **must** be filed, if at all, in San Francisco, where Registrars.com has a mailing address. However, since this Domain Name was assigned by Bermuda-based NAMESDIRECT.COM, *in rem* jurisdiction in the United States (even in San Francisco) is probably impossible.

In short, an *in rem* action under Section 1125(d)(2)(A) is permitted only in <u>specific judicial districts</u> with subject-matter jurisdiction. The <u>Eastern District of Michigan clearly is **not** one of those districts</u>. The statute clearly specifies that an *in rem* claim <u>cannot</u> be filed unless "the court" first makes a specific list of required predicate statutory findings. <u>Id.</u> Under the unambiguous language of Subparagraph 1125(d)(2)(A), not all U.S. District Courts have subject-matter jurisdiction to make the requisite findings. The only courts to whom Section 1125(d)(2)(A) grants subject-matter jurisdiction to make the predicate findings are courts "in the **judicial district in which the domain name registrar**, domain name **registry**, or **other domain name authority** that registered or assigned the domain name **is located**." <u>Id.</u> (emphasis added).

A.   **Plaintiffs' Anticipated Reliance on Subparagraph 1125(d)(2)(C)(ii) Is Misplaced.**

The EFF Defendants anticipate that Plaintiff will attempt to avoid the clear limit on subject-matter jurisdiction set forth in Subparagraph (d)(2)(A) by misrepresenting the impact of a subordinate <u>venue</u> provision of the ACPA statute – namely, Subparagraph 1125(d)(2)(C). In other words, as have at least two other plaintiffs (Fleet Boston Financial, and Northern Light Technology) who have tried to forum-shop lawsuits into federal court in Boston, Plaintiff is

-20-

anticipated to misread the ACPA in an effort to have the 1125(d)(2)(C) "tail" of deposit of an affidavit or sworn declaration prepared by NAMESDIRECT.COM (assuming, hypothetically, that NamesDirect would issue such a declaration), wag the "dog" of 1125(d)(2)(A), which requires a series of ten (10) factual findings by the Federal District Court in the Registrar's headquarters jurisdiction, and which findings this Court is without statutory jurisdiction to make. Plaintiff is wrong because Subparagraph (C) cannot confer subject-matter jurisdiction on any court that lacks subject-matter jurisdiction under Subparagraph (A).

Notably, Judge Woodlock (before whom both the Fleet Boston and the Northern Light lawsuits are pending) has been skeptical of this brand of "roving domain declaration" forum-shopping jurisdiction theory:

> THE COURT:          Okay. But let's assume that I find that you don't have jurisdiction under traditional long-arm or constitutional grounds, that there aren't adequate minim[um] contacts shown in this case. What then? Do I have independent jurisdiction under the Cyber-Piracy Act? I don't think so, just because you managed to get the papers and deposit them in this Court.
>
> MR. POLLACK:          At most, what should be necessary is a reasonableness analysis on top of the situs of the domain name. We believe the name is here. And Congress has said that –
>
> THE COURT:          Yes. But assume that all you have – I'm saying you don't have minimum contacts. Okay. Can you still be here? That is, can the Cyber-Piracy Act exist without minim[um] contacts? . . .
>
> THE COURT:          Well, it's a kind of an attachment jurisdiction that you say I have. I'm not so certain that I'm right, particularly if its not contrived, but a created

-21-

placement of an intangible in this District. Because that's what happened. You

arrange for – once there's a dispute, they [the Registrars] say "we want nothing to

do with it here. Let the court decide it." But that would not be enough to give you

jurisdiction, would it? Someone sues – is creative enough, persuasive enough to

get the domain name provider to give them the papers. They deposit the papers in

the District of Montana. That doesn't give Montana the jurisdiction to deal with it,

does it?

Transcript of Hearing at 23-24 (Jan. 19, 2000), *in* Northern Light Tech. v. Northern Lights Club,

C.A. No. 99-11664-DPW (D. Mass. *filed* Aug. 5, 1999) (Woodlock, J.).

      The Subparagraph 1125(d)(2)(C)(ii) venue provision was designed to address a

very specific and narrow circumstance – the possibility that a Domain Name Registrar might move

out of a particular judicial district and relocate abroad (i.e., Network Solutions could move its

headquarters to France, or NamesDirect could set up shop in Bermuda) while an *in rem* action is

pending. In other words, if Network Solutions relocates to another jurisdiction – say, Canada or

the Principality of Sealand (a gunnery platform in the English Channel that claims independent

sovereignty) – any cases **already** pending in the Eastern District of Virginia at the time of

relocation can go forward so long as the appropriate "NSI certificates" have been deposited with

the Eastern District during the time NSI was located within that judicial district. This provision

obviously has no application in the instant case because NamesDirect is already in Bermuda.

      Subparagraph 1125(d)(2)(C) certainly does not confer on the Network Solutions or

any other Registrar the power to confer subject-matter jurisdiction on the District of

Massachusetts, the Eastern District of Michigan, the District of Montana, or any other arbitrary

jurisdiction, simply because a forum-shopping Plaintiff happens to reside (or just file suit) there.

-22-

Any analysis that purports to confer such a sweeping (and Constitutionally impermissible) power

on NSI and other Registrars should be rejected.

The limited scope of Subparagraph (C) (as well as the limitation that a "court of

appropriate jurisdiction" under Subparagraph (A) is a necessary prerequisite for triggering any

venue question under Subparagraph (C) is evident enough from the legislative history of the

ACPA:

> This [*in rem*] jurisdiction would not extend to any domain name registries
> existing outside the United States. **Nor would this jurisdiction preclude
> the movement of any registries to outside the United States. . . .**When a
> **court of appropriate jurisdiction** receives a complaint filed pursuant to
> this section, the court will notify the registrar, registry, or other authority
> who shall expeditiously deposit with the court documents to establish
> control and authority regarding the disposition of the registration and use of
> the domain name. the registrar, registry, or other authority also may not
> transfer or otherwise modify the domain name in dispute during the
> pendency of the action except upon order of the court.

Cong. Rec. H10826 (Oct. 26, 1999) (emphasis added). In short, the provision is meant only to

deal with the hypothetical prospect of relocating Registrars – emphatically <u>not</u> to confer broad

power on Register.com and Network Solutions to enable opportunistic forum-shopping Plaintiffs

to manipulate the judicial system in cases such as this one.

**B.    Network Solutions' Own Judicial Admissions Confirm The Limited
       <u>Jurisdictional Effect of So-Called Domain Name Declarations.</u>**

Representatives of Network Solutions directly participated in the final House

Judiciary Committee markup, in October, 1999, of the Anticybersquatting Consumer Protection

Act – at which time the language of Subparagraph 1125(d)(2)(C) was inserted into the Bill that

ultimately became the ACPA. NSI sought to secure Congressional blessing of a procedure that

NSI had instituted to shield itself from perceived liability and litigation costs associated with

Domain Name disputes. Network Solutions got what it wanted, in the form of a broad immunity

-23-

for Registrars like NSI, so long as they complied with the requirement of mechanically responding to the filing of ACPA complaints by generating and depositing "Domain Name Declarations" with plaintiffs' selected courts. However, the absence of any intention to confer either personal or subject-matter jurisdiction through such Declarations is made clear enough by a contemporaneous affidavit filed by the authorized corporate representative of Network Solutions in the Porsche case then pending in the Eastern District of Virginia:

> 5.    It should be understood that my prior Declaration, as with all of the other approximately 550 declarations issued on behalf of Network Solutions in similar disputes around the world, is simply a sworn declaration, issued in conformance with Title 28 U.S.C. § 1746, and nothing more.

> 6.    Although these declarations are referred to as "registry certificates" or "registrar certificates," Network Solutions' "Registrar Certificate" is not an "underlying" certificate of anything. It is my representation, through sworn testimony, as the authorized representative of Network Solutions, that "complete dominion and control regarding the disposition of the registration" of the domain name that is in dispute has been surrendered to the court . . . .

> 7.    There is no "underlying registration certificate" for a domain name registration. No other "registrar certificates" exist for any of the other 6,000,000 domain name registrations recorded with Network Solutions. **The "registrar certificate" is not a "thing" or a "res" and it does not evidence a property right in anything.** It is simply my declaration on behalf of Network Solutions.

> 8.    Network Solutions performs registration services for its customers, who are known as "registrants." . . . . [A]s a matter of contract, the domain name registrant has

-24-

agreed that Network Solutions my make such surrender of control. The surrender or

"deposit" of control, however, **assumes that the court has "competent jurisdiction."**

(See Policy, Section 10 (a and b)).

        10.     Network Solutions, of course, as a registrar of Internet domain names, **is in**

**no position to make that determination of jurisdiction.**

Supplemental Declaration of David M. Graves, Director of Business Affairs, Network Solutions,

Inc. (Sept. 30, 1999) (emphasis added), in Porsche Cars N. Am. v. Porsch.com, No. 99-0006-A

(E.D. Va. *filed* Jan. 6, 1999). In short, the perfunctory and mechanical "domain name declaration"

procedure invented by Network Solutions, and enshrined at Network Solutions' behest into law in

the ACPA, was and always has been contemplated as a formality without any effect on federal

courts' subject-matter or personal jurisdiction to adjudicate such disputes. If the court otherwise

lacks jurisdiction, the deposit of a "Domain Name Declaration" simply cannot confer subject-

matter jurisdiction on a court that the court lacks.

### III.    The *In Rem* Provision of the Cybersquatting Act Is Unconstitutional Under *Shaffer v. Heitner* and Other Precedents.

        We begin with the obvious: The mere registration of one or more Internet Domain

Names, using the services of a Registrar in a particular jurisdiction, does not establish "minimum

contacts" with that jurisdiction sufficient to satisfy International Shoe, and a court situated in the

judicial district where the Registrar happens to be located cannot exercise jurisdiction on that basis

alone. America Online, Inc. v. Huang, 106 F. Supp. 2d 848 (E.D. Va. 2000); Heathmount A.E.

Corp. v. Technodome.Com., 106 F. Supp. 2d 860, 867 (E.D. Va. 2000); Banko Inverlat, S.A. v.

Inverlat.com, 112 F. Supp. 2d 521, 522 (E.D. Va. 2000).

        The *in rem* domain name provisions of the 1999 Omnibus Appropriations Act are

defective both for factual reasons (namely, domain names are not "property" and Congress cannot turn them into "property" by fiat)[16] and for Constitutional reasons (namely, Shaffer v. Heitner, 433 U.S. 866 (1977)). Domain names cannot ever confer *in rem* jurisdiction on any court and the *in rem* jurisdiction provisions of the so-called "Anticybersquatting Consumer Protection Act," are facially unconstitutional because they purport to confer jurisdiction even in the absence of minimum jurisdictional contacts.

So far as hypothetical *in rem* jurisdiction is concerned, the controlling law is set forth in Shaffer v. Heitner, 433 U.S. 866 (1977),[17] in which the plaintiff, in a shareholder derivative action, sought to establish jurisdiction over non-Delaware defendants by slapping a sequestration

---

[16]In fact, Congress does not even purport to transform Domain Names into any form of property. Rather, Congress specifically acknowledges in the language of the ACPA that the statute depends instead on a "**deemed**" fiction concerning the imaginary "situs" of contract rights that remain non-property. See 15 U.S.C. § 1125(d)(2)(C) ("In an *in rem* action under this paragraph, a domain name shall be **deemed** to have its situs in the judicial district . . . .") (emphasis added).

[17]Due Process requires United States courts to adhere to fundamental requirements of "minimum contacts" and "fair play and substantial justice" – either for the purpose of exercising jurisdiction over the persons of non-resident Defendants, see International Shoe Co. v. Washington, 326 U.S. 310 (1945); Hanson v. Denckla, 357 U.S. 235 (1958); World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), or exercising jurisdiction over the rights or "property" of non-resident Defendants. Shaffer v. Heitner, 433 U.S. 186, 207 (1977) ("The phrase, 'judicial jurisdiction over a thing,' is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing."); Mid-Allegheny Corp v. Pittsburgh Terminal Corp., 831 F.2d 522, 526 (4th Cir. 1987) ("The narrow holding of [Shaffer] was a simple one: [T]he minimum contacts rule of International Shoe would henceforth be applied to actions *in rem* and *quasi in rem*, as well as to actions *in personam*."); Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation, 605 F.2d 648, 654 (2nd Cir. 1979) ("Shaffer completed the process of supplanting the old doctrine of personal jurisdiction based upon state sovereignty with a newer theory of personal jurisdiction stemming from notions of due process. See Shaffer at 196-206; International Shoe Co. v. Washington, 326 U.S. 310 (1945). Under the regime of Shaffer, the test of '"fair play and substantial justice"' that governs *in personam* jurisdiction controls *in rem* jurisdiction as well. Shaffer, 433 U.S. at 207."); see also Lindsey v. Greene, 649 F.2d 425, 427-28 (6th Cir. 1981) (for purposes of quantum of Due Process contacts required for jurisdiction, Shaffer "effectively erased the former distinction between in rem and *in personam*").

-26-

order on those defendants' stock shares, on the ground that the share transfer record books of the corporation were located in Delaware. Shaffer, 433 U.S. at 195. Of course, in this case, the domain registration records are on a Registry "server" computer in Virginia (and on five other "mirror" computers in such places as Sweden and Japan) – to which a Bermuda company that serves as the Registrar has been granted access. Neither the Registrar nor the Registry is located in Detroit.

In Shaffer, the Delaware Court of Chancery suggested that the purpose of the sequestration of the intangible shares was to force the non-resident defendant to appear and defend the shareholders' derivative action:

> The primary purpose of "sequestration" as authorized by 10 Del. C. § 366 is not to secure possession of property pending a trial between resident debtors and creditors on the issue of who has the right to retain it. On the contrary, as here employed, "sequestration" is a process used to compel the personal appearance of a nonresident defendant to answer and defend a suit brought against him in a court of equity. Sands v. Lefcourt Realty Corp., 117 A.2d 365 (Del. Super. Ct. 1955). It is accomplished by the appointment of a sequestrator by this Court to seize and hold property of the nonresident located in this State subject to further Court order. If the defendant enters a general appearance, the sequestered property is routinely released, unless the plaintiff makes special application to continue its seizure, in which event the plaintiff has the burden of proof and persuasion.

Shaffer, at 199. At least one court (Judge Bryan of the Eastern District of Virginia) – temporarily – attempted to deny that such a "hostage-taking" stratagem was the intent behind the ACPA *in rem* provision. See Caesar's World, Inc. v. Caesars-Palace.com, 112 F. Supp. 2d 502, 502-04 (E.D. Va. 2000). However, subsequent events in the Caesar's World litigation – specifically including Judge Bryan's inexplicable attempt to treat the domain name as a surrogate for the absent Registrant for discovery purposes[18] – demonstrates that the ACPA *in rem* provisions are

---

[18] See also Exhs.(Orders of Judges Bryan and Buchanan).

-27-

intended for no other purposes than "sequestration" and hostage-taking, in order to force appearances by persons not subject to the jurisdiction of U.S. courts. Caesar's World, 112 F. Supp. 2d at 505-10.

Ultimately, the U.S. Supreme Court has squarely rejected such "hostage-taking" or "sequestration" stratagem in the most emphatic way:

> The case for applying to jurisdiction *in rem* the same test of "fair play and substantial justice" as governs assertions of jurisdiction *in personam* is simple and straightforward. It is premised on recognition that "[t]he phrase, 'judicial jurisdiction over a thing,' is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing." Restatement (Second) of Conflict of Laws § 56, Introductory Note (1971) (hereafter Restatement). **This recognition leads to the conclusion that, in order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising "jurisdiction over the interests of persons in a thing." The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum contacts standard elucidated in <u>International Shoe</u>. . . .**

Shaffer, 433 U.S. at 196-209 (emphasis added); see also Porsche, 51 F. Supp. 2d 22-23 ("[C]ourts generally cannot exercise *in rem* jurisdiction to adjudicate the status of property unless the Due Process Clause would have permitted *in personam* jurisdiction over those who have an interest in the *res*. . . . The Court cannot presume that Congress intended the [Dilution] Act to operate in a way that so blindly ignores 'traditional notions of fair play and substantial justice.'").

NAMESDIRECT.COM, may or may not have generated paper documents in which NamesDirect.com represents that it intends to comply with any order issued by this Court (but it is presumed that Plaintiff has <u>not</u> submitted such a document to this Court). However, even if such a Declaration is "deposited," it no more imbues a Domain Name Registration (which is not and can never be "property") with the nature of "property," and no more confers jurisdiction on a court that otherwise lacks jurisdiction, than could a so-called "certificate" purporting to grant ownership

-28-

in a star millions of light-years away even possibly confer on the so-called "owner" of the star the power to turn off the stellar object's nuclear fire at will. See generally International Star Registry of Illinois v. Bowman-Haight Ventures, Inc., 1999 WL 300285 (N.D. Ill. May 6, 1999) (business that purports to "register" faraway stellar objects in individuals' names).

Even if Congress favors the legal fiction of imbuing domain name registrations with attributes of "property" by "deeming" that service contracts have an imaginary "situs," Congress is not at liberty (at least without the concurrence of the legislatures in 34 states) to repeal the Due Process Clauses of the U.S. Constitution. The Delaware legislature attempted, in exactly the same manner, to imbue intangible rights of corporate shareholders with attributes of "property," including a legislative declaration concerning the so-called "situs" of such shares, but the Supreme Court held that such a statute could not Constitutionally be enforced to the extent such application was inconsistent with the dual International Shoe requirements of "minimum contacts" and "fair play and substantial justice." Shaffer v. Heitner, 433 U.S. 186, 203-07, 212 & n.39 (1977). Thus, even if Congress has made such a pronouncement, the ACPA nevertheless is without legal force or effect in the absence of minimum jurisdictional contacts between the Domain Name registrant and the state of Michigan. Neither John Hall nor Gapmount has any jurisdictional contacts with Michigan.

Moreover, all Defendants named in lawsuits (or whose rights are adjudicated in such lawsuits, see Shaffer v. Heitner, 433 U.S. 186, 212-17 (1977))[19] are entitled at a minimum to

---

[19]"The fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification. . . . We therefore conclude that all assertions of state court jurisdiction [*in rem* or *in personam*] must be evaluated according to the standards set forth in International Shoe and its progeny." Shaffer, 433 U.S. at 212.

-29-

the basic Constitutional guarantees of fair notice and an opportunity to be heard before their substantive rights[20] can properly be made the subject of adjudication. Ortiz, 527 U.S. at 846-47; Troxel v. Granville, ___ U.S. ___, 120 S. Ct. 2054, 2059-60 (2000); Cleveland Bd. of Ed., 470 U.S. at 542; Logan, 455 U.S. at 428-29; Moore, 431 U.S. at 502. This bedrock requirement of "fair notice and an opportunity to be heard" certainly is not satisfied by a procedure that hypothetically enables any trademark Plaintiff (1) surreptitiously to forum-shop a Domain Name dispute into the District of Montana or the plaintiff's "home court" in the Eastern District of Michigan, (2) automatically (and secretly) to secure a "Domain Name Declaration" from Network Solutions or Register.com by invoking the automatic internal procedures of these companies, and (3) quietly to "deposit" said "certificate" or "declaration" with the Montana or Michigan court, in an effort to trigger an *ex parte* adjudication there to cut off and terminate the Registrant's rights. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) (adjudication requires adequate and fair notice to those whose rights are effected); see also Shaffer, 433 U.S. at 206 ("[W]e have held that property cannot be subjected to a court's judgment unless reasonable and appropriate efforts have been made to give the property owners actual notice of the action.") (citing Schroeder v. City of New York, 371 U.S. 208 (1962); Walker v. City of Hutchinson, 352 U.S. 112 (1956); Mullane). Fair notice to the Registrant and an opportunity to be heard is an essential requirement of Due Process, which the "notice by publication" proposal of the Plaintiff

---

[20]This requirement of fair notice and an opportunity to be heard applies whether those substantive rights are characterized as property interests or liberty interests. Ortiz v. Fibreboard Corp., 527 U.S. 815, 846-47 (1999) (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985), and Hansberry v. Lee, 311 U.S. 32, 40 (1940)); Michael H. v. Gerald D., 491 U.S. 110, 121-27 (1989); Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542 (1985); Logan v. Zimmerman Brush Co., 455 U.S. 422, 428-29 (1982) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)); Moore v. East Cleveland, 431 U.S. 494, 502 (1977).

-30-

does not satisfy. Ortiz, 527 U.S. at 846-47; Michael H., 491 U.S. at 121-27; Cleveland Bd. of Ed., 470 U.S. at 542; Logan, 455 U.S. at 428-29; Moore, 431 U.S. at 502.

The Plaintiff's proposed procedure also potentially violates Due Process by omitting indispensable parties. Simply put, a Domain Name Registrant is an indispensable and necessary party, without whose presence, this Court cannot adjudicate the Registrant's mental state. FED. R. CIV. P. 19(b). The ACPA – including any *in rem* cause of action, specifically requires proof of "bad faith" – making the Registrant's mental state a necessary element even in *in rem* proceedings. Harrods, Ltd. v. Sixty Internet Domain Names, 110 F. Supp. 2d 420, 425-26 (E.D. Va. 2000); BroadBridge Media, LLC v. HyperCD.com, 106 F. Supp. 2d 505, 511 (S.D. N.Y. 2000); see also Greenpoint Financial Corp. v. Sperry & Hutchinson Co., Inc., ___ F. Supp. 2d ___, 2000 WL 1370835 (S.D. N.Y. Sept. 19, 2000). Accordingly, since mental state is always a necessary issue, no court can possibly conduct an *in rem* civil action *in absentia*, without joining the Registrant as an indispensable party.

In short, NSI's *ad hoc* contrivance of manufacturing "Domain Name certificates" simply is not an appropriate surrogate for actual and lawful jurisdiction of a court. If NAMESDIRECT.COM actually has control over the Domain Name registration in question, and if NamesDirect and/or one or more other Registrars, such as NSI or Register.com, actually wants to place such control in the power of this Court, then these third-parties certainly can move for leave (under Rule 24(c)) to intervene and to subject themselves voluntarily to the equitable powers of this Court. However, subjecting themselves to the equitable power of the courts is exactly what NSI and other Registrars have consistently sought to avoid. Academy of Motion Picture Arts & Sciences v. Network Solutions, Inc., 989 F. Supp. 1276 (C.D. Ca. 1997); Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp. 949 (C.D. Ca. 1997); Panavision Int'l v. Toeppen, 141

-31-

F.3d 1316, 1319 (9th Cir. 1998).  NSI has repeatedly taken the position in courts (and lobbying

Congress for immunity, as reflected in the so-called Cybersquatting Act committee markup) that

NSI is not a proper party in domain name conflicts.  Id.

## IV.  Domain Names are Not Subject to *In Rem* Jurisdiction Because Domain Names Are Not Property.

Plaintiff's *in rem* theory also violates the fundamental constitutional principle of

federalism.  Our Federal government was established as one of limited, enumerated powers.  See,

e.g., United States v. Morrison, 529 U.S. 598, ___, 120 S. Ct. 1740, 1744 (May 15, 2000); United

States v. Lopez, 514 U.S. 549, 557 (1995).  All powers not specifically enumerated in the

Constitution are reserved to the States respectively, or to the people.  U.S. CONST. Amend. X.

Ordinary questions of tort, contract, and property law are substantive issues reserved to the states,

to be addressed as a matter of state law (either by state courts, under the common law, or by state

legislatures, under the Police Power).  See e.g., 28 U.S.C. § 1652; Erie R.R. v. Tompkins, 304

U.S. 64 (1938).  Basic principles of federalism (including the principle that Congress may exercise

only those powers expressly enumerated in the Constitution), dictate that Congress cannot exercise

a general police power or intrude on matters that are within the traditional purview of state law.

Morrison; Lopez; Jones v. United States, 120 S. Ct. 1904, 1907, 529 U.S. 848 (May 22, 2000); cf.

College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 672-75

(1999) (power of Congress to prohibit States from infringing private "property" limited);

Cleveland v. United States, ___ U.S. ___, 121 S. Ct. 365 (2000) (defining "property" for purposes

of wire fraud statute).  "Were the Federal Government to take over the regulation of entire areas

of traditional state concern . . . the boundaries between the spheres of federal and state authority

would blur."  Lopez, 514 U.S. at 577 (Kennedy, J., concurring).

-32-

For example, property interests protected by Due Process are "defined by existing rules or understandings that stem from an independent source **such as state law**." Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (emphasis added). Thus, Federal courts typically look to state law to determine whether a "property" right exists. Goss v. Lopez, 419 U.S. 565, 572-573 (1975); Bishop v. Wood, 426 U.S. 341, 344 (1976). Likewise, the Supreme Court, in Mullane, held that Fourteenth Amendment rights cannot depend on the classification of an action as *in rem* or *in personam*, since that classification is "a classification for which the standards are so elusive and confused generally and which, being primarily for state courts to define, may and do vary from state to state." Mullane, 339 U.S. at 312; accord Shaffer, 433 U.S. at 206.

According to state law established by the Supreme Court of Virginia, (the jurisdiction where Network Solutions is located), **a Domain Name is a service contract – not "property."** Network Solutions, Inc. v. Umbro, Int'l, Inc., 529 S.E.2d 80, 86-88 (Va. Apr. 21, 2000); accord America Online, Inc. v. Huang, 106 F. Supp. 2d 848, 853 n.12 (E.D. Va. 2000); Dorer v. Arel, 60 F. Supp. 2d 558, 560-62 (E.D. Va. 1999). Likewise, California law – as established in Kremen v. Cohen, 99 F. Supp. 2d 1168, 1172 (N.D. Cal. May 30, 2000) – squarely recognizes that Domain Names are not a form of "property" that can be the subject of a conversion tort claim under California law.

In the context of *in rem* enforcement of judgments against property located in the state of Virginia, obviously a traditional matter of state law,[21] the Supreme Court of Virginia in

---

[21]The exercise of jurisdiction over property in the context of enforcing judgments is the paragdigmatic illustration of traditional *in rem* jurisdiction. See, e.g., Pennoyer v. Neff, 95 U.S. 714 (1878) (appeal from an action to enforce a judgment against real property). Under Rule 69(a) of the Federal Rules of Civil Procedure, federal courts employ the judgment enforcement processes of the states in which they sit. See Dorer v. Arel, 60 F. Supp. 2d 558, 559 (E.D. Va. 1999).

-33-

Umbro addressed the crucial question of the status of an Internet domain name under Virginia law. The Virginia Supreme Court's decision is fully consistent with the holdings of the Eastern District of Virginia Dorer v. Arel and Porsche, but is irreconcilable with the Eastern District's March 3, 2000 decision in Caesar's World, Inc., 112 F. Supp. 2d at 504 ("There is no prohibition on a legislative body making something property. Even if a domain name is no more than data, Congress can make data property and assign its place of registration as its situs."),[22] because in Caesar's World, the Virginia federal court sought to assign to Congress a role traditionally reserved for state governments. See Network Solutions, Inc. v. Umbro, Int'l, Inc., 529 S.E.2d 80, 86-88 (Apr. 21, 2000) (holding that a domain name is "the product of a contract for services," and not property subject to an *in rem* garnishment proceeding) (quoting Dorer v. Arel, 60 F. Supp. 2d 558, 561 (E.D. Va. 1999)). In Umbro, the Virginia Supreme Court observed that "We are cognizant of the similarities between a telephone number and an Internet domain name and consider both to be products of contracts for services. . . . In our opinion, neither one exists separate from its respective service that created it and that maintains its continued viability." Id., slip op. at 21-22 (citing Dorer).

In short, the legal question of whether a "thing" is or is not property, and subject as property to *in rem* jurisdiction, is properly conceived-of as an issue of state law. Since the individual states – Virginia (where NSI is located), and California (where ICANN is presently headquartered) and not Congress – are charged with the task of determining whether Domain Names are property, then it is only proper to resolve this issue by looking to state law, as opposed

---

[22]Judge Bryan's reasoning in Caesar's World violates every principle of Federalism because it is squarely controverted both by Virginia state law, and by California law, as interpreted by the Northern District of California.

to fictions "deemed" by Congress.  <u>Shaffer</u>, 433 U.S. at 206; <u>Board of Regents v. Roth</u>, 408 U.S. at 577; <u>Goss</u>, 419 U.S. at 572-573; <u>Bishop</u>, 426 U.S. at 344; <u>Mullane</u>, 339 U.S. at 312; <u>Umbro Int'l, Inc.</u>, 529 S.E.2d at 86-88; <u>Dorer</u>, 60 F. Supp. 2d at 561.   It is a violation of basic principles of federalism for Congress to attempt to deprive the states of authority to decide this question.

## CONCLUSION

For the foregoing reasons, EFF Defendants respectfully pray that this Court dismiss all *in rem* claims involving the Domain Names in question, and issue an Opinion setting forth legal precedent substantially similar to the arguments in this Brief.

<div style="margin-left:40%">

Respectfully submitted,

GAPMOUNT, LTD., JOHN HALL,
AND OTHER EFF DEFENDANTS,

By counsel,

Eric C. Grimm (P58990)
**CYBERBRIEF, PLC**
320 South Main Street
P.O. Box 7341
Ann Arbor, MI 48107-7341
734.332.4900

David H. Lowenschuss (P53767)
**DAVID H. LOWENSCHUSS, PLC**
2020 Shadford Road
Ann Arbor, MI 48104
734.623.9877

Cindy Cohn, Legal Director
**ELECTRONIC FRONTIER FOUNDATION**
454 Shotwell Street
San Francisco, CA 94110
415.505.7621

COUNSEL FOR ELECTRONIC
FRONTIER FOUNDATION AND
DEFENDANTS ROBERT EMMERT,
PAUL BROWN, ALFONSO FIERO,
JOHN HALL, GAPMOUNT, LTD.,
WALLACE RAWSON, RAD*TECH,
AND TOM COOPER..

</div>

December 7, 2000

-36-

## CERTIFICATE OF SERVICE

I certify that the following documents:

(1)     **Motion of John Hall, Gapmount, Ltd., and Other EFF Defendants, Under FED. R. CIV. P. 12(b)(1), to Dismiss All *In Rem* Claims for Lack of Subject-matter Jurisdiction and EFF Defendants' Motion for a More Definite Statement; and**

(2)     **Memorandum of John Hall, Gapmount, Ltd., and Other EFF Defendants In Support of EFF Defendants' FED. R. CIV. P. 12(b)(1) Motion to Dismiss all *In Rem* Claims for Lack of Subject-matter Jurisdiction and EFF Defendants' Motion for a More Definite Statement; and**

(3)     **Motion and Supporting Brief of EFF Defendants for an Expedited Order (a) to Stay Order Granting Plaintiffs' Motion For Leave to Publish, and (b) to Preserve the *Status Quo*; and**

(4)     **Motion of EFF Defendants to Exceed 20-page Limit on Length of Supporting Briefs;**

were served on the parties or counsel fo record, by depositing them with the United States Postal Service, with First Class Mail or more expeditious means of delivery prepaid, on or before December 7, 2000:

William A Sankbeil, Esq.
Kerr, Russell, & Weber, PLC
500 Woodward Ave., Suite 2500
Detroit, MI  48226

Robert R. Yoder, Esq.
5080 North 40th Street
Suite 335
Phoenix, AZ  85018

Richard Phillips, Esq.
Mikkelborg, Broz, Wells & Fryer
Suite 3600
1001 Fourth Avenue
Seattle, WA  98154

Thomas Pezzetti, Jr., Esq.
Smith & Johnson
Six Hundred Three Bay Street
P.O. Box 705
Traverse City, MI  49685-0705

Lisa S. Gallerano, Esq.
Akin, Gump, Strauss, Hauer & Feld
1700 Pacific Avenue
Suite 4100
Dallas, TX  75201

Ronald Reagan, Esq.
140 Court Avenue
Sevierville, TN  37862

Shelly M. Liberto, Esq.
3 Hutton Centre Drive
Suite 900
Santa Ana, CA  92707

Kathleen A. Lang, Esq.
Dickinson Wright, PLLC
500 Woodward Ave.
Suite 4000
Detroit, MI  48226

David H. Lowenschuss, Esq.
David H. Lowenschuss, P.L.C.
2020 Shadford Road
Ann Arbor, MI  48104

Luis Miguel Acosta, Esq.
Plunkett & Cooney
505 North Woodward Ave.
Suite 3000
Bloomfield Hills, MI  48304

Gregory D. Phillips, Esq.
Howard, Phillips & Anderson
560 East 200 South, Suite 230
Salt Lake City, UT  84102

Cindy Cohn, Esq.
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA  94110

-38-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED