# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**FORD MOTOR COMPANY,** *et al.*,

    **Plaintiffs**

v.

**GREAT DOMAINS.COM, INC.,** *et al.*,

    **Defendants**

Case No. 00-71544
Hon. Robert H. Cleland
United States District Judge

_____/

## REPLY MEMORANDUM OF EFF DEFENDANTS ROBERT EMMERT, PAUL BROWN, ALFONSO FIERO, JOHN HALL, GAPMPOUNT, LTD., WALLACE RAWSON, RAD*TECH, AND TOM COOPER IN SUPPORT OF EFF DEFENDANTS' RULE 12(b)(2) and 12(b)(6) MOTIONS TO DISMISSS

Eric C. Grimm (P58990)
**CYBERBRIEF, PLC**
320 South Main Street
P.O. Box 7341
Ann Arbor, MI 48107-7341
734.332.4900

David H. Lowenschuss (P53767)
**DAVID H. LOWENSCHUSS, PLC**
2020 Shadford Road
Ann Arbor, MI 48104
734.623.9877

Cindy Cohn, Legal Director
(admission application pending)
**ELECTRONIC FRONTIER FOUNDATION**
454 Shotwell Street
San Francisco, CA 94110
415.505.7621

COUNSEL FOR ELECTRONIC FRONTIER FOUNDATION AND DEFENDANTS ROBERT EMMERT, PAUL BROWN, ALFONSO FIERO, JOHN HALL, GAPMOUNT, LTD., WALLACE RAWSON, RAD*TECH, AND TOM COOPER.



Not all Internet Domain Names that consist of or contain trademarks[1] automatically trigger prohibitions against so-called "cybersquatting." Hasbro v. Clue Computing, 232 F.3d 1, 3 (1st Cir. 2000); Avery-Dennison v. Sumpton, 189 F.3d 868, 874-82 (9th Cir. 1999); Lucent Tech. v. Lucentsucks.com, 95 F. Supp. 2d 528, 535-36 (E.D. Va. 2000). Competing uses, fair uses, expressive and non-commercial uses all require special analysis.[2] "[T]rademarks [must] not be 'transformed from rights against unfair competition to rights to control speech.'"[3] CPC Int'l, Inc. v. Skippy, Inc., 214 F.3d 456, 462 (4th Cir. 2000); Mark A. Lemley, *The Lanham Act and the Death of Common Sense*, 108 YALE L.J. 1687, 1710-11 (1999), Tab 1; see also Parks v. LaFace Records, 76 F. Supp. 2d 775, 782-85 (E.D. Mi. 1999), Tab 2.

---

[1] Virtually every English word has been trademarked by somebody for something. Most are subject to multiple trademark claims. If as much of the Internet addressing lexicon is declared off-limits as Ford proposes, the detrimental effect on innovation is likely to be profound. A trademark owner "may not remove a word from the English language merely by acquiring [a] trademark." Playboy v. Netscape, 55 F. Supp. 2d 1070, 1074 (C.D. Cal. 1999).

[2] In this case, each of the EFF Defendants has registered and/or used the specific Domain Name(s) in question for completely legitimate "fair use" or noncommercial purposes. For example, EFF Defendant John Hall owns both < Jaguarcenter.com > and < orangoutang.com >, which are used to publish passive Websites advocating species preservation. Moreover, Mr. Hall **never** posted the Domain Name < Jaguarcenter.com > for sale on the Great Domains Website. Hall Decl. ¶ 8. Other EFF Defendants include sellers of parts and used vehicles, a professional mechanic, and afficionados of classic and vintage Jaguar and Volvo automobiles.

[3] Plaintiffs' rather simplistic theories of liability – essentially an effort to distort and extend the Lanham Act (as amended) well past the breaking point to "catch" even legitimate and non-infringing Domain Name Registrants like the EFF Defendants – is completely divorced from the theoretical and public-policy foundations of trademark law. See Lemley, *supra* at 1688-99, 1701-15 ("[Misinformed] [c]ourts [have prohibited] uses that would not have been infringements even a few years ago and [have] protect[ed] as trademarks things that would not have received such protection in the past. . . . [T]hese changes have loosed trademark law from its traditional economic moorings and have offered little of substance to replace them.."), Tab 1; Glynn S. Lunney, Jr., *Trademark Monopolies*, 48 EMORY L.J. 367 (1999), Tab 3; Rochelle Cooper Dreyfuss, *We are Symbols and Inhabit Symbols, So Why Should We be Paying Rent?: Deconstructing the Lanham Act and Rights of Publicity*, 20 COLUM.-VLA. J. OF L. & ARTS 123 (1996), Tab 4; Alex Kozinski, *Trademarks Unplugged*, 68 N.Y.U. L. Rev. 960 (1993), Tab 5.

An independent mechanic's truthful advertisement about her qualification to repair "Volvo" automobiles, or a "Volvo" specialization, remains and always has been perfectly legitimate and non-confusing. Volkswagenwerk A.G. v. Church, 411 F.2d 350, 352 (9th Cir. 1969) (repair services). Volvo has no right to collect rent or royalties from her. Secondary-market vendors truthfully selling used products, or selling compatible non-patented replacement parts, are not required to pay royalties or ask Plaintiffs' permission to participate in legitimate secondary markets. Patmont Motor Werks, Inc. v. Gateway Marine, Inc., No. 96-2703, 1997 WL 811770, at *3-*4 & n.5 (N.D. Cal. Dec. 18, 1997) (used vehicles); Hypertherm, Inc. v. Precision Prods., Inc., 832 F.2d 697, 700-01 (1st Cir. 1987) (replacement parts and accessories); cf. Schwinn Bicycle Co v. Murray Ohio Mfg. Co., 470 F.2d 975 (6th Cir. 1972) (replacement bicycle rims). Many third-party uses of brand names, even for profit, are permissible fair uses. New Kids on the Block v. News Am. Publ'g, 971 F.2d 302, 306 (9th Cir. 1992); Bihari v. Gross,119 F. Supp. 2d 309 (S.D.N.Y. 2000), see also Holiday Inns, Inc. v. 800 Reservation, Inc., 86 F.3d 619, 623-26 (6th Cir. 1996) (1-800-405-4329 – i.e.,1-8ØØ-HØLIDAY – does not violate Lanham Act).

To paraphrase Ford's brief, this case involves "an extensive scheme of [reverse] cyberpiracy [by] Ford," improperly "aimed at" innocent and non-infringing Defendants. EFF Defendants are not "cybersquaters" like Dennis Toeppen,[4] but instead are innocent victims of Ford's aggression. In fact, some Members of Congress have acknowledged that "reverse

---

[4]Plaintiffs, in their "effects test" jurisdiction argument, attempt to rely heavily on Panavision v. Toeppen, 141 F.3d 1316 (9th Cir. 1998). However, in contrast with the Toeppen decision, it is undisputed that none of the EFF Defendants ever targeted any email message to the Plaintiffs in Sweden, Great Britain, Dearborn, or any of the far-flung jurisdictions where Ford does business, seeking to sell a trademark-identical Domain Name for a premium. Unlike Mr. Toeppen's case, in this case there is no evidence whatsoever (since Ms. McFee, an in-house lawyer for Ford, cannot testify to any Defendant's mental state because she lacks first-hand knowledge) of any jurisdiction-specific activity whatsoever by any of the EFF Defendants.

hijacking" or "trademark cyberpiracy" by corporations including eToys, Hasbro, HealthNet, and Ford Motor Company, also has become an alarming problem.[5] E.g., Cong. Rec. S 9754 (July 29, 1999) (statement of Mr. Leahy) ("Reverse . . . hijacking is an effort by a trademark owner to take a domain name from a legitimate good faith domain name registrant.").

**Ford has failed to state a claim:** Ford's Complaint depends on two erroneous and unsupported assumptions. Its Lanham Act claims should be dismissed because both assumptions are wrong. Ford's first erroneous (legal) assumption is its *per se* liability theory – namely, the notion that nothing more than the bare allegation of an auction listing on the Great Domains Website (even if the listing was never authorized by the Registrant, and even if the Domain Name and the Website published at it clearly constitute a "fair use" or noncommercial use) somehow automatically constitutes a *per se* violation of section 1125(a), (c), or (d)(1) of the Lanham Act. The applicable statutory sections all require considerably more, in order to state any claim for trademark infringement, dilution, or "cybersquatting." Nevertheless, the only factual allegation Plaintiffs make against each EFF Defendant is the bare allegation that a paralegal saw each Domain Name listed on the Great Domains Website (no other investigation was evidently conducted and Ford lawyer Susan McFee does not even allege she ever personally viewed the Great Domains Website). Plaintiffs effectively concede that they allege nothing else because – instead of identifying any other defendant-specific allegation – Plaintiffs instead argue this one isolated allegation standing alone (coupled with conclusory incantations hypothesizing that all Great Domains listings automatically constitute *per se* "bad faith" intentional trademark infringement),

---

[5] See Hasbro, 66 F. Supp. 2d at 126-37; Lucent, 95 F. Supp. 2d at 535-36; see also Tab 6 (summary list of examples of extortionate "reverse piracy" Domain Name cases). In this case, **Ford** is guilty of "trademark cyberpiracy" – namely, the improper and extortionate practice of filing pretextual lawsuits to coerce lawful registrants.to transfer Interent addressing rights.

somehow predetermines the outcome of this case and nothing else should be required. Not only are Plaintiffs wrong as a matter of law, but Plaintiffs' argument suffers from exactly the same conclusory defects as the Complaint itself.

Plaintiffs' second mistaken (implicit factual) assumption is that a Great Domains listing, standing alone, always establishes that (1) the Domain Name Registrant actively sought to have the listing published, (2) the Registrant necessarily had a culpable mental state, and (3) the Registrant's hypothesized *mens rea* necessarily involved some particularized focus on Michigan. The reality (which Ford evidently concedes, because Ford does not even make any contrary allegations of specific fact – but merely repeats like a mantra its far-fetched conclusion about a "bad faith scheme to profit from Ford's . . . trademarks," as though mere repetition makes it so)[6] is that any Great Domains listing can appear arbitrarily – completely without the Registrant's knowledge or consent. For example, EFF Defendant John Hall **never** posted the Domain Name < Jaguarcenter.com > for sale on the Great Domains Website. Hall Decl. ¶ 8. The Domain Name is not for sale. Id. If a listing for this Domain Name appears on Great Domains, a plausible reason

---

[6]In fact, Ford does not and cannot dispute that a Great Domains listing could just as easily result from the bad-faith action of a plaintiff trademark owner, if such owner elects to manufacture a lawsuit by publishing a listing on some Defendant's behalf via Great Domains or some other auction Website. Were this Court to accept Ford's *per se* argument, such a hypothetical trademark Plaintiff would automatically survive 12(b)(6) dismissal on no stronger basis than the bare allegation that the Domain Name was observed on the Great Domains Website, and the hypothetical Defendant would be subjected to extortion because the hypothetical Plaintiff could unilaterally impose all the burden and expense of litigation (including discovery) on the Domain Name Registrant. In short, Plaintiff's "affirmative defense" argument is simply a recipe for multiplying the problem of reverse hijacking, by subjecting economically weaker Domain Name Registrants to the extortionate threat of protracted, expensive, and uncertain litigation. Neither Ford's Complaint nor its Opposition Brief contains any allegation seeking to refute or controvert the reality that multiple EFF Defendants did not at any time personally ask Great Domains to publish listings. In short, something more substantial than Ford's bare allegation of observation alone is required to state a viable claim.

might be that a prior Registrant may have owned the Domain Name prior to the time Mr. Hall registered it in January, 2000. See Hall Decl. ¶ 3. Moreover, none of the EFF Defendants – even the limited number who were aware of Great Domains listings prior to this lawsuit – ever had any improper or infringing motivation that could give rise to a claim by Ford. Rather, the registration and function of each of these Domain Names was obviously lawful and non-infringing. The non-infringing nature of each such listing can readily be inferred directly from the face of the Complaint, on account of the specific complete character string of each Domain Name in question.

Plaintiffs also seek to bolster their argument with self-serving testimony from a Ford lawyer. However, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 603. Susan McFee has no access whatsoever to any EFF Defendants' private internal mental processes and cannot testify to their personal thoughts. McFee's testimony is improper on its face because she is not competent to testify either to any facts or to any legal conclusions. Id. (first-hand knowledge requirement); Rule 702 (experts must testify to factual issues; they may not engage in legal argumentation); Rules 703, 705; Fed. R. Civ. P. 26(a)(2) (experts are required to disclose both their analytic methodology and all materials that serve in whole or in part as a basis for their testimony; Ms. McFee's statement that "I have gathered the information discussed below" does not even sufficiently disclose her methodology and sources to qualify her as a fact witness).

**Personal Jurisdiction Is Not Established:** Even more faulty is Ford's theory of personal jurisdiction. Ford bears the burden of supporting its jurisdiction argument with evidence, but as demonstrated above, the only purported "evidence" Ford has sought to submit is not evidence at all: The so-called "witness" Ford relies upon cannot possibly have any personal knowledge of any of the matters (such as the mental states of persons she has never personally met) to which she

attempts to "testify." Accordingly, Plaintiff's attempt to argue that this Court is obligated to credit any of the non-evidentiary statements masquerading as "testimony" that Plaintiff seeks to submit, is contrary to the Rules of Evidence.

Plaintiff attempts to advance two theories of jurisdiction – (1) the Calder v. Jones "effects test," and (2) the Inset v. Instruction Set "24/7 jurisdiction everyplace a Website is visible" theory – neither of which justifies the exercise of personal jurisdiction in this case.

Plaintiff's reliance on Inset v. Instruction Set is easily disposed of. The "24/7" cases Plaintiff seeks to rely upon represent a minority view of the law, have not been followed by any Court of Appeals, see, e.g., GTE New Media Servs. v. Bellsouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000) (applying traditional Due Process analysis), and have repeatedly been criticized[7] as contrary to half a century of Due Process jurisprudence set forth in decisions such as International Shoe, and World Wide Volkswagen, 444 U.S. 286 (1980).

In marked contrast with Plaintiff's reliance on minority-view caselaw from other jurisdictions, precedent in the Eastern District of Michigan is squarely on point and specifically holds that personal jurisdiction is not available in a case such as this one. Winfield Collection v. McCauley, 105 F. Supp. 2d 746, 748-51 (E.D. Mi. 2000) (Cleland, J.). Winfield was specifically cited in EFF Defendants' opening briefs, but Plaintiffs have not even attempted to distinguish it. Exactly like this case, Winfield involved an attempt by an intellectual property plaintiff to assert

---

[7]See, e.g., Bradley v. Mayo Found., No. 97-204, 1999 WL 1032806, at *19-20 (D. Ky. 1999) (Inset "has been repeatedly rejected by more recent case law"); Hearst Corp. v. Goldberger, No. 96-Civ.-3260, 1997 WL 97097, at *19 (S.D.N.Y. Feb. 2, 1997); Barrett v. Catacombs Press, 44 F. Supp. 2d 717, 727 (E.D. Pa. 1999); Hasbro v. Clue Computing, 994 F. Supp. 34, 41-42 (D. Mass. 1997); Millennium Enters. v. Millennium Music, L.P., 33 F. Supp. 2d 907, 914-15, 922 (D. Or. 1999); Fix My PC, LLC v. N.F.N. Assocs., Inc., 48 F. Supp. 2d 640, 642-43 (N.D. Tex. 1999).

Michigan jurisdiction over an out-of-state Defendant, based on a listing of allegedly "infringing" items on an "auction" Website operated by a third party. For exactly the same reasons as in McCauley, this Court should reject Plaintiffs' attept to assert personal jurisddiction over any EFF Defendant. Id.

Plaintiffs' "effects test" argument is even less viable as a basis for personal jurisdiction. The "effects test" was recognized by the Supreme Court in a defamation case, Calder v. Jones, 465 U.S. 783 (1984), and has little application outside a narrow subset of intentional tort cases involving undisputed targeting of a specific jurisdiction. See McCauley, at 751 (rejecting "effects doctrine" jurisdiction argument in Website auction infringement lawsuit). The Calder case involved a newspaper article, prepared in reliance on California sources, published in a newspaper with its largest circulation in California, and claiming that California entertainer Shirley Jones had a drinking problem that was interfering with her work in California. Calder, 465 U.S. at 788-89 & n.9. Under the limited circumstances of that case, California had reason to assert jurisdiction over the Florida author responsible for publishing the article in California. Id.

Plaintiffs' attempt to extend the "effects doctrine" to the present circumstances has no basis in law or fact. First, Plaintiff has introduced no evidence of any intentional tort; all Plaintiffs have submitted consists of self-serving and inadmissible accusations by a person with no first-hand knowledge of any Defendant's mental processes. Likewise, Plaintiffs' reliance on Panavision v. Toeppen is misplaced, as discussed above. See note 4, *supra*. Apart from Toeppen, the Ninth Circuit specifically addressed and rejected the application of Calder v. Jones in Website cases such as this one. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418-20 (9th Cir. 19978). The Sixth Circuit also has rejected the application of Calder v. Jones under circumstances more analogous to the present case:

> We find Calder distinguishable for several reasons. First, the press release concerned Reynolds' activities in Monaco, not Ohio. Second, the source of the controversial report was the drug sample taken in Monaco and the laboratory testing in France. Third, Reynolds is an international athlete whose professional reputation is not centered in Ohio. Fourth, the defendant itself did not publish or circulate the report in Ohio; Ohio periodicals disseminated the report. Fifth, Ohio was not the "focal point" of the press release. The fact that the IAAF could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction. World-Wide Volkswagen Corp., 444 U.S. at 295, 100 S.Ct. at 566. . . .
>
> Even accepting that the IAAF could foresee that its report would be disseminated in Ohio, however, the IAAF would not be subject to personal jurisdiction in Ohio. Madara v. Hall, 916 F.2d 1510, 1519 (11th Cir.1990) (defendant's knowledge that independent publisher might publish defamatory statements in California does not create personal jurisdiction)... .We cannot hold that this act of the IAAF satisfied the requirements of the Ohio statute, or that permitting the IAAF to be sued in Ohio for the press release would comport with due process.

Reynolds v. International Amateur Athletic Federation, 23 F.3d 1110, 1119 (6th Cir. 1994).

Trademark plaintiffs like NLT have repeatedly attempted in Internet cases to distort and extend Calder v. Jones and other defamation or fraud cases beyond all reason, but those efforts also have been rejected repeatedly by courts across the country. E.g., Cybersell, Inc, 130 F.3d at 420; Neogen Corp. v. Neo Gen Screening, Inc., 109 F. Supp. 2d 724, 2000 WL 1199949, at *6-*8 (W.D. Mi. 2000); Berthold Types, Ltd. v. European Mikrograf Corp., 102 F. Supp. 2d 928, 932-34 (N.D. Ill. 2000); see also Gallant v. Trustees of Columbia University, 111 F. Supp. 2d 638, 2000 WL 1264649, at *4-*6 (E.D. Pa. 2000); Neato, Inc. v. Great Gizmos, 2000 WL 305949, at *4-*5 (D. Conn. Feb. 24, 2000); Barrett v. Catacombs Press, 44 F. Supp. 2d 717, 730-31 (E.D. Pa. 1999); ESAB Group, Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 329-34 (D.S.C. 1999); Ty, Inc. v. Clark, 2000 WL 51816, at *3-*4 (N.D. Ill. Jan. 14, 2000). Likewise, Plaintiff's erroneous reliance on Calder should also be rejected here.

## CONCLUSION

For the foregoing reasons, the EFF Defendants' motions to Dismiss should be granted and all claims by Plaintiffs against EFF Defendants should be Dismissed with Prejudice. EFF Defendants respectfully pray that this Court so ORDERS.

Respectfully submitted,

EFF DEFENDANTS,

By counsel,

December 18, 2000

Eric C. Grimm (P58990)
**CYBERBRIEF, PLC**
320 South Main Street
P.O. Box 7341
Ann Arbor, MI 48107-7341
734.332.4900

David H. Lowenschuss (P53767)
**DAVID H. LOWENSCHUSS, PLC**
2020 Shadford Road
Ann Arbor, MI 48104
734.623.9877

Cindy Cohn, Legal Director
**ELECTRONIC FRONTIER FOUNDATION**
454 Shotwell Street
San Francisco, CA 94110
415.505.7621

COUNSEL FOR ELECTRONIC FRONTIER FOUNDATION AND DEFENDANTS ROBERT EMMERT, PAUL BROWN, ALFONSO FIERO, JOHN HALL, GAPMPOUNT, LTD., WALLACE RAWSON, RAD*TECH, AND TOM COOPER..

## CERTIFICATE OF SERVICE

I certify that the following documents:

(1) **Reply Memorandum of Eff Defendants Robert Emmert, Paul Brown, Alfonso Fiero, John Hall, Gapmpount, Ltd., Wallace Rawson, RAD*TECH, and Tom Cooper in Support of EFF Defendants' Rule 12(b)(2) and 12(b)(6) Motions to Dismisss**; and

(2) **Unopposed Motion and Supporting Brief of EFF Defendants, under Local Rule 7.1(a)(3), for Leave to File a Reply Brief More than Five Pages in Length,**

were served on the following Parties and counsel of record, by depositing them with the United States Postal Service, with First Class Mail or more expeditious means of delivery prepaid, on or before December 18, 2000:

William A Sankbeil, Esq.
Kerr, Russell, & Weber, PLC
500 Woodward Ave., Suite 2500
Detroit, MI 48226

Robert R. Yoder, Esq.
5080 North 40th Street
Suite 335
Phoenix, AZ 85018

Richard Phillips, Esq.
Mikkelborg, Broz, Wells & Fryer
Suite 3600
1001 Fourth Avenue
Seattle, WA 98154

Thomas Pezzetti, Jr., Esq.
Smith & Johnson
Six Hundred Three Bay Street
P.O. Box 705
Traverse City, MI 49685-0705

Roberta Jacobs-Meadway
Panitch, Schwarze
2005 Market Street
22nd Floor
Philadelphia, PA 19103-7086

Stephen Mahan
P.O. Box 474
Norris, TN 37828

Shelly M. Liberto, Esq.
3 Hutton Centre Drive
Suite 900
Santa Ana, CA 92707

Kathleen A. Lang, Esq.
Dickinson Wright, PLLC
500 Woodward Ave.
Suite 4000
Detroit, MI 48226

David H. Lowenschuss, Esq.
David H. Lowenschuss, P.L.C.
2020 Shadford Road
Ann Arbor, MI 48104

Suzanne Singleton
11507 Colfax Ave.
Lakewood, CO 80215

Luis Miguel Acosta, Esq.
Plunkett & Cooney
505 North Woodward Ave.
Suite 3000
Bloomfield Hills, MI 48304

Gregory D. Phillips, Esq.
Howard, Phillips & Anderson
560 East 200 South, Suite 230
Salt Lake City, UT 84102

Cindy Cohn, Esq.
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110