**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN** FILED
**SOUTHERN DIVISION**

MAR 7  4 29 PM '02

FORD MOTOR COMPANY, *et al.*,

U.S. DISTRICT COURT
ANN ARBOR

     **Plaintiffs**

v.

GREAT DOMAINS.COM, INC., *et al.*,

     **Defendants**

Case No. 00-71544
Hon. Robert Cleland
United States District Judge

/

## MEMORANDUM OF THE EFF DEFENDANTS:

### (1) IN OPPOSITION TO PLAINTIFF'S ELEVENTH-HOUR MOTION (Dkt. #163) AND SUPPLEMENTAL MOTION (Dkt. #168) FOR LEAVE TO AMEND; and

### (2) IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL TRANSFER OF VENUE (Dkt. #165); and

### (3) IN SUPPORT OF THE COURT'S MANDATORY AND NON-DISCRETIONARY DUTY UNDER RULE 4(m) TO DISMISS ALL CLAIMS AGAINST PERSONS WHO WERE NEVER SERVED.

Eric C. Grimm (P58990)
**CYBERBRIEF, PLC**
320 South Main Street
P.O. Box 7341
Ann Arbor, MI 48107-7341
734.332.4900

Cindy Cohn, Legal Director
**ELECTRONIC FRONTIER FOUNDATION**
454 Shotwell Street
San Francisco, CA 94110
415.505.7621

COUNSEL FOR THE ELECTRONIC
FRONTIER FOUNDATION AND
THE EFF DEFENDANTS.



## QUESTIONS PRESENTED

I.      With respect to Defendants (i.e., the 29 listed Defendants on pages 2-3 of Plaintiffs'
        Venue Motion), who Plaintiffs admit were never timely served with summons at
        any time from March, 2000 to the present (meaning the October 31, 2000 deadline
        for service of Summons has passed) –

- If the claims against such persons can be dismissed **without prejudice**, such
  that the Plaintiffs can re-file and prosecute any such claims in appropriate
  jurisdictions, and

- If this honorable Court already has explicitly, on December 20, 2001, put the
  Plaintiffs on notice "that the court DECLINES to exercise *in rem* jurisdiction
  over the domain names at issue in this case," and

- If FED. R. CIV. P. 4(m) specifically **requires** dismissal of any claims when
  service of summons has not timely been performed, then

Does this Court have a mandatory and non-discretionary duty under Rule 4(m) to
dismiss such claims involving persons who have never been served?

II.     If this honorable Court has already squarely held that "asserting *in rem* jurisdiction
        in this matter is not a permissible exercise of the court's authority" and placed
        Plaintiffs explicitly on notice "that the court DECLINES to exercise *in rem*
        jurisdiction over the domain names at issue in this case," and

- If Plaintiffs admit that all of the Complaints previously filed in this case – at
  any time from March, 2000 to the present – neither (1) stated any *in rem*
  claim against any Domain Name (as opposed to claims against *registrants* –
  persons – who owned such domain names) nor (2) included the **verification**
  that would have been  required for any proceeding *in rem*, and

- If Plaintiffs concede that **verification** in any action pending in Detroit,
  Michigan (where this Court has already specifically refused to entertain any
  *in rem* litigation) (1) would serve no purpose that has ever been permitted by
  this Court, and (2) will serve no purpose whatsoever that could not equally
  be served by initiating a **new lawsuit** by way of new Complaints in one or
  more appropriate jurisdictions,

Then **why** should this honorable Court permit the Plaintiffs to add "verification" at

this late juncture – which obviously serves no legitimate purpose and which proposed amendment justice clearly does not **require**?

III.  Why, exactly, do Plaintiffs believe that this honorable Court should permit them to avoid the consequences (if any) of Plaintiffs' own mistakes?

IV.  What reason exists for this honorable Court to prejudice or partially prejudice 29 Named Defendants by depriving them of rights these 29 persons might otherwise enjoy under Fed. R. Civ. P. 41(a)(1) and (d), in the event that Plaintiffs keep attempting to re-file and re-file claims again and again in improper jurisdictions?

V.  If this Court already has held that "*in rem* jurisdiction . . . is statutorily precluded" when "Defendants [who have not been served with summons] reside in the United States and thus are subject to personal jurisdiction in the States in which they reside," then with respect to the nine persons listed in Plaintiffs' Venue Motion who are (a) U.S. residents, and (b) have never properly been served –

- Doesn't Rule 4(m) require such claims to be dismissed **without prejudice**, in order that Plaintiffs can re-file any such claims in the appropriate jurisdictions (the states of residence of these people), and

- Isn't Plaintiff's proposal to initiate a second round of litigation in Virginia against such persons (before finally being dismissed again so *in personam* actions may proceed in the states of these Defendants' residences) nothing more than a request to violate these individuals' Due Process rights in clear violation of this Court's prior holding relating to *in rem* jurisdiciton?

VI.  With respect to the 29 Domain Name *Registrants* listed in Plaintiff's Venue Motion, for example:

| Registrant | Domain Name | Registered or assigned by . . . | Location |
|---|---|---|---|
| AAFM Breukers | fordgarage.com | Melbourne IT | Australia |
| Allegiance | jaguarbuyer.com | Verisign / Network Solutions | Mountain View, California |
| Jacob Pavin | 4AVolvo.com | Register.com | New York City |
| Scott Howell | OldFords.com | Tucows, Inc. | Canada |

| Local Websites | FordRepairs.com | Register.com | New York City |
| Richard Shanks | Ford2001.net | Easy Space | Surrey, U.K. |

and in light of this Court's prior holding that "[A] court thus may exercise *in rem* jurisdiction **only if** . . . the domain name <u>authority that registered or assigned the domain name</u> is located in th[e] district . . . ," then shouldn't Plaintiffs be requesting transfers of venue to the Southern District of New York, the Northern District of California (San Jose division) and other appropriate locations, instead of to Virginia?

VII. For each of the persons listed on pages 2-3 of Plaintiffs' Venue Motion, what (precisely) is the name and identity of the entity "that registered or assigned the domain name?"

IX. For each such Domain Name assignment authority, where is the "assignment entity" located? Is that location not the place where an *in rem* action, if any, must be filed?

## MOST RELEVANT AUTHORITIES

1. **Fed. R. Civ. P. 4(m)** (emphasis added):

    **(m) Time Limit for Service.**

    If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, <u>the court</u>, upon motion or on its own initiative after notice to the plaintiff, **shall** <u>dismiss the action without prejudice as to that defendant</u> or direct that service be effected [on or before October 31, 2000 (<u>see</u> Dkt. #24)]; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service [through and including October 31, 2000 (<u>see</u> Dkt. #24)] . . .

2. 15 U.S.C. § 1125(d)(2)(A) (emphasis added):

    (2) (A) The owner of a mark may file an *in rem* civil action against a domain name in **the** judicial district in which the [entity] **that registered or assigned the domain name is located** if . . . .

-iv-

3.  Order Denying "Motion of John Hall, Gapmount, Ltd., and Other EFF Defendants, Under Fed. R. Civ. P. 12(b)(1), to Dismiss All *in rem* Claims for Lack of Subject Matter Jurisdiction" and Declining to Exercise *in rem* Jurisdiction (Dec. 20, 2001), *in* <u>Ford v. Great Domains</u>, No. 00-CV-71544 (E.D. Mi. *filed* Mar. 29, 2000) (emphasis added):

"Ford's failure to list the domain names as defendants or state a claim against the domain names in the complaint is fatal to this argument. . . . [Moreover], <u>if Ford were permitted to amend the complaint</u>, jurisdiction over the domain names would be lacking. Thus, the court preemptively declines to exercise *in rem* jurisdiction."

<u>Id.</u> at 2.

"[A] court thus may exercise *in rem* jurisdiction only if . . . the domain name <u>authority that registered or assigned the domain name</u> is located in th[e] district . . . . In this case, [many] Defendants [who have not been served with summons] reside in the United States and thus are subject to personal jurisdiction in the States in which they reside. With a possible exception for [certain] foreign defendants, *in rem* jurisdiction thus is statutorily precluded."

<u>Id.</u> at 3 (emphasis added).

"The court thus concludes that, even reading § 1125(d)(2)(C) as a distinct authorization for asserting *in rem* jurisdiction, the court must determine that sufficient minimum contacts do not exist to satisfy the due process clause[s] of [the Fifth and Fourteenth Amendments to] the Constitution. *Accord Fleetboston*, 138 F. Sup[p]. 2d at 128; *Mattel,Inc. v. Barbie-Club.Com*, 2001 WL 436207, at *2 (S.D.N.Y. May 1, 2001). *Cf. Cable New[s] Network L.P., v. CNNews.com*, 162 F. Supp. 2d 484 (E.D. Va. 2001) (observing that '*in rem* jurisdiction is constitutionally proper when a court sits in the same district in which the registrar is located' but not where 'the adjudicating court merely has possession of the certificate of the domain name.') . . . The court – having been fully briefed on the matter – concludes that asserting *in rem* jurisdiction in this matter is not a permissible exercise of the court's authority. . . . The parties to this matter are further NOTIFIED that the court DECLINES to exercise *in rem* jurisdiction over the domain names at issue in this case."

<u>Id.</u> at 7-8.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
<u>SOUTHERN DIVISION</u>

**FORD MOTOR COMPANY,** *et al.,*

     **Plaintiffs**

     v.

**GREAT DOMAINS.COM, INC.,** *et al.,*

     **Defendants**

_____ /

Case No. 00-71544
Hon. Robert Cleland
United States District Judge

## MEMORANDUM OF THE EFF DEFENDANTS:

**(1) IN OPPOSITION TO PLAINTIFFS' ELEVENTH-HOUR MOTION (Dkt. #163)
<u>AND SUPPLEMENTAL MOTION (Dkt. #168) FOR LEAVE TO AMEND;</u>**

**(2) IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
<u>TRANSFER OF VENUE (Dkt. #165); and</u>**

**(3) IN SUPPORT OF THE COURT'S MANDATORY AND
NON-DISCRETIONARY DUTY UNDER RULE 4(m) TO DISMISS
<u>ALL CLAIMS AGAINST PERSONS WHO WERE NEVER SERVED.</u>**

## <u>INTRODUCTION AND BOTTOM LINE</u>

Under the Federal Rules of Civil Procedure, there is a **<u>right way</u>** to do it, and a **<u>wrong
way</u>** to do it. Plaintiffs ask this honorable Court to do things the wrong way. EFF Defendants
respectfully point out the controlling rules and respectfully ask this honorable Court to enforce
them. The **<u>right way</u>** also promotes judicial economy and common sense.

**<u>The Right Way to Do It Is This:</u>** The right way to remove from this Court's docket
the 29 or more Defendants – that Plaintiffs admit have never properly been served with
Summons – is simply to order all claims against such Defendants dismissed **<u>without</u>**

**prejudice**.  In fact, Rule 4(m) of the Rules of Civil Procedure imposes a mandatory duty on

this honorable Court to order such dismissals forthwith.  Additional authority supporting such

an approach is to be found in Rule 41 and the <u>Link v. Wabash</u> case by the Supreme Court.

Such a dismissal (**without prejudice**) does not operate as an adjudication on the

merits.  Thus, FORD and the other Plaintiffs would remain free to do their homework, to

ascertain the proper judicial districts in which to prosecute their multiple claims against 29

or more Defendants, and to file the necessary lawsuits where they belong.  FORD and the

other Plaintiffs would suffer no prejudice whatsoever from a dismissal <u>without prejudice</u>.

And, most importantly, such a dismissal would be (unlike the Plaintiff's proposed

course of action) completely consistent with the mandatory language of the Rules of Civil

Procedure.  Therefore, the dismissal approach is the legally correct approach.

Further, to the extent that FORD and the other Plaintiffs elect to proceed *in rem* after

their new lawsuits are re-filed, then the new lawsuits can be filed (1) in a way that properly

states *in rem* allegations, as opposed to *in personam* allegations,[1] (a known defect in FORD's

pleadings that its counsel **still** have not bothered to attempt to correct), and (2) in a way that

properly includes the <u>verification</u> that Plaintiffs now admit would be necessary.  So, clearly,

---

[1]"Ford's failure to list the domain names as defendants or state a claim against the domain names in the complaint is fatal to this argument. . . . [Moreover], <u>if Ford were permitted to amend the complaint</u>, jurisdiction over the domain names would be lacking.  Thus, the court preemptively declines to exercise *in rem* jurisdiction." *In Rem* Order at 2 (Dec. 20, 2001) (emphasis added).  Notably, the proposed Amended Complaint filed by FORD's counsel **still** does not contain the necessary allegations naming the <u>domain names themselves</u> as Defendants.  So, even if amended, the Complaint would still be fatally defective -- as this honorable Court already has determined.  So FORD's proposed approach is doubly nonsensical.

there is no need whatsoever for this honorable Court to introduce amendments in this lawsuit, which serve no purpose whatsoever in the Detroit litigation.

Moreover, the Plaintiffs' eleventh-hour requests to amend are untimely. These self-same defects have been present (and Plaintiffs' counsel have known about them) for months and months. This lawsuit has been pending since March 29, 2000. On December 20, 2001, this honorable Court made it absolutely clear on a pre-emptive basis that *in rem* jurisdiction cannot lie in the Eastern District of Michigan and that Plaintiffs are not welcome to bring any *in rem* claims in this District. And yet, Plaintiffs now ask for leave to do the very thing that this honorable Court told Plaintiffs and their counsel they could not do.

The **right way to do it** is simply to dismiss the claims, and then let FORD make the necessary corrections at the time that new lawsuits are re-filed in the proper jurisdictions.

**Judicial Economy:** Such a dismissal would serve the interest of judicial economy because it would not require this honorable Court (or one of its learned brethren[2] in Virginia) to perform the complex and daunting task of sorting out the different specific judicial districts in which the 29 claims belong (it is absolutely clear that not all of them can be prosecuted in Virginia).[3] These claims fall into two categories (already recognized by this Court).

First, there are claims involving residents of the United States, which can be brought

---

[2]With all respect to Judge Brinkema and Magistrate Judge Buchanan, the term "brethren" is used here in a strictly gender-neutral sense.

[3]This issue (whether Virginia can exercise jurisdiction when the entity "that registered or assigned the domain name" is not located in Virginia) is currently pending on appeal before the Fourth Circuit in the Turner v. CNNews case. Apellants' briefs are due at the end of March.

-3-

in the judicial districts where the U.S. residents reside.  Adjudication of such claims *in rem*

is "statutorily precluded," as this honorable Court already has recognized:

> In this case, [many] Defendants [who have not been served with
> summons] reside in the United States and thus are subject to personal
> jurisdiction <u>in the States in which they reside</u>.  With a possible exception
> for [certain] foreign defendants, *in rem* jurisdiction thus is statutorily
> precluded."

*In Rem* Order, at 3 (Dec. 20, 2002) (emphasis added).

Second, and most importantly, even among claims that arguably can be brought *in rem*,

Virginia is the wrong jurisdiction to be on the receiving end of the transfers.  As we explain

more fully below, several of these *in rem* actions need to be brought (if at all) in New York

City (where Register.com, the entity "that registered or assigned" several domain names is

located).  Moreover, over a dozen of the 29 transfers should be directed to the Northern

District of California (San Jose Division) because the entity "that registered or assigned the

domain name[s]" – namely, Verisign, Inc. – has its headquarters in Mountain View,

California.

So a transfer *en masse* to Virginia would clearly violate the requirement in 18 U.S.C.

1404(a) that venue for a pending action can only be transferred to "[an]other district or

division <u>where it might have been brought</u>."  This statutory criterion clearly is not satisfied

with respect to Domain Names that were "registered or assigned" by entities located

someplace other than Virginia (<u>i.e.,</u> New York, or California, or Baltimore).

## REASONS FOR OPPOSITION

In the Plaintiffs' Motion to Transfer Venue, the Plaintiffs and their counsel admit that Plaintiffs have completely failed to perform service of process on 29 or more Named Defendants. The court-established deadline for service on them passed on October 31, 2000 (Plaintiffs also leave off the list several Defendants who were served only **after** the deadline expired, and who are also not properly before this Court). In other words, these Defendants have **never** been within this honorable Court's jurisdiction because process has never properly been served on them. Rule 4(m) of the Rules of Civil Procedure establishes a mandatory requirement that this Court **must** dismiss all claims involving such defendants.

Moreover, inasmuch as the Rule 4(m) mandatory dismissals will be without prejudice, Plaintiffs certainly will be free to re-file any such claims in the jurisdictions where the claims should have been filed in the first place. Pllaintiffs will suffer no prejudice if things are done the right way.

In contrast, if things are done the wrong way, many of the defendants may suffer prejudice because of the burden and difficulty of defending multiple lawsuits, filed *seriatim* in three or more different jurisdictions, before arriving before a court that can properly exercise jurisdiction. Rules 41(a)(1) and 41(d) were specifically written into law, in order to minimize such abuses and to give FORD a proper incentive to file claims in the proper jurisdictions from the get-go, rather than bouncing from district to district to district on a series of cock-eyed and speculative theories of alternate jurisdiction and forum-shopping.

-5-

**Opposition to Transfer of Venue:** The EFF Defendants respectfully oppose the Plaintiff's Motion to transfer venue for several reasons. First, and most important, 28 U.S.C. § 1404(a) only permits a transfer of venue to a "district or division where [the civil action] might have been brought." The Judicial District on the receiving end of the Plaintiffs' proposed Order does not properly qualify. It is clear that minimum jurisdictional contacts for *in personam* jurisdiction do not exist in the Eastern District of Virginia. See America Online, Inc. v. Huang, 106 F. Supp. 2d 848 (E.D. Va. 2000). In other words, the Plaintiffs are absolutely required to proceed in one or more judicial districts that <u>do</u> have sufficient minimum contacts. E.g., Lucent Tech., Inc. v. Lucentsucks.com, 95 F. Supp. 2d 528 (E.D. Va. 2000); Porsche Cars N. Am., Inc. v. Spencer, 2000 U.S. Dist. LEXIS 7060 (E.D. Cal. May 18, 2000) (car manufacturer can go forward with *in personam* action in the judicial district where alleged "cybersquatter" physically resides).

And this Court itself has squarely held: "In this case, [many] Defendants [who have not been served with summons] reside in the United States and thus are subject to personal jurisdiction in the States in which they reside." *In Rem* Order, at 3 (Dec. 20, 2001). Since some judicial districts in the United States have personal jurisdiction, "*in rem* jurisdiction thus is statutorily precluded." Id.

By the Plaintiffs' own admissions, the following Defendants are U.S. residents and must be sued (if at all) in their home districts and not in Virginia:

| Roger Abramson | Surfside, Florida | Southern District of Florida |
|---|---|---|
| Robert E. Capps | Folsom, California | Eastern District of California (Sacramento Division) |
| Fordmustang.com | Chandler, Arizona | District of Arizona |
| Scott Howell | Palm Beach Gardens, FL | Southern District of Florida |
| Hurricane Industries | Alleytown, TX | Western District of Texas (Austin Division) |
| Jacob Pavin | Irving, Texas | Northern District of Texas |
| Jose F. Martinez | Puerto Rico | District of Puerto Rico |
| Joseph Parvin | Princetown Junction, NJ | District of New Jersey (Trenton Division) |
| Seller | Trenton, New Jersey | District of New Jersey (Trenton Division) |
| Zykar International | Smithtown, New York (Long Island) | Eastern District of New York |

Moreover, with respect to Domain Names belonging to persons who (for one reason or another) are not subject to jurisdiction in any judicial district in the United States, Plaintiffs' approach presents two problems.

First, the exercise of jurisdiction in such cases (including *in rem* jurisdiciton) in any judicial district of the United States would violate Due Process. The EFF Defendants have already briefed this issue (the key cases are Rush v. Savchuk, 444 U.S. 320 (1980), and Shaffer v. Heitner). On December 20, 2001, this Court also squarely recognized that:

> The court thus concludes that, even reading § 1125(d)(2)(C) as a distinct authorization for asserting *in rem* jurisdiction, the court must determine that sufficient minimum contacts do not exist to satisfy the due process clause[s] of [the Fifth and Fourteenth Amendments to] the Constitution.

-7-

*In Rem* Order, at 7 (Dec. 20, 2001). Further elaboration should be unnecessary here.

Second, and just as importantly, <u>even if</u> this Court overlooks the serious Due Process problem attending *in rem* jurisdiction, the clear statutory language says that the *in rem* action may **only** be brought where the <u>entity</u> "that registered or assigned the domain name" is "located." With respect to Internet Domain Names "registered or assigned" by Verisign, Inc.,[4] the only place such claims could be filed (the **location** of Verisign, if it "registered or assigned" specific addresses) – is the Northern District of California (San Jose Division).

Likewise, among the addresses listed in the Plaintiff's venue transfer motion are several that clearly were **not** "registered or assigned" by Verisign, but instead were "registered or assigned" by New York City-based Register.com, or by other entities such as Melbourne IT, or by Tucows. As is perfectly clear from the plain language of the statute, 15 U.S.C. § 1125(d)(2)(A), such Domain Names are clearly not subject to any *in rem* proceeding in Virginia, and it would be improper to transfer such issues to a judicial district (Virginia) that lacks authority to entertain such issues.

**Opposition to Amendment of Pleadings:** The question to be addressed in relation to the proposed amendment of the pleadings is this: Does "justice **require**" the pleadings to be amended? Clearly it does not. It does not because the proposed Amendment serves

---

[4]With respect to Verisign's role as a "registry" and not as a "registrar" – it is perfectly clear that Mountain View, California - based Verisign (specifically **not** "Network Solutions") is explicitly named as the party to all contracts with ICANN, and that said contracts have been amended to remove references to Network Solutions and to replace them with "Verisign" references. See Information on Proposed VeriSign Agreement Revisions (updated April 1, 2001), < http://www.icann.org/melbourne/info-verisign-revisions.htm >.

absolutely no legitimate purpose whatsoever.

This honorable Court already – **pre-emptively** – has made it absolutely and unmistakably clear that the filing of (or amendment of pleadings to add) *in rem* claims in the Eastern District of Michigan is unwelcome. And yet, the proposed amendment is absolutely meaningless and unnecessary unless its purpose it to pursue the exact course of action that this honorable Court told FORD and the other Plaintiffs would be forbidden.

And the proposed Amendment would be doubly futile because it completely fails to correct other fatal defects in the Plaintiffs' pleadings that this Court has already explicitly pointed out to FORD and its counsel. See note 1, *supra*.

The **right way to do it** is simply to dismiss the 29 claims that FORD seeks to transfer, and then let FORD file one or more corrected pleadings in whatever jurisdictions FORD's counsel deem fit and proper.

Inasmuch as justice does not require this amendment (and this Court's *In Rem* Order of December 20 appears to forbid it), leave to amend should be denied.

**February 13, 2002 Correspondence:** Counsel for the EFF Defendants, on February 13, 2002, previously supplied the Court with a letter brief addressing some related issues that should be considered with care. That correspondence (a copy of which is attached at Tab 1), is hereby adopted and incorporated by reference in support of this Memorandum.

## CONCLUSION

For the foregoing reasons, EFF Defendants respectfully oppose any amendments to the pleadings by FORD and the other Plaintiffs at this late juncture.  EFF Defendants respectfully oppose the Plaintiffs' proposal to transfer venue of a whole mess of claims to Virginia, even though few if any such claims belong there.  And EFF Defendants respectfully pray that this honorable Court will **do it the right way**, as set forth in the Federal Rules, instead of the wrong way as FORD's lawyers have proposed.

Respectfully submitted,

ELECTRONIC FRONTIER
 FOUNDATION AND THE
EFF DEFENDANTS,

By counsel,

March 7, 2002

Eric C. Grimm (P58990)
**CYBERBRIEF, PLC**
320 South Main Street
P.O. Box 7341
Ann Arbor, MI 48107-7341
734.332.4900

Cindy Cohn, Legal Director
**ELECTRONIC FRONTIER FOUNDATION**
454 Shotwell Street
San Francisco, CA  94110
415.505.7621

COUNSEL FOR ELECTRONIC
FRONTIER FOUNDATION.

-10-

## CERTIFICATE OF SERVICE

I certify that the following document:

## MEMORANDUM OF THE EFF DEFENDANTS:

## (1) IN OPPOSITION TO PLAINTIFF'S ELEVENTH-HOUR MOTION (Dkt. #163) AND SUPPLEMENTAL MOTION (Dkt. #168) FOR LEAVE TO AMEND; and

## (2) IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL TRANSFER OF VENUE (Dkt. #165); and

## (3) IN SUPPORT OF THE COURT'S MANDATORY AND NON-DISCRETIONARY DUTY UNDER RULE 4(m) TO DISMISS ALL CLAIMS AGAINST PERSONS WHO WERE NEVER SERVED.

was served on the following counsel of record, by depositing them with the United States Postal Service, with First Class Mail or more expeditious means of delivery prepaid, on or before March 7, 2002:

Kathleen A. Lang, Esq.
Dickinson Wright, PLLC
500 Woodward Ave.
Suite 4000
Detroit, MI  48226

Gregory D. Phillips, Esq.
Howard, Phillips & Anderson
560 East 200 South, Suite 230
Salt Lake City, UT  84102

-11-