

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

FORD MOTOR COMPANY, a Delaware
corporation, JAGUAR CARS, LTD., a United
Kingdom company, ASTON MARTIN
LAGONDA, LTD, a United Kingdom company,
VOLVO TRADEMARK HOLDING
AB, a corporation organized under the laws of
Sweden,

        Plaintiffs,

    vs.

GREATDOMAINS.COM, INC., a California
corporation, et al.,

        Defendants.

_____/

Civil No. 00-71544

Judge Robert Cleland

KATHLEEN A. LANG  (P34695)
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226
(313) 223-3500

GREGORY D. PHILLIPS
SCOTT R. RYTHER
Howard, Phillips & Andersen
560 East 200 South, Suite 300
Salt Lake City, Utah 84102
(801) 366-7471

*Attorneys for Plaintiffs*

_____/

## PLAINTIFFS' OPPOSITION TO MOTION OF HANS REKESTAD AND ELECTRONIC FRONTIER FOUNDATION FOR COSTS AND FEES

## ISSUES PRESENTED

1.  Whether Plaintiffs' claims against defendant Hans Rekestad were brought in bad faith, were brought for the improper purpose of harassing Rekestad, or were so obviously baseless that this is an "exceptional" case in which Rekestad should be awarded $36,000 in attorneys' fees under 15 U.S.C. § 1117(a).

2.  Whether Plaintiffs' claims against Hans Rekestad were brought by counsel in such bad faith or based on such an objectively baseless theory that counsel should be ordered to pay $36,000 in attorneys' fees and costs to Rekestad under 28 U.S.C. § 1927.

## TABLE OF CONTROLLING AUTHORITIES

**Cases**

*BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081 (7th Cir. 1994) ...................... 6

*Cardinal Freight Carriers, Inc. v. Cardinal Logistics, Inc.*,
    155 F. Supp2d 1352 (S.D. Fla. 2001) ............................................... 7

*Committee for Idaho's High Desert, Inc. v. Yost*, 92 F3d 814 (9th Cir. 1996) ........... 6

*Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996) ............................ 6

*Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 126 F.3d 1028
    (7th Cir. 1997) ................................................................................. 5, 6

*FASA Corp. v. Playmates Toys, Inc.*, 108 F.3d 140 (7th Cir. 1997) .......................... 6

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 n. 12 (1994) ................................................. 11, 16

*General Motors Corp. v. Cadillac Marine & Boat Co.*, 226 F. Supp. 716
    (W.D. Mich. 1964) ........................................................................... 12, 13, 14

*Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117 (8th Cir. 1987) ............................... 7

*Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986) ........................................ 17

*Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223 (7th Cir. 1984) .............................. 17

*Mainstream Loudoun v. Bd. Of Loudoun County Library*, No. 97-2049-A
    (E.D. Va. April 1, 19991) ............................................................... 11

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA Co.*,
    112 F.3d 1296 (5th Cir. 1997) ....................................................... 6

*National Ass'n of Professional Baseball Leagues, Inc. v. Very Minor*
    *Leages, Inc.*, 223 F.3d 1143 (10th Cir. 2000) ............................... 7, 10

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*,
    771 F.2d 521 (D.C. Cir. 1985) ....................................................... 12

*Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519 (5th Cir. 2002) ..................... 6, 9, 10

*Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d
    1160 (11th Cir. 1982) ...................................................................... 6

*Scott Fetzer Co. v. Williamson*, 101 F.3d 549 (8th Cir. 1996)....................................... 7

*Stephen T. Boney, Inc. v. Boney Services, Inc.*, 127 F3d 821
    (9th Cir. 1997)............................................................................................... 7

*Traxler v. Ford Motor Co.*, 227 Mich. App. 276 N.W.2d 398 (1998) ...................... 13, 14

## Statutes

15 U.S.C. § 1117.................................................................................................... 5
28 U.S.C. § 1927.................................................................................................... 3, *et. seq.*

## I.   **INTRODUCTION**

Prior to filing the instant Motion seeking attorney's fees, defendant Hans Rekestad ("Rekestad") and the Electronic Frontier Foundation ("EFF") requested that Plaintiffs voluntarily dismiss their claims against Rekestad in order to end the litigation between Plaintiffs and Rekestad and EFF. [Declaration of Scott R. Ryther ("Ryther Decl.") ¶ 5 at 2] Rekestad's EFF-affiliated counsel, Mr. Eric Grimm, made the request during an informal discussion between counsel in the hallway of the Courthouse following the Status Conference on February 11, 2002. [Ryther Decl. ¶ 5 at 2] Mr. Grimm pointed out that the settlement with between Plaintiffs and his clients left out Rekestad and then requested that Plaintiffs "leave Hans alone." [Ryther Decl. ¶ 5 at 2] Otherwise, according to Mr. Grimm, he and EFF would oppose any effort by Plaintiffs to seek a transfer of venue of their *in rem* claims to the Eastern District of Virginia. [Ryther Decl. ¶ 6 at 2] According to Mr. Grimm, EFF was more than willing to litigate with Plaintiffs further in Virginia, but encouraged Plaintiffs instead to dismiss their claims against Mr. Rekestad, just as they were doing with respect to defendants Brown, Cooper, Fiero, Radtech, Hall, and Emmert. [Ryther Decl. ¶ 5 at 2] The clear implication given by Mr. Grimm was that the settlement between Plaintiffs and Mr. Grimm's clients would be more complete if Plaintiffs simply dismissed their claims against Rekestad. [Ryther Decl. ¶ 7 at 2] Mr. Grimm failed to mention his and EFF's intention to seek an award of attorney's fees in the event Plaintiffs complied with Mr. Grimm's request. [Ryther Decl. ¶ 7 at 2]

After careful consideration, in the spirit of compromise, and in the interest of *streamlining* this litigation, Plaintiffs voluntarily dismissed their claims against Rekestad *without prejudice* on Februrary 22, 2002. [Dkt. 164] Plaintiffs voluntarily dismissed their claims even though Rekestad had sought to auction the domain name CLASSICVOLVO.COM to the highest

1

bidder for $250,000. Following their efforts, Plaintiffs were rewarded with Rekestad's present Motion for Costs and Fees ("Rekestad Motion"). Apparently Plaintiffs' consideration of Mr. Grimm's request was not careful enough.

In any event, Rekestad's and EFF's Motion must be denied for several reasons. First, Rekestad did not "prevail" in this litigation. After declining to waive service of process, Rekestad never appeared in this action, through Mr. Grimm or otherwise. In the Rekestad Motion, Rekestad and EFF devote much discussion to Plaintiffs' supposedly failed claims against Rekestad. However, Rekestad never filed a motion or otherwise defended. He cannot, therefore, claim to have prevailed against Plaintiffs' claims. For its part, EFF was never a party against whom any claims have been asserted and cannot have prevailed on anything.

Second, the case brought by Plaintiffs against Rekestad under the Lanham Act was not an "exceptional case." The claims brought by Plaintiffs against Rekestad were brought in good faith and were based on viable theories concerning Plaintiffs' trademark rights. Although this Court has now entered Orders indicating that Plaintiffs' infringement and dilution claims against Rekestad may have been subject to dismissal, the fact is that Rekestad did not move to dismiss them. Moreover, this Court's Orders clearly indicate that Plaintiffs' cybersquatting claim under the Lanham Act was viable. There is no basis on which this Court may conclude that Plaintiffs' claims against Rekestad—the registrant of CLASSICVOLVO.COM, which he listed for sale at the price of $250,000—were brought in bad faith or lacked any basis.

Third, Rekestad's and EFF's several "other relevant factors," such as ensuring that Rekesad's counsel is "fairly compensated" and "made whole," providing a "beacon of hope" for "small publishers" (*i.e.,* such as Rekestad who asked a *mere* $250,000 to *sell* the domain name at which his "speech" could be accessed), and "leveling the playing field" are simply not relevant

2

in determining whether to award attorney's fees—under the Lanham Act or 28 U.S.C. § 1927. The American Rule does not allow fee shifting except under clearly defined statutory exceptions, and the "factors" discussed by EFF have no relevance to any fee-shifting statute that could possibly be invoked here.

Fourth, Rekestad's afterthought that fees should be awarded under 28 U.S.C. § 1927 deserves even less consideration than Rekestad gave it before asserting it. Plaintiffs' counsel have acted professionally and have not "multiplied" these proceedings "unreasonably and vexatiously." On the contrary, Plaintiffs' counsel have pursued Plaintiffs' claims in the most efficient way possible.

Finally, Rekestad's request for fees in the amount of $33,750.00 is wholly unsupported by evidence and would not be supportable in any event. Rekestad has never entered an appearance, never filed a motion, never conducted discovery, never been required to respond to discovery, and has paid nothing for legal representation. This Motion is nothing more than an attempt by EFF and Mr. Grimm to allocate to Rekestad an amount of "fees"[1] expended on behalf of defendants other than Rekestad who *did* appear and defend (namely, defendants Brown, Cooper, Fiero, Radtech, Hall, and Emmert) and to have those fees awarded to Mr. Grimm in the name of Rekestad. This "end run" around the settlement reached between Plaintiffs and Mr. Grimm's other six clients must be seen for what it is. Moreover, EFF and Rekestad have failed to submit evidence of any hours or costs expended in the representation of Rekestad. To be sure, they could never provide any satisfactory explanation as to how a defendant that has never appeared to defend could have incurred $36,000 in fees and costs.

---

[1]   FF and Cyberbrief PLC claim to have undertaken their representation in this matter *pro bono publico*, yet they seek "fees" that have never been billed and will never be incurred by any client, including Rekestad.

3

## II.    ARGUMENT

### A.    REKESTAD DID NOT PREVAIL AGAINST PLAINTIFFS' CLAIMS

In their Motion, Rekestad and EFF erroneously characterize themselves as "prevailing parties."[2] [Rekestad Motion at i]  However, Rekestad did not prevail against any claims asserted against him by Plaintiffs.  Rather, Plaintiffs voluntarily dismissed their claims against Rekestad *without prejudice* at the request of EFF counsel Eric Grimm in order to make more complete a settlement between Plaintiffs and Mr. Grimm's clients.  So far as the merits are concerned, Rekestad did not appear in this case to assert any challenge to Plaintiffs' claims, much less prevail against them.  Despite having been requested by Plaintiffs to waive service of process and despite having received actual notice of this litigation, Rekestad has never expended the resources to file an answer, move to dismiss, or otherwise.   Rekestad merely sat back while others, such as defendants Brown, Cooper, Fiero, Radtech, Hall, and Emmert moved to dismiss on several grounds, eventually prevailing against a portion of Plaintiffs' case.[3]  Rekestad never filed or joined any motions, did not conduct nor answered any discovery, and has failed to substantiate his claim for attorney's fees by failing to prove any were incurred.  Accordingly, Rekestad's Motion seeking fees and costs under the label of a "prevailing party" is specious at best.

---

[2]    EFF is not a named defendant, nor is it a "party" to this litigation in any other capacity.  EFF is not, therefore, a "prevailing party" and has no standing to request an award of attorney's fees in its own behalf, under the "exceptional case" provision of the Lanham Act or otherwise (*i.e.,* Plaintiffs brought no claims against EFF under the Lanham Act).  This Court should strike the Rekestad Motion to the extent that it seeks fees on behalf of EFF.

[3]    The defendants that *did* move to dismiss, namely Brown, Cooper, Fiero, Radtech, Hall, and Emmert, have all settled with Plaintiffs under terms in which each party agreed to bear his or its own attorney's fees and costs.

4

Conveniently ignoring Rekestad's failure even to respond to this litigation, EFF attempts to characterize Rekestad and EFF as the "prevailing parties" with respect to this Court's Orders of December 20, 2001. Those Orders disposed of several motions filed by parties other than Rekestad. On December 20, this Court held that Plaintiffs' infringement and dilution claims must be dismissed as against several moving defendants, and the Court declined to exercise *in rem* jurisdiction. As discussed above, however, Rekestad was not among the movants who sought relief, some of which was granted by this Court in its December 20, 2001 Orders. Thus, Rekestad cannot claim to be a "prevailing party" as to any issue or claim decided in those Orders. Even if this Court were to equate Rekestad with the moving defendants (it should not), the victory was merely partial. For example, on the Rule 12(b)(6) motions of defendants Brown, Cooper, Fiero, Radtech, Hall, and Emmert, this Court granted the moving defendants' motions with respect to Plaintiffs' infringement and dilution claims, but *denied* their motions to dismiss Plaintiffs' cybersquatting claim. [Dkt. 157, Order, December 20, 2001 at 10-11, 40-41]

As discussed in the following section, Rekestad's and EFF's failure to prevail on the merits of Plaintiffs' claims points out the utter lack of basis on which to claim that this is an "exceptional case" under 15 U.S.C. § 1117.

**B.    A CASE IS NOT "EXCEPTIONAL" UNLESS IT IS BROUGHT IN "BAD FAITH" OR THE CLAIMS WERE COMPLETELY "UNFOUNDED" OR "BASELESS."**

**1.    Rekestad And EFF Improperly State The "Exceptional Case" Standard.**

In their Motion, Rekestad and EFF mischaracterize the "exceptional case" standard of 15 U.S.C. § 1117(a). Relying on *Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 126 F.3d 1028 (7th Cir. 1997), Rekestad and EFF claim that a case is exceptional under the Lanham Act if it is "oppressive." The Sixth Circuit has never adopted any such test for determining whether a case

5

is exceptional. For that matter, neither did Judge Posner in *Door Systems*. Instead, Judge Posner recognized: "*The canonical formula for in this an other circuits is 'malicious, fraudulent, deliberate, or willful.'*" *Door Systems*, 126 F.3d at 1031 (emphasis added) (citing *FASA Corp. v. Playmates Toys, Inc.*, 108 F.3d 140, 143 (7th Cir. 1997); *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA Co.*, 112 F.3d 1296, 1305 (5th Cir. 1997); *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825 (9th Cir. 1996)). Later in the discussion of the standard to be applied on remand, Judge Posner merely used the term "oppressive" as a short-hand way of expressing the standard recognized earlier in his opinion. *Door Systems*, 126 F.3d at 1032.

Of course, nearly every defendant in a trademark action would describe the litigation as "oppressive." Such a formulation for determining whether a case is "exceptional" would hardly be helpful. As discussed below, other circuits have adopted either a "bad faith" standard or have required a showing that a plaintiff's action under the Lanham Act was objectively baseless.

### 2.    Bad Faith Is Required By Several Circuits.

Rekestad and EFF fail to acknowledge that the Second, Fifth, and Eleventh Circuits— applying the "exceptional case" language of Section 1117(a)—require a showing of "bad faith" on the part of a plaintiff before a prevailing defendant may be awarded fees. *See, e.g., Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194-95  (2d Cir. 1996) (rejecting distinction between prevailing plaintiffs and prevailing defendants in application of Section 1117(a) and adhering to standard of "bad faith" for both plaintiffs and defendants); *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 527-28 (5th Cir. 2002) (holding that "bad faith" on the part of plaintiff is required for prevailing defendant to recover fees under Lanham Act, but allowing consideration of objective merits of suit in considering issue of "bad faith"); *Safeway Stores, Inc. v. Safeway*

6

*Discount Drugs, Inc.*, 675 F.2d 1160, 1169 (11ᵗʰ Cir. 1982) (stating that attorneys' fees should be awarded "only in exceptional circumstances and on evidence of fraud or bad faith" and rejecting defendant's argument that district court should have awarded fees against plaintiff on Lanham Act claims); *see also Cardinal Freight Carriers, Inc. v. Cardinal Logistics, Inc.*, 155 F.Supp.2d. 1352, 1354-55 (S.D. Fla. 2001) (acknowledging that bad faith is required in Eleventh Circuit and citing *Safeway, supra*).

### 3. Other Circuits Require That A Plaintiff's Case Be Baseless Or Brought For An Improper Purpose.

In addition, Rekestad and EFF ignore the numerous cases applying standards described differently than "bad faith," but which clearly require a showing that a plaintiff's Lanham Act case was baseless or brought for an improper purpose. For example, in *Scott Fetzer Co. v. Williamson*, 101 F.3d 549, (8ᵗʰ Cir. 1996), the court applied the following standard: "When a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith, it is exceptional, and the district court may award attorney's fees to the defendant." *Scott Fetzer*, 101 F.3d at 555 (citing *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 123 (8ᵗʰ Cir. 1987)).

The Ninth Circuit has cited with approval the standard set forth in *Scott Fetzer* above, rejecting a claim for attorneys' fees by a prevailing defendant where the plaintiff's case was "not frivolous and raised debatable issues of law and fact." *See Stephen T. Boney, Inc. v. Boney Services, Inc.*, 127 F.3d 821, 827 (9ᵗʰ Cir. 1997).

In *National Ass'n of Professional Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1147 (10ᵗʰ Cir. 2000), the Tenth Circuit held that a case brought by a plaintiff is not "exceptional" unless it lacks "any foundation," is brought in "bad faith," is pursued by the plaintiff in an "unusually vexatious and oppressive manner," or other similar reasons exist for awarding attorneys' fees. *National* Association *of Baseball Leagues*, 23 F.3d at 1147.

7

As discussed below, Plaintiffs' claims against Rekestad were not "frivolous," did not

"lack any foundation," were not objectively "baseless," were not brought to harass or for any

improper purpose, and have not been pursued against Rekestad in a "vexatious manner."

## C.   THIS IS NOT AN EXCEPTIONAL CASE UNDER ANY STANDARD USED.

### 1.   Plaintiffs' Claims Against Rekestad Raised Arguable And Novel Issues.

Regardless of which formulation this Court adopts in applying the "exceptional case"

standard, Plaintiffs' case under the Lanham Act against Rekestad does not approach exceptional.

There was never anything "frivolous," "baseless," "unfounded," or "groundless" about Plaintiffs'

claims for infringement, dilution, or cybersquatting.   Although this Court concluded in its

December 20, 2001 Order that Plaintiffs' infringement and dilution claims against several

moving defendants must be dismissed, Plaintiffs' claims raised novel and debatable issues

concerning the reach of the Lanham Act's infringement and dilution sections.   Moreover, this

Court *denied* the moving defendants' motions to dismiss Plaintiffs' cybersquatting claims under

ACPA portion of the Lanham Act.[4]

Although Rekestad and EFF claim that this case is "exceptional," they admit that

Plaintiffs' suit raised "truly groundbreaking" issues. [Rekestad Motion at 8]   Rekestad and EFF

employ twisted logic in claiming that the novelty of this case argues in favor of an award of

attorneys' fees.   Courts applying the "exceptional case" standard of Section 1117(a) reach the

---

[4]   Although Rekestad denies having registered or trafficked in CLASSICVOLVO.COM in bad
faith, it is undisputed that he listed it for sale at the asking price of $250,000—a clear signal
that Rekestad understood the value of the Volvo® name and that he appreciated the
possibility that someone (perhaps Plaintiffs) would pay a high price to acquire his domain
name.   Similar facts alleged in the Complaint were at the center of this Court's denial of the
12(b)(6) motions filed by defendants other than Rekestad.   [Dkt. 157, Order, December 20,
2001 at 10-12]

opposite conclusion when a case presents novel issues.  *See, e.g., Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 529 (5ᵗʰ Cir. 2002) (rejecting prevailing defendant's claim for attorneys' fees under Section 1117(a) where claims raised "close legal issue" including "two questions of first impression").

In addition to Rekestad's and EFF's admission that the issues raised by Plaintiffs' claims against Rekestad were "truly groundbreaking" and arguable, there is nothing in the language of this Court's December 20, 2001 Orders suggesting that the Court viewed Plaintiffs' claims as "groundless" or completely lacking any foundation in the law.  At page 2 of their Motion, Rekestad and EFF misquote[5] this Court's December 20 Order, implying that the Court has condemned Plaintiffs' case as an ACPA "dragnet," and quotes this Court's Order as stating that "[T]he court finds merit in [EFF's] position[n]] ..." [Rekestad Motion at 2]  However, what the Court *actually said* was:

> While the Court finds merit in both parties' positions, the ACPA clearly is intended to address concerns such as those set forth by Ford.  Because defendants easily can conjure up a "legitimate" use for a domain name that incorporates a trademark, plaintiffs frequently will find it difficult, if not impossible, to obtain evidence probative of "bad faith intent" without court sanctioned discovery.  Indeed, obtaining information relevant to almost all of the bad faith factors set forth in the statute requires direct testimony from the defendant.  Accordingly, the court concludes that, at least where facts showing a *prima facie* case of "intent to profit" have been alleged, the element of bad faith generally will not come into play until at least the summary judgment stage.  Thus, the lesson of the ACPA is that registrants of a domain name that incorporates a protected mark who no longer have a legitimate use for the domain name must, in most cases, let their registration lapse, rather than offer it for sale, if they hope to completely avoid the burden of litigating through at least the summary judgment stage.  Insofar as Ford has set forth facts which, if proven, would demonstrate that each of the EFF Defendants has offered to sell a domain name that incorporates a Ford mark over

---

[5]  Rekestad and EFF did not bother themselves to cite to a docket entry nor a page number at which the quoted language could be found.  Plaintiffs encourage a comparison of Rekestad's and EFF's "dragnet" discussion at page 2 of the Rekestad Motion with this Court's discussion of the "bad faith" element of Plaintiffs' ACPA claims at Dkt. 157, pages 7-12.

the Internet, the court concludes that a *prima facie* case of "bad faith intent to profit" has been made out with regard to each of the EFF Defendants.

. . . That the "jaguarcenter.com" domain name was posted for sale through Great Domains is sufficient to let this case proceed through discovery.

[Dkt. 157, Order, December 20, 2001 at 11-12]

Moreover, this Court devoted more than 19 pages of discussion to Plaintiffs' infringement, dilution, and unfair competition claims before concluding that Plaintiffs' claims, in the cybersquatting context, must be dismissed. [Dkt. 157, Order, December 20, 2001 at 20-39] If nothing else, the Court's discussion recognizes that, in the context of the relatively recent application of trademark law to Internet cybersquatting, Plaintiffs' infringement and dilution claims were not without any foundation. Thus, even in partially dismissing Plaintiffs' claims against several moving defendants, this Court's Order clearly indicates that the Court considered Plaintiffs' claims to be arguable and not lacking objectively baseless. *See, e.g., Procter & Gamble Co. v. Amway Corp.,* 280 F.3d 519 (5th Cir. 2002) (court should consider "objective merits" of plaintiff's suit); *National Ass'n of Professional Baseball Leagues, Inc. v. Very Minor Leagues, Inc.,* 223 F.3d 1143, 1147 (10th Cir. 2000) (interpreting the legislative history of Section 1117(a) as having an "objective" element, *i.e.,* whether the plaintiff's claims are "unfounded").

**D.    Plaintiffs Did Not Bring This Case In Bad Faith Or To Harass Rekestad.**

**1.    Plaintiffs Did Not Seek To Censor Rekestad's Speech.**

In addition to the objective reasonableness of Plaintiffs' claims against Rekestad, there is not a shred of evidence that Plaintiffs brought this case against Rekestad for any subjectively improper purpose. Plaintiffs simply saw Rekestad's registered domain name CLASSICVOLVO.COM listed for sale for $250,000. Plaintiffs need not look much further to

10

conclude that Rekestad sought to misappropriate and profit from the value of Plaintiffs' famous mark Volvo®. Rekestad claims that his web site at CLASSICVOLVO.COM was simply a place where he should be entitled to continue e simply wanted to continue operating a web site that contained "constitutionally protected speech." [Rekestad Motion at 9]   However, Plaintiffs have never sought to suppress any "speech" by this action.   Indeed, had Rekestad not listed CLASSICVOLVO.COM for sale at the GreatDomains web site at a high price, it is highly likely that Rekestad's activities may have gone unnoticed or, at least, may not have been challenged by Plaintiffs.   Moreover, Rekestad's protestations that his "expression" has been trampled by Plaintiffs is belied by the fact that he sought to *sell* the very Internet address that he claims is so dear to him and so critical to his continued ability to exercise his right of free expression.   This Court will forgive Plaintiffs for not simply taking Rekestad's word at face value.   The teaching of this Court's December 20 Order is that Plaintiffs are not required to do so.

In sum, Plaintiffs did not bring this action for the purpose of preventing any speech contained on any web site operated by Rekestad, including CLASSICVOLVO.COM.[6]   Rather, Plaintiffs simply sought to prevent Rekestad from trafficking in and profiting from the sale of the famous Volvo® trademark.

---

[6]   Rekestad's and EFF's reliance on the unpublished decision in *Mainstream Loudoun v. Bd. Of Loudoun County Library*, No. 97-2049-A (E.D. Va. April 1, 1999) is completely misplaced. In *Loudoun*, the defendant Library Board admittedly denied access to entire categories of protected speech.   Plaintiffs have not attempted, nor are they in any position, to deny Rekestad any such speech.   More importantly for this Motion, the analysis used by courts in determining whether attorneys' fees should be awarded to prevailing plaintiffs in civil rights cases are inapplicable in cases brought solely under the Lanham Act.   *Cf. Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 525 n.12 (1994) (rejecting argument that nearly automatic fee shifting under Civil Rights statutes should apply in considering nearly identical language in 1976 Copyright Act).

11

**2.   Rekestad's Reliance on Noxell and General Motors is Misplaced.**

In addition, although Rekestad and EFF describe *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant,* 771 F.2d 521 (D.C. Cir. 1985), and *General Motors Corp. v. Cadillac Marine & Boat Co.,* 226 F. Supp. 716 (W.D. Mich. 1964) as "the most persuasive precedents" [Rekestad Motion at 11], Plaintiffs' decision to bring this suit bears no resemblance to the conduct considered "exceptional" in those cases.

In *Noxell,* the D.C. Circuit condemned the plaintiff's choice of venue in the District of Columbia where the defendant was located in San Francisco. *Noxell,* 771 F.2d at 523-25. The Court in *Noxell* concluded that the plaintiff's choice of venue was baseless and at odds with controlling precedents, which precedents the plaintiff had apparently chosen not to cite to the district court. *See id.* at 526-27. Finding "more than a hint of 'economic coercion'" in the plaintiff's choice of venue, the court determined that the case was brought for purposes of "harassment" and was therefore "exceptional" under Section 1117(a). *Id.* at 526-27.

In contrast, this case does not involve a baseless choice of venue that can only be viewed as a bad faith attempt to harass. Rekestad would undoubtedly cry foul concerning *any* United States venue Plaintiffs were to choose. However, there is nothing improper about choosing a venue in he United States in which Plaintiffs have suffered the brunt of the harm caused by Rekestad's actions. So far as Rekestad is concerned, Michigan is no more "oppressive" a venue than any other United States District. Rekestad's reliance on the reasoning of *Noxell* is wholly misplaced. Clearly, Plaintiffs' choice to sue Rekestad in Michigan was not completely "groundless" as was the plaintiff's choice of venue in *Noxell.*

This case is likewise distinguishable from *General Motors Corp.* In that case the plaintiff had filed an opposition proceeding against the defendant in the TTAB, but when the TTAB

proceeding was coming close to resolution, the plaintiff filed its lawsuit in federal court, which suit suspended the TTAB proceedings. *General Motors Corp.* 226 F. Supp. at 742-43. The court found that the plaintiff's lawsuit was filed for the purpose of delaying the TTAB proceeding and "with the intent to further pressure the defendant to capitulate" rather than to seek relief on claims that had merit. *Id.* at 743.

In contrast to the plaintiff in *General Motors,* Plaintiffs brought this case simply to get the relief to which they believes they are entitled. Plaintiffs seek to prevent parties like Rekestad from registering, auctioning, and selling Internet domain names that contain famous trademarks such as Volvo®. Nothing other than that has ever been sought. It is hardly frivolous or abusive to seek such relief under trademark laws when Plaintiffs' famous trademark Volvo® is so clearly affected by Rekestad's actions.

### 3.    Rekestad's Insinuations Concerning "Reputation" are Improper.

Rekestad and EFF have no evidence that Plaintiffs brought this action for any improper purpose. Rekestad and EFF nevertheless cast improper aspersions, by claiming that Plaintiff Ford has a "reputation for extremely rough-and-tumble litigation," and by relying on *Traxler v. Ford Motor Co.,* 227 Mich. App. 276, 576 N.W.2d 398 (1998). Nothing in Section 1117(a) or in any cases applying it suggest that a plaintiff's "reputation" has any relevance to whether a case is "exceptional."[7]

---

[7]    Rekestad's reliance on *General Motors Corp. v. Cadillac Marine & Boat Co.,* 226 F. Supp. 716, 743-44 (W.D. Mich. 1964) is misplaced as well. Although the court discussed as relevant GM's past litigation tactics, the "exceptional case" language of Section 1117(a) was not applied.

13

### 4.   Plaintiffs' Settlement Negotiations Were Not Improper.

Rekestad's and EFF's repeated claim that Plaintiffs' have exerted some improper "economic coercion" over Rekestad is unsupported and is belied by the obvious and undisputed facts. Neither Rekestad nor anyone else was ever subjected to a "shake down." In this case, Plaintiffs asserted *valid* claims against numerous infringers and cybersquatters. Those claims potentially entitled Plaintiffs to awards of statutory damages, compensatory damages, attorney's fees, and costs. Moreover, Plaintiffs were forced to incur considerable expense to bring this action and to follow through with their claims against the many defendants. Plaintiffs have naturally been unwilling to settle with many of the registrant defendants without some compensation being paid to defray Plaintiffs' litigation costs and to settle their damages claims. Rekestad's and EFF's claim that this constitutes a "shake down" by Plaintiffs and their attorneys is preposterous. Plaintiffs' conduct in this case is no more akin to extortion than any other plaintiff who refuses to settle a legitimate and debatable claim without some settlement payment.

As for Rekestad, he has provided no evidence that he or Plaintiffs ever made a settlement offer to the other, nor has he provided any support for the notion that any settlement offer was made with improper motive. Moreover, even if a settlement offer was made to or by Rekestad and was rejected, Rekestad has not provided, nor can he provide, any evidence that his failure to reach an agreement with Plaintiffs led to any unfair litigation tactics. In sum, Rekestad's and his counsel's argument seems to be nothing more than unsupported whining about the "unfairness" of Plaintiffs' refusal to allow the Internet to become a free-for-all where in which Plaintiffs' trademarks are bought and sold at high value without Plaintiffs' permission.

Were this Court to accept Rekestad's and EFF's arguments in this regard, the "exceptional case" language of Section 1117(a) would be redefined like never before. Bringing

a valid and debatable claim under the Lanham Act and then refusing to settle that claim without compensation does not render the case "exceptional." This Court has already held that Plaintiffs' claims against the likes of Rekestad under the ACPA are viable based on the allegations set forth in Plaintiffs' complaint.  As this Court recognized, Rekestad, like the many other registrant defendants, can easily formulate an after-the-fact and self-serving explanation designed to exonerate himself.  That Plaintiffs chose not to believe Rekestad (or one-sided stories printed in *The Wall Street Journal*) does not render Plaintiffs' case against Rekestad a "lunch money" extortion.  Rekestad has admitted that he sought $250,000 in exchange for the sale of CLASSICVOLVO.COM.  If not for the famous Volvo® name imbedded in the domain name, would Rekestad have asked such a high price?  Has he ever sold a different domain name that did not contain a famous trademark?  If so, what price did he ask?  These questions have never been asked Rekestad during discovery or otherwise.  Had Plaintiffs' case against Rekestad proceeded through discovery and trial, Rekestad's claim of innocence would likely have lacked credibility based on the developed evidence.  Plaintiffs have repeatedly dealt with defendants like Rekestad who claimed to be innocent domain name registrants, but whose stories did not hold water based on the evidence.  Indeed, Plaintiff Ford recently prevailed at trial in *Ford v. Catalanotte*, Case No. 00-CV-75260-DT (E.D. Mich. 2002), on an ACPA claim in which the domain name registrant protested his innocence right the end.

### D.   REKESTAD'S AND EFF'S "OTHER RELEVANT FACTORS" ARE INCONSISTENT WITH THE AMERICAN RULE AND SECTION 1117(a).

Rekestad and EFF claim that this Court should consider "other relevant factors" such as: (1) making Rekestad's and its counsel "whole," (2) ensuring that Rekestad's counsel is "fairly compensated," (3) "leveling the playing field," (4) "deterring" large corporations from asserting

trademark claims against "financially weaker persons," and (5) providing a "beacon of hope" for small publishers and "the attorneys who might consider representing them." [Rekestad Motion at 8-9]

None of these "other relevant factors" are mentioned in Section 1117(a).   No case interpreting or applying Section 1117(a) mentions "making whole" a defendant and its counsel or ensuring that a defendant's counsel is "fairly compensated."   Likewise, there is nothing in Section 1117a) to suggest that "leveling the playing field" or protecting "small publishers" from litigation provides any basis for shifting fees.   Quite simply, a court may not consider the "other relevant factors" discussed in the Rekestad Motion consistent with the Lanham Act.   If a case lacks merit or is brought for an improper purpose, then the case is "exceptional" regardless of any "other relevant factors."   Conversely, if the case does not lack foundation, the "exceptional case" standard is not met and EFF's "other relevant factors" are not relevant at all.

In addition, Rekestad's and EFF's "other relevant factors" are plainly a request for this Court to ignore the American Rule.   "[U]nless Congress provides otherwise, parties are to bear their own attorney's fees."   *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994) (rejecting argument that 1976 Copyright Act language stating "the court may also award a reasonable attorney's fee to the prevailing party" was intended to adopt the British Rule).

### E.   REKESTAD AND EFF FAIL TO PROVIDE ANY BASIS FOR A MOTION UNDER 28 U.S.C. § 1927.

As an after-thought, Rekestad and EFF state: "We also rely on 28 U.S.C. § 1927 as a ground for seeking fees."   This is the sum total of Rekestad's and EFF's discussion of and support of their fee request under that statute.   Rekestad and his counsel cite no Sixth Circuit or other authority applying Section 1927.

Under Section 1927, a court may grant an award of "the excess costs, expenses and attorney's fees reasonably incurred" due to conduct by an attorney that "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. In *Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986), the Sixth Circuit reversed an award of fees and costs under Section 1927, and interpreted that statute to mean that an attorney may be ordered to pay fees and costs when the attorney "'intentionally . . . [pursues] a claim that lacks plausible legal or factual basis.'" *Jones*, 789 F.2d at 1230 (quoting *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226-27 (7th Cir. 1984)). Thus, in order for Rekestad and EFF to prevail on their request for fees under Section 1927, this Court must conclude that counsel for Plaintiffs pursued a claim against Rekestad that lacked any plausible legal or factual basis, and that counsel's conduct "multiplied" these proceedings "unreasonably and vexatiously."

To say that Rekestad has failed to make the showing necessary under Section 1927 is an understatement. As discussed at length above, this Court has clearly indicated its belief that Plaintiffs' case against Rekestad and the other registrant defendants did not lack any plausible basis. If the "exceptional case" standard of the Lanham Act has not been met, then *a fortiori* the standard for awarding fees as a sanction against Plaintiffs' counsel under Section 1927 has not been approached.

No proceedings against Rekestad have been "multiplied," reasonably or unreasonably. Rekestad was named as a defendant based on the known fact that he listed CLASSICVOLVO.COM for sale for $250,000. Rekestad was requested to waive service, but he refused. After Plaintiffs filed this case and provided the initial notice to Rekestad, Plaintiffs' counsel did not "multiply" any proceedings against Rekestad. In fact, Rekestad did not appear. Plaintiffs continued to pursue their claim against CLASSICVOLVO.COM under the *in rem*

17

provisions of the ACPA on the belief that Rekestad might be adjudged not subject to *in personam* jurisdiction in this Court. At the time when Plaintiffs' counsel asserted *in rem* claims, the issue as to whether the *in rem* provisions of the ACPA allowed such claims to be brought in this District had never been litigated in this or any other court and were clearly debatable issues. Not until December 20, 2001 did this Court announce its interpretation of the ACPA *in rem* provisions contrary to Plaintiffs' interpretation and decline to exercise *in rem* jurisdiction. After receiving the Court's decision, counsel for Plaintiffs appeared at this Court's Status Conference on February 11, 2002 with a plan for managing this litigation in light of the Court's December 20 Orders. Shortly after that Status Conference, Plaintiffs voluntarily dismissed their claims against Rekestad—not because Plaintiffs' claims lacked merit—but because Rekestad's counsel requested that Plaintiffs do so to help streamline this litigation.

Under these circumstances, Rekestad's assertion that his fees and costs should be awarded against Plaintiffs' counsel pursuant to Section 1927 is nothing short of ridiculous. Not only has Rekestad failed to support the notion that any claim brought against him lacked any plausible legal or factual basis, he has also failed to show that he has incurred *any* fees and costs, much less any fees and costs that he "reasonably incurred" *due to conduct by counsel that "multiplied"* these proceedings.

F.    **REKESTAD AND EFF FAIL TO SUPPORT THEIR MOTION WITH ANY EVIDENCE TO SHOW ANY AMOUNT OF FEES INCURRED OR EXPENDED ON BEHALF OF REKESTAD.**

Aside from the lack of any basis on which fees could be granted to Rekestad, Rekestad and EFF have completely failed to support their claim that Rekestad's fees and costs total $36,000. Although Rule 54 merely requires a "fair estimate of the amount sought," Rekestad

18

and EFF have failed to explain how it could possibly be "fair" to estimate Rekestad's fees and costs at $36,000.

As discussed above, Rekestad has never entered an appearance or filed any motion challenging Plaintiffs at any point in this litigation. Although other clients of EFF counsel Eric Grimm filed motions and challenged Plaintiffs in various aspects of this litigation, Rekestad did not so move or join any such motions. However, the EFF-represented defendants that *did* challenge Plaintiffs' claims, namely defendants Brown, Cooper, Fiero, Radtech, Hall, and Emmert, have all entered a settlement agreement with Plaintiffs under which all parties agreed to bear his or its own fees and costs. For Rekestad and his counsel to claim that Rekestad actually "incurred" a share of the fees and costs that were expended on behalf of Brown, Cooper, Fiero, Radtech, Hall, and Emmert strains credibility (not to mention the terms of the settlement agreement). If Rekestad wanted to challenge Plaintiffs' claims with a view toward gaining an award of attorney's fees, then he should have spent some resources making his case in this Court instead of in the media.

## III.  CONCLUSION

Rekestad's Motion for Costs and Fees should be denied in its entirety.

DICKINSON WRIGHT, PLLC

By: _Kathleen A. Lang_

Kathleen A. Lang (P34695)
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500

Gregory D. Phillips
Scott R. Ryther
HOWARD, PHILLIPS & ANDERSEN
560 East 200 South, Suite 300
Salt Lake City, UT 84102
(801) 366-7471

PROOF OF SERVICE
The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses as disclosed on the pleading _____, 20 __

By:  ☑ Via Mail          ☐ FAX
     ☐ Hand Delivered    ☐ Overnight Courier
     ☐ Federal Express   ☐ Other:
I declare under penalty of perjury that the statement above is true to the best of my information, knowledge and belief.
Signature: _____

DATED: April 15, 2002
DETROIT 18260-1537 658514

19

## DECLARATION OF SCOTT R. RYTHER

Scott R. Ryther, under penalty of perjury, declares as follows:

1.      I am of legal age and have personal knowledge of the facts set forth below.

2.      I am an attorney licensed to practice in the State of Utah and am admitted to practice in the Eastern District of Michigan.  I am a member of the law firm of Howard, Phillips & Andersen ("HPA"), counsel for Plaintiffs in *Ford Motor Company, et. al. v. Greatdomains.com, Inc. et. al.* Case No. 00-71544 (the "Litigation").

3.      In late January and early Februrary 2002, Plaintiffs reached a settlement agreement with six of the defendants named in the Litigation, all of which were represented by Eric C. Grimm and the Electronic Frontier Foundation ("EFF").  The six defendants, Brown, Cooper, Fiero, Radtech, Hall, and Emmert (collectively the "Settling EFF Defendants"), each agreed to bear his or its own attorney's fees and costs as part of the settlement.

4.      On February 11, 2002, I attended a Status Conference in the chambers of the Honorable Robert H. Cleland at which time I reported to the Court that Plaintiffs had reached a settlement with the six clients of Mr. Grimm mentioned above.  I also reported to the Court Plaintiffs' intention to seek a partial transfer of venue of Plaintiffs' *in rem* claims against a number of Internet domain names in light the Court's December 20, 2001 Order declining to exercise *in rem* jurisdiction.  Mr. Grimm, counsel for the Settling EFF Defendants, attended the Status Conference and was given an opportunity to comment on Plaintiffs' plans.

5.      Following the conclusion of the February 11, 2002 Status Conference, I discussed with Mr. Grimm the fact that he represents a client, Hans Rekestad, the registrant of CLASSICVOLVO.COM. I also discussed with Mr. Grimm the fact that Rekestad had never appeared in the Litigation. After some discussion concerning Mr. Grimm's representation of Rekestad and how Rekestad's presence in the Litigation might affect Plaintiffs' settlement with Mr. Grimm's clients and the EFF, Mr. Grimm requested that Plaintiffs voluntarily dismiss Plaintiffs' claims against Rekestad. Mr. Grimm encouraged me and my clients to "leave Hans alone."

6.      In making his request for a voluntary dismissal against Rekestad, Mr. Grimm implied that such dismissal and show of good faith by Plaintiffs would end any further dispute between Plaintiffs and the EFF. Indeed, Mr. Grimm said that if Plaintiffs continued to pursue *in rem* claims against Rekestad's domain name, CLASSICVOLVO.COM, EFF could easily oppose Plaintiffs because Mr. Grimm "already ha[d] the briefs in the can."

7.      At no time during our conversation on Februrary 11 did Mr. Grimm reveal any intention that if Plaintiffs complied with his request that Plaintiffs voluntarily dismiss their claims against Rekestad, Rekestad would move for an award of fees and costs or claim that Rekestad and EFF are "prevailing parties." The conciliatory tone of Mr. Grimm's request gave me quite the opposite impression.

8.      Following my informal discussion with Mr. Grimm on February 11, and after careful consideration, Plaintiffs dismissed their claims against defendant Rekestad without prejudice, fully expecting that any further litigation between Plaintiffs and Rekestad could be avoided.

9.      I certainly feel that my clients and I have been blind-sided by Mr.
Grimm's and Rekestad's tactics in seeking a dismissal as against Rekestad and then
moving for attorney's fees.  Obviously, Plaintiffs would not have dismissed their claims
against Rekestad had Mr. Grimm been forthright in letting Plaintiffs know their true
intentions.


        Dated April 15, 2002.


                                        _____
                                        Scott R. Ryther


3