**ORIGINAL** 

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

FORD MOTOR COMPANY, *et al.*,

    Plaintiffs,

v.

GREATDOMAINS.COM. Inc., *et al.*,

    Defendants.

_____/

Case No. ~~01-CV-71685-DT~~
00-71544 c per L...

Hon. Robert H. Cleland
United States District Judge

## RULE 60(a) AND 60(b) MOTION AND SUPPORTING MEMORANDUM FOR RELIEF FROM THE COURT'S ORDER DATED JUNE 28, 2002

Eric C. Grimm (P58990)
**CYBERBRIEF, PLC**
320 South Main Street
P.O. Box 7341
Ann Arbor, MI 48107-7341
734.332.4900

COUNSEL FOR EFF DEFENDANTS
AND ELECTRONIC FRONTIER
FOUNDATION.

## QUESTION PRESENTED

1. If this honorable Court, in its Order dated June 28, 2002, has committed numerous factual and legal errors, i.e.:

   a. By falsely contending that Mr. Rekestad did not secure a jurisdictional dismissal, when in fact this Court itself (1) erroneously authorized FORD to proceed against Rekestad and others on an *in rem* jurisdiction theory by performing service on Rekestad and 30 other Defendants by publication (see Dkt. # 54, Oct. 23, 2000) – which publication was performed by FORD (see Dkt. #69, Nov. 13, 2000), and (2) later, after having the opportunity to learn about the facially unconstitutional nature of *in rem* jurisdiction, squarely held that FORD had no lawful basis whatsoever to proceed *in rem*. (See Order, Dec. 20, 2001);

   b. By mistakenly denying fees to Rekestad (whose motion for fees solely concerned briefing on the issue of *in rem* jurisdiction, in which issue Mr. Rekestad explicitly participated – see Dkt. Nos. 89,[1] 86, 109, 110, 149,[2] and

---

[1] The Memorandum identified as Dkt. No. 89, was originally drafted with Hans Rekestad as the primary moving party. However, an error on FORD's part made it possible to adjudicate the issue with Hall and Gapmount as the movants, without exposing Rekestad to litigation in the United States. Under the circumstances, it would have been malpractice to interject Rekestad into the lawsuit as the movant, when it was FORD's fault (not the EFF's or counsel's) that Rekestad never was served with Summons (only by newspaper). It is hardly appropriate for this Court to penalize counsel for careful thinking, and the prudent avoidance of malpractice.

[2] In Dkt. #149, Mr. Rekestad is explicitly identified to this Honorable Court as the EFF Defendant primarily interested in the dismissal of *in rem* claims – because that is the only theory on which FORD sought to proceed against him. In Dkt. #149, the EFF also sought dismissal of all claims against at least 29 other defendants. This Court ultimately adopted and approved the analysis of the EFF, presented in Dkt. #149. See Order (May 8, 2002), Dkt. # 183. The court's delay in adopting this reasoning is inexplicable – because the analysis in Dkt. #149 clearly was right and ultimately was adopted by this Honorable Court. Nothing changed between June 26, 2001 (the date of Dkt. #149) and May 8, 2002. Ford merely perpetuated its already inexcusable delay. It is to be noted that – during this entire time, FORD's lawyers (including lawyers in Sweden) were in contact with Mr. Rekestad, and actively sought to use the pendency of the lawsuit as coercive leverage.

-i-

      did not seek any fees whatsoever for any of the *in personam* dismissal motions filed by <u>other</u> EFF Defendants), on the basis of Court findings on *in personam* jurisdiction, which *in personam* issues Rekestad <u>explicitly</u> pointed out in his Motion for Costs and Fees, were not in any way included within the scope of his fee request because all <u>those</u> motions did not pertain to him.[3] In other words, Rekestad and counsel explicitly segregated the issues as to which fees were sought, and made it clear that much of the work done in this case was excluded. This Court improperly relied on the <u>excluded</u> parts of the case (portions that pertained only to persons <u>other</u> than Rekestad) as its rationale for denying fees to <u>this</u> Defendant.

c.     By failing to apply, or expressly to consider and analyze, all the different factors that should be considered when deciding whether to award fees under 15 U.S.C. sec. 1117, but instead simply stating an unsupported conclusion about "oppression."

d.     By falsely contending that an adjudication on the <u>merits</u> of Rekestad's claims is somehow required, <u>see</u> *slip op.* at 5, in order to reach the issue of "oppression" – when in fact (and contrary to this Court's position) it has long been recognized by federal courts that a <u>jurisdictional</u> or venue dismissal (which is exactly what Rekestad and the EFF secured, when the *in rem* issue was decided in favor of the EFF's argument) qualifies a Defendant like Rekestad as a "prevailing party," and that **a 3000-mile forum-shopping exercise itself can constitute oppression.** Noxell Corp. v. Firehouse No. 1, Bar-B-Que Restaurant, 248 App. D.C. 329, 771 F.2d 521, 524-26 (D.C. Cir.) (opinion of Ginsburg and Scalia, JJ.), *reh'g en banc denied*, 774 F.2d 1180 (D.C. Cir. 1985).

e.     By failing to recognize that forum-shopping a dispute – that belongs in Sweden – 3000 miles into Detroit, is clearly oppressive and improper.

f.     By failing to recognize that the gross economic disparity between FORD

---

[3]The Court's position (consistent with the District of Massachusetts and the Southern District of New York, which addressed the issue first) was unmistakably clear that FORD's *in rem* theory of forum-shopping a Swedish dispute 3000 miles into Detroit, was so objectively without any merit whatsoever, that this Court "pre-emptively" refused to entertain FORD's theory.

  and Rekestad makes this litigation presumptively oppressive.[4]

g.  By failing to recognize that FORD's repeated and continuous efforts to extort $3000 from Mr. Rekestad (who has five young children to feed), and shake him (and other defendants) down for money – is not only much more egregious and improper than the "extortion" in Panavision v. Toeppen, but clearly constitutes "oppression" for purposes of attorneys' fees.

h.  By failing to take other factual factors explicitly referenced by Rekestad into account;

i.  By applying either the wrong legal standard, or by failing to apply all the factors that form a part of the complete legal standard; and

j.  By obviously holding it against Mr. Rekestad and his counsel that Rekestad managed (unlike the overwhelming majority of people who are subjected to the kind of oppression to which he was subjected) to secure *pro bono publico* counsel – when (1) the one-time willingness of *pro bono* counsel to ride to Rekestad's rescue certainly does not remove or excuse the oppressiveness of FORD's misconduct, and (2) the Court's failure to hold FORD accountable for the oppression it inflicted on Rekestad, directly increases the likelihood of future oppression, and also makes it much more difficult for the next Rekestad to secure the kind of counsel that this Court has mistakenly punished Rekestad for securing.

then, inasmuch as Rules 60(a) and 60(b) provide a vehicle for correcting the Court's mistakes as well as mistakes by a party, should this Court correct its own errors, and award Mr. Rekestad his costs (because the EFF and Rekestad secured a dismissal of *in rem* claims, clearly entitling them to costs under section 1919), and his fees (because FORD's misconduct was clearly oppressive in the extreme)?

---

[4]General Motors Corp. v. Cadillac Marine & Boat Co., 226 F. Supp. 716, 742-44 (W.D. Mich. 1964) (Fox, J.).

## MOST RELEVANT LEGAL AUTHORITIES

FED. R. CIV. P. 60(b): Relief from Judgment or Order (emphasis added).

**(a) Clerical Mistakes.**

Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.**

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) **mistake**,[5] inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) ; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) **any other reason justifying relief** from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

---

[5] "Mistake" in Rule 60(b) enables a court to correct its own mistakes. Spacey v. Burgar, No. 01-CV-03848, __ F. Supp. 2d __, May 16, 2002 slip op. at 3-4, 2001 WL 1869857, at *10 (C.D. Ca. Nov. 15, 2001 and May 16, 2002).

Noxell Corp. v. Firehouse No. 1, Bar-B-Que Restaurant, 248 App. D.C. 329,
   771 F.2d 521, 524-26 (D.C. Cir.) (opinion of Ginsburg and Scalia, JJ.),
   *reh'g en banc denied*, 774 F.2d 1180 (D.C. Cir. 1985).

Cairns v. Franklin Mint, Nos. 00-56217, 00-56796, __ F.3d __ (9th Cir. June 19, 2002)
   (upholding an award of over 2 million in attorneys' fees in a trademark case).

Boney, Inc. v. Boney Servs., Inc., 127 F.3d 821, 827 (9th Cir. 1997)

Scotch Whisky Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 1992).

Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 144 (4th Cir. 2000)
   (describing multifactor test for when prevailing defendants should recover fees).

The Procter & Gamble Co. v. Amway Corp., No. 00-20127, 280 F.3d 519, 527 n.12 (5th
   Cir. 2002).

Door Sys. Inc. v. Pro-Line Door Sys., Inc., 126 F.3d 1028, 1032 (7th Cir. 1997).

National Ass'n of Professional Baseball Leagues, Inc. v. Very Minor Leagues, 223 F.3d
   1143, 1146-47 (10th Cir. 2000) (examining variety of case-specific standards that
   have been employed).

Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 279-82 (3rd Cir. 2000)
   (recognizing that "exceptional" determination under Lanham Act is analytically
   separate and distinct from the issue of sanctions under Rule 11, and that a party's
   vexatious litigation conduct may justify an award of fees, separate and apart from
   substantive merits of party's case).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, *et al.*,

    Plaintiffs,

v.                                    Case No. 01-CV-71685-DT

GREATDOMAINS.COM. Inc., *et al.*,    Hon. Robert H. Cleland
                                                        United States District Judge

    Defendants.

_____/

### RULE 60(a) AND 60(b) MOTION FOR RELIEF FROM THE COURT'S ORDER DATED JUNE 28, 2002

Hans Rekestad, the Electronic Frontier Foundation, and counsel, respectfully move – under Rules 60(a) and 60(b) of the Federal Rules of Civil Procedure – for relief from the Court's erroneous Order denying Mr. Rekestad (and the EFF, which is also responsible for pointing out the law requiring dismisal of 29 other Defendants, see Dkt. Nos. 148, 169) the recovery of costs and attorneys' fees.

The relief specifically sought is that Rekestad and counsel be awarded the full amount of the costs and fees to which they are entitled on account of the clearly oppressive conduct of the Ford Motor Company, when it (1) forum-shopped a lawsuit 3000 miles from Sweden to the United States, (2) "served" Mr. Rekestad by misrepresenting the law to this Court and

-1-

tricking the Court into permitting "service" by "publication" in some U.S. newspapers, (3) attempted to extort money from Mr. Rekestad, by leaving the case pending for over two years (including the *in rem* theory on which Mr. Rekestad and his lawyers ultimately secured a victory) and telling Rekestad (and Rekestad's lawyers) that the only way to make it go away is to pay a lot of money to FORD's lawyers; (4) "froze" Mr. Rekestad's domain name registration during the entire pendency of the lawsuit – preventing him from changing hosting companies (which caused Rekestad severe hardship when his prior hosting company went out of business), and (5) inflicted on a Swedish defendant (and/or his counsel) the Hobson's choice between (i) a default and a transfer of legitimately-held addressing rights (and it is perfectly clear what this Court would have done if counsel had not intervened) or (ii) securing representation (at someone's expense) in a foreign jurisdiction 3000 miles away.

We move for relief from the Court's Order, because an award of fees in a case such as this is absolutely necessary to ensure the proper and necessary functioning of the adversary system in this case and other cases like this one in the future.

Respectfully submitted,

Eric C. Grimm (P58990)
**CYBERBRIEF, PLC**
320 South Main Street
P.O. Box 7341
Ann Arbor, MI 48107-7341
734.332.4900

COUNSEL FOR EFF DEFENDANTS
AND ELECTRONIC FRONTIER FOUND.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, *et al.*,

    Plaintiffs,

v.    Case No. 01-CV-71685-DT

GREATDOMAINS.COM. Inc., *et al.*,    Hon. Robert H. Cleland
    United States District Judge

    Defendants.

_____/

## MEMORANDUM IN SUPPORT OF
## RULE 60(a) AND 60(b) MOTION FOR RELIEF FROM THE COURT'S
## ORDER DATED JUNE 28, 2002

Hans Rekestad, the Electronic Frontier Foundation, and counsel, respectfully move – under Rules 60(a) and 60(b) of the Federal Rules of Civil Procedure – for relief from the Court's erroneous Order denying Mr. Rekestad (and the EFF, which is also responsible for pointing out the law requiring dismissal of 29 other Defendants, see Dkt. Nos. 148, 169, 183) the recovery of costs and attorneys' fees.

As pointed out previously, the determination whether a prevailing defendant in a Lanham Act case can recover fees in an "exceptional" case is analytically separate and distinct from the analysis of sanctions that would be performed were a Rule 11 Motion to be presented to this Honorable Court. Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 282 (3rd Cir. 2000) ("[W]e see no inconsistency with the District Court's decision to deny Rule 11 sanctions . . . but to award

fees in the Lanham Act case after making a factual finding concerning the culpable conduct involved in the case as a whole.").

Rule 60(b) (referencing "mistake") permits the Court to correct its own errors, as well as the errors of counsel. Spacey v. Burgar, No. 01-CV-03848, __ F. Supp. 2d __, May 16, 2002 slip op. at 3-4, 2001 WL 1869857, at *10 (C.D. Ca. Nov. 15, 2001 and May 16, 2002).

With all respect, the Court has made several errors of fact and law in its order of June 28, 2002. We begin with the most obvious.

**Rekestad and the EFF Won a Jurisdictional Dismissal.** The Court erroneously contends that the dismissal of FORD's claims against Rekestad did not involve a ruling on "jurisdiction." The Court mis-states the clear contents of the record. In October, 2000, FORD performed "service" on Rekestad, and this honorable Court purported to take "jurisdiction" over Rekestad's addressing rights. The "service" was court-ordered, and was accomplished by publication. See Dkt. Nos. 54, 69. It is absolutely clear exactly where the judicial locomotive (with FORD acting as unsupervised engineer) was headed, prior to the time that the EFF stepped in and undertook the task of pointing out how profoundly wrong FORD's *in rem* theory was. And it is clear that the EFF and counsel (not only on Rekestad's behalf, but on behalf of 29 other defendants) scored a major victory by knocking out the *in rem* theory. See Order (Dec. 20, 2001); Order (May 8, 2002), Dkt. #183.

Simply put, and with all respect, this Court certainly did not clue itself in to the defects in the "*in rem*" theory by which FORD wrongfully sought to forum-shop Rekestad's rights into Detroit. It was the hard work of counsel (who represented Rekestad throughout the process) that ultimately resulted in the court's recognition that FORD's *in rem* theory objectively lacked all merit and was completely unconstitutional.

-4-

This work **had** to be performed, one way or the other, on Rekestad's behalf, once the EFF and counsel undertook to represent Hans (he and Tom Cooper were the first clients who sought EFF's help). So it is silly for this Court to pretend as though the work was not performed, or that it was anything other than absolutely necessary and integral to his defense.

**This Court's Reliance on *Buckhannon* Is Misplaced.** On the issue of *in rem* jurisdiction, the EFF Defendants (including Rekestad – to whom the issue mattered most), counsel did in fact secure "a *judicially sanctioned* change in the relationship of the parties." This Court squarely held that Mr. Rekested's rights and the rights of many other named Defendants – to whose rescue the EFF and counsel also came (see Dkt. # 149 – which specifically references Rekestad by name), cannot be adjudicated *in rem*. This was a major change (especially in light of the "publication" ruling that FORD tricked Judge Rosen into issuing) in the relationship of Rekestad and FORD (as well as many other defendants and FORD), and it was clearly the product of a court decision.[6]

This dismissal of FORD's *in rem* theory (and all the fees Rekestad here seeks consist of ½ of what it cost to litigate the *in rem* issue and **no** *in personam* issues at all) clearly qualifies Mr. Rekestad as a "prevailing party." This is squarely in line with the holding of Justices (then Judges) Scalia and Ginsburg in the Noxell Corp. decision:

> We note that the situation of a defendant who achieves a [venue] dismissal short of an adjudication on the merits is unlike that of a plaintiff who wins an interlocutory ruling allowing litigation to continue. . . . In contrast to a plaintiff who establishes only a right to proceed further, defendant [Rekestad] **has here achieved an enduring victory**. [FORD]'s [*in rem*] suit stands dismissed, and [FORD] is forever barred from

---

[6]It is important, when the narrow holding of a Supreme Court case seems to be consistent with one aspect of "conservative" ideology, to resist the temptation to read **too much** into a decision like Buckhannon (which deals only with the "catalyst" theory of attorneys' fees – not the "prevailing party" status of a defendant who secures a jurisdictional dismissal in response to forum-shopping). See generally Westside Mothers v. Haveman, 289 F.3d 852 (6th Cir. 2002).

reinstituting the [*in rem*] action in the [Eastern] District of [Michigan].

Congress intended to authorize fees for defendants subjected to "harassment" by trademark owners. See S.REP. No. 1400, 93d Cong., 2d Sess. 6 (1974). We are persuaded that [ClassicVolvo.com] and its proprietor [Hans Rekestad], haled before a court some 3000-miles from the place of their activity, have encountered "harassment" of the kind Congress meant to deter and that, in obtaining dismissal of the proceeding in the distant forum, [ClassicVolvo.com and Rekestad] qualify as "prevailing parties" under the Lanham Act fee award provision.

Noxell Corp. v. Firehouse No. 1, Bar-B-Que Restaurant, 248 App. D.C. 329, 771 F.2d 521, 524-26 (D.C. Cir.) (emphasis added) (opinion of Ginsburg and Scalia, JJ.), *reh'g en banc denied*, 774 F.2d 1180 (D.C. Cir. 1985). The decision cited by this Court, Buckhannon (which deals with the Americans with Disabilities Act), does nothing to controvert the sound reasoning of Noxell.

**Plaintiff's *In Rem* Arguments (The Only Ones Germane To This Fee Request) Were Not In Any Way "Colorable."** This Court "pre-emptively" threw out FORD's *in rem* jurisdiction theory (at least, it did so after the defects in the theory were pointed out by EFF counsel). And a multitude of courts (including Judge Wodlock in FleetBoston, and Judge Cote in Barbie-Club) have likewise, uniformly and consistently, held that forum-shopping theories just like FORD sought to employ in this case – are completely baseless.

FORD's counsel had absolutely no reason to attempt such forum-shopping shenanigans, as Mr. Phillips personally participated in the legislative process that led to the ACPA, because he knew full well that Congress never intended to permit lawsuits in Detroit, when the *Registrar* for a Domain Name is located elsewhere. There is just simply no excuse for FORD wasting this Court's time, oppressing Mr. Rekestad, and wasting counsel's time, with a forum-shopping theory that was and always has been so patently bogus.

This Court makes the mistake of lumping Mr. Rekestad (who never had any reason to litigate

-6-

about *in personam* jurisdiction) in with the <u>other</u> EFF Defendants, even though we took care to point out how Rekestad is differently-situated. Counsel have been very careful to segregate out Rekestad-specific issues and Rekestad-specific fees. **And, therefore, so what if FORD had a so-called "colorable" argument (whatever *that* means) concerning the other (not Rekestad) EFF Defendants and *in personam* jurisdiction?** That observation by the Court is absolutely not in any way germane to Rekestad. It is not germane because the reason Rekestad is entitled to fees is that FORD's *in rem* theory (the only basis on which jurisdiction was temporarily – and erroneously – taken over Rekestad's rights from October, 2000 through December 2001) clearly lacked all objective merit, and was so objectively meritless (and contrary to the U.S. Constitution) that this Court "pre-emptively" refused to permit FORD to proceed *in rem*.

The Court and counsel may disagree as to whether – in a case in which FORD has argued the "res" constitutes the entire "subject-matter" of the dispute – dismissal for lack of *in rem* jurisdiction is the same as or different from lack of subject-matter jurisdiction (Judge Cote of the SDNY seems to think this issue involves subject-matter jurisdiction). But the upshot of the Court's dismisal of all *in rem* claims is clear. FORD's 3000-mile effort to forum-shop the adjudication of Rekestad's rights into Detroit, has squarely been rejected.

**FORD's Conduct Is Highly Oppressive:** As the <u>Noxell</u> case clearly holds, forum-shopping itself can (and here does) constitute "oppression." And FORD's "oppression" did not end with the unlawful (and unconstitutional) forum-shopping.

Ford improperly used its economic clout to engage in extortion toward and economically-weaker opponent. FORD's conduct was far more egregious than the "extortion" in the <u>Panavision v. Toeppen</u> case – by **orders of magnitude** – precisely because of the gigantic economic imbalance

-7-

between Ford and Rekestad (who has five children to feed and clothe). The economic imbalance and leverage in this case makes it presumptively "oppressive." See General Motors Corp. v. Cadillac Marine & Boat Co., 226 F. Supp. 716, 742-44 (W.D. Mich. 1964) (Fox, J.).

Moreover, this Court completely disregarded FORD's improper (and clearly oppressive) attempt to shake Rekestad down for money. FORD's counsel repeatedly communicated to Rekestad (and to Rekestad's counsel) their demand for the payment of money as a condition of dismissing the lawsuit. That is the essence of oppression – and it is no more excusable when Dennis Toeppen is "shaking down" some company for the nuisance value of a lawsuit, than it is when FORD's lawyers "shake down" Rekestad for the nuisance value of a lawsuit.

This Court has relied on Seventh Circuit authority for what constitutes "oppression." But it was Judge Posner, of the Seventh Circuit, who specifically recognized "nuisance value" shakedown strategies as the very definition of "oppression." Door Sys. Inc. v. Pro-Line Door Sys., Inc., 126 F.3d 1028, 1032 (7th Cir. 1997) (specifically condemning the strategy of "trying merely to extract a settlement based on the suit's nuisance value" – which is exactly what FORD tried to do here). And the case cited by this Court, Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG, 165 F.3d 526 (7th Cir. 1998), which affirmed an award of attorneys' fees, squarely supports Rekestad's position. Not Ford's.

**The Court Cannot Require the Commission of Malpractice as a Pre-Condition of Seeking Attorneys' Fees.** The Court criticizes Rekestad for litigating his rights vicariously, through the EFF, and not entering an appearance. The reality is that the *in rem* dismissal motion was originally drafted to be filed by Rekestad, but a careful review of FORD's papers made it clear to the EFF and counsel that (even though John Hall had issues of *in personam* jurisdiction to deal with,

and therefore was not nearly so interested in *in rem* as Rekestad), it would be possible to adjudicate Rekestad's rights and secure a dismissal of Rekestad, without any appearance (thereby further protecting Rekestad) by using a proxy. In other words, it was a stroke of genius to develop a procedure that enabled Rekestad to avoid entering an appearance. And that good (and client-beneficial) decision should not now be punished – particularly when the strategy was successful.

It would have been malpractice for Rekestad to enter an appearance (as this Court, in hindsight, insists he should have done) instead of proceeding in the manner that was actually employed. It is grossly unfair for this Court to punish counsel in this way, or to use counsel's avoidance of malpractice as an excuse for not awarding fees.

**The Court Has Failed Properly To Consider And Address All The Necessary Factors.** The legal standard for assessing an award of attorneys' fees consists of something much more considered than simply arriving at a result, and then backwards-engineering that result by proclaiming the lawsuit (in conclusory fashion) to be "not oppressive." The reality is that Rekestad **did show that the lawsuit was oppressive.** With very specific details that this Court ignored. It was additionally oppressive because the whole time that this Court was entertaining *in rem* jurisdiction (from October, 2000, through December, 2001), Rekestad was directly prevented from making need changes in his Website hosting arrangements because FORD unilaterally used the lawsuit to "freeze" Rekestad's rights.

As pointed out above, forum-shopping, extortion of money, and economic imbalance are all present as strong indicia of "oppression." And yet this Court completely disregarded and failed even to acknowledge these important factors.

The legal standard for assessing the need for attorneys' fees requires an objective analysis

-9-

of multiple factors. Not the mere subjective application of a conclusory label. Accordingly, we respectfully submit that this Court has applied the wrong legal standard, or, alternatively, has misapplied the legal standard by failing to account for the necessary factors. See Cairns v. Franklin Mint, Nos. 00-56217, 00-56796, __ F.3d __ (9th Cir. June 19, 2002) (upholding an award of over 2 million in attorneys' fees in a trademark case); Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 144 (4th Cir. 2000) (describing multifactor test for when prevailing defendants should recover fees); Boney, Inc. v. Boney Servs., Inc., 127 F.3d 821, 827 (9th Cir. 1997); Scotch Whisky Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 1992); Door Sys. Inc. v. Pro-Line Door Sys., Inc., 126 F.3d 1028, 1032 (7th Cir. 1997); National Ass'n of Professional Baseball Leagues, Inc. v. Very Minor Leagues, 223 F.3d 1143, 1146-47 (10th Cir. 2000) (examining variety of case-specific standards that have been employed).

## CONCLUSION

For the foregoing reasons, Rekestad, the EFF and counsel, respectfully pray for relief from the Court's Order, and for the award of the proper amount of costs and fees.

Respectfully submitted,

Eric C. Grimm (P58990)
CYBERBRIEF, PLC
320 South Main Street
P.O. Box 7341
Ann Arbor, MI 48107-7341
734.332.4900

COUNSEL FOR EFF
DEFENDANTS AND
ELECTRONIC FRONTIER
FOUNDATION.

## CERTIFICATE OF SERVICE

I certify that the foregoing **RULE 60 MOTION** was served on the following counsel of record, by facsimile on July 9, 2002, and by depositing it with the United States Postal Service, with First Class Mail or more expeditious means of delivery prepaid, on or before July 9, 2002:

>Gregory D. Phillips, Esq.
>Howard, Phillips & Andersen
>560 E. 200 South, Suite 300
>Salt Lake City, UT 84102
>801.366.7451
>
>Kathleen Lang, Esq.
>Dickinson Wright PLLC
>500 Woodward Ave, Suite 4000
>Detroit, MI 48226-3425
>313.223.3500

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED